## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY EATON, MONICA CARDONE, <br><br> *Defendants.* | Case No.: 8:23-CV-01450-VMC-UAM |

## MOTION TO COMPEL DEPOSITION OF BEN SCRANCHER

## MOTION SUMMARY

Plaintiffs move to compel Defendant Global E-Trading, LLC DBA Chargebacks911 ("CB911") to produce its managing agent Ben Scrancher for a deposition and state:

A "corporation is responsible for producing its officers, managing agents, and directors if notice is given and sanctions may be imposed against the corporation if they fail to appear." *Brunson v. PHH Mortg. Corp.*, 342 F.R.D. 315, 320 (M.D. Fla. 2022) (cleaned up).

Plaintiffs properly noticed Defendant Chargebacks911's managing agent Ben Scrancher for deposition to take place on April 11, 2024, but Defendant refused to produce Mr. Scrancher for deposition.  Plaintiffs have met and conferred with

Defendant Chargebacks911 on this issue, but Defendant persists in openly defying its discovery obligations under Federal Rules of Civil Procedure Rule 30(b)(1), necessitating the instant motion.

## PROCEDURAL BACKGROUND: DEFENDANT CHARGEBACKS911'S REFUSAL TO PRODUCE BEN SCRANCHER FOR DEPOSITION

On March 7, 2024, Plaintiffs noticed the deposition of Ben Scrancher for April 11, 2024. *See* Exhibit A.

On March 12, 2024, Plaintiffs' counsel emailed Defendants' counsel advising that Plaintiffs would be agreeable to deposing Mr. Scrancher, who is based in England, remotely via Zoom. *See* Exhibit B.

Defendants' counsel replied on March 13, 2024, stating that Chargebacks911 would not be producing Mr. Scrancher in response to the notice of deposition. *See* Exhibit C.

Plaintiffs' counsel sent Defendant's counsel a letter outlining why Chargebacks911's refusal to produce Mr. Scrancher for deposition was improper. *See* Exhibit D. The Parties met and conferred regarding Defendant's refusal to produce Mr. Scrancher for deposition in response to Plaintiffs' notice on March 22, 2024. Covey Decl. ¶ 2.  In that meet and confer, Chargebacks911's counsel suggested that a deposition would need to be in-person near Mr. Scrancher in the United Kingdom and not via Zoom. But after Plaintiffs' counsel stated that it would travel the United Kingdom if Chargebacks911 would rescind its objection,

Chargebacks911's counsel stated that it still would not produce Mr. Scrancher even if Plaintiffs' counsel agreed to an in-person deposition. Covey Decl. ¶ 3. Chargebacks911's counsel also claimed that Mr. Scrancher's title of Vice President was merely a title to give Mr. Scrancher clout with Chargebacks911's clients. Covey Decl. ¶ 4.

On March 28, 2024, Defendant served formal objections to Plaintiffs' Notice of Deposition and. *See* Exhibit E.  When asked to confirm that Defendant would not be producing Mr. Scrancher in response to Plaintiffs' notice of deposition, *see* Exhibit F, Defendants' counsel confirmed that Defendant Chargebacks911 was refusing to produce Mr. Scrancher to be deposed on April 11, 2024. *See* Exhibit G. Defendant Chargebacks911 did not in fact produce Mr. Scrancher for his deposition on April 11, 2024. Covey Decl. ¶ 5. On April 19, 2024, Chargebacks911's counsel wrote to Plaintiffs' counsel reiterating Chargebacks911's position that Mr. Scrancher was not a managing agent and conveying that Mr. Scrancher believed appearing for a deposition would "would violate his rights under UK law and The Hague Convention." *See* Exhibit H.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure Rule 30(b)(1), a deposition subpoena is not required to depose a party or an officer, director, or managing agent of a party.

Courts look to five factors in determining whether and individual is a

"managing agent" for purposed of Rule 30(b)(1).  These factors (the "Managing Agent Factors") are:

> (1) whether the individual has general power to exercise discretion in corporate matters; (2) whether he or she can be expected to testify at the employer's request; (3) whether there are persons within the corporation with greater authority regarding the information sought; (4) the general responsibilities of the individual regarding the matters under litigation; and (5) whether the witness identifies with the interests of the corporation.

*Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 12217, at *8 (S.D. Fla. Jan. 30, 2014).  "Whether a deponent is a managing agent does not depend on his or her job title, but is determined by examining the witness' actual job responsibilities." *Id.*  "Although employees of a corporation may not be managing agents regarding their everyday duties, they may still be managing agents about their testimony concerning their important activities in the underlying facts or where their activities are closely linked with events giving rise to the lawsuit." *Brunson*, 342 F.R.D. at 321 (cleaned up). The noticing party bears the burden of proving managing agent status, but the burden is a "modest one" and "if an employee's status as a managing agent is a 'close question,' doubts are resolved in favor of the examining party, particularly when discovery on the issue is not complete." *Id.* (cleaned up).

## ARGUMENT

"Foreign nationals who qualify as managing agents or officers of a party may  be subject to deposition pursuant to a notice." *Brunson*, 342 F.R.D. at 320-21

(cleaned up). Because Mr. Scrancher is a "managing agent" of Defendant Chargebacks911, "he need not be subpoenaed and must voluntarily be produced for deposition in the United States pursuant to Fed.R.Civ.P. 30(b)(1)." *See Al-Ghena Int'l Corp. v. Radwan*, No. 13-61557, 2015 U.S. Dist. LEXIS 188816, at *4 (S.D. Fla. Sep. 22, 2015) (discussing determination of managing agent status under Rule 30(b)(1) in case involving Kuwaiti resident employed by a party).

In this case, each of the five Managing Agent Factors weighs in favor of a finding that Mr. Scrancher is a managing agent of Chargebacks911.

First, documents produced by CB911 show Mr. Scrancher exercising discretion in corporate matters.

In a March 2017 email with the subject line "



*See* Exhibit I.

Other emails show Mr. Cardone exercising discretion, in particular, with respect to Chargebacks911's "VAP" or "Value Added Promotions" program.

"VAP" is the name Defendant Chargeback911 used to describe the sham microtransaction service it provided its customers, fully in-house initially and then together with  Johnny De Luca.  The concept of a chargeback rate is critical to understanding VAP.  A chargeback rate is the ratio of transactions on a given merchant's account that are charged back by a purchaser. Merchants with high chargeback rates are considered "high risk" and legitimate financial institutions routinely penalize or decline to do business with a merchant if its chargeback rate is too high.  Through its VAP program, Chargebacks911 artificially diluted its clients' merchant accounts' chargeback rates by intentionally running a large number of low-value transactions so that total number of transactions on a given merchant account or "MID" goes up and its chargeback rate, by extension, goes down. As explained ███████████████████████████████



*See* Exhibit J.

Mr. Scrancher exercised extensive discretion with respect to the VAP program.  For example, in one document produced by CB911, Mr. Scrancher strategizes about "████████████████████████████████████████

███████ *See* Exhibit K. *See also* Exhibit L (Email from Mr. Scrancher where he

writes: "█████████████████████████████████████████████████

███████████████████████████████████████████").

    Critically, a document produced by CB911 in this litigation suggests ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ reflects the level of

discretion he exercised over CB911's affairs and weighs in favor of finding he is a

managing agent.

    In another email, Defendant Cardone *deferred to Mr. Scrancher's judgment*

about ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████ shows the high-level of discretion Mr. Scrancher exercised over Chargebacks911's affairs.

Second, Mr. Scrancher, who is currently employed as a Senior Vice President at Chargebacks911, can be expected to testify at Chargebacks911's request.

Third, it appears there is no one in the corporation with greater authority or involvement regarding Chargebacks911's use of fraudulent microtransactions to doctor its clients' chargeback ratios. For example, when a Chargebacks911 employee wrote Defendant Cardone in March 2017 asking about whether Chargebacks911 should ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████ Likewise, when ████████████████████████████



*See* Exhibit Q.

Mr. Scrancher's status as a go-to person for both clients and colleagues seeking help with VAP shows his high level of involvement with the program and supports a finding that he is a managing agent of Chargebacks911.

Fourth, Mr. Scrancher had broad responsibility in connection with Chargebacks911's use of sham microtransactions to fraudulently reduce its clients' apparent chargeback ratios. This broad responsibility is illustrated by Exhibit R. In that document,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

Moreover, Chargebacks911's counsel's claim that Mr. Scrancher's title of Vice President exists to give Mr. Scrancher clout with Chargebacks911's clients reinforces the fourth factor because it demonstrates that Mr. Scrancher is a key player when it comes to Chargebacks911's interactions with its clients.

Fifth and finally, Mr. Scrancher's identification with the interests of the corporation is evident from documents produced by Defendant in which Mr. Scrancher appears to try and minimize the risk to Chargebacks911 of its fraudulent conduct. For example, in Exhibit S, ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████ This identification with Defendant Chargebacks911 weighs in favor of finding Mr. Scrancher is a

"managing agent" of Chagrebacks911. *See Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV-ZLOCH, 2008 U.S. Dist. LEXIS 112372, at *8-9 (S.D. Fla. Sep. 29, 2008) ("[T]he Court finds that Mr. Burri is a managing agent of WABO because he exercised power during the formation of the Agreement and his interests are aligned with WABO.").

Given the above evidence and circumstances, Mr. Scrancher is plainly a "managing agent" of Chargebacks911 in every sense of the term. However, *even if* that were not the case, Mr. Scrancher would still be a "managing agent" subject to deposition upon notice *in this proceeding* because of his central role vis-à-vis Chargebacks911's deployment of the microtransactions scheme for the Keto Racket.

"The term 'managing agent' is not interpreted literally" and "[a]lthough employees of a corporation may not be managing agents regarding their everyday duties, they may still be managing agents about their testimony concerning their important activities in the underlying facts or where their activities are closely linked with events giving rise to the lawsuit." *See In re: Takata Airbag Prods. Liab. Litig.*, No. 15-02599-MD, 2017 U.S. Dist. LEXIS 217198, at *104-05 (S.D. Fla. June 19, 2017) (cleaned up). Here, no CB911 employee was more involved in helping the CB911's Keto Associates implement Chargebacks911's microtransactions scam than Ben Scrancher. It was Ben Scrancher who reached out to David Flynn via Skype asking to talk about connecting the Keto Associates with "groups that can

help with increasing . . . transaction number." (Second Amended Class Action Complaint ("SAC"), ECF No. 62 at p. 32 ¶ 79 – p. 33 ¶ 80.) It was Ben Scrancher who directed the Keto Associates to a "chat with Johnny" and advised that Johnny [De Luca] was the "one that can help" with increasing the Keto Racket's transaction numbers. (SAC, ECF No. 62 at p. 34 ¶ 82.)   When David Flynn expressed misgivings about wiring Johnny De Luca hundreds of thousands of dollars to flood the Keto Racket's merchant account with sham microtransactions, it was Ben Scrancher who reassured him, explaining "we've had clients working with Johnny for over 3 years" and "[n]ever had a complaint so far." (SAC, ECF No. 62 at p. 34 ¶ 83.)   For these reasons, the court could hold that Mr. Scrancher was a "managing agent" subject to deposition upon notice *in this proceeding* even if there were not ample evidence that Mr. Scrancher was, generally speaking, a "managing agent" of Chargebacks911 based on a holistic reading of the five Managing Agent Factors.

Chargebacks911's efforts sidestep its discovery obligations with arguments about the Hague Convention and Mr. Scrancher's apparent contention that it would "violate his rights" under the laws of a foreign nation to sit for a deposition upon notice are unavailing.   No matter what the laws of the United Kingdom might provide:

> such statutes do not deprive an American court of the power to order
> a party subject to its jurisdiction to produce evidence even though the
> act of production may violate that statute. *See Societe Internationale*

> *Pour Participations Industrielles et Commerciales*, S. A. v. Rogers, 357 U.S. 197, 204-206 (1958). Nor can the enactment of such a statute by a foreign nation require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts.

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.29 (1987).

Notwithstanding the Hague Convention or any foreign law, American courts can, and do, compel the deposition of a litigant's foreign managing agent upon Rule 30(b)(1) notice. For example, in *Calixto*, 2008 U.S. Dist. LEXIS 112372, the plaintiff moved to compel the deposition upon notice of the defendant's former CEO, a resident of Switzerland.  The defendant objected, claiming that "the law of Switzerland prohibits [the former CEO's] deposition absent his express permission" and that the Plaintiff should have to follow the Hague Convention's procedures. *Id.* at *9.  The court rejected this argument and ordered the Defendant to produce its managing agent for deposition pursuant to the plaintiff's Rule 30(b)(1) notice.  It explained that "resort to the procedures for gathering evidence provided by the Hague Convention are optional and are not intended to strip American courts of their power to manage common pretrial proceedings such as depositions" and that "statutes like the Swiss law in this action, do not deprive American courts of their power over parties subject to their jurisdiction." *Id.* at * 11. *See also Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 521 (D. Idaho 2013) (rejecting arguments about putative illegality under Chilean law of deposing

corporation's Chilean-citizen managing agents upon notice and about the applicability of the Hague Convention's procedures and affirming the Magistrate Judge's order compelling Defendant to "produce the Chilean dispute agents who handled [Plaintiff's] dispute via notice, and without subpoena").

Arguments that the laws of the United Kingdom should somehow circumscribe Plaintiffs' rights to depose Mr. Scrancher pursuant To Federal Rules of Civil Procedure Rule 30(b)(1) are further particularly inappropriate in this case because this dispute involves U.S. plaintiffs suing under a "a federal statute," RICO, that is "in its own way critical to the smooth and fair functioning of the modern economy." *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 635 (D. Idaho 2012). This is not a situation where Plaintiffs are "attempting to localize a matter in which the United States has at best tangential interests." *Id.* As such, "the sovereign interests of the United States would be infringed were Plaintiff[s] required to proceed with deposition[] of [Mr. Scrancher] according to" rules other than those of the Federal Rules of Civil Procedure. *See id.* at 634-35. *See also In re Honda Am. Motor Co*, 168 F.R.D. 535, 539 (D. Md. 1996) ("The United States has a clear interest in maintaining the integrity of its judicial system and the power of its jurisdiction over persons doing business in the United States. An open discovery process helps maintain this integrity by ensuring that facts necessary for a proper and just adjudication are disclosed. Thus, solicitude for foreign procedures here would be a particularly significant intrusion upon American

sovereignty." (Cleaned up.))

## CONCLUSION

Chargebacks911's desire to not have Mr. Scrancher deposed is apparent because, as demonstrated above, Mr. Scrancher was a central figure in the Keto Racket's sham microtransactions. He figures prominently in the documents that the Defendants produced. And because Mr. Scrancher lives in the United Kingdom, Chargebacks911 knows that it will be very difficult for Plaintiffs to compel Mr. Scrancher if Chargebacks911 does not produce him to testify. This explains why Chargebacks911's counsel came up with every excuse it could think of, including demanding that any deposition be in person, to hinder Plaintiffs' attempt to conduct the deposition. Even in the face of a mountain of evidence and clear case law, Chargebacks911 has decided that the best strategy is to simply bury its head in the sand.

In addition to ordering Chargebacks911 to produce Mr. Scrancher in response to Plaintiffs' notice of deposition, the court should sanction Chargebacks911 for its failure to produce Mr. Scrancher for deposition on April 11, 2024. *See* Fed. R. Civ. Pro. R. 37(d)(1)(A)(i) ("The court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition . . . ."). Chargebacks911's refusal to produce Mr. Scrancher is yet another example of an alarming pattern in this case of refusing to

comply with the federal discovery rules. The sanction for this refusal should be significant enough that Chargebacks911 realizes that it is fruitless to continue to play these discovery games.

Plaintiffs respectfully request that the Court enter an order requiring Defendant Chargebacks911 to produce Ben Scrancher for a deposition either in person in Tampa, Florida, or via videoconference, at a date to be selected through mutual agreement of the Parties but no more than thirty days from the date of the Court's order on this motion.

Date: April 24, 2024

Respectfully submitted,

/s/ A. Cyclone Covey
Cyclone Covey

**KNEUPPER & COVEY, PC**
Kevin M. Kneupper, Esq. (pro hac vice)
kevin@kneuppercovey.com
A. Lorraine Weekes (pro hac vice)
lorraine@kneuppercovey.com
17011 Beach Blvd Suite 900,
Huntington Beach, CA 92647
Office: 657-845-3100

A. Cyclone Covey, Esq. (pro hac vice)
Cyclone@kneuppercovey.com
4475 Peachtree Lakes Dr.
Berkeley Lake GA, 30096
Office: 657-845-3100

**KIBBEY WAGNER PLLC**
Jordan Wagner, Esq. (SBN 14852)
73 SW Flagler Ave
Stuart, FL 34994-2140
Office: 772-444-7000
jwagner@kibbeylaw.com
*Attorneys for Plaintiffs Janet Sihler and Charlene Bavencoff and the putative Class*

16

## Local Rule 3.01(g) Certification

I certify that I have conferred with Defendants' counsel concerning this motion in good faith, the parties were unable to resolve any part of this motion. The conference was held between Plaintiffs' counsel and Defendants' counsel via videoconference on March 22, 2024.

/s/ A. Cyclone Covey
A. Cyclone Covey


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by the Court's CM/ECF electronic mail system, on this 24th day of April 2024 to all counsel of record.

/s/ A. Cyclone Covey
A. Cyclone Covey