## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANET SIHLER, Individually and On
Behalf of All Others Similarly Situated;
CHARLENE BAVENCOFF,
Individually and On Behalf of All
Others Similarly Situated,

                 Plaintiffs,

v.

GLOBAL E-TRADING, LLC DBA
CHARGEBACKS911, GARY
CARDONE, MONICA EATON,

                 Defendants.

Case No. 8:23-cv-01450-VMC-JSS

**DEFENDANTS' MOTION TO
DISMISS THIRD AMENDED
CLASS ACTION COMPLAINT
AND INCORPORATED
MEMORANDUM OF LAW**

## PRELIMINARY STATEMENT

Plaintiffs have now twice amended their complaint to attempt to remedy the fundamental defects in their financial institutions fraud and money laundering claim identified by the Court in its order on Defendants' motion to dismiss. But Plaintiffs still fail to plausibly allege—because they *cannot* plausibly allege—the elements of these causes of action. The Court should dismiss these claims with prejudice.

Global E-Trading, LLC ("ChgBacks911") is a technology platform provider that assists merchants with preventing, and responding to, inquiries and disputes over credit card charges, which are called "chargebacks." Based on ChgBacks911's provision of this highly important and legitimate service, which ChgBacks911 provides to tens of thousands of merchants, Plaintiffs have concocted a federal RICO claim.

Notably, this litigation is not against the entities who allegedly defrauded consumers. Instead, desperate to find a deep pocket, Plaintiffs have brought RICO claims against ChgBacks911 based on a strained interpretation of RICO that could hold ChgBacks911 liable for treble damages for alleged misrepresentations made by others which Defendants, indisputably, did not create, draft, or disseminate.  In doing so, Plaintiffs continue to try to transform a "garden-variety [consumer] fraud claim" into a federal RICO action by "by couching the allegations in RICO statutory language."[1]

In its prior dismissal decision, the Court rejected Plaintiffs' RICO claims that were premised on predicate acts of money laundering and financial institutions fraud. Faced with a renewed motion to dismiss after Plaintiffs amended their complaint, Plaintiffs sought to amend their complaint *yet again* to pepper in citations to a handful of emails—most from several years before ChgBacks911 did any business with the Keto Entities.  Plaintiffs' third attempt to allege these claims against ChgBacks911 fares no better than the first or second.  Armed with voluminous discovery taken in this action as well as Plaintiffs pending litigation against the Keto Entities and other service providers[2]—not to mention a full-day deposition of one of ChgBacks911's

---

[1] *Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404 (11th Cir. 1989).

[2] Plaintiffs sued the Keto Entities and non-party The Fulfillment Lab ("TFL") in a separate lawsuit, *Sihler et al. v. The Fulfillment Lab, Inc. et al.*, No. 3:20-cv-01528 (S.D. Cal.) (the "California Litigation").  The operative Second Amended Complaint in the California Litigation (ECF No. 120, filed March 7, 2022) alleged that the Keto Entities and TFL were engaged in a Keto Racket dating back prior to February 20, 2018.  *Id.* ¶ 255.  Plaintiffs alleged that the Keto Entities created the Keto Products in conjunction with TFL and developed the fraudulent websites, and that TFL "personally advised the [Keto Entities] on how to run the scam and on their marketing," and "shipped the products and provided other services in

former employees, Plaintiffs nonetheless fail to add any meat on the bones in their Third Amended Complaint ("TAC").  Indeed, while the TAC has increased in length, in substance it simply regurgitates the same flawed theories of money laundering and financial institutions fraud that the Court already shot down.

Specifically, Plaintiffs' money laundering claim—premised on the ludicrous notion that ChgBacks911 should be liable for reselling alert services offered by Visa and Mastercard—fails because the TAC still fails to allege the crucial elements that ChgBacks911 both *knew* that the money it was causing to be refunded to consumers was the result of specified criminal conduct, and caused the issuance of these refunds with the ***intent to further the fraud***.  And Plaintiffs' financial institutions fraud claim fails because the TAC—like the FAC and the SAC—still does not satisfy RICO's proximate cause requirement by plausibly alleging that Plaintiffs, as opposed to banks, were the direct victims of any alleged misrepresentations.  Given that this is Plaintiffs' third bite at the apple—and given that Plaintiffs have already had the benefit of a wealth of discovery to try to investigate and formulate their claims—these claims should be dismissed with prejudice.

Finally, in light of the Court's prior order denying Defendants' motion to dismiss as to the other alleged predicate acts, Defendants will not revisit those elements of Plaintiffs' claims again here, but will do so following the completion of discovery

---

support of the scheme. . . " *Id.*  Notably, ChgBacks911 was not mentioned in that complaint. Following the filing of the California Litigation, certain Keto Entities filed for bankruptcy and thereafter defaulted.  California Litigation, ECF Nos. 92, 127.

on summary judgment.[3]  Suffice it to say, Defendants maintain that Plaintiffs cannot meet their burden of demonstrating the existence of a RICO enterprise, proximate causation, the predicate acts of wire fraud and mail fraud, or a RICO conspiracy.

## FACTUAL BACKGROUND

On October 14, 2019 and December 11, 2019, respectively, Plaintiffs purchased supplements branded "Ultra Fast Keto Boost" and "Instant Keto" (collectively, the "Keto Products") from non-parties Beyond Global Inc., Brightree, and BMOR Global LLC (collectively, the "Keto Entities").  TAC ¶¶ 23, 25.  Plaintiffs allege they were deceived into purchasing these products by false statements that the Keto Products were endorsed by celebrities and were cheaper than the actual amount charged.  *Id.* ¶¶ 7, 23-26, 39-51.  Plaintiffs allege that the Keto Products were developed and sold through false webpages created by the Keto Entities as well as non-parties David Flynn and Rickie Joe James.  Plaintiffs allege that the Keto Entities engaged in this deceptive conduct (dubbed the "Keto Racket" by Plaintiffs) as early as February 2018.  Importantly, Plaintiffs do not, because they cannot, allege that ChgBacks911 sold or shipped any Keto Products, developed the deceptive marketing of the Keto Products, advised the Keto Entities regarding those advertisements, or disseminated any of the allegedly misleading materials.  Instead, Plaintiffs claim that ChgBacks911 was "an integral member of the Keto Racket" because it provided certain software-as-a-service

---

[3] For purposes of preserving the issue for appeal, Defendants continue to maintain that the TAC fails to state a claim as to all of Plaintiffs' alleged claims and believe that the TAC should be dismissed in full.  *See* Dkt. 36.

(SaaS) back-end chargeback services to Brightree between August 2019 and July 2020. *Id.* ¶¶ 11-12, 28, 166-167, 169-174.[4]

As it relates to acts of money laundering, the TAC continues to press forward with Plaintiffs' novel theory that the Keto Entities' issuance of refunds to customers who raised questions about purchases constitutes federal money laundering under the RICO statute.[5]  Specifically, the TAC cites a second instance (in addition to the one instance cited in the FAC) in which an unknown customer made a purchase on the Keto Entities' website and was subsequently refunded all or a portion of his or her purchase price.  TAC ¶¶ 215-219.  The TAC alleges no facts about the reason why the customers purportedly sought a refund, *i.e.*, whether it had anything to do with the alleged pricing misrepresentations or whether it was for some unrelated reason like a shipping issue or dissatisfaction with the product.  *Id.*  Instead, the TAC relies on the conclusory allegation that because "the Keto Racket was using highly misleading representations about the pricing of the Keto Products to deceive consumers" *in general*, that *any* refund to *any* Keto Entities customer must have used, by definition, proceeds of fraud.  *Id.* ¶ 221.

---

[4] Chargebacks "are the primary tool banks used to resolve credit card payment disputes."  TAC ¶ 9 n.4.  Consumers challenging a credit card charge can do so with their issuing bank, and the bank will then initiate a chargeback to reverse the payment.  *Id.*

[5] For context, these refunds are part of an alert service which is provided by subsidiaries of Visa and Mastercard, of which ChgBacks911 is a reseller.  These alert services are popular products that many merchants utilize as a means of avoiding disputes turning into chargebacks.

As it relates to the alleged acts of bank fraud, the TAC alleges that, in September 2019, ChgBacks911 introduced the Keto Entities to an individual named Johnny De Luca, also a non-party to this litigation.  TAC ¶ 13.  According to Plaintiffs, the Keto Entities worked with De Luca "to fabricate purchases of tens of thousands of [$0.99] e-books" in order to lower the MIDs' chargebacks to "below approximately one percent."  *Id.*  Notably, the TAC does not allege that as a result of this alleged "micro-transaction scheme," the Keto Entities' chargeback rate was actually reduced to below one percent, or even reduced at all.  The TAC also alleges that ChgBacks911 was "in on" the Keto Entities' use of false websites to deceive banks in the chargeback dispute process (called "representments").  *Id.* ¶ 132-134, 222.[6]

## LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs must plead sufficient facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  A "formulaic recitation of the elements of a cause of action will not do."  *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 550 U.S. at 555).

RICO claims are often dismissed at the pleading stage because the statute is not intended to remedy "garden variety fraud claims."  *DeBoskey v. SunTrust Mortg., Inc.*, 2017 WL 4083557, at *7 (M.D. Fla. Sep. 14, 2017).  "[C]ourts have an obligation to

---

[6] The TAC ignores how the representment process itself includes many checkpoints, including the review of such documentation by the consumers themselves.

scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO and should strive to flush out frivolous RICO allegations . . . " *Id.* (internal quotations omitted).

To get past the pleadings, Plaintiffs must sufficiently allege specific facts demonstrating that ChgBacks911 engaged in "a pattern of racketeering." *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1265 (S.D. Fla. 2021).   A pattern of racketeering requires that (1) a particular defendant committed two or more predicate acts of racketeering within a ten-year span, (2) the predicate acts were related to one another, and (3) the predicate acts demonstrated criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms*, 372 F.3d 1250, 1264 (11th Cir. 2004).   In alleging acts of racketeering, a plaintiff must "articulate with specificity [a] [d]efendant's conduct that comprises these acts." *Delfrate v. Letts*, 1996 WL 420880, at *5 (M.D. Fla. Mar. 25, 1996).

## ARGUMENT

### I.   The TAC Fails to Plead the Predicate Acts of Money Laundering or Financial Institutions Fraud.

In its Order granting in part and denying in part Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 61; the "FAC MTD Order"), the Court explained why Plaintiffs failed to state a claim based on the predicate acts of money laundering and financial institutions fraud.  Though Plaintiffs attempt to pepper in new allegations in the TAC, none of these allegations can cure the fundamental defects previously identified by the Court.

**A.      The TAC Fails to State a RICO Claim based on Money Laundering.**

In the TAC, Plaintiffs attempt to cure their fatally deficient allegations that ChgBacks911 committed money laundering under 18 U.S.C. § 1956 by assisting the Keto Entities in issuing refunds to Keto Entities' customers as part of its routine business.  TAC ¶¶ 211-235.  But as explained below, nothing in the TAC alters the Court's holding that Plaintiffs fail to allege that ChgBacks911 "[knew] the money represented the proceeds of [] specified unlawful activity . . . "  FAC MTD Order; *U.S. v. Hill*, 643 F.3d 807, 854 (11th Cir. 2011).  Likewise, the TAC still fails to allege that Defendants "intended to promote the fraud by issuing the refund."  FAC MTD Order.[7]

       1.      The TAC Does Not Plausibly Allege that Defendants Knew The Money Being Refunded Was the Proceeds of Specified Unlawful Activity.

To plead a money laundering predicate act, a RICO plaintiff may not rely on "routine . . . transactions," but must instead allege a factual basis for the conclusion that the defendant "***knew*** that the money involved in these transactions derived from unlawful activity."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949-50 (11th Cir. 1997) (emphasis added).  In trying to allege this element,

---

[7] The TAC—like the FAC and SAC—appears to rely on the unstated assumption that refunds would *per se* evidence some nefarious conduct by the Keto Entities.  But as Plaintiffs' own allegations show, "the purpose of the refund process [was] to prevent incoming disputes" of any kind.  TAC ¶ 232; *see also id*. ¶ 231 (refunds could be issued to attempt to "avoid" chargebacks).  These potential disputes could arise from any number of non-fraudulent sources, including customers forgetting they ordered something, regretting a purchase, or even trying to take advantage of the system by getting a product for free.

Plaintiffs simply repackage the same allegations that were unsuccessfully asserted in the FAC.

First, Plaintiffs heavily rely upon a single deposition they took of Nicholas Carroll, a former client relations manager of ChgBacks911 who served as a point of contact for clients like Brightree, but who was not involved in ChgBacks911's issuance of refunds. Plaintiffs allege that because Mr. Carroll testified that he could see how a person *might misinterpret* the way that the Keto Entities advertised their prices (*i.e.*, by listing the average price of all bottles received, as opposed to the average price of all bottles paid for), that this demonstrates that ChgBacks911 knew that the Keto Entities' funds that were used to refund customers were the "proceeds" of an unlawful racketeering activity, as opposed to the general funds of the Keto Entities. TAC ¶ 223. But this "new" allegation is not actually new. Notably, the FAC contained largely the same allegation—that Mr. Carroll could understand how some consumers may have been confused about the Keto Entities' website. *See* FAC ¶ 129. However, as the Court implicitly recognized by dismissing the money laundering claims, an awareness of the *possibility* of customer confusion does not equate to a specific awareness that refunds were being processed through money obtained by predicate acts of unlawful activities. *Gov't Emps. Ins. Co. v. Glassco Inc.*, 2021 WL 4391717, at *10 (M.D. Fla. Sept. 24, 2021) ("[A]ctual knowledge of predicate acts, not merely reckless disregard, is required to support RICO claims."). For that same reason, the TAC's citation to a single email from August 2019 in which a Keto Entities' employee noted that he was seeing some chargebacks fall into the category of customer pricing confusion (TAC ¶

9

278) does not demonstrate that **ChgBacks911** had specific knowledge that any particular refund was derived from fraudulent conduct.

<u>Second</u>, the TAC alleges that ChgBacks911's intent can be inferred from the circumstances of an "unknown customer" who, in August 2019, purchased five unnamed Keto Products for $198.70, and then was refunded $198.70 (apparently keeping the Keto Products free of charge). TAC ¶ 215. Plaintiffs assert that this $198.70 was the "proceeds of specified unlawful activity" because it allegedly "had been taken from the consumer through wire fraud insofar as the customer provided his or her payment card information to the Keto Associates while acting in reliance on fraudulent misrepresentations on the Keto Products checkout page." *Id.* ¶ 216. But importantly, missing from the TAC are any well-pled allegations that the customer actually relied upon any misrepresentations, that the customer actually disputed the charge, or that the customer did so on the basis of fraudulent misrepresentations (as opposed to shipping problems, dissatisfaction with the product, a change of heart, a desire to game the system, or myriad other possibilities).[8] And equally important, the TAC lacks allegations that ChgBacks911 actually **knew** that this specific customer's purchase had been fraudulently induced; thus, the TAC fails to allege that ChgBacks911 knew the specific dollars flowing to the customer were the "proceeds of

---

[8] Indeed, earlier in the TAC, Plaintiffs allege only that "[i]n or around August 2019," the unnamed consumer purchased Keto Products and that, "[o]n or around August 11, 2019," ChgBacks911 "refunded this consumer $198.70." TAC ¶ 215.

some form of unlawful activity," 18 U.S.C. § 1956, as opposed to the Keto Entities' general funds.

Moreover, while the allegation about this August 2019 purchase was not in the FAC, Plaintiffs made a nearly identical allegation regarding a refund allegedly issued in "late October or early November 2019."  FAC ¶¶ 214-216.  The FAC similarly alleged (without factual support) that ChgBacks911 knew that the customer had disputed the purchase.  *Id*. ¶ 216.  As that allegation regarding the October/November refund was rejected by the Court as being insufficient to show the necessary inference of ChgBacks911's knowledge, simply adding another similar allegation during an earlier time frame cannot salvage Plaintiffs' money laundering claim.

<u>Finally</u>, Plaintiffs attempt a "kitchen-sink" approach, throwing in various unrelated allegations as to other alleged predicate acts and arguing that—somehow— these allegations demonstrate ChgBacks911's knowledge that the ***specific refunds they allegedly facilitated*** were the proceeds of specified misconduct.  This "kitchen sink" approach fails, given that each of these allegations were already prominently raised in the FAC.  See, for example, the allegations that ChgBacks911 knew that the Keto Entities "had a chargeback rate of between 3 and 4 percent" (TAC ¶ 225; FAC ¶ 67); the allegations that ChgBacks911 referred the Keto Entities to Johnny De Luca to engage in a microtransactions scheme (TAC ¶ 228; discussed at length in the FAC); and the allegation that ChgBacks911 knew that the Keto Entities' primary MasterCard chargeback reason code was "Unauthorized Transaction" (TAC ¶ 224; FAC ¶ 130).  These allegations were all featured prominently in the FAC.  Yet, the Court correctly

determined that Plaintiffs failed to plausibly allege ChgBacks911's knowledge that refunds represented the proceeds of unlawful activity.  Plaintiffs' repackaging of these allegations in the TAC does not warrant a different result.

In sum, Plaintiffs simply cannot show ChgBacks911's knowledge that refunds were the proceeds of *specified* unlawful activity by alleging that the Keto Entities were engaged in *general* unlawful activity and that the Keto Entities thereafter spent money issuing refunds.  Under this erroneous theory, any entity allegedly engaged in fraud would be guilty of money laundering each time it makes any expenditure from its general funds.  ChgBacks911 is aware of no case law authorizing such a broad reading of the money laundering statute.  To the contrary, courts must avoid "lay[ing] the foundation for an unprecedented expansion of the money laundering statute" not supported by the law.  *U.S. v. Maali*, 358 F. Supp. 2d 1154, 1159 (M.D. Fla. 2005), *aff'd sub nom. U.S. v. Khanani*, 502 F.3d 1281 (11th Cir. 2007).

> 2.   The TAC Does Not Plausibly Allege that Defendants Issued Refunds With the Intent to Promote a Specified Unlawful Activity.

Plaintiffs also once again fail to meet their burden by sufficiently alleging that the refund payments were made "with the intent to promote the carrying on of specified unlawful activity."  18 U.S.C. § 1956(a)(1)(A)(i); *Birmingham v. Doe*, 2022 WL 18134962, at *15 (S.D. Fla. Dec. 6, 2022); Dkt No. 61.  As they did with respect to the knowledge requirement, Plaintiffs ostensibly add to their allegations with paragraphs that simply restate—with more verbosity—the same insufficient allegations from the FAC.

Specifically, in support of the conclusion that ChgBacks911 "made the August 2019 and October 2019 refunds to promote the carrying on of the Keto Racket's unlawful activity," the TAC alleges that a ChgBacks911 employee emailed the Keto Entities suggesting that refunds could help prevent transactions from becoming chargebacks and that this, in turn, could help lower chargeback percentages associated with the Keto Entities' MIDs.  TAC ¶¶ 230-231.  Based on this allegation, Plaintiffs make the unsupported and illogical leap that ChgBacks911 "was explicitly aware of the link between making refunds and promoting the carrying on of the Keto Racket's activity (which it knew to be unlawful)."  *Id*. ¶ 231.  Notably, this allegation merely shows that ChgBacks911 had a general business purpose of preventing chargebacks (and ensuring its customers were aware of the publicly available best practices and recommendations outlined by the credit card networks) and does not demonstrate an intent to promote fraud by ChgBacks911.  Moreover, the exact same allegation is found in the FAC, which the Court found to be insufficient.  *See* FAC ¶¶ 217-218 (alleging that ChgBacks911 issued customer refunds in order to "deter[] the consumer from initiating a chargeback or taking other action in response to the overcharge" so as to "protect[] the health of the Keto Racket's MIDs").

Similarly, in an attempt to show ChgBacks911's intent to carry out the fraud, the TAC quotes deposition testimony from Mr. Carroll in which he stated that ChgBacks911 would sometimes issue partial, rather than full, refunds on behalf of its merchant clients.  TAC ¶ 234.  It is not at all clear how such an allegation shows an intent to facilitate fraud.  Moreover, as Plaintiffs themselves acknowledge, the FAC

contained the same allegation—deemed insufficient by the Court—that ChgBacks911's "refund system" would "consider a large number of factors to determine the risk level of the customer and find the minimum [refund] amount necessary to avoid a chargeback." *See* TAC ¶ 234; *see also* FAC ¶ 217 (containing identical allegation).

**B.     The TAC Fails to State a Claim Based on Financial Institutions Fraud.**

Plaintiffs also allege that ChgBacks911 committed financial institutions fraud under 18 U.S.C. § 1344 by (1) recommending De Luca to Brightree to facilitate an alleged "e-book scam" (TAC ¶¶ 244-251) and (2) making representations[9] that contained misrepresentations (*id.* ¶¶ 272-290). Plaintiffs' RICO claims should be dismissed based on these allegations both on standing grounds and on the merits.

1.     <u>Plaintiffs Do Not Have Standing to Assert Financial Institutions Fraud Claims.</u>

As the Court previously held, "Plaintiffs lack statutory standing to assert a RICO claim based on financial institution fraud because the alleged bank fraud here was not a proximate cause of Plaintiffs' injuries." FAC MTD Order (citing *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1234 (S.D. Fla. 2008) (bank fraud "directly harm[s]" financial institutions, not any plaintiff who is subsequently injured by defendant's separate conduct), and *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1099 (C.D. Cal. 2011) (concluding that plaintiffs lacked statutory standing to assert RICO claims based on

---

[9] Representations are the documentation that a merchant submits to a credit card processor in order to dispute a chargeback initiated by a customer.

defendants' alleged bank fraud where "a direct chain of causation between the allegedly illegal conduct (deceiving banks) and plaintiffs' alleged injury (the deprivation of their benefits)" was not pled)); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (1991).

While the TAC adds numerous allegations in an attempt to save Plaintiffs' financial institution fraud predicate act, none show any injury to Plaintiffs as a proximate cause of ChgBacks911's alleged bank fraud.  *See* TAC ¶¶ 251-271.  With respect to Plaintiffs' claim based on ChgBacks911's alleged recommendation of Johnny De Luca to Brightree to conduct an e-book scam, Plaintiffs contend that they were directly injured because ChgBacks911's alleged bank fraud "ensure[d] the Keto Racket's continued access to the financial services and infrastructure that undergirded and caused Plaintiffs' injuries"—i.e., MIDs.  *Id.* at ¶¶ 253, 255, 257.  And, with respect to the ChgBacks911's submission of representations on Brightree's behalf, Plaintiffs further contend that they were directly injured because ChgBacks911 purportedly "insured [sic] that the Keto Racket would remain profitable, active, and undiscovered so it could continue defrauding consumers like Plaintiffs."  *Id.* at ¶ 288.

These new allegations merely restate the same legal theory that the Court already rejected.  Indeed, in its prior Order, the Court noted that "merely creat[ing] access to the instrumentality that [the Keto Entities] later employed to injure Plaintiffs" is insufficient to show that the alleged financial institution fraud is the proximate cause of any alleged injury and, therefore, insufficient to confer standing. FAC MTD Order (quoting *Ward*, 617 F. Supp. 2d at 1234); *see also Heinrich v. Waiting*

*Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (no proximate cause where defendant allegedly "put [plaintiffs] in a position to be defrauded by other, unrelated representations").   Accordingly, Plaintiffs continue to lack statutory standing to assert a RICO claim based on the alleged financial institution fraud. *Hill*, 841 F. Supp. 2d at 1099.

In addition to lacking any legal support, Plaintiffs' theory that the alleged micro-transaction scheme "ensure[d] the Keto Racket's continued access to the financial services" that caused injury to Plaintiffs is also logically flawed.   According to Plaintiffs, the Keto Entities' MIDs were "in grave danger" because their chargeback rates were over 3%, and that those MIDs "would have" been shut down if their chargeback rates exceeded 1% or 1.5%.  TAC ¶¶ 259-267.  But nowhere in the TAC is it alleged that the Keto Entities' MIDs ever got below that 1% or 1.5% threshold. Indeed, the TAC is conspicuously silent about whether or how the alleged microtransaction scheme impacted the Keto Entities' MIDs' chargeback percentage. Without this link, Plaintiffs cannot even get to first base in trying to demonstrate that the purported financial institutions fraud proximately caused their own injury.

Furthermore, the allegations in the TAC concerning the De Luca referral, which allegedly enabled the Keto Entities to have "continued access" to financial services that "undergirded" Plaintiffs' injuries, TAC ¶¶ 250-253, were already present in the FAC that the Court deemed insufficient to establish statutory standing.  *See* FAC ¶ 162; *see also id* ¶ 93 ("Plaintiffs Sihler and Bavencoff were injured by the e-book ploy insofar as it enabled the Keto Racket to evade detection by the chargeback-monitoring systems

of credit card companies and acquiring banks"). While Plaintiffs add "allegations" tracking the Court's Order in an attempt to cure their pleading deficiencies (*e.g.*, TAC ¶ 252), the TAC contains no additional well-pled facts supporting statutory standing with respect to the alleged e-book scam. Likewise, Plaintiffs' recitation of the mechanics of how credit card payments are processed (*id.* ¶¶ 254-257) and a citation to a ChgBacks911 manual discussing the general risk of high chargeback rates (*id.* ¶ 262) is clearly meant to add the appearance of detail, but it does not change the fact that Plaintiffs' theory is still premised on the legally deficient notion that ChgBacks911's alleged financial institutions fraud "merely created access to the instrumentality that [the Keto Entities] later employed to injure Plaintiffs." FAC MTD Order (quoting *Ward*, 617 F. Supp. at 1234).[10]

The same is true for Plaintiffs' allegations regarding representations. TAC ¶¶ 272-290. Many of these allegations are simply carbon copies of the allegations that the Court previously held insufficient to establish statutory standing. *Compare* FAC ¶¶ 232-242. And, critically, the "new" allegations still fail to plausibly allege that consumers were the ***direct*** victims of ChgBacks911's alleged misrepresentations in the representations it submitted to banks. *Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*,

---

[10] Plaintiffs' citation in the TAC to *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1289 (11th Cir. 2006) does not help them. TAC ¶ 255. That case merely confirmed that in RICO cases, courts must "*scrutinize* proximate causation at the pleading stage and *carefully evaluate*" whether "the alleged violation led *directly* to the plaintiff's injuries." *Williams*, 465 F.3d at 1287 (emphasis added). Moreover, *Williams* did not concern a financial institutions fraud claim; rather, it was premised on the theory that defendant, by hiring undocumented immigrants, *directly* caused the lowering of employee wages. *Id.* at 1280.

2011 WL 13220625, at *5 (S.D. Fla. Mar. 3, 2011) (RICO plaintiff may not premise a financial institutions fraud claim based on "misrepresentations directed toward others"), *report and recommendation adopted*, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011).

Specifically, the TAC alleges that ChgBacks911's alleged misrepresentations "hid evidence of the Keto Racket's fraud from its acquiring banks and prevented them from learning of the legitimacy of consumers' complaints about the Racket's fraud and pricing misrepresentations." TAC ¶ 286. But again, this frames the alleged injury to consumers as ***indirectly*** flowing from an alleged fraud on the bank, which Plaintiffs speculate may have prevented the bank from investigating the Keto Entities and potentially shutting down their MIDs. This is no different from the allegations in *Hill v. Opus Corp.*, where the court rejected the theory that defendant's financial institution fraud caused defendant to "appear to be complying with its loan covenants" thus "shield[ing] itself from a thorough investigation of its finances." 841 F. Supp. 2d at 1098–99. As in *Hill*, to accept Plaintiffs' premise that, absent ChgBacks911's alleged financial institutions fraud, the Keto Entities would not have been able to defraud Plaintiffs would require the Court to "pile inference on inference," the antithesis of a *direct* injury. *Id.*

//

2.     The TAC Does Not Plausibly Allege the Elements of Financial
       Institutions Fraud.

Even putting aside the standing issues (which completely foreclose Plaintiffs'

claims), Plaintiffs' RICO claims based on the predicate act of financial institution

fraud continue to fail on the merits.

First, with respect to the allegations concerning ChgBacks911's alleged referral

of De Luca and the alleged e-book scheme, the TAC fails to adequately allege that

ChgBacks911 made any statements regarding De Luca "with the intent that the

communication [would] help further the [allegedly fraudulent] scheme." *Seaman v.

Arvida Realty Sales, Inc.*, 910 F. Supp. 581, 586 (M.D. Fla. 1995).  The TAC's allegation

that a ChgBacks911 employee recommended De Luca "so that he could conduct

thousands of sham micro-transactions" (TAC ¶ 306) lacks well-pled facts to support

Plaintiffs' spurious conclusion that ChgBacks911, through the recommendation of De

Luca, intended De Luca's alleged e-book scheme to further the Keto Entities' fraud.

*Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1362 (M.D. Fla. 2002), *aff'd*,

353 F.3d 912 (11th Cir. 2003); *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1350 (M.D.

Fla. 2019) (Covington, J.), *aff'd sub nom. Omnipol, A.S. v. Multinational Def. Servs., LLC*,

32 F.4th 1298 (11th Cir. 2022).  The TAC's allegations of a relationship between

ChgBacks911 and De Luca from years prior—relating to a VAP program that was

retired several months before ChgBacks911 started doing business with the Keto

Entities—is entirely irrelevant and does not establish that ChgBacks911 acted with the

intent to further the Keto Entities' purported scheme.  *See* TAC ¶¶ 311-336.

Second, Plaintiffs fail to plausibly allege a violation of Section 1344(2) based on ChgBacks911's submission of representations with references to a purported "false front" website (TAC ¶¶ 272-290). Indeed, Plaintiffs fail to allege that (a) ChgBacks911 knew any statements in its representations were false, (b) ChgBacks911 intended to obtain a financial institution's money or property by making a false statement in its representations, or that (c) ChgBacks911 representations were, in fact, "the mechanism naturally inducing a bank . . . to part with money in its control." *Loughrin v. United States*, 573 U.S. 351, 355-56, 363 (2014).

To the contrary, Plaintiffs concede that ChgBacks911 did not know that any statements in the representations were false, because ChgBacks911 did not and could not verify whether the websites provided in the representations were the same websites that the customer used to make a purchase. TAC ¶ 282; *U.S. v. De La Mata*, 266 F.3d 1275, 1298 (11th Cir. 2001) (to prove bank fraud, plaintiff must show that defendant "acted knowingly"). When closely examined, the TAC's allegations about ChgBacks911's purported knowledge amount to nothing more than rank speculation based on Plaintiffs' "inform[ation] and belie[f]" contention that ChgBacks911 "deliberately omitted" the sales URLs from the representations in order to deceive banks into believing that the images from the "false front" website represented the same websites on which consumers made purchases. TAC ¶¶ 280-281. *See Bill Buck Chevrolet, Inc. v. GTE Fla., Inc.*, 54 F. Supp. 2d 1127, 1132–33 (M.D. Fla. 1999) (allegations of intent cannot be "merely conclusory and unsupported by any factual

allegations" (quoting *Republic of Panama*, 119 F.3d at 949)), *aff'd*, 216 F.3d 1092 (11th Cir. 2000).

## <u>CONCLUSION</u>

In sum, ChgBacks911 operates a legitimate business, helping both online and brick-and-mortar retailers deal with the recurring problem of chargebacks, a prevalent problem for *all* merchants who rely on banks for processing, the vast majority of which are not engaged in fraud. Perhaps frustrated that their claims against the alleged fraudsters who sold them Keto Products have stalled due to bankruptcy and default, Plaintiffs have dragged ChgBacks911 into this litigation, no doubt as a perceived deep pocket.

ChgBacks911 looks forward to vindicating itself and defending itself against *all* of Plaintiffs' claims on the merits. But in the meantime, Plaintiffs' RICO claims predicated on money laundering and bank fraud are legally deficient and cannot even get past the pleadings.

For all of the foregoing reasons, ChgBacks911 respectfully requests the Court to dismiss Plaintiffs' claims at issue in this Motion with prejudice.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that communication regarding this Motion was made with opposing counsel and that Plaintiffs do not consent to the relief sought herein.


Dated: May 3, 2024        */s/ Neal R. Marder*

Neal Ross Marder (*pro hac vice*)
Joshua A. Rubin (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Telephone:  310-229-1000
nmarder@akingump.com
rubinj@akingump.com

Corey Roush (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K St., NW
Washington, DC 20006
Telephone: 202-887-4115
croush@akingump.com

William J. Schifino Jr., Esq., Fl. Bar No. 564338
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson St., Ste. 1500
Tampa, Florida 33602
Telephone:  813-228-9080
wschfino@gunster.com

*Attorneys for Defendants Global E-Trading, LLC, Gary Cardone, and Monica Eaton*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 3, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Neal R. Marder*
Neal R. Marder, Esq.