# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, MONICA EATON,<br><br>Defendants. | Case No. 8:23-cv-01450-VMC-UAM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF BEN SCRANCHER** |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION OF BEN SCRANCHER

1

I. **INTRODUCTION**

Defendants Global E-Trading, LLC ("CB911"), Gary Cardone, and Monica Eaton (collectively, "Defendants"), through undersigned counsel, file their response in opposition to Plaintiffs' Motion to Compel Deposition of Ben Scrancher (Dkt. 106). Plaintiffs' attempt to depose a non-party foreign citizen by way of an emailed deposition notice, rather than through the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), should be rejected. Mr. Scrancher is a salesman at Online Venture Partners Limited, a foreign affiliate of CB911, who is responsible for selling the products of Online Venture Partners Limited and CB911 to customers. *See* Declaration of Monica Eaton ("Eaton Decl.") ¶ 4. He is not a managing agent of his U.K. employer, much less of CB911. *Id.* ¶ 7.

In arguing otherwise, Plaintiffs brandish a handful of emails, which they claim show that Mr. Scrancher exercised discretion in his job. But the emails, in fact, show the opposite. Although Mr. Scrancher may be a valuable employee of Online Venture Partners Limited, his work as a salesman was always performed at the direction and instruction of his supervisors. Eaton Decl. ¶¶ 6-7. That he was not micromanaged and was given the freedom to operate within the scope of his job responsibilities in no way constitutes discretion over corporate affairs. Likewise, his purported role as Mr. Cardone's "right hand man," Dkt. 106 at 5, militates against a finding of managing agent status; like a right hand, Mr. Scrancher acted as an instrumentality of Mr. Cardone, performing work solely at his direction.

2

Plaintiffs also state in their Motion that Mr. Scrancher, solely by virtue of the title given to him as "Vice President" for marketing purposes, "can be expected to testify at CB911's request." Dkt. 106 at 8. Not only is this statement unsupported by any facts, but Plaintiffs also know it to be false. Indeed, before Plaintiffs filed the Motion, Defendants informed Plaintiffs that they had asked Mr. Scrancher to appear for deposition but that Mr. Scrancher retained U.K. counsel and indicated that he was "unwilling" to voluntarily sit for a deposition because of concerns over the violation of his rights under the Hague Convention and U.K. law. *See* Declaration of Joshua A. Rubin ("Rubin Decl.") ¶ 2. CB911's inability to compel Mr. Scrancher to appear for a deposition makes it impossible for CB911 to comply with any order compelling it to produce Mr. Scrancher.

Notably, Plaintiffs are attempting to subject a foreign national to a deposition in this action without exhausting other means of discovery. Specifically, Plaintiffs are seeking to depose Mr. Scrancher despite not having deposed Gary Cardone or Monica Eaton—parties to this action who supervised Mr. Scrancher—or Anthony Pugliese, who had a more direct connection to the Keto Entities. Eaton Decl. ¶¶ 10, 13. Thus, at a minimum, the Court should deny the Motion to Compel without prejudice to allow these additional depositions to take place first.

For the foregoing reasons, Defendants respectfully request that Court deny Plaintiffs' Motion to Compel.

## II.   BACKGROUND AND STATEMENT OF FACTS

Mr. Scrancher lives in and is a citizen of the United Kingdom. Eaton Decl. ¶ 3. Other than a brief period of time where he resided in Florida between 2014 and 2016, he has always lived in the United Kingdom. *Id.* ¶ 11. Mr. Scrancher is employed by Online Venture Partners Limited, a company incorporated in the United Kingdom and headquartered in Rayleigh, U.K. *Id.* ¶ 4. Online Venture Partners Limited has been a foreign affiliate of CB911 since 2011. *Id.* It is not a party to this action.

Since July 2020, Mr. Scrancher has served as Senior Vice President of Business Development at Online Venture Partners Limited. *Id.* ¶ 5. In that role, Mr. Scrancher assists with the sales of Online Venture Partners Limited's and CB911's services. *Id.* Mr. Scrancher does not have any general authority to exercise discretion in corporate matters for Online Venture Partners Limited or CB911, nor does he have the ability to enter into contracts on behalf of Online Venture Partners Limited or CB911. *Id.* ¶ 7. Likewise, he has no authority to act on behalf of Online Venture Partners Limited or CB911 outside the limited scope of his salesman responsibilities. *Id.*

Mr. Scrancher reports to Shelley Palmer, Vice President of Merchant Sales Team, who in turn reports to additional layers of management. *Id.* ¶ 6. Those managers have authority over Mr. Scrancher regarding all matters pertaining to Online Venture Partners Limited and CB911. *Id.* No one at Online Venture Partners Limited or CB911 reports to Mr. Scrancher. *Id.* He has no supervisory or management authority over any employee of Online Venture Partners Limited or CB911. *Id.* While

Mr. Scrancher held the titles of "Vice President" and "Senior Vice President," those are marketing terms that do not indicate any management or executive authority. *Id.* ¶ 5.

As it relates to this litigation, Mr. Scrancher was not involved in the management of CB911's relationship with Brightree Holdings or the other Keto Entities. *Id.* ¶ 8. Former CB911 employee Anthony Pugliese procured Brightree as a client, and former CB911 employee Nicholas Carroll managed the account once Brightree was onboarded. *Id.* ¶ 10.

On March 7, 2024, Plaintiffs' counsel emailed a "notice of deposition" for Mr. Scrancher's deposition to be taken in St. Petersburg, Florida. *See* Dkt. 106 at 2. While Plaintiffs' counsel later indicated that they would be amenable to taking the deposition by Zoom, they have declined to effect formal service of Mr. Scrancher under the Hague Convention or laws of the United Kingdom, where he resides.[1]

### III.  ARGUMENT

Mr. Scrancher is an employee of a foreign affiliate who lives and works in the United Kingdom and is a citizen of that foreign country. Eaton Decl. ¶¶ 3-4. As described below, as a foreign citizen who is an employee but not an officer, director, or

---

[1] Plaintiffs' statement that during a meet and confer, CB911's counsel "suggested that a deposition would need to be in-person near Mr. Scrancher in the United Kingdom and not via Zoom" is not true. What Defendants' counsel stated on the call was that Plaintiffs' "offer" to conduct the deposition by Zoom was illusory, because the Federal Rules of Civil Procedure already require that depositions take place at the witness's location. Rubin Decl. ¶ 3. CB911's counsel never suggested that it was categorically opposed to a Zoom deposition (nor is it opposed to Zoom depositions) as an alternative to an in-person U.K. deposition, provided that service was properly effectuated. *Id.*

managing agent of a foreign affiliate of CB911, Mr. Scrancher should have been, but was not, served with a subpoena under the Hague Convention.

> A. <u>Plaintiffs Must Serve a Subpoena for Deposition on Mr. Scrancher Through the Hague Convention.</u>
>
>> 1. *A Non-Party Cannot Be Compelled to Testify Through a Deposition Notice Unless They Are an Officer, Director, or Managing Agent of a Party.*

The law of the circuit is clear that "[o]nly a party to the litigation may be compelled to give deposition testimony pursuant to a notice of deposition." *Karakis v. Foreva Jens Inc.*, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009); *see also Ctr. for Individual Rights v. Chevaldina*, 2018 WL 2432109, at *20 (S.D. Fla. May 30, 2018) (stating that corporate employees are generally treated as non-parties, and therefore, "before being compelled to testify," they "must be served with a subpoena"); *McMahon v. Presidential Airways, Inc.*, 2006 WL 5359797, at *1 (M.D. Fla. Jan. 18, 2006) (denying motion to compel deposition of subordinate employee who was not served with a subpoena).

Despite this well-settled law, Plaintiffs served the Notice of Deposition of non-party witness Ben Scrancher on undersigned counsel. Plaintiffs did not attempt to serve Mr. Scrancher with a subpoena or to comply with the Hague Convention's rules for serving discovery on foreign individuals. Plaintiffs contend that they can bypass these due process requirements and compel Mr. Scrancher—a non-party employee of a foreign affiliate of CB911 residing in the United Kingdom—to sit for a deposition under Rule 30(b)(1) because he is purportedly a "managing agent" of CB911. As explained below, Plaintiffs are wrong.

> 2. *Plaintiffs Have Failed to Meet Their Burden of Showing that Mr. Scrancher is a Managing Agent of CB911.*

Plaintiffs have the burden to demonstrate that Mr. Scrancher is managing agent of CB911. *Faro Techs., Inc. v. Romer, Inc.*, 2007 WL 496615, at *3 (M.D. Fla. Feb. 12, 2007) (recognizing noticing party's burden and denying motion to compel deposition of foreign employee by 30(b)(1) notice); *Ctr. for Individual Rights*, 2018 WL 2432109, at *20 (denying motion to compel where noticing party failed to "meet her burden of establishing [the deponent] is a party to the litigation that may be subject to a notice of deposition" and to "serve a subpoena to compel a deposition of a non-party").[2]

To determine whether an employee is a managing agent under Rule 30(b)(1), courts in this circuit examine:

> (1) whether the individual has general power to exercise discretion in corporate matters;
>
> (2) whether he or she can be expected to testify at the employer's request;
>
> (3) whether there are persons within the corporation with greater authority regarding the information sought;
>
> (4) the general responsibilities of the individual regarding the matters under litigation; and
>
> (5) whether the witness identifies with the interests of the corporation.

---

[2] Plaintiffs do not claim that Mr. Scrancher is a director or an officer of CB911. *See generally* Dkt. 106. And he is not. *See* Eaton Decl. ¶¶ 5-7.

*Brunson v. PHH Mortg. Corp.*, 342 F.R.D. 315, 320-21 (M.D. Fla. 2022) (citations omitted). Applying these factors, Mr. Scrancher is clearly not a managing agent of CB911.

        a.    Mr. Scrancher Does Not Exercise Any Discretion Over Corporate Matters.

Mr. Scrancher lacks the authority to exercise judgment and discretion in the corporate matters of CB911 or to enter into contracts on behalf of CB911. Eaton Decl. ¶ 7. Mr. Scrancher acts as a salesman for the company's (and Online Venture Partners Limited's) products and nothing more. *Id*. Indeed, no one at CB911 reports to Mr. Scrancher. *Id.* ¶ 6. Accordingly, the first factor militates against a finding that Mr. Scrancher is a managing agent of CB911.

Plaintiffs rely on a handful of emails which they claim support a finding that Mr. Scrancher enjoyed general power to exercise discretion in CB911's matters. Dkt. 106 at 7-8. Yet, when reduced to their essence, these emails paint a picture of a subordinate who reports to his superiors and performs tasks to which he is assigned. For example, Exhibit I to the Motion, a March 2017 email thread, shows Mr. Cardone delegating to Mr. Scrancher the ministerial task of running a report on the number of alerts for that month. Dkt. 106-2 at 38. Mr. Scrancher was clearly reporting to Mr. Cardone and acted only at Mr. Cardone's direction.

Plaintiffs also point to emails allegedly showing Mr. Scrancher's purported role in VAP (Value Added Promotions), Dkt. 106 at 7, but those emails actually demonstrate Mr. Scrancher consistently taking direction from his supervisors. None

suggest that he had any discretion over CB911's general corporate matters. For example, Exhibit K to the Motion is a March 2016 email in which Mr. Scrancher writes notes to himself, likely from a meeting with management on different employees' responsibilities. Dkt. 106-2 at 40. As another example, Exhibit L is an April 2017 email thread in which Mr. Scrancher reacts to Mr. Cardone's reflections about general corporate matters. *Id.* at 41. And Exhibit M is an April 2017 email thread in which Mr. Scrancher offers a potential solution for two of his supervisors, Mr. Cardone and Ms. Eaton, to consider and offers to "handle" it with their permission "unless there is anything further" they need. *Id.* at 42. Finally, Exhibit N is a June 2017 email thread in which Mr. Cardone delegates a business opportunity to Mr. Scrancher and then assuages Mr. Scrancher's concern that Ms. Eaton had previously been opposed to the opportunity. *Id.* at 43. All of these emails show that Mr. Scrancher served at Mr. Cardone's and Ms. Eaton's direction.[3]

Even more fundamentally, these emails all relate to a service that CB911 stopped offering in February 2019 and, thus, do not reflect upon Mr. Scrancher's duties and responsibilities *today* (or even at the time Brightree was a client of CB911). *See* Eaton Decl. ¶ 9. Notably, the Third Amended Complaint ("TAC") (Dkt. 102) does not, and it could not, allege that CB911 offered VAP to Brightree, as that service did not exist when Brightree hired CB911 for its services. Indeed, the best Plaintiffs can do is point to a more than six years old "Client Relations Manual" from March

---

[3] Plaintiffs, of course, could question Mr. Cardone and Ms. Eaton about these emails when they depose them.

9

2018 for a definition of VAP, but, again, VAP was not in existence during CB911's relationship with Brightree. *See* Dkt. 106 at 6. Plaintiffs' fixation on Mr. Scrancher's alleged past involvement in a service that CB911 no longer provides (and never provided to Brightree) gets them nowhere because "[m]ost courts consider the individual's position at the time of the deposition for purposes of the managing agent inquiry." *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, 2017 WL 11684607, at *4 (M.D. Tenn. Feb. 7, 2017).

### b. Mr. Scrancher Cannot Be Expected to Testify at CB911's Request.

Plaintiffs do not attempt to make an evidentiary showing as to the second factor. Instead, Plaintiffs conclusorily assert that, based on his job title (at Online Venture Partners Limited), Mr. Scrancher "can be expected to testify at [CB911]'s request." Dkt. 106 at 8. But "[w]hether a deponent is a managing agent does not depend on his or her job title[.]" *Procaps S.A. v. Patheon, Inc.*, 2014 WL 352226, at *3 (S.D. Fla. Jan. 30, 2014). Rather, Mr. Scrancher, a U.K. citizen who works for a U.K.-incorporated affiliate of CB911, is represented by an attorney in the United Kingdom. And through his counsel, Mr. Scrancher maintains that appearing for a deposition would violate the Hague Convention and his rights under U.K. law governing his employment by a foreign affiliate of CB911. *See* Eaton Decl. ¶ 11. Given that Mr. Scrancher has *affirmatively refused* to sit for a deposition, the second factor strongly weighs against a

10

finding that he is a managing agent.[4]

      c. <u>Other Individuals Have Greater Authority Than Mr. Scrancher Over the Information Sought.</u>

Other individuals at (or formerly at) CB911, including the Company's founder, Gary Cardone, and current CEO Monica Eaton, have greater authority than Mr. Scrancher over the information sought. Eaton Decl. ¶ 2. Indeed, Mr. Scrancher does not have decision-making authority regarding the matters at issue in this case, but instead operates under the direction of his supervisors and relies on the feedback and information given to him by management. *Id.* ¶ 7. Thus, Plaintiffs cannot demonstrate the third factor to support a finding that Mr. Scrancher is a managing agent of CB911. Despite this fact, Plaintiffs seek to force Mr. Scrancher to sit for a deposition following the recent death of his wife and to cause undue burden on CB911 instead of attempting to first seek this information through a deposition of Mr. Cardone or Ms. Eaton. *Id.* ¶ 13.

Notably, the three emails Plaintiffs submit to support their assertion that there are no individuals at CB911 with greater authority on the information sought than Mr. Scrancher actually highlight the layers of management above him. Tellingly, Exhibit O to the Motion is a March 2017 email thread involving VAP inventory at the end of February 2017 for two clients. Dkt. 106-2 at 44. In the email, Mr. Cardone instructs

---

[4] Plaintiffs' reliance on *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern District of Iowa*, 482 U.S. 522 (1987) (Dkt. 106 at 12-13), to excuse compliance with the Hague Convention is misplaced. *See In re: Benicar (Olmesartan) Prods. Liab. Litig.*, 2016 WL 5817262, at *5 n.15 (D.N.J. Oct. 4, 2016). Notably, that decision "did not address a request to depose a foreign national employed by a party's foreign affiliate." *Id.*

Mr. Scrancher to "handle it." *Id.* And in the other two emails, Mr. Scrancher is merely acting within his role on the sales team of the foreign affiliate of CB911. *See* Exhibit P (a September 2016 email thread in which Mr. Scrancher is responding to a request from the merchant client support team to call a client about VAP) (Dkt. 106-2 at 45); Exhibit Q (a November 2016 email thread in which Mr. Scrancher is responding to a client's request to send numbers in connection with VAP) (Dkt. 106-2 at 46).

          d.      Mr. Scrancher Does Not Have Responsibilities Relating to the Issues Underlying the Case.

Turning to the fourth factor, Mr. Scrancher does not have responsibilities relating to the issues underlying this case. To try to support this factor, Plaintiffs cite a single email thread from May 2016 in which Brandon Figueroa, a CB911 employee, asks Mr. Scrancher a question about VAP. *See* Dkt. 106 at 10; Dkt. 106-2 at 47. While Mr. Figueroa "refer[s]" the question to Mr. Scrancher, that is a function of Mr. Figueroa being on the client-relations side of the business and Mr. Scrancher being on the sales side of the business. *See id.*; *see also* Eaton Decl. ¶ 6. That Mr. Scrancher works in sales does not render him a managing agent. *Cargill Inc. v. Leak*, 2023 WL 8082346, at *3 (D. Utah Nov. 21, 2023) (consultant was not managing agent despite having some involvement in underlying facts). And that Mr. Scrancher allegedly sent a Skype message in which he "vouched" for Johnny De Luca does not transform him into a managing agent who can be compelled to testify through a deposition notice. *See* Dkt. 102 ¶ 79; *see also* Dkt. 106-2 at 12; *See, e.g., Procaps S.A.*, 2014 WL 352226, at *5 (denying motion to compel as to foreign witnesses who had "some information

12

regarding some aspects of the litigation" but "relied on the information and feedback given . . . by supervisors and . . . management" and could not be said to be "managing agents" subject to Rule 30 notice). Thus, Plaintiffs do not satisfy this factor to support a finding that Mr. Scrancher is a managing agent of CB911.

Plaintiffs extensively cite *Brunson v. PHH Mortgage Corporation*, 342 F.R.D. 315, 320-21 (M.D. Fla. 2022) (Dkt. 106-2 at 1, 4-5), but *Brunson* is easily distinguishable. In *Brunson*, the court found a low-level employee to be a managing agent where the employee had direct involvement in and unique knowledge of the underlying events and the company's Rule 30(b)(6) designee lacked knowledge of the underlying events. *Id.* at *3. Here, Plaintiffs have not shown that Mr. Scrancher is uniquely knowledgeable of the facts underlying the litigation. To the contrary, Plaintiffs rely upon several emails, all of which show that Mr. Cardone and Ms. Eaton were centrally involved and could answer the same questions, which Ms. Eaton has confirmed. Eaton Decl. ¶ 12. Moreover, the TAC acknowledges that Mr. Scrancher worked with a former employee of CB911, Anthony Pugliese, on the Brightree engagement. Dkt. 102 ¶¶ 79-83. Indeed, Mr. Pugliese is the individual who brought in Brightree as a client of CB911. Eaton Decl. ¶ 9. Plaintiffs have subpoenaed Mr. Pugliese to appear for deposition and, unlike Mr. Scrancher, he resides in the United States. *Id.* Simply stated, unlike the employee in *Brunson*, Mr. Scrancher is not a managing agent. *See, e.g.*, *Cargill*, 2023 WL 8082346, at *3 ("[T]he reach of *Brunson* is limited. Unlike the employee in *Brunson*, Mr. Grisenti did not have the sole and central responsibility in the litigated matters; other employees were involved. And unlike in *Brunson*, no

13

corporate representative has testified and denied knowledge of the underlying events.").

      e. <u>Plaintiffs Fail to Establish that Mr. Scrancher's Interests Align with CB911's.</u>

To attempt to show an alignment of interests, Plaintiffs rely (Dkt. 106 at 10) on a single email from February 2017 in which Mr. Scrancher proposes "some ideas on what" they "could talk to clients about" to Dado Kalem, a quality management employee at CB911. *See* Dkt. 106-2 at 48. That Mr. Scrancher relays the point that potential referrals need to be "very carefully done and vetted," *id.*, is consistent with any vigilant employee following training protocols mandated by upper-level management. And regardless, Plaintiffs' reliance on Mr. Scrancher's brainstorming of ideas concerning CB911's business from over seven years ago is irrelevant for purposes of the managing-agent inquiry. What is highly relevant is the fact that Mr. Scrancher is an employee of a U.K-based foreign affiliate of CB911, governed by the laws of the United Kingdom, whose current responsibilities are concomitant with that of a subordinate employee and not a managing agent.

The other cases on which Plaintiffs rely do not move the needle. In *Al-Ghena International Corporation v. Radwan,* 2015 WL 13035062 (S.D. Fla. Sept. 22, 2015), the court held that the noticed employee—the **CEO and Vice Chairman** of the plaintiff's parent company—was a managing agent because he was the defendants' "primary contact with respect to the hotel project" and his "level of involvement, including multiple trips to the United States, certainly suggest[ed] that he had power to exercise

14

discretion on [plaintiff's] behalf." *Id.* at *2. The same cannot be said for Mr. Scrancher here. Moreover, notably, there, the employer did not even "address" the defendants' "assertion" that he "should be produced without a subpoena as a managing agent of [the company]." *Id.* at *1. And, in *Calixto v. Watson Bowman Acme Corporation*, 2008 WL 4487679 (S.D. Fla. Sept. 29, 2008), the court held that the noticed employee—the ***former CEO***—was a managing agent because he was defendant's "attorney-in-fact for the negotiations" and therefore "clearly had power regarding matters at stake in th[e] case." *Id.* at *3. Here, Mr. Scrancher lacks comparable decision-making power over CB911's clients.

*\*\*\**

For these reasons, Mr. Scrancher is not a managing agent of CB911. Accordingly, the Court should deny Plaintiffs' Motion to Compel.

    B.    <u>The Notice of Deposition Also Imposes an Undue Burden on Mr. Scrancher.</u>

Mr. Scrancher's extenuating personal circumstances also warrant relief under Rule 26(c)(1). Mr. Scrancher's wife recently passed away (December 2023) after a long and expensive battle with colorectal cancer, leaving behind two young children. Eaton Decl. ¶ 10. Mr. Scrancher is a third party raising two young children on his own. Against that backdrop, being compelled to sit for a deposition in this case would substantially interfere both with Mr. Scrancher's caretaking duties as a single parent and his full-time employment. In *Rinker v. Carnival Corp.,* 2011 WL 13173047 (S.D. Fla. Oct. 20, 2011), a full-time employee and who had substantial responsibilities as

15

the only caretaker for his wife was granted a protective order. *Id.* at *3. As a single parent of two young children with a full-time job at Online Venture Partners Limited, Mr. Scrancher should be afforded the same protection as the full-time employee and caretaker in *Rinker*.

      C.    <u>Mr. Scrancher Should Not Be Compelled to Attend a Deposition in the United States.</u>

A party may subpoena a party's officer, director, or managing agent to attend a deposition where that person "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(B). Here, Mr. Scrancher "resides and is employed in" the United Kingdom, and "there has been no showing that [he] regularly transacts business himself in person" in the Middle District of Florida. *Delta RF Tech., Inc. v. RIIMIC, LLC*, 2014 WL 12829473, at *2 (M.D. Fla. Mar. 28, 2014). Thus, the Notice of Deposition is also "improper, at least with respect to location." *Id.*[5]

      D.    <u>Plaintiffs' Request for Sanctions Should Be Denied.</u>

In the conclusion section of their Motion, Plaintiffs ask the Court to impose monetary sanctions on CB911 simply because it has insisted that Plaintiffs comply with Federal Rule of Civil Procedure 45 and the Hague Convention before deposing Mr. Scrancher. The Court should decline Plaintiffs' invitation.

---

[5] If the Court grants Plaintiffs' Motion to Compel, the Court should permit the deposition to be taken by remote means, which would save time and cost for all parties and allow the deposition to take place in London, where Mr. Scrancher resides. *See* Fed. R. Civ. P. 30(b)(4) (permitting remote depositions and observing that such depositions "take place where the deponent answers the questions"); *In re Willingham*, 2014 WL 3697556, at *4-5 (Bankr. M.D. Fla. July 18, 2014) (strongly supporting videoconference depositions).

For starters, by making a passing reference to sanctions without sufficient analysis, Plaintiffs have waived their request. *See Felty v. Berryhill*, 2018 WL 1556420, at *1 n.4 (M.D. Fla. Mar. 30, 2018) ("To the extent Plaintiff attempts to raise other issues in the 'Conclusion' section of her memorandum . . . these issues are deemed to be waived for lack of development.") (citing cases). Regardless, and as described above, Mr. Scrancher is not an "officer, director, or managing agent" of CB911. *See* Fed. R. Civ. P. 37(d)(1)(A)(i). And because Mr. Scrancher "falls into none of these categories . . . sanctions against [CB911] are inappropriate." *Rutsky v. Target Corp.*, 2013 WL 12009695, at *2 (S.D. Fla. June 17, 2013). Plaintiffs have also not explained *why* the Court should exercise its discretion to impose sanctions. To the contrary, Defendants' opposition to Plaintiffs' attempts to impermissibly depose a subordinate employee of a non-party foreign affiliate who has expressly refused to sit for a deposition is reasonable and supported by law. Finally, and for the same reasons, Defendants' opposition is "substantially justified" and describes "circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel Deposition of Ben Scrancher.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 8, 2024 | */s/ Neal R. Marder* |

Neal Ross Marder (*pro hac vice*)
Joshua A. Rubin (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, California 90067
Telephone: 310-229-1000
nmarder@akingump.com
rubinj@akingump.com

Corey Roush (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K St., NW
Washington, DC 20006
Telephone: 202-887-4115
croush@akingump.com

William J. Schifino Jr., Esq., Fl. Bar No. 564338
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson St., Ste. 1500 - Tampa, Florida 33602
Telephone: 813-228-9080
wschifino@gunster.com

*Attorneys for Defendants Global E-Trading, LLC, Gary Cardone, and Monica Eaton*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Neal R. Marder*
Neal R. Marder, Esq.