IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JANET SIHLER and CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, MONICA EATON,<br><br>*Defendants*. | Case No. 8:23-cv-01450-VMC-LSG |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO RENEW THEIR MOTION TO COMPEL DEPOSITION OF BEN SCRANCHER**

Defendants Global E-Trading, LLC d/b/a Chargebacks911 ("CB911"), Gary Cardone, and Monica Eaton (collectively, "Defendants") submit this Opposition to the Motion to Renew Plaintiffs' Motion to Compel ("Renewed Motion"), which was filed on November 1, 2024—the last day of discovery in this case.[1] Dkt. 177.

For the foregoing reasons, Defendants respectfully request that the court deny Plaintiffs' Renewed Motion.

**FACTUAL BACKGROUND**

1. Mr. Scrancher lives in and is a citizen of the United Kingdom. Dkt. 110-1,

---

[1] Courts look with disfavor on motions to compel brought on or immediately before the discovery deadline. *See, e.g., Malibu Media, LLC v. Weaver*, 2016 WL 473133, at *1–2 (M.D. Fla. Feb. 8, 2016). As discussed in Defendants' Opposition to the Motion to Continue Discovery, the present Motion could have easily been brought over a month ago. Dkt. 179.

1

Eaton Decl. ¶ 3.

2. Mr. Scrancher is employed by Online Venture Partners Limited ("Online Venture Partners"), a company incorporated in the United Kingdom ("U.K") and headquartered in Rayleigh, U.K. Online Venture Partners has been a foreign affiliate of CB911 since 2011. *Id.* It is not a party to this action. Dkt. 110-1, Eaton Decl. ¶ 4.

3. Since July 2020, Mr. Scrancher has served as Senior Vice President of Business Development at Online Venture Partners. In that role, Mr. Scrancher assists with the sales of Online Venture Partners' and CB911's services. Dkt. 110-1, Eaton Decl. ¶ 6 . Mr. Scrancher is a member of the sales team who reports to Shelley Palmer, Vice President of Merchant Sales Team, who in turn reports to additional layers of management. *Id.* Mr. Scrancher does not have anyone who reports to him. *Id.*

4. On March 7, 2024, Plaintiffs' counsel emailed a "notice of deposition" for Mr. Scrancher's deposition to be taken in Florida. *See* Dkt. 106, Ex. A. Defendants replied on March 13 stating that Mr. Scrancher was a foreign, non-party employee and would need to be served with formal process under the Hague Convention or laws of the United Kingdom. *See id.*

5. Following a back-and-forth, on April 12, Defendants' counsel wrote to Plaintiffs' counsel explaining that despite Mr. Scrancher being a foreign citizen and not a managing agent of CB911, Defendants were going "to request that Mr. Scrancher agree to voluntarily appear for deposition without a subpoena or compliance with the laws applicable to taking discovery from foreign citizens under the Hague Convention." *See id.* at 2. Ms. Eaton, the CEO of CB911, then asked Mr. Scrancher

to voluntarily appear for deposition without a subpoena or compliance with the laws applicable to taking discovery from foreign citizens under the Hague Convention.

6. On April 19, Defendants' counsel met with Mr. Scrancher and his counsel. During this meeting, Defendants' counsel was informed that Mr. Scrancher would not agree to a deposition unless he was compelled to do so by a U.K. court.

7. Defendants' counsel notified Plaintiffs' counsel on the same day that "Mr. Scrancher is unwilling to sit for a deposition proceeding as currently noticed under the Federal Rules of Civil Procedure. Assuming that this is the manner in which you still intend to proceed (as opposed to pursuant to U.K. law), then we write to notify you that Mr. Scrancher will not appear for deposition in light of his position that doing so would violate his rights under U.K. law and The Hague Convention." *Id.* at 1.

8. On April 24, Plaintiffs filed a Motion to Compel Deposition of Ben Scrancher. Dkt. 106. Defendants submitted their opposition on May 8. Dkt. 110.

9. On May 16, the Court denied Plaintiffs' Motion to Compel, directing Plaintiffs to take the depositions of Ms. Eaton and Mr. Cardone and indicating that Plaintiffs could renew their motion following those depositions. Dkt. 117.

10. On July 31, Plaintiffs asked this Court to issue a Request for International Assistance directed to the appropriate judicial authorities of the U.K. (the "Letter of Request"). Dkt. 149. Defendants did not oppose the Letter of Request. Dkt. 153.

11. On August 15, Magistrate Judge Anthony E. Porcelli issued the Letter of Request. Dkt. 157. In the Letter of Request, Judge Porcelli represented to the judicial authorities in the U.K. that "**Mr. Scrancher resides outside of this Court's territorial**

3

*jurisdiction and cannot be compelled to testify at trial by subpoena.*" Dkt. 157 at 7.

12. On August 21, Plaintiffs filed an application to the English court to give effect to the Letter of Request. Plaintiffs do not appear to have engaged English counsel and made certain errors critically impacting that filing, including their inclusion of paragraph 3 in the draft order, which implied that they were seeking the application be granted without giving notice to Mr. Scrancher and his counsel.

13. On September 11, Master Eastman issued an order in the English proceeding, requiring Mr. Scrancher to sit for a deposition without having given Mr. Scrancher and his counsel an opportunity to address the scope or logistics of the deposition. Dkt. 185-2, Defs.' Opp'n to Pls.' Mot. for Extension of Disc., Buckingham Decl. ¶ 7.

14. On September 16, before Mr. Scrancher had been served, Defendants' counsel again requested that, despite the absence of any order to do so, Mr. Scrancher sit for his deposition.

15. Mr. Scrancher was served on September 18. The next day, Mr. Scrancher's counsel informed Plaintiffs of a number of concerns regarding the manner in which the order had been obtained, whether Plaintiffs had complied with their obligations of full and frank disclosure to the Court, and deficiencies relating to the protections set out in U.K. Civil Procedure Rule 34. Dkt. 185-2, Buckingham Decl. ¶¶ 10, 11.

16. On October 11, Mr. Scrancher's counsel timely submitted an order seeking that the summons be set aside ( to allow for it to be properly presented and handled). *Id.* at ¶ 12. The hearing is not likely to occur until January 2025. Cf. Dkt. 177-3, FitzPatrick Decl. ¶ 10.

4

17.     On October 23, Mr. Scrancher's counsel sent Plaintiffs "a draft order which we would be willing to agree to."[2] Dkt. 185-2, Buckingham Decl. ¶ 14. That draft proposed that Mr. Scrancher's deposition occur on mutually agreed upon dates. *Id.*

## LEGAL STANDARD

The law of the circuit is clear that "[o]nly a party to the litigation may be compelled to give deposition testimony pursuant to a notice of deposition." *Karakis v. Foreva Jens Inc.*, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009). Corporate employees are generally treated as non-parties; therefore, "before being compelled to testify," they "must be served with a subpoena." *Ctr. For Individual Rights v. Chevaldina*, 2018 WL 2432109, at *20 (S.D. Fla. May 30, 2018); *see McMahon v. Presidential Airways, Inc.*, 2006 WL 5359797, at *1 (M.D. Fla. Jan. 18, 2006) (denying motion to compel deposition of employee who was not served with a subpoena).

A noticing party may be excused from serving a deposition subpoena on a non-party corporate employee only if the individual is a party or an officer, director, or managing agent of a party. "If the specified person, however, is not an officer, director, or managing agent, then the examining party 'must resort to Fed. R. Civ. P. 45 for subpoenas on non-party witnesses.'" *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 268 F.R.D. 45, 48 (E.D.V.A. 2010) (cited by *In re Takata Airbag Products Liability*

---

[2] When Defendants' counsel learned this, Defendants' counsel requested that Mr. Scrancher's counsel try to work things out so that Mr. Scrancher could be deposed in November in advance of the summary judgment deadline of December 2. Defendants' counsel also indicated to Plaintiffs' counsel that Defendants would consent to a short extension of the discovery deadline for the completion of the deposition in the U.K. as long as it occurred before the summary judgment deadline.

*Litigation*, 2017WL8812735, at *3 (S.D. Fla. July 19, 2017)). To determine whether an employee is a managing agent under Rule 30(b)(1), courts in this circuit examine:

> (1) whether the individual has general power to exercise discretion in corporate matters; (2) whether he or she can be expected to testify at the employer's request; (3) whether there are persons within the corporation with greater authority regarding the information sought; (4) the general responsibilities of the individual regarding the matters under litigation; and (5) whether the witness identifies with the interests of the corporation.

*Brunson v. PHH Mortg. Corp.,* 342 F.R.D. 315, 320-21 (M.D. Fla. 2022) (citations omitted). None of these factors standing alone are sufficient to deem an employee a managing agent. *See Calixto v. Watson Bowman Acme Corp.*, 2008 WL 4487679, *2 (S.D. Fla. Sept. 29, 2008) ("The determination of whether a person is a managing agent . . . is not formulaic; rather, it is a fact-specific inquiry."); *see also Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012) ("[V]irtually all courts and commentators agree that the question of whether a particular person is a 'managing agent' is to be answered pragmatically on an ad hoc basis, considering the facts of the case.") Moreover, potentially relevant knowledge is not enough in and of itself to make an individual a managing agent. If it was, corporate employees generally would not be treated as non-parties, and there would be no need to assess whether someone was a "managing agent" *See, e.g., Ctr. For Individual Rights*, 2018 WL 2432109 at *20.

The noticing party has the burden of demonstrating that the employee is a managing agent. *Faro Techs., Inc. v. Romer, Inc.*, 2007 WL 496615, at *3 (M.D. Fla. Feb. 12, 2007) (recognizing noticing party's burden and denying motion to compel deposition of foreign employee by 30(b)(1) notice). While a foreign national can

6

qualify as a managing agent, requiring a litigant to produce a foreign managing agent for deposition "regardless of any foreign laws" is not favored by the courts. Indeed, courts should "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Société Nationale Industrielle Aérospatiale v. United State Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). "If [a deponent] is outside the United States, the party seeking his testimony *must* comply with the requirements of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the Hague Convention), 23 U.S.T. 2555." *Faro*, 2007 WL 496615, at *3.

## ARGUMENT

Plaintiffs have served non-defendant, non-officer, non-managing agent Mr. Scrancher following the requirements of the Hague Convention for a deposition to be conducted in the U.K. under the U.K. laws. Defendants do not oppose that deposition and have asked Mr. Scrancher to work with Plaintiffs to effect that deposition. This Court has given Plaintiffs an additional two months to take that deposition. At this stage, Plaintiffs should stop trying to apply U.S. policies and practices to a foreign national and proceed to negotiating and taking his deposition in the U.K. under U.K. law. Instead, unsatisfied with the U.K. process, Plaintiffs ask this Court to order Defendants to force Mr. Scrancher to do something that according to his U.K. lawyer they cannot force him to do – sit for a deposition governed by the laws of the U.S.

Despite the practical reality of where Mr. Scrancher resides and is a citizen, and

despite the legal reality that Defendants cannot force him to do what Plaintiffs seek, Plaintiffs inaccurately argue that Mr. Scrancher is a "managing agent" of CB911 to justify a court order demanding that Defendants compel Mr. Scrancher to sit for a deposition under the U.S. laws.  In any event, Plaintiffs bear the burden of factually demonstrating that Mr. Scrancher is a managing agent.  They have not done so.

      A.    **The Letter of Request Process Is the Proper Avenue to Depose Mr. Scrancher.**

When this Court granted Plaintiffs' request to submit a Letter of Request through the Hague Convention to the U.K. asking the U.K. to arrange a deposition of one if its citizens, this Court represented to the U.K. that "Mr. Scrancher resides outside of this Court's territorial jurisdiction and *cannot be compelled to testify at trial by subpoena*." Dkt. 157 at 7.  That statement is true and, accordingly, Plaintiffs have commenced the process for securing Mr. Scrancher's testimony in the U.K.  Assuming they properly navigate that process, Mr. Scrancher will be deposed.  Indeed, Mr. Scrancher is not refusing, and has not refused, to be deposed under the Letter of Request, and even has proposed a consent order in furtherance of being deposed.

That said, Plaintiffs have not to date navigated that process properly.  Most notably, contrary to customary practice in the U.K., and despite knowing that Mr. Scranched was represented, Plaintiffs filed their request for an order for Mr. Scrancher to sit for a deposition without notice to him or his counsel.[3]  Dkt. 185-2, Buckingham

---

[3] Plaintiffs offer no explanation for why they chose to file the request without notice.  Plaintiffs' counsel was fully aware that Mr. Scrancher was represented and of the identity of that counsel.

8

Decl. ¶ 7. The notice process ensures that the party seeking the deposition and the deponent meet and confer prior to any court hearing and ensures that the deponent is present before the court to raise any issues prior to the order issuing. Had Plaintiffs followed the proper process, Mr. Scrancher could have been deposed in October prior to the end of discovery.

This error of procedure is something Plaintiffs have been on notice about since at least September 19. *Id.* at ¶ 11. Despite being on notice and despite looming deadlines, Plaintiffs did not diligently engage with Mr. Scrancher's counsel to correct the issues they created and have refused to compromise on certain issues. *Id.* at ¶ 14. Contrary to Plaintiffs' contentions, Mr. Scrancher, through counsel, has sought to negotiate mutually agreeable terms to proceed with his deposition. Indeed, Mr. Scrancher previously indicated through a proposed consent order that he would sit for a deposition before the end of discovery if Plaintiffs provided copies of the documents on which they were going to question him ahead of the deposition and agreed to a more narrow list of topics—both of which are standard under U.K. procedure. *Id.* Plaintiffs' counsel did not respond to the order Mr. Scrancher's counsel proposed and did not engage in any negotiation surrounding it before November 1. *Id.* After Mr. Scrancher's counsel followed up with them again, Plaintiffs finally responded on November 6 indicating simply that they did not agree. We understand that they have made no effort to negotiate the terms of the proposed order.

For their part, Defendants' counsel has repeatedly requested that Mr. Scrancher's counsel work to solve the Letter of Request issues and complete the

9

deposition.[4]

Against that backdrop, Plaintiffs seek to convince this Court that it was wrong when it wrote to the U.K. that Mr. Scrancher "***cannot be compelled to testify at trial by subpoena.***" Dkt. 157, Letter of Request ¶ 8(b).  Plaintiffs' rationale for why they should be able to side-step the proper process and venue is plain—to them "the Hague Convention [i]s an undesirable, if not completely non-viable, alternative to an order from this court compelling Mr. Scrancher's deposition." ." Dkt. 177, Pls.' Mot. to Renew at 12.  Indeed, Plaintiffs criticize the U.K. procedures because of the purported "uncertainty, delay, and circumscribed nature of the discovery process available to Plaintiffs' via the letter of request process." *Id.* at 13.  But lack of desirability and the fact that the discovery process in the U.K. is circumscribed are not grounds for a U.S. court to now insist that a foreign citizen sit for a deposition in the U.S. and under U.S. laws.  Nor are uncertainty and delay caused by Plaintiffs' own acts and Plaintiffs' lack of desire to consent to the circumscribed discovery process in the U.K. grounds for this Court to now assert its authority over a foreign citizen (or to instruct Defendants to somehow physically force a foreign citizen to sit for a U.S. deposition).

Plaintiffs rely on *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S.*

---

[4] Plaintiffs repeatedly—but without support—blame CB911.  Plaintiffs suggest that being forced to go through the proper channels under the Hague Convention and U.K. law does "nothing more than reward Chargebacks911 ***for its refusal to play by the rules*** and produce Ben Scrancher for deposition" and that Plaintiffs' "efforts ***have been foiled at every turn by Chargebacks911***." Dkt. 177 at 1-2.  These aspersions are incorrect.  Defendants have not refused anything or attempted to foil Plaintiffs.  Defendants have repeatedly tried to facilitate the deposition of Mr Scrancher, but are unable to force him to sit for the deposition.  Mr. Scrancher has said he will sit for his deposition so long as it is properly arranged under the normal legal process of his country (the U.K.) and his country's rules of procedure are abided by in the deposition.

10

*Dist. Of IA.* for the contention that this Court can disregard international protections for non-parties. Dkt. 177 at 22. However, *Societe Nationale* dealt with the Court's power over parties **subject to its jurisdiction**. *See Calixto v. Watson Bowman Acme Corp.*, 2008WL4487679 at *4 (S.D. Fla. Sept. 29, 2008) ("The Supreme Court explained that it "d[oes] not deprive an American court of the power to *order a party subject to its jurisdiction* to produce evidence even though the act of production may violate the statute.") (emphasis added). Plaintiffs have never asserted (nor can they factually) that Mr. Scrancher is subject to this Court's jurisdiction.

Plaintiffs suggest that Defendants can compel Mr. Scrancher to testify in this case because "Defendants have previously successfully prevailed on Mr. Scrancher to participate in U.S. litigation." Dkt. 177 at 17. This is false. Mr. Scrancher, in his personal capacity, was listed as a successor trustee on a 2017 irrevocable trust set up by Mr. Cardone for his children while Mr. Scrancher lived in the United States. Eaton Decl. ¶ 7. That irrevocable trust was referenced in the divorce proceedings between Mr. Cardone and Ms. Eaton. *Id.* at ¶ 8. Mr. Scrancher did not testify in the divorce proceedings, did not provide deposition testimony, and was otherwise completely uninvolved. *Id.* at ¶ 9.

**B.    Mr. Scrancher is Not a Managing Agent.**

There is no evidence that Mr. Scrancher is a managing agent of CB911 generally or regarding the specific topics of the sought testimony. In particular, Mr. Scrancher is not (and was not) the managing agent regarding CB911's Value-Added Promotions

program ("VAP") for Brightree or affiliated companies (referred to by Plaintiffs as the "Keto Entities") because VAP was not an active program during the time of the alleged conspiracy and the service that Brightree is criticized for using was not a service offered or managed by any employee of CB911.

Focusing on the *Brunson* factors referenced above:

1. There is no evidence showing Mr. Scrancher exercised discretion on general corporate matters or specifically related to the VAP program that preceded Brightree's use of CB911's services;

2. Mr. Scrancher clearly cannot be expected to testify at the employer's request (he has refused and hired an attorney);

3. Mr. Scrancher does not exercise ultimate authority within the company as to any aspect of CB911's services; and

4. Plaintiffs provide no support to establish that Mr. Scrancher identifies with the interests of the CB911.

### i. There Is No Evidence that Mr. Scrancher Exercised Independent Discretion in the Corporate Matters of CB911.

Although Mr. Scrancher may be a valuable employee, his work as a salesman has always been performed at the direction and instruction of his supervisors. There is no evidence that Mr. Scrancher exercised independent discretion as to general corporate matters or the specific matters at issue in this case.

First, Mr. Scrancher's responsibilities are concomitant with that of a subordinate employee and not a managing agent. Mr. Scrancher is employed by Online Venture Partners, a company incorporated in the U.K. Dkt. 110-1 ¶ 4. Online Venture Partners has been a foreign affiliate of CB911 since 2011. *Id.* It is not a party to this action. Since July 2020, Mr. Scrancher has served as Senior Vice President of

Business Development at Online Venture Partners. *Id.* ¶ 5. Prior to that, Mr. Scrancher was Vice President of Business Development. *Id.* In those roles, Mr. Scrancher assisted with the sales of Online Venture Partners' and CB911's services. *Id.* He has no authority to act on behalf of Online Venture Partners or CB911 outside the limited scope of his salesman responsibilities. *Id.* Notwithstanding his "Senior Vice President" title (given for marketing purposes), Mr. Scrancher does not have any authority to exercise discretion in corporate matters for Online Venture Partners or CB911, nor does he have the ability to enter into contracts on behalf of Online Venture Partners or CB911. Dkt. 110-1 ¶¶ 5, 7. No one at Online Venture Partners or CB911 reports to Mr. Scrancher, and he has no supervisory or management authority over any employee of Online Venture Partners or CB911. *Id.* Mr. Scrancher reports to Shelley Palmer, Vice President of Merchant Sales Team, who in turn reports to additional layers of management. *Id.* ¶ 6. Those managers have authority over Mr. Scrancher regarding all matters pertaining to Online Venture Partners and CB911. *Id.*

Second, the documents and testimony do not show Mr. Scrancher exercising discretion in general corporate matters. The documents cited by Plaintiffs are taken out of context and used to support vastly overbroad claims (*i.e.*, Plaintiffs write that "CB911's business records also indicate that 'Ben is the only one that sells this service [VAP] currently.'" Dkt. 177, Ex. T.) The documents and deposition testimony taken as a whole reveal the overstatements. Indeed, Mr. Scrancher has at all times had his decisions subject to review and approval.

Plaintiffs argue that Mr. Cardone describing Mr. Scrancher as his "right hand

13

man" to a client or telling Mr. Scrancher to "handle" something is evidence Mr. Scrancher exercised a high-level of discretion. Dkt. 177, Ex. W. Mr. Cardone, the former CEO, providing a client with a back-up contact for when he was unavailable and seeking to elevate Mr. Scrancher as that back-up in the eyes of the client does not make Mr. Scrancher a managing agent. Nor is Mr. Cardone's infrequent assignment of tasks to Mr. Scrancher a delegation or grant of discretion to act on behalf of CB911. This is no different than a judge informing litigants that her clerks speak for her or a partner empowering a more junior associate to "handle" a matter. While the clerk or associate may manage the day-to-day tasks, the decision-making and discretion is retained and held by the judge or partner.

 Plaintiffs continue these overbroad interpretations of a handful of documents when they assert that internal communications regarding clients that do not include Mr. Scrancher's supervisors demonstrate that Mr. Scrancher could exercise independent discretion. Dkt. 177, Ex. AA. This assumption would convert any and every individual that ever answered a substantive email at work into a managing agent and would essentially negate the entire concept that corporate employees are generally treated as non-parties. *Ctr. For Individual Rights*, 2018 WL 2432109, at *20.

 Plaintiffs go even further when they point to a document as showing that "aside from Defendants Eaton and Cardone, Mr. Scrancher was the only person at CB911 authorized to administer the VAP program." Dkt. 177 at 15 (emphasis in original). But that document does not reference Mr. Scrancher's VAP knowledge or skills; instead, it references Mr. Scrancher's "client relations" skills. Moreover, that

14

document literally involves Mr. Scrancher seeking approval from Mr. Cardone and Ms. Eaton on one of his proposals. Rather than supporting Plaintiffs' contention that Mr. Scrancher is a managing agent, the document shows that he is not.

### ii. There *Are* Persons within the Corporation with Greater Authority regarding the Information Sought.

The documents and testimony do not show that Mr. Scrancher had broad responsibility or authority in connection with Brightree or the VAP program. Plaintiffs have not pointed to any facts or questions related to Brightree or the VAP program that they were not able to discuss with or ask of Ms. Eaton, Mr. Cardone, or others (including CB911, which sat for 14 hours of 30(b)(6) testimony). Plaintiffs try to weave a few lines of testimony together to suggest that CB911 is painting Mr. Scrancher as a rogue actor whose actions were unmoored from corporate policy and priorities. The one action they reference is an introduction to David Flynn, which CB911 said was not a corporate act. An introduction by an employee of a company that has no pecuniary benefit for the company is not a corporate act. In any event, the overall testimony about Mr. Scrancher reveals that Defendants do not have what Plaintiffs term a "Scrancher-as-a-rogue-actor theory." And to be clear, this is not a theory put forward by Defendants.

In the end, there are many current and former employees—two of whom Plaintiffs deposed (Nicholas Carroll, who was the day-to-day liaison with Brightree, and Anthony Pugliese, who was the Brightree sales representative)—that had greater knowledge about Brightree's day-to-day dealings with CB911. There were also several

15

other employees who had greater knowledge of the VAP program, some of whom Plaintiffs deposed, including Ms. Eaton, who developed the program; Mr. Cardone, who oversaw certain aspects of the program; and Mr. Christensen, who implemented other aspects of the program. Plaintiffs did not seek to take the depositions of other individuals involved in the program. Nor did Plaintiffs seek to take the deposition of Johnny DeLuca—a third-party they claim provided sham microtransactions to Brightree after Mr. Scrancher introduced him to Brightree.

### iii. Mr. Scrancher Does Not Identify with the Interests of CB911.

Plaintiffs contend without support that Mr. Scrancher's interests are aligned with Defendants and that this alignment supports the Court finding Mr. Scrancher to be a managing agent of CB911. Plaintiffs cite to *Calixto v. Watson Bowman Acme Corp.* to establish that an alignment of interests supports finding Mr. Scrancher is a managing agent. However, *Calixto* addressed when individuals no longer employed by the company can be designated managing agents. Importantly, the Court was focused on whether the interests of a former employee remained aligned with its former employer. *See. Id.* at *8. In support of their contention under the misapplied case, Plaintiffs cite to an email from 2017. Putting aside the out-of-context and strained reading by Plaintiffs, a 2017 document offers no evidence that Mr. Scrancher's *current* interests are sufficiently aligned with CB911 to support designating Mr. Scrancher a managing agent. Indeed, his refusal to sit for a deposition until Plaintiffs address their self-inflicted deficiencies under U.K. law, all despite repeated requests by CB911 that he cooperate and despite understanding that not doing so could harm CB911,

16

unequivocally demonstrates a lack of alignment.

### iv. Having Relevant Knowledge Is Not Sufficient to Find Someone To Be a Managing Agent.

Plaintiffs cite *Brunson v. PHH Mortgage Corporation*, 342 F.R.D. at 320-21, (Dkt. 106-2 at 1, 4-5) for the contention that employees may be managing agents concerning the specific testimony sought even if they are not managing agents regarding their everyday duties. This is wrong legally; even if it was not, the facts (as discussed above) do not support Mr. Scrancher being a managing agent. First, Plaintiffs' interpretation of *Brunson* and other cases as meaning that an employee with relevant knowledge can be a managing agent absent any other factors is incorrect and would eliminate the concept of managing agent from the judicial system. Second, *Brunson* is easily distinguishable. In *Brunson*, the court found a low-level employee to be a managing agent where the employee had direct involvement in and unique knowledge of the underlying events *and the company's Rule 30(b)(6) designee lacked knowledge of the underlying events*. *Id*. at *3. Here, Plaintiffs conducted two days of 30(b)(6) testimony covering all of the noticed topics, and even specifically addressed several of the documents they cite in support of the Motion to Renew.[5] Critically, Plaintiffs have not alleged, nor could they, that they were unable to get sufficient testimony from those two days of testimony. Indeed, Plaintiffs specifically questioned Ms. Eaton as corporate representative, regarding Exhibits AD, Q and X. *See* 30(b)(6) Depo. Tr. at

---

[5] Plaintiffs had the opportunity but failed to ask Mr. Cardone or Ms. Eaton about several other documents Plaintiffs cite to in their Renewed Motion even though they directly involved conversations between them and Mr. Scrancher. *See e.g.,* Exhibits W, Y, and Z.

17

157:3-161:10 and 317:11-318:6. In each instance, Ms. Eaton answered Plaintiff's questions about the documents and clarified what were the official company positions and policies.

### C. The Specter of Mr. Scrancher Not Showing Up for a Properly Noticed Deposition in the U.K. Is Not Accurate and Is Not a Basis for Granting the Present Motion.

Plaintiffs contend that the Court should grant this motion because "Plaintiffs need to have a way to hold CB911 accountable if Mr. Scrancher no-shows for any deposition he's ordered to appear for." Plaintiffs further argue that "[e]ven if the English court orders Mr. Scrancher to appear, there is no guarantee that Mr. Scrancher will show up or that Plaintiffs will, as a practical matter, be able to force him to appear for a deposition before May 5, 2025, when trial is set to begin." This is not a basis to grant the Motion. Moreover, Plaintiffs disregard the legal consequences under U.K. law for failing to appear for a deposition, which can be as severe as being jailed. C.P.R. 71.2 and 71.8 (permitting a judge to hold a judgment debtor in contempt of court and make an order punishing them by a fine, imprisonment, confiscation of assets or other punishment under the law). Further, Defendants understand that Mr. Scrancher is willing to sit for a deposition under the U.K. rules upon Plaintiffs either properly navigating the U.K. process or compromising as to some agreeable consent order.

### D. Defendants Cannot Force Mr. Scrancher to Sit For a Deposition.

Finally, even if the Court grants Plaintiffs' Renewed Motion, Defendants have no recourse to force Mr. Scrancher to appear. Dkt. 185-2, Buckingham Decl. ¶¶ 15, 16. Defendants have repeatedly tried to convince Mr. Scrancher to sit for a deposition

without success. Defendants' counsel informed Plaintiffs' counsel on March 22, 2024, prior to the filing of Plaintiffs' initial Motion to Compel the Deposition of Mr. Scrancher, that they had attempted unsuccessfully to have Mr. Scrancher appear for a deposition in the U.S. *See* Dkt. 110-2, Rubin Decl. On that same call, Defendants did not object to a remote deposition as an alternative to an in-person deposition. Unsure of whether he had to do what CB911 requested and submit himself to the U.S. deposition process, Mr. Scrancher sought personal legal counsel in the U.K. His counsel then made clear to CB911 that Mr. Scrancher would not subject himself to a deposition in the U.S. or under the U.S. laws. Mr. Scrancher's counsel did, however, indicate that Mr. Scrancher was not opposed to a deposition in the U.K. under U.K. laws if Plaintiffs properly served him. Indeed, Mr. Scrancher's counsel continues to indicate that Mr. Scrancher will sit for his deposition once the deficiencies in the order are corrected.

While Defendants have asked Mr. Scrancher to sit for his deposition, Defendants have no leverage to force Mr. Scrancher to do so. Mr. Scrancher's employment is governed by an employment agreement under U.K. law, and Mr. Scrancher's counsel has made clear that any threat or attempt by Defendants to remove Mr. Scrancher from his position based on Mr. Scrancher's refusal to subject himself to a deposition in the U.S. and/or under U.S. laws would violate his employment agreement and subject Defendants' to legal action in the U.K.[6] Dkt. 110-

---

[6] To be clear, Defendants have not threatened to terminate Mr. Scrancher and do not plan to do so. And for further context as reflected elsewhere on the docket, he is a longstanding employee

19

1, Eaton Decl. ¶ 12.

## CONCLUSION

For all of the foregoing reasons, Defendants request this Court deny Plaintiffs' Motion to Renew the Motion to Compel the deposition of Ben Scrancher.

Dated: November 15, 2024.                   Respectfully submitted,

/s/ *Corey W. Roush*
Corey W. Roush (*pro hac vice*)
**SIDLEY AUSTIN LLP**
1501 K St, NW
Washington, DC 20005
Telephone: 202-736-8624
corey.roush@sidley.com

***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Corey W. Roush*
Corey W. Roush (*pro hac vice*)

---

of a foreign affiliate who has had a horrible tragedy befall his family. For context, Mr. Scrancher's wife passed away in December 2023 after a long and extensive battle with colorectal cancer, leaving behind two children under the age of five. Dkt. 110-1, Eaton Decl. ¶ 10. Mr. Scrancher is raising those two young children on his own. *Id.*