# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,

*Plaintiffs*,

v.

GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY EATON, MONICA CARDONE,

*Defendants*.

Case No.: 8:23-CV-01450-VMC-LSG

## PLAINTIFFS' MOTION TO RENEW THEIR MOTION TO COMPEL

## DEPOSITION OF BEN SCRANCHER

This Motion to Renew Plaintiffs' Motion to Compel the Deposition of Ben Scrancher is Plaintiffs' last and likely best chance to obtain the critical testimony of Chargebacks911 executive Ben Scrancher. No one at CB911 was more involved in helping the Keto Racket implement Chargebacks911's microtransactions scam than Ben Scrancher. *See, e.g.*, ECF No. 103 at ¶¶ 79, 82-83, 238-241. For months, Plaintiffs have pursued every conceivable avenue to obtain Mr. Scrancher's deposition testimony. These efforts have been foiled at every turn by Chargebacks911 and Mr. Scrancher himself.

One of Defendants' argument against Plaintiffs' Motion to Compel the Deposition of Ben Scrancher was that Plaintiffs should not be allowed to "subject

1

a foreign national to a deposition in this action without exhausting other means of discovery," in particular the depositions of Monica Eaton, Gary Cardone, and Anthony Pugliese" *See* ECF No. 110 at p.3.  With the depositions of Gary Cardone, Monica Eaton, and Anthony Pugliese[1] now complete, this argument is moot. Cardone and Eaton's depositions revealed a tangle of contradictory statements and evidence that can <u>only</u> be clarified if Plaintiffs are able to depose Mr. Scrancher.  And, unfortunately, Plaintiffs' efforts to depose Mr. Scrancher pursuant to a letter of request to the U.K. are mired in delay and uncertainty. The only way to ensure that Plaintiffs get the evidence they need and are entitled to from Chargebacks911 is for this court to renew, and grant, Plaintiffs' Motion to Compel the deposition of Ben Scrancher.  Denying the motion a second time, perhaps on the hope that Plaintiffs can get Mr. Scrancher's testimony through slow and uncertain British channels will do nothing more than reward Chargebacks911 for its refusal to play by the rules and produce Ben Scrancher for deposition.

## PROCEDURAL BACKGROUND

*Plaintiffs' Notice of Deposition and Motion to Compel*

On March 7, 2024, Plaintiffs noticed the deposition of Ben Scrancher for April 11, 2024. *See* Exhibit A.

On March 12, 2024, Plaintiffs' counsel emailed Defendants' counsel advising

---

[1]    Mr. Pugliese was deposed on October 23, 2024.

that Plaintiffs would be agreeable to deposing Mr. Scrancher, who is based in England, remotely via Zoom. *See* Exhibit B.

Defendants' counsel replied on March 13, 2024, stating that Chargebacks911 would not be producing Mr. Scrancher in response to the notice of deposition. *See* Exhibit C.

Plaintiffs' counsel sent Defendant's counsel a letter outlining why Chargebacks911's refusal to produce Mr. Scrancher for deposition was improper. *See* Exhibit D. The Parties met and conferred regarding Defendant's refusal to produce Mr. Scrancher for deposition in response to Plaintiffs' notice on March 22, 2024. Covey Decl. ¶ 2. In that meet and confer, Chargebacks911's counsel suggested that any deposition would need to be in-person near Mr. Scrancher in the United Kingdom and not via Zoom. But after Plaintiffs' counsel stated that it would travel the United Kingdom if Chargebacks911 would rescind its objection, Chargebacks911's counsel stated that it still would not produce Mr. Scrancher even if Plaintiffs' counsel agreed to an in-person deposition in England. Covey Decl. ¶ 3.

Defendant Chargebacks911 served formal objections to Plaintiffs' Notice of Deposition of Ben Scrancher, Exhibit E, and the Parties engaged in further correspondence concerning the Scrancher deposition. *See* Exhibits F-H. Ultimately, Defendant Chargebacks911 did not in fact produce Mr. Scrancher for his deposition on April 11, 2024. Covey Decl. ¶ 5.

Following Chargebacks911's failure to produce Mr. Scrancher for deposition, Plaintiffs moved to compel the deposition of Ben Scrancher. *See* ECF No. 106.

The court denied Plaintiffs' Motion to Compel on May 16, 2024. *See* ECF No. 117. It directed: "Plaintiffs are directed to take the depositions of Monica Eaton and Gary Cardone. If, following the completion of these depositions, Plaintiffs still wish to depose Mr. Scrancher, they may bring it to the Court's attention by filing a motion to renew the instant motion." *Id.*

### The Long and Sanctions-Riddled Road to the Cardone and Eaton Depositions

In May 2024, Plaintiffs wrote to Defendants seeking dates in June 2024 for the depositions of Gary Cardone and Monica Eaton. *See* Exhibit I. Defendants rebuffed Plaintiffs' efforts to schedule these depositions in June 2024. *See generally id.* The Parties exchanged significant back and forth about scheduling. Plaintiffs explained that completing these depositions was time sensitive given the court's order on the motion to compel:

> Plaintiffs' strong preference is to conduct the deposition of Ms. Eaton sooner rather than later. We have significant availability in late June and would prefer completing the deposition in June or July or even early August to completing it in late August.
>
> Our concern is that given the judge's order that we cannot renew our motion to compel Mr. Scrancher's deposition until after completing the depositions of Mr. Cardone and Ms. Eaton, completing Ms. Eaton's deposition in late August will not give us enough time before the discovery cutoff to renew the motion to compel Mr. Scratcher's deposition in the event we deem that necessary.

4

*See* Exhibit I. After significant back and forth about scheduling, the Parties agreed to schedule Mr. Cardone's deposition for July 30, 2024, and Ms. Eaton's for August 30, 2024. Exhibit I; Exhibit J.

Gary Cardone was successfully deposed on July 30, 2024. But when it came time for Mr. Eaton's properly-noticed deposition on August 30, 2024, neither Ms. Eaton nor her counsel showed up; this court sanctioned Ms. Eaton $12,371.62 for her defiance of her discovery obligations. *See* ECF No. 175. Ms. Eaton's deposition was eventually taken on October 3, 2024.

*The British Quagmire*

In July 2024, Plaintiffs moved for a letter of request from the court for the deposition of Ben Scrancher pursuant to the Hague Convention. ECF No. 149.  In that motion, Plaintiffs expressly reserved all rights in connection with moving to compel Mr. Scrancher's deposition. *See id.* at p. 9 n.4.

On August 13, 2024, the court granted Plaintiffs' motion for issuance of letters rogatory. ECF No. 157.

Plaintiffs promptly filed the letter of request with the proper U.K. authority and requested an order directing the deposition of Mr. Scrancher. *See* Exhibit K (Plaintiffs' August 21 application). The British court issued such an order on September 11, 2024. *See* Exhibit L.  But Mr. Scrancher then, on October 10, 2024, asked the court to set that order aside and his counsel submitted a "witness statement" in support of that application. *See* Exhibit M (Ben Scrancher's October

10, 2024 application and the witness statement of Mr. Scrancher's counsel). Mr.
Scrancher is also seeking, in the alternative, to significantly narrow the topics
Plaintiffs may ask him about, including by completely preventing Plaintiffs from
asking any questions at all about Topic 13, "Global E-Trading LLC and Monica
Eaton and Gary Cardone's dealings with Johnny De Luca." *See id.*

Mr. Scrancher previously indicated that if provided by all documents
Plaintiff intended to ask him about by October 23, 2024, he would agree to the
deposition but only if Plaintiffs agree to an aggressively-narrowed list of topics
that did not allow for any questions about Topic 13 and circumscribed the scope
of questioning as to many other topics; Mr. Scrancher's proposal also required
Plaintiffs to pay all of Mr. Scrancher's attorney fees for preparing for an attending
the deposition. *See* Exhibit N. Mr. Scrancher's demand that Plaintiffs agree to
severely limit their questions to topics far, far narrower than those listed by this
court in its letter of request was not acceptable to Plaintiffs.

The hearing on Mr. Scrancher's request is not likely occur until January 2025,
months after the current November 1, 2024, discovery cut-off in this case. *Cf.*
Declaration of Peter FitzPatrick ¶ 10.

Even if the English court orders Mr. Scrancher to appear, there is no
guarantee that Mr. Scrancher will show up or that Plaintiffs will, as a practical
matter, be able to force him to appear for a deposition before May 5, 2025, when
trial is set to begin.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure Rule 30(b)(1), a deposition subpoena is not required to depose a party or an officer, director, or managing agent of a party.

Courts look to five factors in determining whether and individual is a "managing agent" for purposed of Rule 30(b)(1).  These factors (the "Managing Agent Factors") are:

> (1) whether the individual has general power to exercise discretion in corporate matters; (2) whether he or she can be expected to testify at the employer's request; (3) whether there are persons within the corporation with greater authority regarding the information sought; (4) the general responsibilities of the individual regarding the matters under litigation; and (5) whether the witness identifies with the interests of the corporation.

*Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 12217, at *8 (S.D. Fla. Jan. 30, 2014).

Crucially, "[a]lthough employees of a corporation may not be managing agents regarding their everyday duties, they may still be managing agents about their testimony concerning their important activities in the underlying facts or where their activities are closely linked with events giving rise to the lawsuit." *Brunson v. PHH Mortg. Corp.*, 342 F.R.D. 315, 321 (M.D. Fla. 2022) (cleaned up). The noticing party bears the burden of proving managing agent status, but the burden is a "modest one" and "if an employee's status as a managing agent is a 'close question,' doubts are resolved in favor of the examining party, particularly when

discovery on the issue is not complete." *Id.* (cleaned up).

The courts of the United States have full power to make discovery orders *even if* compliance with those orders is not possible under foreign law. This is because "under the principles of international law, a state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction solely because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct." *United States v. First Nat'l City Bank*, 396 F.2d 897, 901 (2d Cir. 1968) (cleaned up). Indeed, a U.S. court may order a litigant to produce a foreign managing agent for deposition <u>regardless of any foreign laws</u>. *See In re Honda Am. Motor Co*, 168 F.R.D. 535, 538 n.2 (D. Md. 1996) (recognizing that "blocking statutes [prohibiting the taking of a deposition except pursuant to the Hague Convention] may implicate foreign sovereignty concerns" but stating "these laws are insufficient in and of themselves for a district court to restrain its power to compel discovery under a comity analysis.").

## ARGUMENT

Significant discovery has taken place since Plaintiffs' initial motion to compel, but one thing has not changed: Mr. Scrancher remains a managing agent of Chargebacks911, particularly with respect to its VAP program, VAP referrals, and interactions with Brightree. Arguments on this point are set forth towards the end of this argument section. But in addition to these legal arguments, which echo

those of Plaintiffs' initial Motion to Compel, five <u>new</u> circumstances and categories of evidence underscore the urgency, as a practical matter, of an order compelling Chargebacks911 to produce Mr. Scrancher for deposition.

*Four New Reasons the Motion to Compel Must be Granted*

The first new reason the motion to compel must be granted is that testimony from the Cardone and 30(b)(6) depositions, undermines Defendants' claim—made repeatedly in their Response to Plaintiffs' Motion to Compel—that Ben Scrancher was the supervised subordinate of Gary Cardone.

In their briefing, Defendants stated that "Mr. Scrancher acted as an instrumentality of Mr. Cardone, performing work solely at his direction." ECF No. 110 at p. 2.    But, in its deposition, when asked the question "[W]ould Chargebacks911 agree that Mr. Scrancher acted as an instrumentality of Mr. Cardone performing work solely at Mr. Cardone's direction?" Chargebacks911 responded with one word: "No." Exhibit O, Deposition Transcript of Global e-Trading LLC, Vol. 1 at 137:7-11.

Similarly, Gary Cardone testified at his deposition that he took an extremely hands-off approach to CB911's dealings with existing clients:

> Q. Okay. So your involvement is meeting folks and getting to know their business needs and then kind of passing them off –
>
> A. I'm an elephant hunter. I just go around hunting. Hunting, coming and hunting and then just throw the carcasses up in the wagon and somebody else takes care of them.

> Q. Okay. And so to use your analogy, during the time you were at -- a
> CEO at Chargebacks911 and you were elephant hunting, it was your
> routine and practice to sign up clients and then pass them off to other
> people in the business and you would not be involved with them any
> longer?
>
> A. I mean, I might have a drink with them seven months later if they were
> a good, paying client, but yeah.

Exhibit P, Deposition Transcript Gary Cardone at 37:8-20.

Mr. Cardone also testified "I was not involved whatsoever in the operations,

okay. I would literally kick these client into the system and walk away and let the

team deal with it literately." *Id.* at 38:13-16.

Mr. Cardone's deposition testimony is at odds with Chargebacks911's

business records which show him strategizing about how to help Brightree and

suggest he was monitoring CB911's interactions with Brightree. Exhibit Q; Exhibit

R. Nonetheless, there is still a tension between Mr. Cardone's testimony that "it's

not like I'm holding people's hands all day long" Exhibit P at 38:1-2, and

Defendants' claim that Cardone is a party who "supervised" Mr. Scrancher. ECF

No. 110 at p. 3. To the extent Gary Cardone was actually off "elephant hunting"

rather than keeping an eye on Mr. Scrancher's dealings with existing clients, it

shows that Mr. Cardone's testimony about Mr. Scrancher's interactions with

Brightree is no substitute for that of Mr. Scrancher.

Second, since Plaintiffs' initial motion to compel, a tension has emerged

between Chargebacks911's business records and the deposition testimony of

Chargebacks911. In its business records, CB911 describes VAP as a service done through a third party that's purpose is "to reduce or dilute the chargeback ratio by increasing the transaction count with supplemental transactions in addition to the regular sales." *See* Exhibit S. CB911's business records also indicate that "Ben is the only one that sells this service [VAP] currently." Exhibit T.  This strongly suggests Mr. Scrancher's recommending VAP with the aim of diluting clients' chargeback ratios was a CB911-sanctioned activity. But in its corporate deposition, Chargebacks911 emphasized that Mr. Scrancher was acting in his personal capacity and making a personal referral when he introduced Brightree to Johnny DeLuca:

> Q      Okay. Mr. Flynn, then on the next page, 1104, says, "Okay, we just wired 300K, so we're off and running." And Mr. Scrancher responds, "It's a big initial batch, but you're safe wiring him funds." Was Mr. Scrancher acting within the scope of his employment at Chargebacks911 when he told Mr. Flynn that Brightree was safe wiring funds to Johnny DeLuca?
>
> A      I don't think that -- think that making a statement is -- Ben is not making a statement on behalf of the company. He was asked to make a personal introduction, and it looks like he made a personal introduction to a person.

Exhibit O, Deposition of Global e-Trading LLC, Vol. 1 at 232:23-233:11.

Later, when discussing Mr. Scrancher's statement to Brightree that "David, we've had clients working with Johnny for over three years . . . Never had a complaint so far," *see id.* at 233:19-20, 22, Chargebacks911 testified: "the company's perspective is the company did not say that. The company did not -- did not make

11

this referral. This has nothing to do with the company in any shape or form." *Id.*
at 234:14-17.

This testimony from CB911 paints Ben Scrancher as a rogue actor whose
actions surrounding VAP were unmoored from corporate policy and priorities.
This Scrancher-as-a-rogue-actor theory that emerged from this deposition
testimony, however, contradicts numerous CB911 business records which include,
for example, an email from Monica Eaton to Gary Cardone with "vap" in the
subject line where she references a client needing "trans as needed to keep the
banks happy . . ." Exhibit U, or an email to Gary Cardone where a CB911 employee
writes that David Flynn of Brightree has begun using some VAP to assist with his
CTR [chargeback-to-transaction ratio]." Exhibit V. This apparent contradiction
would be best addressed through the sworn testimony of Ben Scrancher.

Third, the months since Plaintiffs' initial Motion to Compel have revealed
the Hague Convention as an undesirable, if not completely non-viable, alternative
to an order from this court compelling Mr. Scrancher's deposition.

Despite sinking significant resources and time into obtaining an order
directing for Mr. Scrancher's deposition in England, Plaintiffs still have no
certainty about how the U.K. court will rule on Mr. Scrancher's motion to set aside
their order, no way of knowing whether Mr. Scrancher will actually show up for
a deposition ordered pursuant to the letter of request process, and no guarantee
they'll be able to ask Mr. Scrancher everything they need to even if they are able

to secure an order directing him to sit for deposition.

Plaintiffs' difficulties with the letter of request process echo those recognized by the United States Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522 (1987). In *Societe Nationale*, the Court rejected the contention that the Hague Convention's procedures should be a mandatory "first resort" before U.S. litigants can seek discovery from a foreigner under the Federal Rules, explaining:

> In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules. A rule of first resort in all cases would therefore be inconsistent with the overriding interest in the "just, speedy, and inexpensive determination" of litigation in our courts. *See* Fed. Rule Civ. Proc. 1.

*Id.* at 542-43.

The uncertainty, delay, and circumscribed nature of the discovery process available to Plaintiffs via the letter of request process make an order from this court compelling Mr. Scrancher's testimony Plaintiffs' best shot at obtaining the testimony they need from Mr. Scrancher.

The fourth and final new reason for granting the motion compel also relates to the uncertainty inherent in the letter of request process: Plaintiffs need to have a way to hold Chargebacks911 accountable if Mr. Scrancher no-shows for any deposition he's ordered to appear for. Chargebacks911 is a party to this proceeding and evidence shows it used Mr. Scrancher as a managing agent vis-à-vis its

involvement in the Keto Racket and facilitation of the Keto Racket's use of sham microtransactions. If all Plaintiffs have is an order from the U.K. directing Mr. Scrancher, personally, to appear for a deposition, then there will be no consequences whatsoever for Chargebacks911 if Mr. Scrancher declines to show up. An order from this court compelling Chargebacks911 to produce Mr. Scrancher for his deposition, then, is the only way to ensure that Chargebacks911 is not rewarded for offshoring some of its dirty work to a foreign executive.

*Mr. Scrancher is a Managing Agent of CB911*

"Foreign nationals who qualify as managing agents or officers of a party may be subject to deposition pursuant to a notice." *Brunson*, 342 F.R.D. at 320-21 (cleaned up). Because Mr. Scrancher is a "managing agent" of Defendant Chargebacks911, "he need not be subpoenaed and must voluntarily be produced for deposition in the United States pursuant to Fed.R.Civ.P. 30(b)(1)." *See Al-Ghena Int'l Corp. v. Radwan*, No. 13-61557, 2015 U.S. Dist. LEXIS 188816, at *4 (S.D. Fla. Sep. 22, 2015) (discussing determination of managing agent status under Rule 30(b)(1) in case involving Kuwaiti resident employed by a party's parent company).

In this case, each of the five Managing Agent Factors weighs in favor of a finding that Mr. Scrancher is: (1) a managing agent of Chargebacks911; and (2) a managing agent with respect to, in particular, Chargebacks911's VAP program and referrals and interactions with the Keto Racket.

14

First, documents produced by CB911 show Mr. Scrancher exercising discretion in corporate matters.

In a March 2017 email with the subject line "intro to my right hand man and stats for March and a risk management plan for April 2017," Defendant Cardone introduced his "right hand man" (Ben Scrancher) to a client. Defendant Cardone wrote: "if you guys ever need anything stateside while I am traveling so much Ben is your GO TO MAN. He is exceptional person and understands what you need." Defendant Cardone's trust in his "right hand man" to handle "anything" the client might need reflects the high level of discretion Mr. Scrancher was granted to handle Chargebacks911's affairs. *See* Exhibit W.

Critically, a document produced by CB911 in this litigation suggests that aside from Defendants Eaton and Cardone, Mr. Scrancher was the <u>only</u> person at Chargebacks911 authorized to administer the VAP program. After Mr. Scrancher sent Mr. Cardone an email suggesting a mix of longer and shorter-term solutions for a client concerned about its chargeback numbers, including getting a client set up with VAP so that they could "triage to lower ratio," Mr. Cardone responded: "Good example of our ltd bandwidth in client relations No one other than you me and minica [sic] who can solve issues like this." *See* Exhibit X. Mr. Scrancher's status as the only person (other than Defendants Cardone and Eaton) who can "solve issues" related to clients' "triag[ing] to lower ratio" with VAP reflects the

level of discretion he exercised over CB911's affairs and weighs in favor of finding
he is a managing agent.

In another email, Defendant Cardone *deferred to Mr. Scrancher's judgment*
about whether to partner with a third-party company managed by someone
named ███████ in offering VAP to Chargebacks911's clients. Mr. Cardone wrote:
"ben, ███████ reached out to me and told me they are doing vap....they buy at
35 cents or so or less and sell for $1.00-1.35..... happy to split 50/50....these guys are
much cleaner than other guys."  Mr. Scrancher responded: "I thought you said we
didn't trust him??" And then Mr. Cardone replied: "monica doesnt trust him; as
we are no longer doing it there is no friction for us and he aint gonna sell
chargebacks or refer clients anywhere. **but your call.** as they get licenses with the
schemes i can think of worst partners/cooperative grups to work with." *See*
Exhibit Y (emphasis added).  Mr. Cardone's willingness to let the decision about
whether Chargebacks911 should partner with ███████'s company be Ben
Scrancher's "call" shows the high-level of discretion Mr. Scrancher exercised over
Chargebacks911's affairs.

Second, Mr. Scrancher, who is currently employed as a Senior Vice
President at Chargebacks911, can be expected to testify at Chargebacks911's
request. While Monica Eaton may have "requested" Mr. Scrancher sit for a
deposition, *see* ECF No. 110-1 ¶ 12, there's no evidence Chargebacks911 has ever
threatened Mr. Scrancher with consequences of any sort for declining to sit for a

deposition. If compelled to produce Mr. Scrancher by this court, Chargebacks911 will have an obligation to force Mr. Scrancher to sit for a deposition by making clear that if Mr. Scrancher does not appear for a deposition in this proceeding he will lose his remunerative executive position with the company. The fear of joblessness or diminished salary is a powerful incentive that can reasonably be expected to motivate Mr. Scrancher to testify at Chargebacks911's request.

Additionally, Defendants have previously successfully prevailed on Mr. Scrancher to participate in U.S. litigation.  In *Cardone Solutions and Technology, LLC v. GTMC, LLC et al.*, Case No. 22-000672-CI, in the Sixth Judicial Circuit in and for Pinellas County, Florida, Mr. Scrancher was on the service list as the "Successor Trustee of the Cardone 2017 Irrevocable Trust." *See* Exhibit AE. All three Defendants were parties to the *Cardone Solutions and Technology, LLC* litigation. When it benefited them, one or more Defendants were apparently able to convince Mr. Scrancher to participate in the *Cardone Solutions and Technology, LLC* litigation as Successor Trustee of the Cardone 2017 Irrevocable Trust. It's thus reasonable to expect they can convince Mr. Scrancher to sit for a deposition in this case.

Third, it appears there is no one in the corporation with greater authority or involvement regarding Chargebacks911's use of fraudulent microtransactions to doctor its clients' chargeback ratios. For example, when a Chargebacks911 employee wrote Defendant Cardone in March 2017 asking about whether Chargebacks911 should "continue providing VAP transactions for" two clients or

17

"migrate them to Johnny DeLuca," Mr. Cardone simply forwarded the email to Ben Scrancher.  All he wrote was: "this is in your court ben, handle it." *See* Exhibit Z. Defendant Cardone didn't have to write more because Ben Scrancher was a managing agent of Defendant Chargebacks911 who could be expected to "handle" issues for the corporation without any sort of detailed instructions or specific authorization. Likewise, when Kevin Chinn, a Merchant Client Support Team member at Chargebacks911 spoke with a client who "wants help with VAP (or friendly's) in order to lower his CB ratio," Ben Scrancher was the only person he turned to. Mr. Chinn asked Mr. Scrancher to "please call him to speak about VAP and Merchant accounts." Mr. Scrancher responded asking Mr. Chinn to arrange the call. *See* Exhibit AA. In another email, a different CB911 client, ██████████, forwarded Mr. Scrancher a November 11, 2016 email from GoPaymentPros.com warning ██████████ that his accounts with a chargeback ratio above 4% would be terminated in a week's time. *See* Exhibit AB ("anything over 4% for Count or (CB/Trx Ratio) is scheduled to be terminated on 11/18."). ██████████ told Mr. Scrancher he wanted to "get some VAP on the 2 mids below" and followed that up with a message saying "they need to be below 4% so we need to get that one dropped down before the 18th."  Mr. Scrancher responded the same day: "Sure, I'll send over the numbers shortly." *See* Exhibit AB.

18

Mr. Scrancher's status as a go-to person for both clients and colleagues seeking help with VAP shows his high level of involvement with the program and supports a finding that he is a managing agent of Chargebacks911.

Fourth, Mr. Scrancher had broad responsibility in connection with Chargebacks911's use of sham microtransactions to fraudulently reduce its clients' apparent chargeback ratios. This broad responsibility is illustrated by Exhibit AC. In that document, Chargebacks911 employee Brandon Figueroa wrote Ben Scrancher about a client who "would like to get into running some friendlies." (As indicated in Exhibit AA, discussed above, "friendlies" is an industry term for transactions run at the direction of a merchant which are intended to dilute its chargeback ratio.) The client "wanted to talk strategy as far as which MIDs to target or how much to run, what the split between Visa/MC should be, what time to run them etc." Mr. Figueroa told Mr. Scrancher "I cannot answer these questions, so I must refer to you." *See* Exhibit AC. Mr. Figueroa's comments about needing to refer the client to Mr. Scrancher for advice about "running friendlies" reflect Mr. Scrancher's role as a managing agent vis-à-vis the fraudulent microtransactions scheme that injured Plaintiffs.

Fifth and finally, Mr. Scrancher's identification with the interests of the corporation is evident from documents produced by Defendant in which Mr. Scrancher appears to try and minimize the risk to Chargebacks911 of its fraudulent conduct. For example, in Exhibit AD, Mr. Scrancher emails a Chargebacks911

employee and states that CB911's referral of a client to a "VAP solution" "needs to be very carefully done." Mr. Scrancher's desire to make VAP referrals "carefully" reflects his identification with Chargebacks911's interests. This identification with Defendant Chargebacks911 weighs in favor of finding Mr. Scrancher is a "managing agent" of Chagrebacks911. *See Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV-ZLOCH, 2008 U.S. Dist. LEXIS 112372, at *8-9 (S.D. Fla. Sep. 29, 2008) ("[T]he Court finds that Mr. Burri is a managing agent of WABO because he exercised power during the formation of the Agreement and his interests are aligned with WABO.").

Given the above evidence and circumstances, Mr. Scrancher is plainly a "managing agent" of Chargebacks911 in every sense of the term. However, *even if* that were not the case, Mr. Scrancher would still be a "managing agent" subject to deposition upon notice *in this proceeding* because of his central role vis-à-vis Chargebacks911's deployment of the microtransactions scheme for the Keto Racket.

"The term 'managing agent' is not interpreted literally" and "although employees of a corporation may not be managing agents regarding their everyday duties, they may still be managing agents about their testimony concerning their important activities in the underlying facts or where their activities are closely linked with events giving rise to the lawsuit." *See In re: Takata Airbag Prods. Liab. Litig.*, No. 15-02599-MD, 2017 U.S. Dist. LEXIS 217198, at *104-05 (S.D. Fla. June 19,

2017) (cleaned up).  Here, no CB911 employee was more involved in helping the

CB911's Keto Associates implement Chargebacks911's microtransactions scam

than Ben Scrancher.  It was Ben Scrancher who reached out to David Flynn via

Skype asking to talk about connecting the Keto Associates with, in David Flynn's

words, "groups that can help with increasing . . . transaction number." (Third

Amended Class Action Complaint ("TAC"), ECF No. 103 at ¶¶ 79 -80.) It was Ben

Scrancher who directed the Keto Associates to a "chat with Johnny" and advised

that Johnny [De Luca] was the "one that can help" with increasing the Keto

Racket's transaction numbers. *Id.* at ¶ 82.)   When David Flynn expressed

misgivings about wiring Johnny De Luca hundreds of thousands of dollars to

flood the Keto Racket's merchant account with sham microtransactions, it was Ben

Scrancher who reassured him, explaining "we've had clients working with Johnny

for over 3 years" and "[n]ever had a complaint so far." *Id.* at ¶ 83.  For these

reasons, the court could hold that Mr. Scrancher was a "managing agent" subject

to deposition upon notice *in this proceeding* even if there were not ample evidence

that Mr. Scrancher was, generally speaking, a "managing agent" of

Chargebacks911 based on a holistic reading of the five Managing Agent Factors.

### This Court Has the Power to Compel Mr. Scrancher's Deposition

In its response to Plaintiffs' Motion to Compel Mr. Scrancher's deposition,

Chargebacks911 gestured vaguely towards British law and claimed, without

explanation, that it might impede Chargebacks911's ability to produce its

managing agent Ben Scrancher for deposition.  Plaintiffs are not aware of any "blocking" statute or other specific law that would prevent Chargebacks911 from ordering Mr. Scrancher to sit for a deposition.  But *even if* such a law existed, it would not matter: this court's power to order litigants to produce their managing agents for deposition is not limited by any foreign statutes.

*Societe Nationale* is instructive.  In that case, the Supreme Court considered a French law (the "blocking" statute) that prohibited French corporations from responding to foreign discovery requests that did not comply with the Hague convention.  The court concluded that:

> such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute. *See Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 204-206 (1958). Nor can the enactment of such a statute by a foreign nation require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts.

482 U.S. at 544 n.29.

Thus, notwithstanding the Hague Convention or any foreign law, American courts can, and do, compel the deposition of a litigant's foreign managing agent upon Rule 30(b)(1) notice. For example, in *Calixto*, 2008 U.S. Dist. LEXIS 112372, the plaintiff moved to compel the deposition upon notice of the defendant's former CEO, a resident of Switzerland.  The defendant objected, claiming that "the law of Switzerland prohibits [the former CEO's] deposition absent his express

permission" and that the Plaintiff should have to follow the Hague Convention's procedures. *Id.* at *9.  The court rejected this argument and ordered the Defendant to produce its managing agent for deposition pursuant to the plaintiff's Rule 30(b)(1) notice.  It explained that "resort to the procedures for gathering evidence provided by the Hague Convention are optional and are not intended to strip American courts of their power to manage common pretrial proceedings such as depositions" and that "statutes like the Swiss law in this action, do not deprive American courts of their power over parties subject to their jurisdiction." *Id.* at * 11. *See also Calderon v. Experian Info. Sols., Inc.,* 290 F.R.D. 508, 521 (D. Idaho 2013) (rejecting arguments about putative illegality under Chilean law of deposing corporation's Chilean-citizen managing agents upon notice and about the applicability of the Hague Convention's procedures and affirming the Magistrate Judge's order compelling Defendant to "produce the Chilean dispute agents who handled [Plaintiff's] dispute via notice, and without subpoena").

Arguments that the laws of the United Kingdom should somehow circumscribe Plaintiffs' rights to depose Mr. Scrancher pursuant To Federal Rules of Civil Procedure Rule 30(b)(1) are further particularly inappropriate in this case because this dispute involves U.S. plaintiffs suing under a "a federal statute," RICO, that is "in its own way critical to the smooth and fair functioning of the modern economy." *Calderon v. Experian Info. Sols., Inc.,* 287 F.R.D. 629, 635 (D. Idaho 2012) (discussing the Fair Credit Reporting Act).  This is not a situation

where Plaintiffs are "attempting to localize a matter in which the United States has at best tangential interests." *Id.*  As such, "the sovereign interests of the United States would be infringed were Plaintiff[s] required to proceed with deposition[] of [Mr. Scrancher] according to the very different, and much more restrictive, customs of [English] law." *See id.* at 634-35. *See also In re Honda Am. Motor Co*, 168 F.R.D. 535, 539 (D. Md. 1996) ("The United States has a clear interest in maintaining the integrity of its judicial system and the power of its jurisdiction over persons doing business in the United States. An open discovery process helps maintain this integrity by ensuring that facts necessary for a proper and just adjudication are disclosed. Thus, solicitude for foreign procedures here would be a particularly significant intrusion upon American sovereignty." (Cleaned up.))

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court renew and grant their motion to compel the deposition of Ben Scrancher and order Chargebacks911 to produce Mr. Scrancher for deposition no more than thirty days from the date of the order.

Date: November 1, 2024

Respectfully submitted,

/s/ A. Lorraine Weekes

Lorraine Weekes

| **KNEUPPER & COVEY** | **KNEUPPER & COVEY** | **KIBBEY WAGNER** |
|---|---|---|
| Cyclone Covey* | Anthony Sampson* | Jordan Wagner |
| Kevin Kneupper* | 8911 N Capital of | SBN 14852 |
| Lorraine Weekes* | Texas Hwy Suite | 73 SW Flagler Ave |
| 17011 Beach Blvd Ste | 4200 #1173, Austin, | Stuart, FL 34994-2140 |
| 900, Huntington | TX 78759 | Office: 772-444-7000 |
| Beach, CA 92647 | | |
| | | *admitted pro hac vice* |

## Local Rule 3.01(g) Certification

I certify that I conferred with Defendants' counsel concerning this motion in good faith. The conference was held in person on October 23, 2024. Following some additional email communications between myself and my colleague Anthony Sampson and Defendants' counsel concerning this motion, Defendants informed me that they oppose this motion.

/s/ A. Lorraine Weekes

Lorraine Weekes

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed with the Court's CM/ECF system, on November 1, 2024, which will provide electronic notice to all counsel of record.

/s/ A. Lorraine Weekes

Lorraine Weekes