## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANET SIHLER and CHARLENE
BAVENCOFF, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiffs,

v.                                Case No. 8:23-cv-1450-VMC-LSG

GLOBAL E-TRADING, LLC
d/b/a Chargebacks911, GARY
CARDONE, and MONICA EATON,

      Defendants.

_____/

## ORDER

The plaintiffs Janet Sihler and Charlene Bavencoff renew their motion to compel the defendant Global E-Trading, LLC, d/b/a Chargebacks911, to produce non-party employee Ben Scrancher for a deposition. Docs. 177, 198. For the reasons explained below, the plaintiffs' renewed motion to compel is **GRANTED IN PART**.

## I.    BACKGROUND

The plaintiffs sue the defendants in a class action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Doc. 102. On April 24, 2024, the plaintiffs moved to compel the deposition testimony of Scrancher because Chargebacks911 refused to produce him. Doc. 106. The plaintiffs argued that, because Scrancher is a managing agent for Chargebacks911, he must sit for a deposition on notice under Rule 30(b)(1), Federal Rules of Civil Procedure.

1

Doc. 106 at 4-11.

Chargebacks 911 responded that Scrancher is a non-party, foreign national and that the plaintiffs must serve Scrancher under the Hague Convention's rules for serving discovery on foreign individuals. Doc. 110 at 2-3, 6. Chargebacks911 argued that Scrancher is not a managing agent (1) because he works for a foreign affiliate of Chargebacks911, (2) because he focuses on sales and revenue, and (3) because he oversees no employees or corporate matters. Doc. 110-1 at 2-3, 5. Chargebacks911 otherwise agrees to the plaintiffs taking Scrancher's deposition but explains that Scrancher hired U.K. counsel and refuses to sit for a deposition unless instructed to do so by a U.K. court. Docs. 110 at 10, 110-1 at 4.

A May 16, 2024, endorsed order denies the motion to compel without prejudice and directs the plaintiffs to first take the depositions of the defendants Monica Eaton and Gary Cardone, who are Chargebacks911's CEO and former CEO. Doc. 117. The order grants the plaintiffs leave to renew their motion to compel after the depositions of Eaton and Cardone. Doc. 117. Nothing in the order determines whether Scrancher is a managing agent for Chargebacks 911.

On July 31, 2024, the plaintiffs moved for a Letter of Request to obtain Scrancher's deposition under the Hague Convention. Doc. 149. The plaintiffs provided a list of topics that would be covered in Scrancher's deposition. Doc. 149-2 at 13-14. Chargebacks911 responded and consented to the Letter of Request. Doc. 153. However, Chargebacks911 disputed that Scrancher was its managing agent and opposed the scope of topics three and thirteen. Doc. 153 at 2-4. An August 15, 2024,

2

order grants the plaintiffs' motion and finds that "Plaintiffs are entitled to seek testimony from Mr. Scrancher concerning all topics enumerated in Attachment A to the proposed letter request filed with Plaintiffs' Motion for Issuance of Letters Rogatory." Doc. 157 at 1-2, 14.

On November 1, 2024, the plaintiffs moved to extend the discovery deadline to complete four categories of discovery, including Scrancher's deposition. Doc. 180. Chargebacks911 responded and argued that the plaintiffs' efforts were not diligent. Doc. 185 at 3-6. This Court granted the motion, extended the deadline to take Scrancher's deposition to January 15, 2025, and found that "Plaintiffs have behaved diligently in attempting to acquire the four categories of evidence but matters beyond their control have delayed the process." Doc. 186. The Court ruled that no further extensions would be granted. Doc. 186.

On November 1, 2024, the plaintiffs renewed their motion to compel Scrancher's deposition. Doc. 179; Doc. 198. I heard oral argument on the motion on December 5, 2024. In support of the motion, the plaintiffs argue that Scrancher is Chargebacks911's managing agent. The plaintiffs further contend that the Hague Convention is not a viable process for obtaining Scrancher's deposition. Doc. 198 at 2, 12-14. After obtaining the U.K. court's order permitting Scrancher's deposition, Scrancher's U.K. counsel asked the U.K. court to set aside its order or to limit the topics of Scrancher's deposition on October 10, 2024. Doc. 198-1 at 62-86. The U.K. court is unlikely to hold a hearing on the matter until January 2025. Doc. 198 at 6; Doc. 177-3 at 2-3.

Although Scrancher's U.K. counsel proposed a consent order, Doc. 198-1 at 89-97, the parties cannot reach an agreement. The plaintiffs disagree with Scrancher's proposal, including his requirement that the plaintiffs cover all Scrancher's attorney fees for preparing for and attending his deposition, as well as Scrancher's narrowed list of deposition topics, which are narrower than the topics approved by this Court in its Letter of Request. Doc. 198 at 6; Doc. 198-1 at 89-97.

According to Chargebacks911, the plaintiffs fail to show that Scrancher is a managing agent. Doc. 189 at 11-16. Chargebacks911 argues that the Letter of Request implicitly concedes the managing agent issue by requesting the U.K. court's assistance on the basis that "Mr. Scrancher resides outside of this Court's territorial jurisdiction and cannot be compelled to testify at trial by subpoena."[1] Doc. 189 at 8 (quoting Doc. 157 at 7). Chargebacks blames the delay in obtaining Scrancher's deposition on the plaintiffs' failing to comply with U.K. procedure and failing to serve Scrancher's U.K. attorney. Doc. 189 at 8-11. Finally, Chargebacks911 argues that, despite attempts, Chargebacks911 cannot produce Scrancher for a deposition because of the undisclosed terms of his U.K. employment agreement and U.K. law. Doc. 189 at 18-19.

## II.    ANALYSIS

Under Rule 30(b)(1), Federal Rules of Civil Procedure, a party seeking

---

[1] At oral argument, Chargebacks911 characterized this as a lie to the U.K. court given the plaintiffs' position that Scrancher is a managing agent. However, nothing in that order determines whether Scrancher is a managing agent. Rather, this is simply an acknowledgment that Scrancher is outside this Court's subpoena power under Rule 45, Federal Rules of Civil Procedure.

deposition testimony from a corporate party "may notice the deposition of a specific employee of a corporate party only if that person is its officer, director, or managing agent." *In re Takata Airbag Prods. Liab. Litig.*, No. 15-02599-MD-MORENO, 2017 WL 8812735, at *2 (S.D. Fla. July 19, 2017). Similarly, a foreign employee may fall under Rule 30(b)(1) if the employee qualifies as an officer, director, or managing agent. *Brunson v. PHH Mortg. Corp.*, 342 F.R.D. 315, 320–21 (M.D. Fla. 2022). If the foreign employee is not an officer, director, or managing agent, then the examining party must issue a subpoena under the procedures of the Hague Convention to obtain the deposition testimony. *In re: Takata*, 2017 WL 8812735, at *2.

The examining party bears the burden of showing that the foreign employee qualifies a managing agent under Rule 30(b)(1). *In re: Takata*, 2017 WL 8812735, at *3. However, "[t]his burden is a modest one . . . because discovery rules are interpreted liberally." *Id.* A foreign employee's actual job responsibilities, and not just the employee's job title, determine whether the employee is a managing agent. *Procaps S.A. v. Patheon*, Inc., No. 12-24356-CIV, 2014 WL 352226, at *3 (S.D. Fla. Jan. 30, 2014). Even if an employee is not a managing agent for all purposes, the employee may qualify as a managing agent for a corporate activity, especially if the employee has oversight over that corporate activity and if the corporation's Rule 30(b)(6) witness cannot provide answers about that activity. *Id.*; *see also Brunson*, 342 F.R.D. at 322; *In re: Takata*, 2017 WL 8812735, at *3.

"[I]f an employee's status as a managing agent is a 'close question,' doubts are resolved in favor of the examining party, particularly when discovery on the issue is

not complete." *Id.*; *Calderon*, 287 F.R.D. at 633. A district court may determine preliminarily that a foreign employee is a managing agent for the purpose of a deposition and leave for trial the final determination of whether the employee can bind the corporation. *In re: Takata*, 2017 WL 8812735, at *3; *see also Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2008 WL 4487679, *2 (S.D. Fla. Sept. 29, 2008).

### A.     Scrancher is a managing agent of Chargebacks911 for the purpose of providing deposition testimony under Rule 30(b)(1).

Determining whether a foreign employee qualifies as a managing agent for the purpose of Rule 30(b)(1) is a fact-specific inquiry. *Calixto*, 2008 WL 4487679, *2. Both parties cite the following five-factor test:

> (1) whether the individual has general power to exercise discretion in corporate matters;
> (2) whether he or she can be expected to testify at the employer's request;
> (3) whether there are persons within the corporation with greater authority regarding the information sought;
> (4) the general responsibilities of the individual regarding the matters under litigation; and
> (5) whether the witness identifies with the interests of the corporation.

*Brunson v. PHH Mortg. Corp.*, 342 F.R.D. 315, 321 (M.D. Fla. 2022); Doc. 189 at 6; Doc. 198 at 7.

Here, the plaintiffs show that Scrancher is a managing agent of Chargebacks911's Value Added Program ("VAP"). Scrancher appears to have the general power to exercise discretion with respect to Chargebacks911's VAP referrals. Chargebacks911 claims that Scrancher is employed by a foreign affiliate called

6

Online Venture Program, which is not a party to this case. Docs. 189 at 12-13, 189-1 at ¶ 2. However, the evidence belies this argument. Attachments to the plaintiffs' motion show that Scrancher sent emails from a Chargebacks911 email account, b.scrancher@chargebacks911.com, to Chargebacks911's former CEO Cardone, Chargebacks911 employees, and its clients, with the signature block listing Scrancher's title as Chargeback911's "Vice President of Business Development." *See, e.g.*, Doc. 198-1 at 134.

The content of Scrancher's emails further suggest that he had the authority to confer with clients on behalf of Chargebacks911's VAP referral process. For example, Cardone sent an e-mail in March 2017 to clients and referred to Scrancher as Cardone's "right hand man" and as the clients' "GO TO MAN." Doc. 198-1 at 130. Cardone's e-mail explains that he and Scrancher would "work up a program we call VaP" to propose to the clients the following week. Doc. 198-1 at 130. Cardone also deferred to Scrancher's discretion on recommending clients to third-party broker Johnny DeLuca for VAP referrals and on whether to use a specific third-party for VAP services despite Eaton's mistrust of the third-party. Doc. 198-1 at 140, 143. E-mails between Scrancher, Chargebacks911's employees, and its clients show Scrancher consulting about VAP services and sending referrals to Johnny DeLuca. Doc. 198-1 at 134, 143-44, 146, 149-51, 153, 155. The plaintiffs also produce Chargebacks911's business records saying that Scrancher "is the only one that sells this service currently." Doc. 198-1 at 123.

Further, Cardone's and Eaton's deposition testimony supports a finding that

Scrancher worked independently of Cardone's supervision. Cardone testified that

when he was CEO at Chargebacks911 he would obtain clients and, once the clients

were in the system, Cardone would "walk away and let the team deal with it

literately [sic]." Doc. 198-1 at 109-110; Doc. 198-1 at 101. Cardone as CEO of

Chargebacks911 recognized Scrancher's authority as "Vice President of Business

Development" to exercise discretion over Chargebacks911's VAP referral process

with its clients. *Procaps*, 2014 WL 352226, at *4 (holding that although "titles are not,

in and of themselves, controlling," the foreign employees were managing agents

subject to Rule 30(b)(1) because the corporation's website identified them as primary

contacts, and they were included in emails with the corporation's management group

on the project that was the subject of the litigation).

Scrancher can be expected to testify on behalf of Chargebacks911. Contrary to

Chargebacks911's argument, the issue is not solely whether Scrancher consents to

testify. *In re Takata*, 2017 WL 8812735, at *5 ("[C]onsent is irrelevant to this analysis

because Plaintiffs are not attempting to subpoena Mr. Fukuda under Rule 45 . . . ;

instead, they are attempting to depose him under Rule 30(b)(1)."). Rather, the issue is

whether the foreign employee can be expected to testify because the employee

possesses the requisite knowledge and authority over the issues that gave rise to the

lawsuit. *Id.*; *see also Brunson*, 342 F.R.D. at 322 ("[A]s the employee who submitted an

ACDV response in connection with Plaintiff's credit reporting dispute, Mr. Tareen

can be expected to testify at PHH's request . . . and to be in the best position to testify

regarding the investigation of Plaintiff's credit reporting dispute and ACDV response,

8

which gave rise to this lawsuit.").

Chargebacks911 asserts that Scrancher cannot be expected to testify on the company's behalf because Chargebacks911 cannot force his compliance through, for example, firing or threatening to fire him. Doc. 185-2 at ¶ 16; Doc. 189 at 19. However, Chargebacks911 produces no copy of the employment agreement and fails to explain how U.K. law would otherwise block or hinder Chargebacks911 from producing Scrancher. *See Randall v. Offplan Millionaire AG*, No. 6:17-cv-2103-Orl-31TBS, 2019 WL 1003167, at *3 (M.D. Fla. Mar. 1, 2019) ("[T]he party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." (quoting *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993))). Rather, Chargebacks911 broadly argues that the company cannot threaten to terminate or terminate Scrancher's employment without facing repercussions. Chargebacks911 also fails to explain how an inducement short of terminating Scrancher's employment would violate his employment agreement or U.K. law.

The plaintiffs further demonstrate that Chargebacks911 has no employee with greater authority who can provide the information possessed by Scrancher. The plaintiffs received deposition testimony from Eaton, the current CEO, and Cardone, the former CEO, which failed to provide information about Chargebacks911's VAP program, its relationship to third-party broker Johnny DeLuca, and its client Brightree. Yet, as noted above, Scrancher's emails reveal that he is a primary conduit of information pertaining to Chargebacks911's referral process. Specifically,

Scrancher emailed Cardone in April 2017 recommending VAP for a client and said, "I can handle this guys unless there is anything further," to which Cardone replied that "[n]o one other than you me and minica [sic] who can solve issues like this." Doc. 198-1 at 134. This weighs in favor of finding that Scrancher is a managing agent of Chargebacks911's VAP referral process. *Brunson*, 342 F.R.D. at 322.

Additionally, Scrancher's responsibilities entail oversight of Chargeback911's VAP and client referrals. Chargebacks911 emphasizes that Scrancher's responsibilities entail sales and revenue and include no oversight of employees or corporate matters. Docs. 110-1 at 2-3, 5, 189 at 12-14. Yet, as noted above, Cardone referred to Scrancher as the "GO TO MAN" for clients on VAP, Doc. 198-1 at 130, and Chargebacks911's business records show that for VAP Scrancher was "the only one that sells this service." Doc. 198-1 at 123. Although the evidence cuts both ways, because Scrancher's responsibilities clearly entail managing Chargebacks911's VAP referrals, this factor should be resolved in favor of the plaintiffs. *See Calderon*, 287 F.R.D. at 632-33 ("[A]ll doubts are to be resolved in favor of the party seeking the depositions.").

Finally, Scrancher identifies with the interests of Chargebacks911. Here again, the issue is not whether Scrancher wishes to sit for a deposition. Rather, the issue more broadly is whether Scrancher's interests generally align with those of Chargebacks911. *Calixto*, 2008 WL 4487679, *3 (focusing on a former employee who retained some role in the corporation). Eaton's deposition testimony suggests that Scrancher's VAP referrals occurred in his personal capacity. Doc. 189 at 15-16; Doc.

198-1 at 102-03. However, Scrancher's e-mails show an alignment of Scrancher and

Chargebacks911's interests. For example, Cardone e-mailed Scrancher in June 2017

with the subject line "Re: vap solution," asked if Scrancher was interested in having

Chargebacks911 refer VAP services to a third-party, and said it was Scrancher's

"call" whether to engage the third-party referral to "split 50/50" the VAP referral.

Doc. 198-1 at 140. Thus, the plaintiffs present sufficient evidence of an alignment of

interests.

 Accordingly, the plaintiffs satisfy their "modest burden" of showing that

Scrancher is a managing agent for the purpose of Rule 30(b)(1). However, because of

the limited evidence presented on this issue and because Scrancher is the best person

to explain his status within the company, this managing agent determination is

provisional. *Calixto*, 2008 WL 4487679, *2 ("Furthermore, 'a determination that the

witness is a managing agent may be made provisionally ... while awaiting the

deposition testimony before determining whether the witness is an agent for purposes

of binding the corporation.'" (quoting *Schindler Elevator Corp. v. Otis Elevator Co.*, 2007

WL 1771509, at *3 (S.D.N.Y. June 18, 2007))); *In re Takata*, 2017 WL 8812735, at

*11 (quoting *Calderon*, 287 F.R.D. at 632). The parties may, with the benefit of

Scrancher's testimony, raise again for the purpose of trial Scrancher's ability to speak

on behalf of and bind Chargebacks911. *In re Takata*, 2017 WL 8812735, at *3.

### B. Principles of comity limit the scope and means of Scrancher's deposition.

Because the plaintiffs invoked the Hague Convention procedures,

Chargebacks911 argues that the plaintiffs cannot pursue Scrancher's deposition under Rule 30(b)(1). Doc. 189 at 8-11. Chargebacks911 provides no legal authority for this argument. The Hague Convention is neither a primary nor a mandatory process for procuring the testimony of a foreign national. *Calixto*, 2008 WL 4487679, at *4 ("[R]esort to the procedures for gathering evidence provided by the Hague Convention are optional and are not intended to strip American courts of their power to manage common pretrial proceedings such as depositions."). Instead, the Hague Convention "was intended to establish optional procedures that would facilitate the taking of evidence abroad." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. IA.*, 482 U.S. 522, 546 (1987).

That said, the plaintiffs have invoked the Hague Convention, and a matter remains pending in the U.K. court, with pending objections by Scrancher's U.K. counsel to the scope of this discovery. As instructed in *Aeropastiale*, "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." 482 U.S. at 546. Accordingly, an objection to "abusive" discovery by a foreign litigant "should therefore receive the most careful consideration." *Id.* "American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.*

Thus, Scrancher's objections to and proposed terms for proceeding with his

deposition deserve some consideration. *Aerospatiale*, 482 U.S. at 546; *In re Anschuetz & Co., GmbH*, 838 F.2d 1362, 1364 (5th Cir. 1988) ("[W]e emphasize that it is most important that the district court should consider, with due caution, that many foreign countries, particularly civil law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may even be offended by our pretrial procedures."); Doc. 198-1 at 89-97. *Aerospatiale* articulates no specific rule "to guide this delicate task of adjudication." 482 U.S. at 546. Neither have the parties argued specifically for or against imposing limits on Scrancher's deposition under U.K. law beyond pointing to Scrancher's U.K. counsel's general objections under U.K. Civil Procedure Rule 34. Doc. 189 at 3-4; Doc. 198 at 5-6.

Scrancher's objections include the proposed appointment of an examiner to oversee his deposition. Doc. 198-1 at ¶ 37. An appointment is unnecessary because my role is to provide such oversight, to the extent necessary. *See* 28 U.S.C. § 636(b). As with any dispute arising during a deposition, the parties may contact me about any issue that they are unable to resolve themselves during Scrancher's deposition. Furthermore, under Rule 28, Federal Rules of Civil Procedure, the deposition must occur before a person authorized either by federal law or by the law in the place of examination to administer oaths.

Scrancher raises concerns over the scope and relevance of the topics for Scrancher's deposition. Doc. 198-1 at ¶¶ 39, 51, 56, 57. For example, Scrancher's counsel argues that topic thirteen, "Global E-Trading LLC and Monica Eaton and Gary Cardone's dealings with Johnny De Luca," is too broad and is "not tied to any

13

time period." Doc. 198-1 at ¶ 57. However, this Court already reviewed and approved
the plaintiffs' proposed topics in granting the Letter of Request. Doc. 157 at 1-2, 14.
These topics appear narrowly and reasonably tailored to obtain information relevant
to the plaintiffs' claims and Scrancher's knowledge as Chargebacks911's managing
agent. Furthermore, by narrowing the deposition to a list of topics, the scope of
discovery is already narrower than that permitted under Rule 26(b)(1). Accordingly,
the plaintiffs must adhere to this list of topics during Scrancher's deposition. Both
Scrancher and Chargebacks911's counsel may object during the deposition as
provided under Rule 30(c)(2), including to the form and foundation of a question.

Scrancher seeks full and proper legal advice about his position before
providing a deposition. Doc. 198-1 at ¶ 53. Additionally, Scrancher requests copies of
the documents that the plaintiffs intend to rely upon during his deposition, which the
plaintiffs agree to provide. Doc. 198-1 at ¶¶ 40-41. Accordingly, the plaintiffs must
provide to Scrancher a copy of any document or exhibit about which the plaintiffs
intend to inquire no later than one week before the deposition.

Scrancher requests an accommodation for the time and location of his
deposition because of his personal circumstances and familial responsibilities. Doc.
198-1 at ¶ 48.  Accordingly, Scrancher's deposition must occur between 10:00 a.m.
and 2:45 p.m. (GMT), at an agreed-upon location convenient to Scrancher's
children's school. As for Scrancher's request for attorney's fees, Doc. 198-1 at ¶ 44,
the plaintiffs have already incurred considerable fees and costs in attempting to take
Scrancher's deposition. Accordingly, the parties shall bear their own costs and fees.

14

III.    CONCLUSION

The plaintiffs' renewed motion to compel, Docs. 177, 198, is **GRANTED IN**

**PART**. No later than January 15, 2025, Chargebacks911 must produce Ben

Scrancher for a deposition. The scheduling and conduct of the deposition must

proceed as directed in this order.

**ORDERED** on this 11th day of December, 2024.

_____

LINDSAY S. GRIFFIN
United States Magistrate Judge

15