## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

JANET SIHLER, Individually and On
Behalf of All Others Similarly Situated;
CHARLENE BAVENCOFF,
Individually and On Behalf of All
Others Similarly Situated,

Case No.: 8:23-CV-01450-VMC-LSG

*Plaintiffs*,

v.

GLOBAL E-TRADING, LLC DBA
CHARGEBACKS911, GARY EATON,
MONICA CARDONE,

*Defendants.*

## PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS

On January 13, 2025, Plaintiffs were informed for the first time that their vendor had discovered metadata showing that Mr. Scrancher had deleted selected messages from his conversations with Brightree. That export was obtained by the vendor for the first time on December 23, 2024, with restrictions preventing counsel from viewing it directly. That metadata shows that Mr. Scrancher deleted various selected messages just **one week** after CB911 was informed that this suit would be filed. Plaintiffs now request sanctions under Rule 37(e) against CB911.

## I.     FACTUAL BACKGROUND

### a) Mr. Scrancher Deletes Messages After CB911 Learns of a Federal Investigation

1

Chargebacks911 ("CB911") has long been under investigation. ████



████ Ex. 2 at CB911_SIHLER_0001522. ████

████

████ On the same day, a CB911 employee, Melissa Fitzsimmons, deleted Mr. Scrancher from a group conversation with Brightree Holdings. Ex. 3 at 9.

CB911 previously told the Court that it notified Mr. Scrancher to preserve documents relating to the FTC action in "June 2020." Dkt. 74-7, ¶ 4-5. But on May 28, 2020, ████, Mr. Scrancher deleted four Skype messages he had sent from a group chat in which he had introduced David Flynn to Johnny DeLuca. Mr. Scrancher sent three of these messages on September 20, 2019, and he sent a fourth on September 23, 2019. Plaintiffs obtained a copy of this chat from Microsoft. Microsoft's production shows four blank messages from Mr. Scrancher in the dates in September 2019. Ex. 4 at 173. The chat shows eight placeholders attributed to Mr. Scrancher. Four placeholders are dated May 28, 2020, the day Mr. Scrancher deleted the chats, and four placeholders show the original message times. *Id.* at 197-98. Immediately after he deleted these messages, Mr. Scrancher left this Skype conversation. ████

████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ In a screenshot of this same conversation Mr. Flynn took in April 2024, Mr. Scrancher is shown creating and naming this conversation. Ex. 5 at 11236. None of the four deleted messages from Mr. Scrancher on September 20, 2019 and September 23, 2019 are visible. *Id.* at 11237.

It is crucial that Mr. Scrancher was the "initiator" of the command to remove himself from this conversation. CB911 previously represented to the Court as to another conversation that "[i]t appears that Mr. Scrancher and Mr. Figuero were both deleted from the chat at issue with the Brightree individuals." Dkt. 74 at 12 n.4. This passive-voice representation did not inform the Court that Mr. Scrancher had actively **deleted himself** from this particular conversation. CB911 also represented that leaving a Skype conversation "clears your copy of messages in a conversation"—which means that Mr. Scrancher deleted his own copy of the group chat with Mr. DeLuca by leaving it on May 28, 2020. Dkt. 74 at 4.

b) Scrancher Deletes More Messages After CB911 Learns of This Lawsuit

On May 9, 2023, counsel for Plaintiffs e-mailed a demand letter to Corey Roush, then lead counsel for Defendants in the FTC action. Ex. 6, 7. The e-mail attached copies of Skype conversations between Mr. Scrancher and Brightree

3

Holdings, as well as a copy of a transcript of a deposition of Brightree employee Mike Campbell discussing those conversations. Decl. of K. Kneupper at 2. The e-mail listed all three Defendants and stated: "I am representing parties in a class action lawsuit under the Racketeer Influenced and Corrupt Organizations Act (RICO) **which we intend to file against those same clients shortly**." Ex. 6 (emphasis added). The attached demand letter stated: "We intend to file a RICO class action lawsuit against Chargebacks 911, Gary Cardone, and Monica Eaton." Ex. 7 at 2. It then spent several full pages quoting conversations between Mr. Scrancher and Brightree Holdings on Skype. *Id.* at 2-4. It is indisputable that CB911 was aware that this lawsuit would be filed as of May 9, 2023—and also aware that Mr. Scrancher's Skype chats with Brightree would be key evidence in that lawsuit.

But one week later, Mr. Scrancher again selectively deleted messages from his Skype account. On May 16, 2023, Mr. Scrancher deleted one message from his conversation with Mr. Flynn. Decl. of J. Grimes, Ex. B. The next day, May 17, 2023, Mr. Scrancher went back and deleted an additional three messages. *Id.* The deleted messages with Mr. Flynn were sent in December 2019 – squarely in the middle of the events at issue in this lawsuit. Decl. of J. Grimes at ¶ 10-20; ex. B; decl. of C. Popkin at ¶ 12-41. None of these messages were in the original screenshots Mr. Flynn took of his conversation with Mr. Scrancher, and their substantive content was not in his .JSON file or in the Microsoft production. Ex. 8, 9.

Mr. Scrancher also deleted four specific messages between himself, Mr. Flynn, and two other individuals. Mr. Flynn produced an export of this conversation as of May 3, 2024 whose only content was: "No Messages." Ex. 10. Mr. Flynn's .JSON file contained an entry for the conversation which showed eight entries with no contents—four from messages sent by Mr. Scrancher on 12/4/2019, and four from Mr. Scrancher on 5/16/2023 (on that day, five hours apart). Ex. 10. The metadata from the .JSON file showed that the four messages on 12/4/2019 contained "deletetime" stamps, indicating they were deleted, and those times corresponded to the empty placeholder messages on 5/16/2023. Decl. of J. Grimes at ¶ 10-20; ex. B; decl. of C. Popkin at ¶ 32-35, 42-44. In other words, on 5/16/2023 Mr. Scrancher deleted messages that he had sent in December 2019. The information recovered by Epiq is explained in the Declaration of John Grimes. Plaintiff further submits a declaration from Cole Popkin, an expert who has also reviewed the .JSON file, as well as the data that was produced by Microsoft. Mr. Popkin's analysis confirms that Mr. Scrancher deleted his messages because only the message sender can delete it. Mr. Popkin's metadata analysis confirms the exact time of the deletions, which are not recoverable. Decl. of C. Popkin at ¶ 9-11.

### c) Plaintiffs Diligently Seek Copies of Scrancher's Skype Chats

Plaintiffs obtained partial copies of Mr. Scrancher's Skype chats with Brightree from a subpoena in the California class action. Decl. of K. Kneupper at ¶

2. The history of this has been outlined in detail to the Court previously. Dkt. 67 at 2-5. In this case, on November 3, 2023, Plaintiffs served RFP's seeking relevant Skype chats from CB911 employees. *Id.* at 2. Defendants claimed they would make a "rolling production," but never did so. *Id.* at 3-4. After several months Defendants claimed there were no relevant Skype chats to produce. *Id.* at 4-5. On March 3, 2024, Plaintiffs moved to compel production of Mr. Scrancher's Skype chats. Defendants claimed that Mr. Scrancher had been removed from the conversations and no longer had access, and CB911's lead counsel submitted a sworn declaration stating Scrancher "confirmed that [he] did not recall ever individually deleting any messages with Brightree individuals." Dkt. 74-6, ¶ 13.

On April 11, 2024, the Court ordered that Mr. Scrancher's Skype account be examined by an independent examiner. Dkt. 93. But Mr. Scrancher's attorney refused to allow the court-ordered examination, claiming – **<u>falsely</u>** – that "[u]nder the terms of Mr. Scrancher's employment and as a matter of English law," he had no obligation to allow access to his Skype account. Ex. 12 at 5. As explained herein, the terms of Mr. Scrancher's employment are the exact opposite: that he **<u>must</u>** provide CB911 access to his personal devices and accounts upon request to obtain company information. When Plaintiffs asked CB911 to slightly modify the protective order to allow an English attorney to review these documents to provide a legal opinion on Mr. Scrancher's employment under English law, CB911

refused. Ex. 13. CB911's basis was that "Mr. Scrancher is cooperating with the process" – even though he was flatly refusing to cooperate. *Id.* Plaintiffs proceeded to subpoena Microsoft in June 2024, *see* dkt. 178 at 7-11, after Mr. Scrancher's refusal to comply with the court order. Plaintiffs finally received a copy of an exported .JSON file from Mr. Flynn on December 23, 2024, as well as a production from Microsoft on January 21, 2025. Decl. of K. Kneupper at ¶ 3.

### d) Plaintiffs Diligently Sought a Deposition of Mr. Scrancher

Plaintiffs had also long been seeking a deposition of Mr. Scrancher to ask him about his conversations and dealings with Brightree. *See* dkt. 178 at 3-5 (outlining history). At CB911's request, the Court required Plaintiffs to first depose Mr. Cardone and Ms. Eaton. Dkt. 117. The Court was forced to sanction Ms. Eaton after she refused to show up and thus further delayed Mr. Scrancher's deposition. Dkt. 175. While CB911 previously told the Court it had no ability to get Mr. Scrancher to testify, dkt. 110 at 10-11, he finally appeared on January 14, 2025 after the Court issued an order compelling CB911 to produce him. At Mr. Scrancher's deposition, Defendants shut down questioning about Mr. Scrancher's Skype account and instructed Mr. Scrancher not to answer the questions. Ex. 14. Mr. Scrancher was instructed not to answer questions about whether he or CB911 searched his Skype account. *Id.* at 247:5 – 250:20. He was allowed to answer several questions about whether he deleted specific messages in conversations with David

7

Flynn of Brightree, to which he responded: "It's from 2019. I don't know." *Id.* at 252:16 – 252:3. Defendants' counsel instructed him not to answer further questions about whether he deleted messages with Mr. Flynn. *Id.* at 253:4 – 258:14.

## II. ARGUMENT

### a) Global e-Trading, LLC is Responsible for Spoliation by Mr. Scrancher

Federal courts around the country have recognized that "an employee's misconduct with regard to spoliation can be imputed to an employer." *Colonies Partners L.P. v. Cty. of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 U.S. Dist. LEXIS 56922 at *25 (C.D. Cal. Feb. 27, 2020); *see also Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 522 n.19 (D. Md. 2009) ("A party may be held responsible for the spoliation of relevant evidence done by its agents."); *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, No. 3:06-CV-2234, 2008 U.S. Dist. LEXIS 49911 at *21 (M.D. Pa. June 25, 2008); *Weride Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 U.S. Dist. LEXIS 72738 at *45 (N.D. Cal. Apr. 16, 2020) ("Courts should apply the general principles of agency law to determine whether to impose sanctions against a party for spoliation by its employees."). This is because "[a] corporation is an artificial entity that can only act through its officers, agents, and employees." *Latele TV, C.A. v. Telemundo Communs. Grp., LLC*, 9 F.4th 1349, 1357 (11th Cir. 2021).

"It is the party's responsibility to ensure that its agents do not spoliate evidence, and a party cannot defeat a spoliation claim by arguing that the agent's

spoliation was not done in furtherance of the party's business." *Schlossberg v. Abell (In re Abell)*, Nos. 13-13847-TJC, 14-00417, 2016 Bankr. LEXIS 1690 at *63 (Bankr. D. Md. Apr. 14, 2016); *see also Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1156 (D. Utah 2011). Multiple federal courts have also held that when an employee uses an electronic device in the course of their employment and in furtherance of their employer's business, the employer is liable for spoliation on that device. *Nucor Corp. v. Bell*, 251 F.R.D. 191, 198-99 (D.S.C. 2008) ("Bell was SeverCorr's agent and, because the laptop was his work computer, he certainly used the computer in the course of his employment and 'in furtherance of the master's business.' SeverCorr is therefore liable for Bell's spoliation.") (internal citations omitted); *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, Civil Action No. 2:19-cv-324 (RCY), 2022 U.S. Dist. LEXIS 51658 at *26 (E.D. Va. Mar. 22, 2022); *Simon Prop. Grp., Inc. v. Lauria*, No. 6:11-cv-01598-Orl-31KRS, 2012 U.S. Dist. LEXIS 184638 at *14-15, 24-25, 28 (M.D. Fla. Dec. 13, 2012) (holding companies responsible when executive threw laptop in a river and imposing default).

There are two separate ways CB911 is responsible for Mr. Scrancher's conduct. First, it was within the scope of his employment under Florida law. Second, even if the conduct was not within the scope of his employment, CB911 was negligent in supervising Mr. Scrancher and is thus responsible for his actions.

"Conduct is within the scope of employment if it occurs substantially

within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration." *McGhee v. Volusia Cty.*, 679 So. 2d 729, 732 (Fla. 1996) (quoting *Hennagan v. Department of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla. 1st DCA 1985)). Florida law "does not require that the servant's only motivation be to help his or her employer; the motivation need only be partial." *Genzmer v. Pub. Health Tr.*, 219 F. Supp. 2d 1275, 1281 (S.D. Fla. 2002). "It is well-settled that an act is within the scope of employment even if it is 'a crime, was not authorized by the employer, or was forbidden by the employer.'" *McKenzie-Wharton v. United Airlines, Inc.*, No. 8:15-cv-114-17MAP, 2016 U.S. Dist. LEXIS 130604 at *13 (M.D. Fla. Sep. 22, 2016) (quoting *Blount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1372 (S.D. Fla. 1996)); *see also Odom v. United States*, No. 3:22cv19453-MCR-HTC, 2022 U.S. Dist. LEXIS 240926 at *5-6 (N.D. Fla. Dec. 23, 2022).

"Employers have been held liable when employees commit torts outside the scope of employment." *Scelta v. Delicatessen Support Servs.*, 57 F. Supp. 2d 1327, 1340 (M.D. Fla. 1999). The Restatement of Agency outlines four exceptions to the scope of employment requirement, one of which is if "the master was negligent or reckless." *Id.* The Florida Supreme Court has expressly adopted this as the law of agency. *Malicki v. Doe*, 814 So. 2d 347, 361 n.14 (Fla. 2002). The master is responsible

for a servant acting outside the scope of employment where the servant "is using a chattel of the master," and the master "knows or has reason to know that [he or she] has the ability to control [his or her] servant," and "knows or should know of the necessity and opportunity for exercising such control." *Id.*

It is dispositive of both of these agency law questions that CB911 █████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████

CB911 also produced ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

CB911's exercise of control over its employees' personal Skype accounts continued well into the period when CB911 was refusing to collect such documents.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

There can be no doubt that CB911 is responsible for Mr. Scrancher's conduct.

Its employees ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ Mr. Scrancher was not using Skype to

communicate with Brightree on a personal lark—he was directed to do so by

CB911's own manuals. His deletions were at least partly for CB911's benefit,

because they hid selected information which Mr. Scrancher (and CB911) knew

would be at the heart of this lawsuit. While CB911 has been telling this Court that

Mr. Scrancher was unwilling to provide discovery to avoid submitting to U.S.

jurisdiction, dkt. 74 at 12 n.3, he has simultaneously been participating in a lawsuit

in state court in Pinellas County over the corporate reorganization of CB911. This is because Mr. Scrancher is not just a VP, but the trustee of the Cardone 2017 Irrevocable Trust, which controls an interest in CB911. Ex. 21.

Under the separate Restatement exception, CB911 was negligent in supervising his use of his Skype account. It knew it had the ability to control these Skype messages (because CB911 wrote the policies, manuals, and contract). It knew of the necessity to do so, because on May 9, 2023, Plaintiff informed CB911 that Mr. Scrancher's Skype chats with Brightree were at the heart of the case. He was using the company's property — ███████████████████████████ ████████████████████████. And yet CB911 waited until **November 2023** to even begin any search of its employee's Skype accounts — based on the flimsy excuse that it had no control over them. Dkt. 74 at 4-5. CB911 has never produced **any** Skype chats in this matter based on this excuse, even though its employees use Skype for both internal and external communication. Instead, CB911 fought tooth-and-nail against any discovery remotely relating to Mr. Scrancher.[1]

**b)      CB911's Conduct Meets the Threshold for Rule 37(e) Sanctions**

Rule 37(e) governs sanctions for spoliation of electronically stored information ("ESI"). "[F]our threshold elements must be present for Rule 37(e) to

---

[1] Plaintiffs lacked confidence that Mr. Scrancher would ever provide his unedited Skypes, despite the Court's order, and pursued obtaining them from Mr. Flynn and Microsoft.

apply: (1) there must have been a duty to preserve ESI; (2) the ESI must have been lost or destroyed; (3) the ESI must have been lost as a result of the party's failure to take reasonable steps to preserve it; and (4) the ESI must not have been restorable or recoverable through additional discovery." *Doe v. Willis*, No. 8:21-cv-1576-VMC-CPT, 2023 U.S. Dist. LEXIS 64370 at *15 (M.D. Fla. Apr. 12, 2023).

### 1) CB911 Had a Duty to Preserve Mr. Scrancher's Skype Chats

The 11th Circuit has stated in unpublished opinions that "the duty to preserve arises when litigation is 'pending or reasonably foreseeable' at the time of the alleged spoliation." *Ala. Aircraft Indus. v. Boeing Co.*, No. 20-11141, 2022 U.S. App. LEXIS 4039 at *38-39 (11th Cir. Feb. 14, 2022) (unpublished) (collecting cases); *see also United States ex rel. King v. Dse, Inc.*, No. 8:08-CV-2416-T-23EAJ, 2013 U.S. Dist. LEXIS 22245 at *22 (M.D. Fla. Jan. 17, 2013). The knowledge of a corporation's agents is imputed to the corporation under basic agency law. *See Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 378 (7th Cir. 2010). On May 9, 2023, CB911's lead counsel on the related FTC matter (and current lead counsel here) was notified that this lawsuit would be filed "shortly," and was also notified that Skype chats between Mr. Scrancher and Brightree would be at the core of those allegations. This knowledge of its agent—hired by the company to defend against the FTC's allegations that VAP was unlawful—is thus imputed to CB911 as of this date. Knowledge can further be inferred by Mr. Scrancher's sudden decision one

week later to begin deleting Skype chats with Brightree from four years earlier.

### 2) The ESI Has Been Lost or Destroyed

CB911 previously represented to the Court that Mr. Scrancher's Skype messages in his account had been destroyed, which it claimed was due to either (1) him being removed from the conversations, or (2) because Microsoft automatically deletes all Skype messages after two years. Dkt. 74 at 4, 12. While Mr. Scrancher's chats are gone, productions by third parties (including Microsoft) make clear that CB911's prior explanations as to why the chats are gone were false: Microsoft did, in fact, retain Skype messages from more than 2 years ago, and Mr. Flynn was able to access messages from 2019 in 2024. And Mr. Scrancher remained a member of several of the chats. The messages are gone only because Mr. Scrancher specifically deleted them. Mr. Popkin, a digital forensics expert, has confirmed that once a sender deletes a Skype message the content of the message is lost and cannot be retrieved. Decl. of C. Popkin at ¶ 8-11. And **none** of the productions to date, from any party, include the content of the deleted messages.

### 3) CB911 Failed to Take Reasonable Steps to Preserve the Messages

The third factor is whether the ESI was lost because CB911 failed to take reasonable steps to preserve the messages. Courts have found this factor satisfied where the deletion was not automatic or part of a routine process, because "[a]ny preventative measure would have achieved preservation in these circumstances."

16

*Tripp v. Walmart, Inc.*, No. 8:21-cv-510-WFJ-SPF, 2023 U.S. Dist. LEXIS 12867 at *21-22 (M.D. Fla. Jan. 25, 2023). This requirement is satisfied in two ways here. First, because Mr. Scrancher was CB911's agent, CB911 is responsible for his intentional destruction of the evidence. Second, because CB911 was under a duty to preserve evidence as of May 9, 2023, it should have (but failed to) preserve the Skype chats. It knew as of that date that a lawsuit would be filed and Mr. Scrancher's Skype chats would be at the center of this lawsuit, but did not take any steps at all to preserve the messages. The Court has already concluded that CB911's "inquiry was insufficient" into Mr. Scrancher's chats. Dkt. 93 at 2.

Indeed, CB911 has previously told the Court that even after it received RFP's seeking its employees Skype chats in **November 2023**, it still did not conduct a search for them, let alone make any effort to preserve them. Dkt. 74 at 4-5. This was because it had previously discussed Skype chats with the FTC in a separate lawsuit, and had made its own unilateral decision that it did not control them and did not have to preserve them. *Id.* CB911 has never produced any Skype chats at all in this case, even from current employees besides Mr. Scrancher who were known to have chatted with Brightree. *Id.*

CB911's prior excuses to the Court have been proven false. The Skype chats were not automatically deleted after two years, dkt. 74 at 12, because Mr. Flynn, Mr. Campbell, and Microsoft all produced messages older than two years. Mr.

Scrancher was not booted from the chats—he remained in many of them according to what Mr. Flynn produced. *See, e.g.*, ex. 8 at 17. The chat he left was one in which he removed himself and initiated the command—shortly after he deleted messages. And its excuse that it had no control over these Skype chats is belied by its policies, its Employee Handbook which allows it ███████████████████ ████████████████████, and its contract with Mr. Scrancher. CB911 did not even ask its employees to voluntarily preserve these messages

### 4) The ESI Could Not Be Replaced Through Additional Discovery

Rule 37(e) applies only if the ESI "cannot be restored or replaced through additional discovery." The law is unclear which party bears the burden on this issue, as explained in *Doe v. Willis*, 2023 U.S. Dist. LEXIS 64370 at *23-24. The *Doe* court did not reach the issue, but expressed concern about placing that burden on the non-spoliating party. Other courts have agreed. *Ahrens Enters. v. Winning*, No. 18-80650-Civ-Bran, 2019 U.S. Dist. LEXIS 240918 (S.D. Fla. Apr. 18, 2019).

Plaintiffs have been faced with piecing together a puzzle—but as in *Doe*, Plaintiffs' efforts would satisfy that burden anyway. "Courts have found that a party has made a good-faith effort to replace or restore ESI when he has issued subpoenas, engaged in forensic analysis, or sent discovery requests encompassing the documents 'in an effort to recover what [a plaintiff] destroyed.'" *Paul v. W. Express, Inc.*, No. 6:20-cv-51, 2023 U.S. Dist. LEXIS 50293 at *15 (W.D. Va. Mar. 23,

2023) (quoting *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-cv-324, 2022

U.S. Dist. LEXIS 51658, 2022 WL 853626, at *6 (E.D. Va. Mar. 22, 2022)). All of this

has occurred here, as described *supra*. Mr. Flynn produced screenshots of his

conversations with Mr. Scrancher, and provided a .JSON file as well which was

subject to a forensic analysis by two third party companies at Plaintiffs' expense.

Microsoft was forced to produce the version of the messages in its custody after a

lengthy effort by Plaintiffs to subpoena them. Plaintiff sought, and obtained, an

order from the Court that Mr. Scrancher allow his Skype account to be examined

by a third party — which both he and CB911 refused to comply with. Plaintiff

deposed both Mr. Flynn and Mr. Scrancher. If the deleted messages still existed,

they should have been in what Microsoft produced (as Microsoft would have the

most complete record). It is unclear what else Plaintiffs could have done, but even

courts that have denied sanctions on this basis have declined to hold that Plaintiffs

must go to the ends of the earth — instead holding that they must make "some"

effort and must "try." *Deligdish v. Bender*, No. 6:23-cv-417-DCI, 2024 U.S. Dist.

LEXIS 151268 at *14-16 (M.D. Fla. Aug. 23, 2024).

### c)    Severe Sanctions Are Warranted Under Rule 37(e)(2)

Once the threshold requirements are met, Rule 37(e) imposes "a two-tiered

sanctions regime" under 37(e)(1) and 37(e)(2). *Skanska USA Civil Se. Inc. v.

Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023). While Rule 37(e)(1) focuses on

19

whether Plaintiffs have been prejudiced, Rule 37(e)(2) focuses on whether Defendant had an intent to deprive the Plaintiff of the ESI that was destroyed. *Id.* If the Court finds such intent to deprive, more severe sanctions are justified, and there is an inference of prejudice to Plaintiff. *Id.* "The rule does not place a burden of proving or disproving prejudice on one party or the other." Rule 37, advisory committee notes (2015 Amendments).

### d)    CB911 Had an Intent to Deprive Plaintiff of the Deleted Chats

The threshold question for which part of Rule 37 to apply is whether there was intent to deprive by CB911. If the Court agrees with Plaintiffs as to the agency law issues, this inquiry is quite simple. Because Mr. Scrancher had an intent to deprive, so did CB911. The timing of the deletions by Mr. Scrancher makes it difficult to conclude otherwise: several shortly after ███████████████, and another round of deletions shortly after Plaintiffs' demand letter in this case. The fact that they were selective deletions of specific messages – and the 2023 deletions were from conversations not involving Brightree employee Mike Campbell— bolster this further. Plaintiffs' demand letter made clear that Mr. Campbell was the source of the conversations in their possession, and even attached a full transcript of his deposition from the California lawsuit. Ex. 7. The intentional destruction of these selected messages "gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its

destruction." *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009).

Even if the Court disagrees on the agency law question, CB911's own inaction amounts to intent to deprive. In *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023), the 11th Circuit considered for the first time the new Rule 37(e) and held that "intent to deprive" under Rule 37(e)(2) "is the equivalent of bad faith in other spoliation contexts." It continued: "In this Circuit's spoliation precedents, bad faith 'generally means destruction [of evidence] *for the purpose of hiding* adverse evidence.'" *Id.* (quoting *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020)) (brackets and emphasis in original). This standard "is more than negligence or even gross negligence." *Id.*

In *Skansa*, the 11th Circuit affirmed a finding of intent to deprive on far less serious facts than here. There, after a company was made aware of potential litigation, the company "failed to back up the custodians' text messages and suspend its destruction policies." *Id.* at 1313. "[T]he company 'took no action' to educate its custodians and administrators about the litigation hold and 'made no effort' to collect its custodians' cell phone data until at least seven months after the litigation hold was in place." *Id.* The 11th Circuit noted that even though the company was "a sophisticated entity," it "did not bother to take the most fundamental of precautions—starting with backing up the custodians' cell phones and suspending its policy of wiping those phones." *Id.* at 1313. It then affirmed the

imposition of default judgment as a sanction. *Id.* at 1314.

Crucially, *Skansa* expressly rejected arguments that imposition of a default judgment under Rule 37(e) requires an affirmative act, which some courts had held in earlier cases. The 11th Circuit held this "flouts both the text of Rule 37 and our bad-faith caselaw." *Id.* at 1314. "Our caselaw on spoliation also shows that failures to act can be just as harmful as affirmative acts of destruction." *Id.* Even if CB911 is not held responsible for Mr. Scrancher's acts, it is certainly responsible for its own. Its refusal to preserve **any** Skype messages from **any** employees until November 2023 cannot be reconciled with its Employee Handbook, IT policies, and contracts. CB911 cannot tell the Court it had no control over Skype accounts used by its employees when it was simultaneously ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ Ex. 19 at 22. An employer has control over data if it has a contract with an employee stating that it does (or even if it is merely customary). *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708-Orl-40TBS, 2015 U.S. Dist. LEXIS 30460 at *10-11 (M.D. Fla. Mar. 12, 2015); *Wooden v. Barringer*, No. 1:16-CV-00378-WTH-GRJ, 2017 U.S. Dist. LEXIS 183170 at *17 (N.D. Fla. Nov. 6, 2017) (collecting cases). *Selectica* held that a party is not permitted to assert lack of control unless it has first contacted the employee and asked them to cooperate. *Id.*

### e)    Default Judgment is the Appropriate Sanction

If CB911 had an intent to deprive, three sanctions are suggested by Rule 37(e)(2): a presumption that the lost information was unfavorable to the party, an adverse jury instruction, or a default judgment. As in *Skansa*, CB911 has no "cogent explanation" for its refusal, which warrants an inference of bad faith, and the same sanction of default judgment. 965 F.3d at 1303. A recent 11th Circuit decision to affirm imposition of default as a sanction makes this clear. In *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1377 (11th Cir. 2024), the 11th Circuit confronted a defendant who tried many of the same strategies that CB911 tries. It tried to shift the blame onto its agents (its attorneys). But "[t]his argument is wrong several times over." *Id.* at 1378. "[I]t is generally 'not an abuse of discretion to charge [parties] personally with 'the consequences of the acts or omissions of their freely selected agent.'" *Id.* While Mr. Scrancher certainly bears blame, that hardly absolves CB911, which chose him as its agent (and retains him as such to this day). As explained *supra*, he has even continued to act as a trustee for a family trust which owns and controls part of CB911's voting shares.

The defendant's argument that lesser sanctions should have been imposed was likewise unavailing: "[w]hen lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Id.* at 1379 (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542

(11th Cir. 1993)). The damage done to the judicial process justified the default. *Id.* at 1386. "The Eleventh Circuit has affirmed dismissal sanctions—and even reversed a district court for failing to impose dispositive sanctions—where, as here, a plaintiff ignored a defendant's request to inspect key evidence and instead caused or allowed that evidence to be destroyed." *De Los Santos v. Johnson & Johnson*, No. 2:21-cv-01208-LSC, 2024 U.S. Dist. LEXIS 140331 at *27 (N.D. Ala. Aug. 7, 2024). Part of the rationale behind default as a sanction for spoliation is not just to correct prejudice, but to "send a strong message to other litigants, who scheme to abuse the discovery process and lie to the Court, that this behavior will not be tolerated and will be severely sanctioned." *Krumwiede v. Brighton Assocs., L.L.C.*, No. 05 C 3003, 2006 U.S. Dist. LEXIS 31669 at *31-32 (N.D. Ill. May 8, 2006).

A jury instruction or a presumption are inadequate to address the damage done to the truth-seeking process here. Mr. Scrancher has deleted relevant evidence in response to not only this lawsuit, but a federal investigation. CB911's response – to fight all efforts to obtain discovery from Mr. Scrancher, and to cavalierly disclaim any and all responsibility to even attempt to preserve Skype chats from its employees – shows no acceptance of responsibility whatsoever. And the damage done here is not just to Plaintiffs' claims against CB911. There are two other defendants – and Plaintiffs, the Court, and the jury will never know whether the deleted messages also implicated Mr. Cardone or Mr. Eaton, and an instruction

as to CB911 does not cure the prejudice the company created as to the claims
against Mr. Cardone and Mr. Eaton. And crucially, the spoliation was only
discovered in the last few days of fact discovery, leaving Plaintiffs currently
hamstrung as to any way to present this evidence to a jury. Attorneys representing
Defendants instructed Mr. Scrancher not to answer questions about it. It was
discovered after the deadline for expert witnesses (which will likely force Plaintiffs
to file a separate motion to create new expert reports as to Mr. Cardone and Ms.
Eaton, even if CB911 is defaulted). The spoliation has not only rendered the truth-
seeking process impossible, but has created repeated issues for the Court's
scheduling orders. A message must be sent that this will not be tolerated.

   **f)      Severe Sanctions Would Be Warranted Under Rule 37(e)(1)**

   If the Court does not find intent to deprive, it must decide whether there is
prejudice to invoke Rule 37(e)(1). The standard is not strict. *Se. Mech. Servs. v.
Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009). As explained *supra*, prejudice
here is clear. The court "may order measures no greater than necessary to cure the
prejudice" under that portion of the rule. There must be some method of
presenting these deletions to the jury for consideration as to all three Defendants
– which there currently is not, because no expert or witness has been able to testify
about them. Whether through instructions, argument, or otherwise, at a minimum
Plaintiffs must be given some vehicle to present this to the jury.

Date: January 15, 2025

Respectfully submitted,

/s/ Kevin Kneupper

Kevin M. Kneupper

**KNEUPPER & COVEY, PC**
Kevin M. Kneupper, Esq. (pro hac vice)
kevin@kneuppercovey.com
A. Lorraine Weekes (pro hac vice)
lorraine@kneuppercovey.com
17011 Beach Blvd Suite 900,
Huntington Beach, CA 92647
Office: 657-845-3100

A. Cyclone Covey, Esq. (pro hac vice)
Cyclone@kneuppercovey.com
4475 Peachtree Lakes Dr.
Berkeley Lake GA, 30096
Office: 657-845-3100

Anthony C. Sampson, Esq. (pro hac vice)
Anthony@kneuppercovey.com
8911 North Capital of Texas Hwy,
Suite 4200, No. 1173
Austin, TX 78759
Office: 657-845-3100

**KIBBEY WAGNER PLLC**
Jordan Wagner, Esq. (SBN 14852)
73 SW Flagler Ave
Stuart, FL 34994-2140
Office: 772-444-7000
jwagner@kibbeylaw.com

*Attorneys for Plaintiffs Janet Sihler and Charlene Bavencoff and the Class*

## **LOCAL RULE 3.01(G) CERTIFICATION**

I certify that Plaintiffs' counsel has attempted to confer with Defendants'

counsel concerning this motion in good faith.

/s/ Kevin M. Kneupper

Kevin M. Kneupper

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been

furnished by the Court's CM/ECF electronic mail system, on this 15th day of

January, 2025, to all counsel of record.

/s/ Kevin M. Kneupper

Kevin M. Kneupper