# EXHIBIT 11

**Short Message Report**

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 8 | Date Range: 12/4/2019 - 5/16/2023 |

**Outline of Conversations**

 **19:b1906c3dbf2149ad96bc26b84429b8e1@thread.skype** • 8 messages between 12/4/2019 -
5/16/2023 • b.scrancher • hgandycurle • marcconway • xcellent.choice

Flynn_Skype_00006

**Messages in chronological order** (times are shown in GMT -05:00)

**19:b1906c3dbf2149ad96bc26b84429b8e1@thread.skype**

| | | |
|---|---|---|
| B | **b.scrancher** | 12/4/2019, 3:51 PM |
| B | **b.scrancher** | 12/4/2019, 4:02 PM |
| B | **b.scrancher** | 12/4/2019, 4:02 PM |
| B | **b.scrancher** | 12/4/2019, 4:03 PM |
| B | **b.scrancher** | 5/16/2023, 3:50 PM |
| B | **b.scrancher** | 5/16/2023, 3:50 PM |
| B | **b.scrancher** | 5/16/2023, 9:04 PM |
| B | **b.scrancher** | 5/16/2023, 9:05 PM |

# EXHIBIT 12



Kevin Kneupper <kevin@kneuppercovey.com>

---

### Sihler v. Global E-Trading, LLC, et al. - Request for Ben Scrancher's contact information

**Tim Buckingham** <Tim.Buckingham@buckinghamllp.com>                                            Fri, May 24, 2024 at 10:51 AM
To: Jonathan Collins <jonathan.collins@buckinghamllp.com>, Lorraine Weekes <lorraine@kneuppercovey.com>
Cc: Kevin Kneupper <kevin@kneuppercovey.com>, Cyclone Covey <cyclone@kneuppercovey.com>, "Roush, Corey" <croush@akingump.com>

Dear Ms Weekes

We are writing in connection to the above matter, and in particular to your request for an expert to be given access to Mr Scrancher's Skype account and personal computer.

You have known that this firm represents Mr Scrancher since you were informed of the same by Defendants' counsel on 26 April. Shortly after this firm was instructed, also on the 26th April, you wrote an email to this firm asking for Mr Scrancher's telephone number and contact information so that this could be passed to the inspector, or alternatively for Mr Scrancher's availability the following week for the proposed inspection along with the address of where any computer Mr Scrancher uses to access Skype is located and can be inspected.

On the 29th April, Defendant's counsel wrote to you indicating that your proposed search approach, in particular to inspect the computer of Mr Scrancher, was not consistent with the order that had been made by the Judge. This firm was not initially on copy in respect of that email, or your response, again of the 29thApril, where you indicated that you disagreed with the Defendants' position.

On 30 April, this firm was re-added to the exchange between Defendant and Plaintiff's counsel, when Defendant's counsel intimated that in their view Plaintiff's interpretation of the order went well beyond the wording of the order itself, as well as the Judge's sentiment when making the order.

It was therefore abundantly clear from the end of April that there was a significant disagreement between Plaintiff and Defendant as to the nature and scope of the proposed search by an expert, pursuant to the Judge's order.

On 30 April, you again wrote to Defendants' counsel indicating that you had not heard from this firm as regards access. This email, given that it dealt with our client, ought to have been sent to this firm and was not.  Similarly your email of 7 May concerning Mr Scrancher's availability was not addressed to this firm, but solely to the Defendants' counsel.

This firm's initial brief upon receiving your 26 April email was to review the background to the action, and the court order as regards access, so that we could give clear advice to our client as to his options and obligations in the context of the Judge's order as regards inspection. The underlying matter is clearly complex, and had been ongoing for some time. The process of understanding the nature of the case was necessary so that we could provide advice to our client. Having dealt with that process, this firm wrote to you on 9 May. In that email we stated that:

1. All future correspondence on this issue should either be addressed to this firm, or that you should at the very least place this firm on copy to correspondence on the issue between yourselves and the Defendant's counsel.
2. We would not provide you with Mr Scrancher's contact details and that all arrangements / correspondence should be conducted through this firm.
3. Mr Scrancher is not a party to the proceedings. He is not a US resident.
4. The Skype account in question was Mr Scrancher's personal Skype account.
5. Under UK law, Mr Scrancher has no obligation or responsibility to provide his employer with access to his personal Skype account.
6. Under UK law, Mr Scrancher has no obligation to provide access to his Skype account to the Plaintiff.
7. However, notwithstanding that position, Mr Scrancher was considering his position, and in order to assist Mr Scrancher, you were invited to:
   a. Answer substantively the points raised by Defendants' counsel regarding the extent and scope of the order, setting out in particular the nature and methodology of the proposed search, and
   b. Having stated our position that the order is not binding on Mr Scrancher under UK law, indicate why you consider that Mr Scrancher is bound by the court order?

On the 10th May, you wrote to Defendants' counsel indicating that in your view this firm was being used to "stonewall the inspection".  You further indicated that your requests for information about Mr Scrancher's availability had been "ignored" by this firm. We invite you to reconsider those statement in light of the facts of the matter. Our letter of 9 May pre-dated your email and raised numerous issues, perhaps most fundamentally whether it is the case that the order for inspection was in fact binding upon Mr Scrancher. You did not deal with the legitimate questions that had been raised by this firm, and indeed at the date of this email you have still not addressed them, yet somehow seek to blame, in part, this firm for a perceived lack of progress. The reality is that it was incumbent on your firm to respond substantively to the points raised by this firm so that Mr Scrancher could consider his position, including deciding whether to voluntarily assist the court in relation to the matter, something which CB911 has requested of its employee.

On 11 May, you wrote to this firm. You did not address any of the points or questions that we had raised save for advancing the position that you had already advanced to Defendants' counsel, to which Defendants' counsel had entirely disagreed, that the court's order "allowed Plaintiff to search Mr Scrancher's Skype chats" and that this included access to Mr Scrancher's hardware. This is despite the fact that on 10 May you were told by Defendants' counsel that the fact that Mr Scrancher is an employee does not mean that Mr Scrancher "can be forced to turn over his computer".

On 13 May this firm responded to you to reiterate that:

1)  Our client is not a party to the proceedings;

2) He is not a United States citizen;

3) He does not reside in the United States; and

4) The Skype account is a personal account and the device on which it was accessed belongs to our client Mr. Scrancher

We further stated that "In view of this we can see no legal basis for your assertion that the court's order allows [your firm] access to the computer or other devices Mr. Scrancher was using to communicate via Skype."

Notwithstanding the legal position, we asked you to provide details of the identity and contact information of the inspector so that we could understand the nature of the search to be able to advise our client. On 13 May you confirmed that the expert was a Mr Nagadi (sp.) and that his methodology would depend upon the answer to various questions regarding Mr Scrancher's version of Skype, and whether he was using a MAC or PC.

We have heard nothing further directly from your firm as regards what we consider to be the very clear legal position regarding the enforceability of the order. If you agree that the order is not binding upon Mr Scrancher then please confirm this? If you disagree, then please provide reasoned legal argument to that effect? Mr Scrancher's position at present is that any cooperation which he might give would be purely upon a voluntary basis, and on that basis we consider it entirely to be within Mr Scrancher's discretion to decide the nature, scope and extent of any search of his private Skype account and private computer. In short, you were being asked to make this a cooperative process.

Instead we received an email from your proposed expert, Mr Naghdi, asking to schedule a conference call. We replied on 16 May, indicating that such a call would be premature whilst the outstanding fundamental issues that we had repeatedly raised with you went unanswered.

Your reaction was to indicate in an email to Defendants' counsel on 17 May that speaking to this firm was a "dead end". That is plainly untrue and inappropriate. It might not suit your position that you are being asked to legally justify why Mr Scrancher is bound by the Judge's inspection order, but to dismiss legitimate legal questions and concerns as a 'dead end' is frankly simply indicative of the way that your firm has attempted to steam roller the inspection process through. That strategy will not work.

We feel that we should also place on record that Chargeback 911's inability to compel Mr Scrancher to provide his Skype account is not the fault of Chargeback 911. Whilst it is not necessary for us to defend Chargeback911 in this case, the fact is that Chargeback 911 has no legal basis to compel Mr Scrancher to provide details of his personal Skype account or his personal computer. It is for this reason that it ought to have been abundantly clear to you that the way forwards is to properly engage with this firm, answer the correctly raised questions, and see if there was a way to amicably progress the matter. The fact that you have chosen not to do this is a matter for you and your client but we do not accept any criticism either of our client, this firm, or indeed of the Defendants on this issue for our conduct to date.

In the circumstances we reiterate our request to:

1. Explain your legal reasoning as to why Mr Scrancher, in all the circumstances, is bound by the Court's inspection order;
2. Set out in full your reasoned arguments as to why the order, should it be enforceable against Mr Scrancher which we dispute, extends beyond his Skype account to his personal computer equipment;
3. Explain in detail the proposed methodology for the search.

We wrote to your expert on 23 May asking him to confirm dates from Wednesday 29 May onwards when he is free for a discussion. To be clear, that is not a consent by our client to allow an inspection to take place and we still expect you to answer the points 1 and 2 above.

Yours faithfully

**Buckingham & Buckingham LLP**

2/5/25, 11:19 AM · Kneupper & Covey, LLC Mail - RE: Sihler v. Global E-Trading, LLC et al. - Request for Ben Scrancher's contact information

Case 8:23-cv-01450-VMC-SG Document 221-2 Filed 02/05/25 Page 7 of 28 PageID 13337

m: +44 (0)7837 881483
e: tim.buckingham@buckinghamllp.com

**Buckingham & Buckingham LLP**
Ground Floor, 13 Charles II Street, London, SW1Y 4QU T: +44 (0)20 7060 0835



Buckingham & Buckingham is the trading name of Buckingham & Buckingham LLP, a company registered in England and Wales under number OC437772. Its registered office and principal place of business is at 13 Charles II Street, London, SW1Y 4QU. We use the term "partner" to refer to a partner of the limited liability partnership or an employee or consultant with equivalent standing and qualifications. A list of partners is open for inspection at our registered office. The information contained in this E-mail is confidential and may be subject to legal privilege. Access to this E-mail by anyone other than the intended recipient is unauthorised. If you are not the intended recipient, you must not use, copy, distribute or disclose the E-mail or any part of its contents or take any action in reliance on it. If you have received this E-mail in error, please notify us immediately by E-mail or telephone. All reasonable precautions have been taken to ensure no viruses are present in this E-mail. As Buckingham & Buckingham LLP cannot accept responsibility for loss or damage arising from the use of this E-mail or attachments we recommend that you subject these to your virus checking procedures prior to use.

**From:** Jonathan Collins <jonathan.collins@buckinghamllp.com>
**Date:** Monday, 13 May 2024 at 17:15
**To:** Lorraine Weekes <lorraine@kneuppercovey.com>
**Cc:** Kevin Kneupper <kevin@kneuppercovey.com>, Cyclone Covey <cyclone@kneuppercovey.com>, Tim Buckingham <Tim.Buckingham@buckinghamllp.com>
**Subject:** RE: Sihler v. Global E-Trading, LLC, et al. - Request for Ben Scrancher's contact information

Dear Ms Weekes

Thank you for your email which fails to address the key points namely

- our client is not a party to the proceedings

- he is not a United States citizen

- he does not reside in the United States; and

- the skype account is a personal account and the device on which it was accessed belongs to our client Mr. Scrancher

In view of this we can see no legal basis for your assertion that *the court's order allows [your firm] access to the computer or other devices Mr. Scrancher was using to communicate via Skype*

In the circumstances, we have been instructed by our client to wait to receive from you details of the identity and contact information of the inspector you have appointed. Once we have that information, we would then want to understand in detail from the inspector the methodology, access and steps proposed to be undertaken by that inspector, the extent of the likely invasion of our client's personal privacy and other relevant considerations before we can properly advise our client for him to be able to evaluate his position on a fully informed basis.

Yours sincerely

**Jonathan Collins**

t: +44 (0)7408 813710
e:   jonathan.collins@buckinghamllp.com

**Head of Corporate**

**Buckingham & Buckingham LLP**
Ground Floor, 13 Charles II Street, London, SW1Y 4QU T: +44 (0)20 7060 0835



Buckingham & Buckingham is the trading name of Buckingham & Buckingham LLP, a company registered in England and Wales under number OC437772. Its registered office and principal place of business is at 13 Charles II Street, London, SW1Y 4QU. We use the term "partner" to refer to a partner of the limited liability partnership or an employee or consultant with equivalent standing and qualifications. A list of partners is open for inspection at our registered office. The information contained in this E-mail is confidential and may be subject to legal privilege. Access to this E-mail by anyone other than the intended recipient is unauthorised. If you are not the intended recipient, you must not use, copy, distribute or disclose the E-mail or any part of its contents or take any action in reliance on it. If you have received this E-mail in error, please notify us immediately by E-mail or telephone. All reasonable precautions have been taken to ensure no viruses are present in this E-mail. As Buckingham & Buckingham LLP cannot accept responsibility for loss or damage arising from the use of this E-mail or attachments we recommend that you subject these to your virus checking procedures prior to use.

**From:** Lorraine Weekes <lorraine@kneuppercovey.com>
**Sent:** Saturday, May 11, 2024 2:35 AM
**To:** Jonathan Collins <jonathan.collins@buckinghamllp.com>
**Cc:** Kevin Kneupper <kevin@kneuppercovey.com>; Cyclone Covey <cyclone@kneuppercovey.com>; Tim Buckingham <Tim.Buckingham@buckinghamllp.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - Request for Ben Scrancher's contact information

Dear Mr. Collins and Mr. Buckiongham:

Thank you for your email.

We are still waiting to hear back from the inspector we'd identified in April about his availability to conduct an inspection between now and May 21, 2024.  As soon as we hear back from him or, in the event he's no longer available, identify another inspector who is available, we would be happy to provide that person's contact information.

The court's order allows Plaintiffs to search Mr. Scrancher's Skype chats.  Because Skype is a technology application that is installed and used on hardware, e.g., laptops, mobile devices, our understanding is that it is not possible to search Mr. Scrancher's Skype chats without access to both his account and the hardware on which the chat data is stored. So, yes, we maintain that the court's order allows us access to the computer or other devices Mr. Scrancher was using to communicate via Skype for the very limited purpose of searching for "[a]ny and all Skype communications between [Defendants] and Brightree Holdings, including but not limited to Skype chats between Chargebacks911 and: 'xcellent.choice' or any other accounts for David Flynn, 'instantlyfamous' or any other accounts for Rick James, 'thebigguy1978_1' or any other accounts for Aaron Wilson, and 'threecommaclub' or any other accounts for Mike Campbell."

Best,

Lorraine

2/5/25, 11:10 AM    Buckingham & Covey LLC Mail - Global E-Trading, LLC et al - Request for Ben Scrancher's contact information
Case 8:23-cv-01450-WFJ-SG    Document 221-2    Filed 02/05/25    Page 9 of 28 PageID
13339

On Thu, May 9, 2024 at 5:26 AM Jonathan Collins <jonathan.collins@buckinghamllp.com> wrote:

Dear Sirs

**Janet Sihler and Charlene Bavencoff v Global E-Trading, LLC (trading as Chargebacks 911) and others**

We write further to your email dated 26 April 2024 enclosing a copy of the order of Judge Porcelli dated 11 April 2023 (the **Court Order**) which you kindly forwarded. We have also been passed copies of the emails that have been exchanged between your firm and the Defendants' attorneys, concerning this matter, most recently the email of Tuesday 7 May.

Capitalised terms used in the Court Order have the same meaning in this letter unless the contrary is otherwise expressed or required.

We act for Ben Scrancher who is an employee of Online Venture Partners Limited registered in England with company no. 077460. Please note that all future communications should either to be addressed to Mr. Scrancher via this firm attention Tim Buckingham/Jonathan Collins or, in the event that you continue to write to the Defendants' attorneys in relation to the issue of disclosure of Mr. Scrancher's Skype account, we ask that this firm is placed on copy.

We will not provide you with Mr Scrancher's telephone number or contact information. Any arrangements or correspondence concerning any proposed inspection should be made through this firm.

As you are aware, our client is not a party to the proceedings, he is not a United States citizen and he does not reside in the United States. We confirm that the Skype account in question does not belong Mr. Scrancher's employer, it is his personal account. Under the terms of Mr. Scrancher's employment and as a matter of English law, he has no obligation or responsibility to provide access to his personal Skype account to Online Venture Partners Limited (his employer) let alone to any Defendant or any Plaintiff in these proceedings or any inspector appointed by the Plaintiff.

In the circumstances, Mr Scrancher is considering his position. In order to progress those considerations, it would be helpful if you were to respond to *all of the points* which we understand have been raised with your firm on a number of occasions by Defendant's counsel including in particular:

1. Providing your independent examiner's name and contact information, so we could understand in detail the proposed scope of the planned search (to ensure that it does not go beyond the strict limits of the Court's order) and the mechanism the examiner proposes to deploy to provide communications that he or she finds (if any) to defence counsel before they are conveyed to you.

2. Whether you maintain that the court order allows you to have access to Mr. Scrancher's computer or other devices

Yours faithfully

## Buckingham & Buckingham LLP

t: +44 (0)7408 813710
e:   jonathan.collins@buckinghamllp.com

**Head of Corporate**

**Buckingham & Buckingham LLP**
Ground Floor, 13 Charles II Street, London, SW1Y 4QU T: +44 (0)20 7060 0835

2/5/25, 1:34 AM                Kneupper Covey, LLC Mail - Sihler v. Global E-Trading, LLC et al. - Request for Ben Scrancher's contact information

Case 8:23-cv-01450-VMC-SPC    Document 221-2    Filed 02/05/25    Page 10 of 28 PageID
                                        13340



Buckingham & Buckingham is the trading name of Buckingham & Buckingham LLP, a company registered in England and Wales under number OC437772. Its registered office and principal place of business is at 13 Charles II Street, London, SW1Y 4QU. We use the term "partner" to refer to a partner of the limited liability partnership or an employee or consultant with equivalent standing and qualifications. A list of partners is open for inspection at our registered office. The information contained in this E-mail is confidential and may be subject to legal privilege. Access to this E-mail by anyone other than the intended recipient is unauthorised. If you are not the intended recipient, you must not use, copy, distribute or disclose the E-mail or any part of its contents or take any action in reliance on it. If you have received this E-mail in error, please notify us immediately by E-mail or telephone. All reasonable precautions have been taken to ensure no viruses are present in this E-mail. As Buckingham & Buckingham LLP cannot accept responsibility for loss or damage arising from the use of this E-mail or attachments we recommend that you subject these to your virus checking procedures prior to use.

---

**From:** Lorraine Weekes <lorraine@kneuppercovey.com>
**Sent:** Friday, April 26, 2024 6:30 PM
**To:** Jonathan Collins <jonathan.collins@buckinghamllp.com>; Tim Buckingham <tim.buckingham@buckinghamllp.com>
**Cc:** Cyclone Covey <cyclone@kneuppercovey.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Roush, Corey <croush@akingump.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - Request for Ben Scrancher's contact information

Dear Mr. Collins and Mr. Buckingham:

I represent the Plaintiffs in a class action pending in the Middle District of Florida, *Sihler v. Global E-Trading, LLC, et al.*

As I believe you are aware, the court in that action has ordered that Plaintiffs, my clients, may inspect the Skype of Ben Scrancher. I have attached that order for your reference.

I received your contact information from Corey Roush who is CCd on this email.

We have an inspector in London who will be performing the Skype inspection. Could you please either provide me with Mr. Scrancher's telephone number and contact information so I can pass that on to the inspector and he can coordinate logistics or, alternatively, provide me with Mr. Scrancher's availability next week for the inspection along with the address of where any computer he uses to access Skype is located and can be inspected?

Thank you.

Sincerely,

Lorraine Weekes

On Fri, Apr 26, 2024 at 9:26 AM Roush, Corey <croush@akingump.com> wrote:

Lorraine,

You can contact Jonathan Collins and Tim Buckingham at Buckingham & Buckingham to discuss the Skype inspection. For your convenience, I have added them to this email and included their contact information below. Please include me in your communications with them.

All the best,

2/5/25, 1:06 AM                    Kneupper McCoy, LLC Mail - Sihler v. Global E-Trading, LLC et al. - Request for Ben Scrancher's contact information

Case 8:23-cv-01450-VMC-UAM   Document 221-2   Filed 02/05/25   Page 11 of 28 PageID 13341

Corey

## Jonathan Collins

t: +44 (0)7408 813710
e:   jonathan.collins@buckinghamllp.com

## Tim Buckingham

### Managing Partner

m: +44 (0)7837 881483
e: tim.buckingham@buckinghamllp.com

**Buckingham & Buckingham LLP**
Ground Floor, 13 Charles II Street, London, SW1Y 4QU T: +44 (0)20 7060 0835

**Corey W. Roush**

Akin

Direct: +1 202.887.4115 | Internal: 24115

---

**From:** Lorraine Weekes <lorraine@kneuppercovey.com>
**Sent:** Thursday, April 25, 2024 9:03 PM
**To:** Marder, Neal <nmarder@akingump.com>
**Cc:** Roush, Corey <croush@akingump.com>; Rubin, Joshua <rubinj@akingump.com>; Safvati, Sina <ssafvati@akingump.com>; Huennekens, Lauren <lhuennekens@akingump.com>; Cyclone Covey <cyclone@kneuppercovey.com>; Suzy Garcia <suzy@kneuppercovey.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Schifino, William <WSchifino@gunster.com>; Pierson, Gregory <GPierson@gunster.com>; Bennett, Justin <JBennett@gunster.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - Request for Ben Scrancher's contact information

Neal: Thank you for clarifying; we will include Mr. Roush moving forward.

Corey:  Could you please provide Mr. Scrancher's contact information to us ASAP. We would like to provide it to the inspector who will be doing the Skype inspection so that the inspector can reach out to Mr. Scrancher to arrange logistics.

On Thu, Apr 25, 2024 at 11:02 AM Marder, Neal <nmarder@akingump.com> wrote:

> Lorraine
>
> Josh and I are in deposition today in another case
>
> Going forward can you and your colleagues please copy Corey Roush on all correspondence in this case. He will respond to your email
>
> Thanks Neal
>
> Sent from my iPhone
>
>> On Apr 25, 2024, at 7:56 AM, Lorraine Weekes <lorraine@kneuppercovey.com> wrote:
>>
>> **EXTERNAL Email**
>>
>> Dear Josh:
>>
>> I am writing to follow up on this request for Mr. Scrancher's contact information.  Given Defendants' lack of objections to the court's order, the clock is now ticking for Plaintiffs to complete this inspection. I would appreciate your prompt response so that we can have our inspector

schedule the inspection as soon as possible.


Best,

Lorraine


On Tue, Apr 23, 2024 at 11:22 PM Lorraine Weekes <lorraine@kneuppercovey.com> wrote:

> Dear Josh:
>
> Please provide Mr. Scrancher's contact information to us. We would like to provide it to the inspector who will be doing the Skype inspection
> so that the inspector can reach out to Mr. Scrancher to arrange logistics.
>
> Best,
> Lorraine Weekes
> --

# A. Lorraine Weekes

### Associate Attorney

_____

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615

**Office** 657-845-3100 **Direct Line** 215-999-9767  **Email** lorraine@kneuppercovey.com


**Mailing Address** 17011 Beach Blvd. Suite 900, Huntington Beach, CA 92647


--

# A. Lorraine Weekes

### Associate Attorney

_____

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615

**Office** 657-845-3100 **Direct Line** 215-999-9767  **Email** lorraine@kneuppercovey.com


**Mailing Address** 17011 Beach Blvd. Suite 900, Huntington Beach, CA 92647

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal
and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the
original message

2/5/25, 1:23 AM                    Kneupper Covey, LLC Mail - Bitcoin Withdrawal - Trading, Etc et al./Request for Bergagnano's contact information

Case 8:23-cv-01450-VMC-SG Document 221-2, Filed 02/05/25 Page 13 of 28 PageID 13343

--

# A. Lorraine Weekes

## Associate Attorney

_____

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615

**Office** 657-845-3100 **Direct Line** 215-999-9767  **Email** lorraine@kneuppercovey.com

.

**Mailing Address** 17011 Beach Blvd. Suite 900, Huntington Beach, CA 92647

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

--

# A. Lorraine Weekes

## Associate Attorney

_____

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615

**Office** 657-845-3100 **Direct Line** 215-999-9767  **Email** lorraine@kneuppercovey.com

.

**Mailing Address** 17011 Beach Blvd. Suite 900, Huntington Beach, CA 92647

--

# A. Lorraine Weekes

## Associate Attorney

_____

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615

**Office** 657-845-3100 **Direct Line** 215-999-9767  **Email** lorraine@kneuppercovey.com

.

**Mailing Address** 17011 Beach Blvd**.** Suite 900, Huntington Beach, CA 92647

# EXHIBIT 13

2/5/25, 1:10 PM · Kneupper Covey Mail - Proposed stipulation re Confidentiality Agreement - Case No. 8:23-cv-01450-VMC-UAM, Sihler et al v...

Case 8:23-cv-01450-VMC-LSG   Document 221-2   Filed 02/05/25   Page 16 of 28 PageID
13346

 Gmail

Kevin Kneupper <kevin@kneuppercovey.com>

## Proposed stipulation re Confidentiality Agreement - Case No. 8:23-cv-01450-VMC-UAM, Sihler et al v. Global e-Trading, LLC et al.

**Lorraine Weekes** <lorraine@kneuppercovey.com>                                                                  Wed, Oct 16, 2024 at 12:03 PM
To: "Randleman, Taylor" <taylor.randleman@sidley.com>
Cc: Cyclone Covey <cyclone@kneuppercovey.com>, Jordan Wagner <jwagner@kibbeylaw.com>, Kevin Kneupper <kevin@kneuppercovey.com>, Anthony Sampson <anthony@kneuppercovey.com>, "Roush, Corey W." <corey.roush@sidley.com>, "Rubin, Joshua" <rubinj@akingump.com>, "Marder, Neal <nmarder@akingump.com>, "Purdy, Lauren" <lpurdy@gunster.com>, "Schifino, William" <wschifino@gunster.com>, "Pierson, Gregory" <gpierson@gunster.com>, "Bennett, Justin" <jbennett@gunster.com>, "Safvati, Sina" <ssafvati@akingump.com>, "Huennekens, Lauren" <lhuennekens@akingump.com>

Counsel:

Your last email on this topic reflected a willingness to reconsider your position if your understanding is incorrect or circumstances change.  I am writing to ask whether you will do so now given that Mr. Scrancher is fighting the UK court's order directing his deposition and is, in fact, in filings made on October 10, 2024, seeking to have it set aside. Given Mr. Scrancher's refusal to cooperate with the Letters Rogatory process and the looming end of discovery on November 1, 2024, Plaintiffs believe it is imperative to promptly move to compel the deposition of Mr. Scrancher in the U.S. and, to that end, need to retain Beth Hale to assist them. Given these circumstances, please advise if you will agree to the limited modification to the confidentiality agreement proposed in my October 3 email.

If you are not willing to agree to the limited modification to the confidentiality agreement set forth in my October 3 email, please advise of your availability to meet and confer later this week or on Monday, October 21, regarding a motion Plaintiffs will bring to the court seeking relief allowing them to disclose the documents identified in the proposed stipulation to Beth Hale under the terms outlined in that stipulation.

Thank you!

Best,
Lorraine

On Mon, Oct 7, 2024 at 4:40 PM Randleman, Taylor <taylor.randleman@sidley.com> wrote:

> Counsel,
>
>
> Within your proposed amendment to the Parties' confidentiality agreement, it states that "Plaintiffs need to engage U.K. lawyer Beth Hale, Partner and General Counsel of the law firm CM Murray in connection with their efforts to compel the deposition of Ben Scrancher". It is our understanding that a court summons has already been issued in the UK and Mr. Scrancher is cooperating with the process. As such, we find that the sharing and retention of confidential information beyond the scope of the confidentiality agreement is not warranted. If our understanding is incorrect or circumstances change, we will be happy to reconsider.
>
>
> Best,
>
> Taylor
>
>
> **TAYLOR RANDLEMAN**
> Associate
>
> **SIDLEY AUSTIN LLP**
> +1 202 736 8316
> taylor.randleman@sidley.com
>
>
> ************************************
> ************************************
> ************************************
> **********
> This e-mail is sent by a law
> firm and may contain
> information that is
> privileged or confidential.
> If you are not the intended
> recipient, please delete the
> e-mail and any attachments
> and notify us
> immediately.
> ************************************
> ************************************
> ************************************
> **********
>
> _____
>
> **From:** Lorraine Weekes <lorraine@kneuppercovey.com>
> **Sent:** Thursday, October 3, 2024 10:00 PM
> **To:** Roush, Corey W. <corey.roush@sidley.com>; Rubin, Joshua <rubinj@akingump.com>; Marder, Neal <nmarder@akingump.com>; Purdy, Lauren <lpurdy@gunster.com>; Schifino, William <wschifino@gunster.com>; Pierson, Gregory <gpierson@gunster.com>; Bennett, Justin <jbennett@gunster.com>; Randleman, Taylor <taylor.randleman@sidley.com>; Huennekens, Lauren <lhuennekens@akingump.com>; Safvati, Sina <ssafvati@akingump.com>

**Cc:** Anthony Sampson <anthony@kneuppercovey.com>; Jordan Wagner <wagner@kibbeylaw.com>; Kevin Kneupper <kevin@kneuppercovey.com>;
Cyclone Covey <cyclone@kneuppercovey.com>
**Subject:** Proposed stipulation re Confidentiality Agreement - Case No. 8:23-cv-01450-VMC-UAM, Sihler et al v. Global e-Trading, LLC et al.


Counsel:


On our meet and confer last week Plaintiffs proposed a very narrow amendment to the Parties' confidentiality agreement to allow UK lawyer Beth Hale to
both assist Plaintiffs and comply with her malpractice insurance obligations with respect to retaining certain client files. I have attached proposed language
to that effect to this email. Please let me know your thoughts.


Lorraine


--

## A. Lorraine Weekes

Associate Attorney

―――――――――――――――――――

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only

CA Bar 332369  PA Bar 326942  HI Bar  011615


***Office*** 657-845-3100 ***Direct Line*** 215-999-9767

***Email*** lorraine@kneuppercovey.com

***Mailing Address*** 17011 Beach Blvd. Suite 900, Huntington Beach,
CA 92647

--



## A. Lorraine Weekes

Associate Attorney

―――――――――――――――――――

Located in Philadelphia, PA
Licensed in California, Pennsylvania and Hawaii only
CA Bar 332369  PA Bar 326942  HI Bar  011615

***Office*** 657-845-3100 ***Direct Line*** 215-999-9767

***Email*** lorraine@kneuppercovey.com
***Mailing Address*** 17011 Beach Blvd. Suite 900, Huntington Beach,
CA 92647

# EXHIBIT 14

1  Q.  I want to look at Exhibit 93, which I think
2  we've already looked at.  Do you see Exhibit 93?
3  A.  Yes.
4  Q.  And you say here:
5      "Nick, I think we briefly discussed on Skype
6  ..."
7      Do you see that?
8  A.  Yes.
9  Q.  Was it common for you to have Skype
10  communications with Nick Carroll?
11  A.  I don't know if it was common but, because I'm
12  in the U.K. and Nick's in the U.S. that would be the way
13  that he would call me because it's free.
14  Q.  Would you ever use Skype to chat with Nick
15  Carroll, typing out rather than talking?
16  A.  Possibly.
17  Q.  Do you still have those chats with
18  Mr. Carroll?
19      MR. ROUSH:  Objection.  Outside the scope.
20  I let you ask the other questions but I'm
21  going to stop it.  I'm going to instruct him not to
22  answer, based on the Judge's December 12 order and
23  the previous rulings by the other Magistrate Judge
24  in April.
25      MR. COVEY:  Okay, so I just want to be clear:
                        246

1  are you instructing him not to answer that
2  question?
3      MR. ROUSH:  I think I was clear, yes.
4  BY MR. COVEY:
5  Q.  Did you allow Chargebacks911 to search your
6  Skype chats as part of this lawsuit?
7      MR. ROUSH:  Objection.  Outside the scope.
8  Instruct you not to answer.
9  BY MR. COVEY:
10  Q.  Did you do any searches of your Skypes as part
11  of responding to document requests in this lawsuit?
12      MR. ROUSH:  Same objection.  Instruct you not
13  to answer.
14      Can you point to a topic that these pertain
15  to?
16      MR. COVEY:  I think that they're highly
17  relevant to a coming motion for sanctions, and so
18  the court ordered Mr. Scrancher to produce his
19  Skype chats.  Mr. Scrancher refused.  We have
20  emails directly from his lawyer telling us that we
21  cannot have an independent examiner review his
22  Skype chats, and so we're planning to move for
23  sanctions on that.
24      If you don't want to let him answer the
25  questions, that's okay.  I'm going to ask the
                        247

1  question and you can instruct him not to answer or
2  you can allow him to answer.
3      MR. ROUSH:  So, no, there are no topics that
4  you can point to that the Judge allowed you to ask
5  him questions about that pertain to these
6  questions, correct?
7      MR. COVEY:  Well, except that the dealings
8  with Brightree, which is a topic and just generally
9  about the entire lawsuit.  We asked specifically
10  for chats with Mr. Scrancher.  They were never
11  produced even though the court granted our motion
12  to compel, so I'm asking questions about them and
13  it's your prerogative to let him answer or not
14  answer.
15      MR. ROUSH:  As long as you can't point to any
16  topics --
17      MR. PIERSON:  -- me on this?
18      MR. ROUSH:  I don't -- yes, we'll instruct him
19  not to answer.
20      MR. COVEY:  Okay.
21  BY MR. COVEY:
22  Q.  So I'll read through each one of my questions
23  and, Mr. Scrancher, Mr. Roush can instruct you and you
24  can decide to do what you want to do on that, but I'm
25  going to ask my questions for the record and we can go
                        248

1  from there, okay?
2  A.  Yeah.
3  Q.  Did you allow Chargebacks911 to search your
4  Skype chats as part of a document production in this
5  lawsuit?
6      MR. ROUSH:  Objection.  Outside the scope.
7  I instruct him not to answer.  And just get on the
8  record: to the extent I did not respond
9  substantively to some of the loose arguments you
10  just made, we don't waive any arguments, obviously,
11  as to Plaintiffs having already exhausted all of
12  the remedies that the court has allowed through
13  discovery.
14  BY MR. COVEY:
15  Q.  Mr. Scrancher, did you do any searches of your
16  own for Skype chats that were responsive to document
17  requests in this lawsuit?
18      MR. ROUSH:  Objection.  Outside the scope.
19  Instruct him not to answer.
20  BY MR. COVEY:
21  Q.  Mr. Scrancher, did you --
22      MR. PIERSON:  Join as beyond the scope.
23      (Reporter clarification.)
24      MR. PIERSON:  I'm joining as to the objection
25  as beyond the scope.
                        249

1    MR. COVEY:   And, yes, just so -- I'll
2    stipulate that all Defendants are joining in the
3    objection that Mr. Roush is making, so that we
4    don't need to interfere because it's a little bit
5    hard to hear on the speaker.  If you still want to,
6    you can.
7    BY MR. COVEY:
8        Q.    Mr. Scrancher, did you do any searches of your
9    email as part of the document production for this
10   lawsuit?
11       MR. ROUSH:   Objection.  Outside the scope.
12   Instruct him not to answer.
13       MR. PIERSON:   Joining as to the objection
14   beyond the scope.
15   BY MR. COVEY:
16       Q.    Mr. Scrancher, did you refuse to allow an
17   independent examiner to review your Skype chats that we
18   requested as part of this lawsuit?
19       MR. ROUSH:   Objection.  Outside the scope.
20   Instruct him not to answer.
21   BY MR. COVEY:
22       Q.    Mr Scrancher --
23       MR. PIERSON:   Join.
24   BY MR. COVEY:
25       Q.    Mr. Scrancher, did you leave any Skype
                        250

1    conversations with Brightree or Mr. Flynn at any time?
2        MR. ROUSH:   Can you restate the question -- or
3    not you restate it but can she re-read the
4    question?
5        I may not have an objection, that's why I'm
6    asking.
7               (Record read.)
8        MR. ROUSH:   No objection.
9    BY MR. COVEY:
10       Q.    Right.  Well, that wasn't the question
11   I intended to ask, so let's try again.
12       Mr. Scrancher, did you leave any Skype
13   conversations with Brightree or Mr. Flynn at any time?
14       MR. ROUSH:   I'll object to the scope but you
15   can answer.  I'm sorry, object to the form.  You
16   can answer.
17       A.    I don't know.
18   BY MR. COVEY:
19       Q.    Are you saying you don't know because you
20   don't know what leaving a conversation means or are you
21   saying you don't know because you don't remember?
22       A.    I don't remember.
23       Q.    Mr. Scrancher, did you leave any Skype
24   conversations that involved Mr. Flynn in May of 2023?
25       MR. ROUSH:   Object to the form.
                        251

1        A.    I don't know.
2    BY MR. COVEY:
3        Q.    Mr. Scrancher, I am showing you Exhibit 88 and
4    we are on page 12 of that exhibit.  Do you see that?
5        A.    Yes.
6        Q.    And I think we discussed before Exhibit 88 is
7    a series of screenshots of Skype chats between you and
8    Mr. Flynn; do you agree with that?
9        A.    Yes.
10       Q.    And what I have pulled up here, in particular,
11   is a series of chats.  The one I'm interested in has
12   "Monday, December 2, 2019".  It says:
13            "Hey David."
14       Do you see that?
15       A.    Yes.
16       Q.    And then underneath that it says "Tuesday,
17   December 3, 2019".  Do you see that?
18       A.    Yes.
19       Q.    Were there any messages originally in between
20   this message on December 2, 2019 from you and Mr. Flynn
21   and his response on December 3, 2019?
22       A.    It's from 2019.  I don't know.
23       Q.    Did you ever delete any messages in this chat
24   between you and Mr. Flynn?
25       A.    I don't know.
                        252

1        Q.    Did you ever go to a specific message on
2    December 3, 2019 and delete it?
3        A.    I don't know.  It's a long time ago.
4        Q.    Did you ever delete any messages, after you
5    found out that this lawsuit was going to be filed,
6    between you and Mr. Flynn in this Skype chat?
7        MR. ROUSH:   Objection.  Now, that's outside
8    the scope and I'll instruct him not to answer.
9        MR. COVEY:   So you think deleting messages
10   between himself and Mr. Flynn of Brightree is
11   outside the scope?
12       MR. ROUSH:   No, I allowed those questions as
13   being inside the scope.  Where I objected and
14   instructed him not to answer was about the
15   discovery process that occurred after you brought
16   this lawsuit, because that's not within the scope
17   of what you asked in your 13 topics.
18       MR. COVEY:   Okay.  So even though it involves
19   spoliation of evidence, you're going to take the
20   position that Mr. Scrancher cannot testify on this?
21       MR. ROUSH:   You were aware when you drafted
22   the 13 topics that you had an issue with the
23   potential or spoliation and you didn't include it
24   as a topic.  That's on you.  It's not a topic.  The
25   Judge made very clear you were limited to these 13
                        253

1  topics and I was supposed to object, as I have
2  been, and instruct him not to answer and I've been
3  doing that.
4      MR. COVEY:  Okay.  Well, Corey, I'll represent
5  to you that we were not aware of spoliation of
6  evidence when we drafted the topics and we are
7  aware of potential spoliation issues now.  So
8  I'm --
9      MR. ROUSH:  Well, you haven't brought that to
10  our attention.
11     MR. COVEY:  Okay.  Well, I'm bringing it to
12  your attention right now.  So I'm just going to let
13  you know that I would like to ask these questions
14  and if you choose to make the decision to not let
15  him answer, then that's up to you.
16     MR. ROUSH:  And is your representation that in
17  early December, when we argued the motion before
18  the Magistrate Judge, you weren't aware of
19  something that you are now aware of?
20     MR. COVEY:  Yes.
21     MR. ROUSH:  Okay.  Well, you should have
22  brought that to the Court's attention in advance of
23  today.  I will continue to do what the Court
24  instructed me to do, which is to instruct him not
25  to answer if it's outside the 13 topics.
                                254

1  deleted a message from December 3, 2019 from this chat
2  with Mr. Flynn that the jury should not trust you?
3      MR. ROUSH:  Objection.  Outside the scope.
4  Instruct him not to answer.
5  BY MR. COVEY:
6      Q.    Mr. Scrancher, when did you first learn that
7  this lawsuit was going to be filed against
8  Chargebacks911?
9      MR. ROUSH:  I'll object as being outside the
10  scope and instruct him not to answer.
11  BY MR. COVEY:
12     Q.    Mr. Scrancher, did you ever learn about
13  a letter that was sent regarding this lawsuit before the
14  lawsuit was actually filed?
15     MR. ROUSH:  Can you give me just a minute to
16  look at the topics, please.
17     I'll object as outside the scope and instruct
18  him not to answer.
19  BY MR. COVEY:
20     Q.    Mr. Scrancher, did you know, as of May 16,
21  2023, that this lawsuit was going to be filed?
22     MR. ROUSH:  Objection.  Outside the scope.
23  Instruct him not to answer.
24  BY MR. COVEY:
25     Q.    Mr. Scrancher, did you delete a message from
                                256

1      Q.    Mr. Scrancher, did you ever delete any
2  messages between you and Mr. Flynn after you found out
3  that this lawsuit was going to be filed?
4      MR. ROUSH:  Objection.  Outside the scope.
5  Instruct him not to answer.
6      MR. PIERSON:  Join as being outside the scope.
7  BY MR. COVEY:
8      Q.    Would you agree with me that deleting messages
9  out of this Skype chat would be dishonest?
10     MR. ROUSH:  Objection.  Outside the scope.
11  Instruct him not to answer.
12  BY MR. COVEY:
13     Q.    Would you agree with me that if you deleted
14  evidence, that the jury should not trust you?
15     MR. ROUSH:  Objection.  Outside the scope.
16  Instruct him not to answer.
17  BY MR. COVEY:
18     Q.    Would you agree with me that intentionally
19  destroying evidence is illegal?
20     MR. ROUSH:  Objection.  Outside the scope,
21  calls for a legal conclusion, and instruct him not
22  to answer.
23  BY MR. COVEY:
24     Q.    Would you agree with me that if, in fact, you
25                              255

1  this conversation that we're looking at on Exhibit 88 on
2  Tuesday, May 16, 2023 at 8:48 p.m. GMT?
3      MR. ROUSH:  Objection.  Outside the scope.
4  Instruct him not to answer.
5  BY MR. COVEY:
6      Q.    Mr. Scrancher, did you know that this lawsuit
7  was going to be filed as of Tuesday, May 16, 2023 at
8  8:48 p.m. GMT?
9      MR. ROUSH:  Objection.  Outside the scope.
10  Instruct him not to answer.
11  BY MR. COVEY:
12     Q.    Mr. Scrancher, was there originally a message
13  in this conversation sent by you on December 12, 2019 at
14  7:58:31 p.m.?
15     MR. ROUSH:  Objection.  Can you scroll down to
16  December 12 so we can look to see if there is a
17  message there?  And can we have the question read
18  back, please?
19     MR. COVEY:  I'll ask it again.
20  BY MR. COVEY:
21     Q.    Mr. Scrancher, was there originally a message
22  in this conversation sent by you on December 12, 2019 at
23  7:58:31 p.m.?
24     A.    I don't know.
25     Q.    If the jury thinks that you deleted a message
                                257

1    from this conversation, should they believe anything
2    that you're saying today?
3         MR. ROUSH:   Objection. Outside the scope.
4    Instruct him not to answer.
5    BY MR. COVEY:
6         Q.   Were you ever instructed by anyone at
7    Chargebacks911 to delete messages in this conversation?
8         MR. ROUSH:   Objection. Outside the scope.
9    Instruct him not to answer.
10   BY MR. COVEY:
11        Q.   Mr. Scrancher, did you ever destroy any
12   evidence or delete any chats between you and Mr. Flynn?
13        MR. ROUSH:   Objection. Outside the scope.
14   Instruct him not to answer.
15   BY MR. COVEY:
16        Q.   Mr. Scrancher, I think that I understood you
17   to say that the value of added promotions program that
18   Chargebacks911 had was a project or a program to sell to
19   what you call partials; is that right?
20        A.   So people that have completed a partial order
21   within a merchant's website.
22        Q.   And that was the stated purpose for the VAP
23   program?
24        A.   The stated purpose of the VAP program was to
25   come up with a promotion to retarget customers that
                         258

1    hadn't fully completed a check-out process or had come
2    off the program.
3         Q.   Did you ever instruct Chargebacks911 clients
4    not to use VAP for doing chargeback ratios?
5         A.   To not do it for that purpose? Not that I can
6    remember.
7         Q.   Was there any policy at Chargebacks911 that
8    VAP could not be used to dilute chargeback ratios?
9         MR. PIERSON:   Object to the form.
10        A.   Not that I'm aware of now.
11   BY MR. COVEY:
12        Q.   Were customers aware that they -- that one of
13   the side effects of using VAP would be that they could
14   dilute their chargeback ratios on a particular merchant
15   ID?
16        A.   I think it's very logical that a promotion to
17   increase transaction count will reduce the chargeback
18   ratio. So I think that is an acknowledged second order
19   consequence of the program.
20        Q.   Did you ever have an instance where a client
21   of Chargebacks911 ordered VAP without specifying what
22   merchant ID they wanted to run those VAP transactions
23   on?
24        A.   I don't know if every single client instructed
25   it that way. I can't remember exactly. I don't know.
                         259

1    It's a long time ago but I can't remember if they were
2    explicit about "We want this many transactions on this
3    MID, this many transactions on this MID". I can't
4    remember that level of detail.
5         Q.   You do remember there were some instances
6    where clients would specify what particular merchant ID
7    they did want to run VAP for?
8         A.   Yes.
9         MR. COVEY:   Okay, let's look at Exhibit 204.
10        (Exhibit 204 marked for identification.)
11   BY MR. COVEY:
12        Q.   When you're done going through it, let me know
13   and I'll ask you some questions about it.
14        A.   Okay.
15        Q.   So there's an email in the middle of page 1 of
16   Exhibit 204 that says -- from Sarah Paul:
17        "Ben & Noah,
18        "Yes, the CB911 prefixed gateways are our copy
19        gateways of their original gateways. I would
20        imagine the client already knows these are VAP
21        gateways, as the only orders which is pass
22        through them are our VAP campaign
23        transactions."
24        Do you see that?
25        A.   Yes.
                         260

1         Q.   So did Chargebacks911 have specific gateways
2    set up for clients to run VAP transactions?
3         A.   I don't know because I'm not the person that
4    was in the background doing it. I think Sarah is saying
5    that there are specific VAP gateways but I don't know.
6         Q.   Well, in the email above that, an email from
7    you, you say:
8         "Noah, don't tell them it's VAP, just direct
9         Chad to me and say I may know what it is."
10        Well, I think that's just me saying to Noah
11   for him not to talk to the client about a service that
12   Noah I don't think was familiar with.
13        Q.   Okay. So you're telling Noah, "Don't talk to
14   the client about VAP, leave that to me"?
15        A.   That's how I read it, yes.
16        MR. COVEY:   Okay. I think I've finished.
17   Corey, do you have any questions?
18        MR. ROUSH:   I will have a couple of questions.
19   Before I begin, I guess, counsel, if you're aware
20   of additional documents that were produced in this
21   matter to you, they have not been provided to us
22   and they could have been produced to us and
23   potentially could have been put on the list that
24   would have shown to us today, as of a week ago.
25        So I think to the extent you're sort of
                         261

# EXHIBIT 15
# Filed Sealed

# EXHIBIT 16
# Filed Sealed

# EXHIBIT 17
# Filed Sealed

# EXHIBIT 18
# Filed Sealed

# EXHIBIT 19
# Filed Sealed

# EXHIBIT 20
# Filed Sealed