## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANET SIHLER and CHARLENE
BAVENCOFF, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

                                    Case No. 8:23-cv-01450-VMC-LSG

GLOBAL E-TRADING, LLC DBA
CHARGEBACKS911, GARY
CARDONE, MONICA EATON,

        Defendants.

---

## DEFENDANT GLOBAL E-TRADING, LLC DBA CHARGEBACKS911'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

        Defendant Global E-Trading, LLC d/b/a Chargebacks911 ("CB911") files its response in opposition to Plaintiffs' Motion for Terminating Sanctions ("Motion for Sanctions"). Dkt. 221. For the foregoing reasons, CB911 respectfully requests that the Court deny Plaintiffs' motion. [1]

## I.    INTRODUCTION

        The fact that CB911 opposes Plaintiffs' Motion should in no way be taken as CB911 condoning or tolerating the deletion of potentially responsive materials by its employee. Far from it. CB911 has great respect for the integrity of the discovery

---

[1] Plaintiffs do not seek sanctions against Defendants Monica Eaton and Gary Cardone. As such, they are not part of this Opposition.

process and took its obligations to both Plaintiffs and the Federal Trade Commission ("FTC") very seriously. The many steps CB911 took to preserve data in both matters are detailed in the attached Monica Eaton Declaration ("Eaton Decl."), at ¶¶ 10-13, 15, 17 and Jamie Brown (an e-discovery expert) Declaration ("Brown Decl."), at ¶ 14.

Despite CB911's good faith efforts, Plaintiffs create a false narrative that CB911 acted with nefarious intent throughout this case. Their implication that CB911 and its counsels' actions were willful violations of the Court's discovery orders or were deceptive is untrue. Plaintiffs baselessly imply that CB911 has long known about Ben Scrancher's deletions and responded by "fight[ing] all efforts to obtain discovery from Mr. Scrancher, and to cavalierly disclaim any and all responsibility to even attempt to preserve Skype chats from its employees." Dkt. 221 at 24. This could not be further from the truth. Neither CB911 nor its counsel was aware of Mr. Scrancher's deletions until January 14, 2025, when Plaintiffs' counsel raised it at Mr. Scrancher's deposition. *See* Corey Roush Declaration ("Roush Decl.") ¶¶ 10, 19; Gary Cardone Declaration ("Cardone Decl.") ¶¶ 10-11; Eaton Decl. ¶ 22.

To be clear, CB911 takes these allegations very seriously. CB911 has acted expeditiously since learning of the alleged spoliation of data to assess whether it happened and if so to determine if there is any way to recover the missing chats.[2] As discussed below, CB911 has now learned that Mr. Scrancher did delete the messages and is contemplating what actions to take against Mr. Scrancher, including potential

---

[2] To that end, among other actions, CB911 moved to reopen discovery and re-depose Mr. Scrancher, Dkt. 242.

termination.[3]  Eaton Decl. ¶ 23.  CB911 has also reached out to third parties who were part of the chats to see if the chats might be recoverable.  *See* Marc Conway Declaration ("Conway Decl.") ¶ 2; Eaton Decl. ¶ 26.  Through these efforts, CB911 found several of the missing messages—despite Plaintiffs' expert's attestation that the messages had been deleted and could not be recovered.  *See* Dkt. 221-6, Cole Popkin Decl. ¶¶ 9-11. Obviously, CB911 does not condone Mr. Scrancher's actions.  That said, CB911 is asking that the Court consider that the deletions were done by a mid-level employee, acting alone, in direct contravention of company policy and requirements.

## II.    FACTUAL BACKGROUND

Plaintiffs' Motion makes countless inaccurate statements, including outright lies, that paint a highly misleading picture of CB911's actions and the discovery process.  CB911 herein provides an accurate account of the record.

### A.    *The Federal Trade Commission Civil Investigative Demand*

On May 4, 2020, the FTC issued a Civil Investigative Demand ("CID"). Following receipt of the CID and retention of counsel, CB911 issued a Document Preservation Notice on June 26, 2020.  Eaton Decl. ¶ 15.  While the CID was limited to a subset of CB911's clients (of which Brightree was not one), Dkt. 258-13, CB911's Document Preservation Notice instructed the recipients, including Mr. Scrancher, to preserve "**all** information, data, communications and documents, including, in

---

[3] CB911's decision regarding how to discipline Mr. Scrancher is complicated by the fact that Mr. Scrancher is a UK citizen living in the UK.  Eaton Decl. ¶ 24.  If CB911 terminates him, this Court would neither be able to order CB911 to provide Mr. Scrancher for a deposition or have jurisdiction to order Mr. Scrancher personally to sit for a deposition.  *Id.*

particular, electronically stored information."  Eaton Decl. ¶ 15 (emphasis added).

**B.**    *The Instant Litigation*

On May 9, 2023, Plaintiffs' counsel emailed a demand letter to CB911's counsel.  *See* Dkt. 221 at 3.  On June 28, 2023, Plaintiffs filed the initial Complaint.  *See* Dkt. 1.  Even though the FTC Document Preservation Notice was still in effect, CB911 issued a Preservation Requirements Notice, which was sent to Mr. Scrancher, on July 19, 2023.  Eaton Decl. ¶¶ 16-17.  Discovery commenced on November 3, 2023 when Plaintiffs served their first Requests for Production of Documents.  Dkt. 67-1.

**C.**    *Disputes in This Case Related to Skype Chats*

Plaintiffs suggest that "CB911's prior explanations as to why the chats are gone [are] false," suggesting that CB911 and its counsel lied about the Skypes.  Dkt. 221 at 16.  This is inaccurate.  When the issue of Skype accounts arose during discovery, CB911's counsel explained to Plaintiffs' counsel similar to what CB911's counsel explained to the FTC—that "Chargebacks911 has no responsive Skype chat transcripts within its possession, custody, or control.  At all times relevant to the lawsuit, Chargebacks911 employees used their own personal Skype accounts."  Dkt. 74-8 ¶ 5.  When Plaintiffs challenged this position, CB911 agreed to ask its relevant employees to search their Skype accounts for responsive materials, including, most relevantly, Mr. Scrancher.  Dkt. 74 at 10.  When Mr. Scrancher claimed that he did not have any responsive Skypes, CB911's counsel asked Mr. Scrancher to share his screen with CB911's counsel while he again searched for responsive Skypes in March 2024.  Dkt.

74 at 11-12.  In that search, Mr. Scrancher showed CB911's counsel that messages older than two years no longer had any content.  Dkt. 74-6, Roush Decl. ¶ 14.  Mr. Scrancher also told CB911's counsel that he did not recall deleting his Skype chats with Brightree individuals.  Dkt. 74-6 ¶ 13.  Thereafter, CB911's counsel explained to Plaintiffs' counsel that the Skype chats no longer existed in CB911's employees files.[4]

Unsatisfied, Plaintiffs moved to compel production of certain individuals' Skype chats, including those of Mr. Scrancher, on March 4, 2024.  Dkt. 67.  Notably, during the hearing on Plaintiffs' motion, Judge Porcelli stated, "I want . . . to be abundantly clear and I think I have stated this already, I find what you [Defendants] have done to be reasonable," Dkt. 123 at 30:1-3, and not obstructive in the way Plaintiffs' counsel characterized Defendants' efforts.[5]  The Court made this statement to address Plaintiffs' allegations of gamesmanship and intentionally improper behavior.  Dkt. 123 at 29:23-30:8.  The Court rejected Plaintiffs' request for sanctions, but did grant Plaintiffs' motion to compel in part and gave Plaintiffs thirty days to hire an independent examiner to search Mr. Scrancher's Skype chats to see if it could find responsive documents or metadata.  Dkt. 123 at 29:5-11, 26:3-27:13.

---

[4] Plaintiffs state that "CB911 has never produced any Skype chats at all in this case, even from current employees besides Mr. Scrancher who were known to have chatted with Brightree." Dkt. 221 at 17.  This misleadingly suggests that there were messages to produce, which the record shows there were not. Dkts. 74-2 – 74-5 (showing screenshots of Ms. Eaton, Mr. Cardone, Mr. Scrancher, and Brandon Figueroa's Skype accounts).

[5] Plaintiffs state that "[t]he Court has already concluded that CB911's 'inquiry was insufficient' into Mr. Scrancher's chats."  Dkt. 221 at 17.  This is false and entirely inconsistent with Judge Porcelli's ruling.  Dkt. 123 at 30:1-6.

Thereafter, CB911 instructed Mr. Scrancher to comply with the Court's order[6] and introduced Plaintiffs to Mr. Scrancher's attorney, who in turn sought to ensure that Plaintiffs' counsel and their examiner not overreach (by, for instance, demanding to search Mr. Scrancher's entire computer). Dkt. 153 at 5.[7] Ultimately, Plaintiffs abandoned their efforts to conduct the inspection after lengthy exchanges with Mr. Scrancher's counsel, and the issue appeared to have resolved. Dkt. 185-2 at ¶ 5.[8]

### D.    *Mr. Scrancher's Deposition*

Contrary to characterizations by Plaintiffs' counsel, CB911 repeatedly tried to facilitate the deposition of Mr. Scrancher by asking and then demanding that Mr. Scrancher sit for a deposition. Dkt. 153 at 4 (CB911 requested Mr. Scrancher sit for a deposition notwithstanding the lack of proper service); Dkt. 185-1, Roush Decl. ¶¶ 3-5, 11-13 (requesting that Mr. Scrancher consent to the deposition); Eaton Decl. ¶ 19. Unfortunately, CB911 was unable to force Mr. Scrancher to appear for a deposition, given Mr. Scrancher's retention of U.K. counsel and his articulated position under U.K. law. As a result, CB911's counsel relayed to Plaintiffs that because Mr. Scrancher is a foreign, non-party employee, the mechanism for compelling his

---

[6] Plaintiffs state that "CB911 refused to comply with" the Court's order concerning Mr. Scrancher's Skype chats. Dkt. 221 at 19. This is false. Defendants notified this Court on April 22, 2024 of their efforts to comply and to push Mr. Scrancher and his counsel to comply. Dkt. 105. Defendants made their further efforts known to Plaintiffs on multiple occasions in May 2024. *See* Dkt. 110.

[7] This would have been inconsistent with Judge Porcelli's ruling, which stated that "[t]he scope of [Plaintiffs'] inquiry shall not extend beyond the subject matter listed in this request." Dkt. 93 at 2.

[8] Plaintiffs ignore the record and baselessly claim that "Scrancher's attorney refused to allow the court-ordered examination." Dkt. 221 at 6. In fact, there was active back-and-forth between Mr. Scrancher's attorney and Plaintiffs, and Plaintiffs ultimately decided to stop pursuing the court-ordered examination. CB911 not only never objected; it actively *encouraged* Scrancher's counsel to work with Plaintiffs' counsel. *See* Dkt. 153 at 4-5.

deposition would be to serve him with formal process under the Hague Convention. *See* Dkt. 106, Dkt 189.  Plaintiffs, thereafter, moved to compel his deposition.  After motions practice regarding whether the deposition of a foreign citizen could be compelled by a U.S. court without valid service under the Hague Convention, Judge Griffin ordered that Plaintiffs could take the deposition of Mr. Scrancher but made clear that the deposition would be limited to thirteen topics that had been proposed by Plaintiffs' counsel.  Dkt. 157 at 14.  At no point did Judge Griffin determine that Mr. Scrancher was "a high-level employee of Defendant" or a "managing agent" for the purpose of providing testimony that binds CB911.  Dkt 247.[9]  Indeed, Mr. Scrancher is not and never has been a "high-level" employee of CB911.  Eaton Decl. ¶ 2.  He is a young, non-officer, mid-level sales person with no college degree who has never had the authority to bind CB911 in any way.  Scrancher Aff. ¶¶ 2, 7-8.

During Mr. Scrancher's deposition, Plaintiffs used their knowledge of metadata that had not been produced to CB911 to ask Mr. Scrancher whether he deleted messages.  *See* Taylor Randleman Declaration ("Randleman Decl."), Ex. A at 252:10-255:7; 256:25-257:2; 258:11-12.  CB911 did not object when those questions pertained to Mr. Scrancher's communications with Brightree as that was one of the Court-approved topics.  Roush Decl. ¶ 20.  Mr. Scrancher indicated that he did not remember

---

[9] The court held that its determination that Scrancher is a managing agent for the purpose of Rule 30(b)(1) was "provisional" "because of the limited evidence presented on this issue and because Mr. Scrancher is the best person to explain his status within the company."  Dkt. 157 at 11. "The parties may, with the benefit of Scrancher's testimony, raise again for the purpose of trial Scrancher's ability to speak on behalf of and bind Chargebacks911."  *Id.*

if he had deleted the Skype messages in question.  Randleman Decl., Ex. A at 252:10-252:3.  Since the deposition, Mr. Scrancher has acknowledged that he made some of the identified deletions.  Scrancher Aff. ¶¶ 20-21.  He has also made clear that neither CB911 nor its counsel knew about the deletions.  Scrancher Aff. ¶¶ 19, 40.  The current and former CB911 CEOs and lead outside counsel have all provided sworn statements confirming that they did not know about the deletions.   Eaton Decl. ¶ 22, Cardone Decl. ¶¶ 10-11, Roush Decl. ¶ 19.

## E.    *The Electronically Stored Information at Issue*

The electronically stored information ("ESI") that is alleged to have been lost consists of thirteen messages: (1) four messages from a group chat between Mr. Scrancher, David Flynn, Johnny DeLuca and other individuals that were purportedly deleted in 2020 ("DeLuca Chats"); (2) five messages from a direct chat between Mr. Scrancher and Mr. Flynn ("Direct Chats") that were deleted in 2023; and (3) four messages from a group chat between Mr. Scrancher, Mr. Flynn, Mr. Conway and Andy Curle that were deleted in 2023 ("Conway and Curle Chats").  Dkt. 221 at 2-5.

With regard to the four DeLuca Chats alleged to have been deleted in 2020, Mr. Scrancher does not recall making those deletions, but believes they involved the introduction of Mr. Flynn to a third party (Mr. DeLuca).  Scrancher Aff. ¶¶ 16.  CB911 does not dispute that Mr. Scrancher introduced Mr. Flynn to Mr. DeLuca.

As discussed, *infra*, the four Conway and Curle Chats that were deleted in May 2023 have been recovered from Mr. Conway's Skype.  Conway Decl. ¶ 5.  The first

three messages in that chat were messages between Mr. Scrancher, Mr. Conway and Mr. Curle before Mr. Flynn was added to the chat. Scrancher Aff. ¶ 23. In those messages, Mr. Scrancher described Brightree as being a good customer of CB911 that required help setting up some companies. *Id.* Mr. Scrancher also deleted a message later in the chat where he again described Brightree as a good customer. *Id.* Mr. Scrancher attempted to delete these messages because he did not want to be associated with a client that may have done something bad. *Id.* ¶¶ 13, 35.

Mr. Scrancher believes the five Direct Chats that were deleted in May 2023 were instances where he was making other introductions to Brightree and referring to Brightree in a positive light. Scrancher Aff. ¶ 24. Mr. Scrancher generally recalls wanting to delete all messages where his actions could be interpreted as him recommending that companies work with a client (Brightree) that might not have been a good merchant. Scrancher Aff. ¶¶ 13, 35.

## III.    LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure addresses spoliation of ESI. *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018). "Pursuant to Rule 37(e), four threshold requirements must be met before a court may impose sanctions: (1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Deligdish v. Bender*, 2024 WL 3917212, at

*4 (M.D. Fla. Aug. 23, 2024).  "If the foregoing elements are not met, then a court **must** deny a request 'for spoliation sanctions or curative measures.'"  *Doe v. Willis*, 2023 WL 2918507, at *5 (M.D. Fla. Apr. 12, 2023) (emphasis added).  If the four threshold requirements are met, the Court is to consider whether the party (not the individual) had the intent to deprive the other party of the lost information.  Fed. R. Civ. P. 37(e).  The Eleventh Circuit has explained that if the threshold requirements are met but there was no intent by the party to deprive, "severe sanctions" like a default judgement are not appropriate.  *Deligdish*, 2024 WL 3917212, at *5 (citing *Skanska USA Civ. Se. Inc. v. Bagelheads*, Inc., 75 F.4th 1290 (11th Cir. 2023)).

## IV.   ARGUMENT

### A.   *CB911 Did Not Have a Duty to Plaintiffs to Preserve the DeLuca Chats in 2020.*

Plaintiffs do not argue that CB911 had a duty to preserve the DeLuca Chats **for this litigation**, nor could they.  "A party cannot be sanctioned for spoliation of ESI if there is no duty to preserve ESI in the first place."  *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2022 WL 433457, at *14 (11th Cir. Feb. 14, 2022).  The Advisory Committee's notes on Rule 37(e) explicitly state that "[t]he rule does not apply when information is lost before a duty to preserve arises."  Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee.  In the Eleventh Circuit, the test is whether litigation was "pending or reasonably foreseeable" when the spoliation occurred.  *Ala. Aircraft Indus., Inc.,* 2022 WL 433457, at *14.  A threat of litigation and duty to preserve in one matter is not

sufficient to anticipate litigation in a separate matter. *Scrap King LLC v. Stericycle, Inc.*, 2022 WL 18495259, at *10 (M.D. Fla. Dec. 20, 2022).

CB911 did not have a duty to Plaintiffs to preserve the DeLuca Chats when Mr. Scrancher likely deleted them in 2020. Nor do Plaintiffs claim that CB911 owed them such a duty. Dkt. 221 at 17 (explaining that Plaintiffs believe that CB911's "duty to preserve evidence [in this case arose] as of May 9, 2023"). Courts have consistently rejected the idea that a plaintiff can enforce the preservation obligations of another plaintiff or investigating entity. *In re Abilify (Aripiprazole) Prods. Liab. Lit.*, 2018 WL 4856767, at *5 (N.D. Fla. Oct. 5, 2018) (finding "that the duty to preserve evidence ran only to the DOJ and not to the plaintiffs"); *Point Blank Sols., Inc. v. Toyobo Am., Inc*, 2011 WL 742657, at *1 (S.D. Fla. Apr. 5, 2011) (declining "to create a new legal precedent which would establish some type of free-floating or shifting duty which other parties could latch onto in order to seek the sanctions"). Because CB911 did not owe a duty to Plaintiffs to preserve the DeLuca Chats, Plaintiffs cannot meet the first precondition of Rule 37(e), and the Court should not reach the analysis of subsections 37(e)(1) or (e)(2) as to the DeLuca Chats. *See In re Abilify,* 2018 WL 4856767, at *2.

**B.** ***The Conway and Curle Chats Were Recovered Through Additional Discovery.***

Rule 37(e) only applies if the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Four of the nine relevant Skype messages have been located. *See* Conway Decl. ¶ 5. Because the Conway and Curle Chats were recovered, the threshold elements cannot be established with regard to those messages,

11

and Rule 37(e) does not apply. *See Incardone v. Royal Caribbean Cruises, Ltd.,* 2019 WL 3779194, at *19 (S.D. Fla. Aug. 12, 2019) ("If the information [lost] 'is restored or replaced, no further measures should be taken.'") (quoting Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee).

### C.    *CB911 Took Reasonable Steps to Preserve ESI.*

In order to meet the threshold requirements of Rule 37(e), the allegedly spoliated ESI must have been lost because CB911 "failed to take reasonable steps to preserve" it. Fed. R. Civ. P. 37(e). The Skype Chats were not lost because CB911 failed to take reasonable steps to preserve them.[10] CB911 issued a document retention notice related to the FTC CID in June 2020 and a document retention notice related to the present litigation in July 2023. Eaton Decl. ¶¶ 15, 17. The issuance of the document retention holds ensured that potential custodians, including Mr. Scrancher, were aware of and understood their document retention obligations. The document hold related to the FTC CID was in effect in May 2023, when Scrancher deleted messages. *Id.* ¶ 16. While Mr. Scrancher did not have a company-issued computer or a company-controlled Skype account, which is an industry norm for an individual in a sales role, *id.* ¶ 6, his company-controlled records and data were preserved through protocols and processes designed to comply with CB911's preservation and production obligations, *id.* ¶ 10-13, consistent with good corporate and legal retention policies, Brown Decl. ¶ 16.

---

[10] While this section addresses all Skype Chats, only the five messages in the Direct Chats are relevant because the Rule 37(e) threshold criteria were not met for the DeLuca and Conway and Curle Chats.

In addition, CB911 made several good faith, reasonable searches for responsive Skype chats and provided proof of their lack of existence to Plaintiffs' counsel. Dkt. 74-10. CB911's efforts included having Mr. Scrancher search his personal account for responsive Skype chats while Mr. Scrancher shared his screen with Defense Counsel. Dkt. 74 at 11-12. In that search, Mr. Scrancher's messages older than two years appeared to no longer have any content. Dkt. 74-6 ¶ 14. Mr. Scrancher also told CB911's counsel that he did not recall deleting his Skype chats with Brightree individuals. Dkt. 74-6 ¶ 13. Neither CB911 nor its counsel had any reason to question Scrancher's statement. Roush Decl. ¶ 19. CB911's efforts went beyond what is required of employers. Indeed, "even in those cases where the court has found that an employer has 'control' over an employee's personal device, courts have only required the employer to ask the employee to search and produce the responsive information." *In re Skanska USA Civ. Se. Inc.,* 2021 WL 4953239, at *4 (N.D. Fla. Aug. 5, 2021) (holding that defendant's obligation did "not extend to requiring Skanska to extract and review all the cell phone data on Hill's cell phone"). As such, CB911 took reasonable steps to preserve data responsive to the present lawsuit. Brown Decl. ¶ 18.

**D.    *Severe Sanctions Are Not Warranted Because CB911 Did Not Intend to Deprive Plaintiffs of These Messages.***

The Court should not impose severe sanctions against CB911 because there is no evidence that *CB911* intended to deprive Plaintiffs of the five Direct Chats.[11] There

---

[11] Nor did CB911 intend to deprive Plaintiffs of any other Skype chats. This section only focuses on the five messages in the Flynn Direct Chat, *see supra* note 11.

13

is also no evidence that Mr. Scrancher acted on behalf of CB911 or at its direction when he deleted the messages.  Scrancher Aff. ¶¶ 17-19, 34, 36, 41.  The "'intent to deprive another party of the information's use in the litigation' is the equivalent of bad faith in other spoliation contexts.*"* *Skanska*, 75 F.4th at 1312 (citing Fed. R. Civ. P. 37(e)(2)).  "The phrase 'intent to deprive' naturally requires that the spoliator has a 'purpose of hiding adverse evidence' from other parties. And . . . *'intent to deprive' is more than negligence or even gross negligence*." *Id.* (internal citations omitted) (emphasis added).  That the party had "the purpose of hiding adverse evidence" is "key in evaluating bad faith because the *party's* reason for destroying evidence is what justifies sanctions (or a lack thereof)." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (emphasis added).  An intent to deprive refers to a party's actions to destroy or fail to preserve electronically stored information (ESI) with the "intent to deprive [party] from using the evidence in this case." *NuVasive, Inc. v. Absolute Med., LLC*, 2023 WL 11910763, at *8 (M.D. Fla. Nov. 22, 2023).

1. CB911's actions do not amount to an intent to deprive.

CB911's inability to preserve Mr. Scrancher's Skype messages does not rise to the level of bad faith.  Indeed, CB911 attempted to preserve the messages and its employee willfully disregarded CB911's instructions.  Plaintiffs allege that "CB911's own inaction amounts to intent to deprive" and argue that "[i]n *Skanska*, the 11th Circuit affirmed a finding of intent to deprive on far less serious facts than here."  Dkt. 221 at 21-22.  Plaintiffs' comparison to the "failures to act" in *Skanska* is misplaced.

14

*See id.* In *Skanska*, the district court said it could not "ignore Skanska's wholesale failure to take any steps to collect the cell phone data . . . or, at minimum, to ensure the custodians were aware of and understood the litigation hold that Skanska issued." *In re Skanska USA Civ. Se. Inc.,* 340 F.R.D. 180 at 185 (N.D. Fla 2021). Here, CB911 ensured custodians were aware that their preservation obligations extended to their personal accounts, Eaton Decl. ¶¶ 15-16 (noting that the FTC-related document hold that was in place when Mr. Scrancher deleted the relevant messages made clear that the hold applied to all communications and ESI), and provided a "cogent explanation" for why it did not originally collect the Skype chats, Dkt. 74 at 4 (explaining that the FTC did not ask for Skype messages to be collected and produced). CB911's failure to collect Mr. Scrancher's Skypes before he deleted them was not to hide adverse evidence. Accordingly, an intent to deprive should not be inferred from CB911's preservation and collection efforts.

> 2.   <u>CB911 did not act in bad faith when Mr. Scrancher acted independently.</u>

Plaintiffs contend that "[b]ecause Mr. Scrancher had an intent to deprive, so did CB911." Dkt. 221 at 20. In *Selectica, Inc. v. Novatus, Inc.*, the court found that an employee acted in bad faith when he destroyed files but refused to impose sanctions on the employer because "there [wa]s no evidence that [the employee] acted on instructions from [his employer], or with its knowledge or approval." 2015 WL 1125051, at *7 (M.D. Fla. Mar. 12, 2015). Thus, there was "no evidence that [the employer] acted willfully, purposefully, or otherwise in bad faith." *Id.*

Here, Mr. Scrancher was not acting on behalf of CB911 when he deleted
messages, but rather he was acting of his own accord and in contravention of CB911's
instructions. First, Mr. Scrancher is not and never has been a "high-level" employee.
Eaton Decl. ¶¶ 2,5; Scrancher Aff. ¶¶ 7, 8. Second, Mr. Scrancher's declaration makes
clear that he was trying to protect himself, not CB911. Scrancher Aff. ¶¶ 13, 34-35, 41
(explaining that he did not want to be seen as having assisted Brightree, a potentially
bad client). Third, the fact that Mr. Scrancher hid the deletions from CB911 and its
counsel indicates that he was not acting within the scope of his employment, but for
his own benefit. To be clear, no one at CB911 told Mr. Scrancher to make the
deletions. *See* Scrancher Aff. ¶¶ 19, 34; Eaton Decl. ¶ 21; Cardone Decl. ¶¶ 8-9.

Plaintiffs erroneously claim that Mr. Scrancher's deletions "were at least partly
for CB911's benefit, because they hid selected information which Mr. Scrancher (and
CB911) knew would be at the heart of this lawsuit." Dkt. 221 at 13. There is no
evidence, however, that Mr. Scrancher deleted the messages, even partly, in a
misguided attempt to benefit CB911. Mr. Scrancher explains that he deleted the
messages because "I did not want to be seen to having helped Brightree by introducing
it to any third party providers. I was also concerned that I had described Brightree as
a good company or client." Scrancher Aff. ¶ 35. In fact, he states "I did not want to
be closely associated with a client that may have done something bad." *Id.*

The recovered messages reveal that Plaintiffs' speculation that these messages
are "at the heart of the lawsuit" is misplaced. Dkt. 221 at 13. "Failure to preserve

16

such speculative evidence does not raise the specter of bad faith in the same way that
a failure to preserve evidence of a specific, crucial event in a case might." *ML
Healthcare Servs., LLC*, 881 F.3d at 1309. As the court in *Deligdish* explained: "though
Plaintiff has asserted that the ESI might possibly contain evidence of actual malice or
intent to harm, that assertion is pure speculation and, thus, not worthy of an adverse
inference or other related sanction." 2024 WL 3917212, at *8.[12]

### E.    *The Imposition of the Severe Sanction of Default Judgment is Unjustified and Does Not Fit the Alleged Wrong.*

Plaintiffs' request for default judgment is unsupported by case law or the record.
"The law of this circuit demands a greater record of intransigence to justify the default
sanction" *In re Skanska*, 340 F.R.D. at 190-91. Indeed, "[t]he Eleventh Circuit has
cautioned . . . that 'the *most severe*' of the available sanctions under subdivision (e)(2)—
dismissal of an action—should be employed only where there is a demonstration of
bad faith and where lesser measures are inadequate." *Doe v. Willis*, 2023 WL 2918507,
at *10 (emphasis added); *Treminio v. Crowley Mar. Corp.*, 2024 WL 1075433, at *5
(M.D. Fla. Mar. 12, 2024).

The cases on which Plaintiffs rely are readily distinguishable and highlight that
the requested relief does not match the facts. *See* Dkt. 221 at 23-24. For instance, in
*Skanska*—a case cited extensively by Plaintiffs—the district court rejected plaintiffs'
request to impose a sanction of default judgment even where "five of thirteen cell

---

[12] Plaintiffs claim that "CB911 was negligent in supervising Mr. Scrancher." Dkt. 221 at 9. Plaintiffs'
negligent supervision theory fails as a matter of law because the case law is clear that the standard for
Rule 37(e)(2) "is more than mere negligence." *Skanska*, 75 F.4th at 1312.

phones were wiped, lost or otherwise made unavailable" and the "failure went beyond

just these custodians." *In re Skanska,* 340 F.R.D. at 186. In contrast, the court in

*Hornady v. Outokumpu Stainless USA, LLC*, issued default judgment as a "sanction of

last resort" against a defendant that "intentionally sabotaged the judicial process." 118

F.4th 1367, 1378 (11th Cir. 2024). In so ruling, the court detailed defendant's "never-

ending discovery violations" in a nearly-100 page order that described "unrebutted

evidence that [defendant] doctored and produced false records, refused to produce

other records it had previously agreed to produce, and made substantial

misrepresentations to the plaintiffs and the court in an attempt to foist the blame for

its discovery failures on anyone but itself." *Id.* at 1377-78.

In support of their request for default judgment, Plaintiffs suggest that CB911

"tried many of the same strategies" as the *Hornady* defendant. Dkt. 221 at 23. This is

patently false. CB911 has not made any misrepresentations—let alone substantial

ones, has not doctored evidence and has not serially violated the Court's orders.

Numerous other cases also demonstrate how unsupported Plaintiffs' request for

default judgment is by case law. *See e.g., Pac. Coast Marine Windshields Ltd. v. Malibu

Boats, LLC,* 2012 WL 10817204, at *10 (M.D. Fla. Nov. 30, 2012) (finding that "cases

granting dismissal or default judgments against the spoliator uniformly involve actions

by the actual party who intentionally sought to benefit directly from the destruction").

For instance, in *Ahrens Enters., Inc. v. Winning*, "the court passe[d] on th[e] drastic

proposal [of default judgment] . . . to remedy the prejudice." 2019 WL 12520080, at

18

*5 (S.D. Fla. Apr. 18, 2019). Similarly, in *FTC v. F&G Int'l Grp. Holdings, LLC,* the court found that the defendants acted with the intent to deprive the FTC of relevant evidence by deleting emails, but decided not to impose default judgment. 339 F.R.D 325, 332-33 (S.D. Ga. 2021). And in *Ala. Aircraft Indus., Inc, v. Boeing Co.*, the court did not enter default judgment even though the court determined that the defendant intentionally destroyed ESI when the CFO permanently deleted emails from his work computer. 319 F.R.D. 730, 746 (N.D. Ala. 2017).

The analysis in these cases directly contradicts Plaintiffs' categorical claim that the "damage done to the judicial process justifies the default." *See* Dkt. 221 at 24. Mr. Scrancher's spoliation does not warrant the extreme sanction of default judgment against CB911, and the Court should reject Plaintiffs' request for this most severe of sanctions. Plaintiffs have multiple ways to present evidence to the jury regarding the five missing Skype messages such that the jury can consider the loss of that evidence and the circumstances under which it was lost, in evaluating witness credibility and making other factual determinations. *See Doe v. Willis,* 2023 WL 2918507, at *15.

**F.** ***Plaintiffs Have Not Been Prejudiced by Mr. Scrancher's Actions.***

"A finding of prejudice is an important component of a decision to sanction a party with dismissal or default." *See Classic Soft Trim, Inc. v. Albert*, 2021 WL 724974, at *3 (M.D. Fla. Feb. 10, 2021) (internal quotations and citation omitted); *see also Silverstein v. Boehringer Ingelheim Pharms., Inc.*, 2020 WL 13119102, at *11 (S.D. Fla.

Aug. 5, 2020).[13]  To determine whether a party was prejudiced, the Court must
evaluate "the information's importance in the litigation."  *Harborview Realty, Inc. v.
Fifth Third Bank, Nat'l Ass'n*, 740 F. Supp. 3d 1186, 1194 (M.D. Fla. 2024) (finding that
the plaintiffs were not prejudiced because they failed to explain why or how a review
of the deleted web logs would provide them with any further information important to
the litigation) (internal quotations and citation omitted); *see also Alston v. City of Darien*,
750 F. App'x 825, 835 (11th Cir. 2018).  Plaintiffs state that "prejudice here is clear"
yet they fail to establish how the lost information was important evidence that would
have made a critical impact on the litigation.  Dkt. 221 at 25.  As such, Plaintiffs have
not been prejudiced by Mr. Scrancher's actions.

## V.    CONCLUSION

For the aforementioned reasons, CB911 requests this Court deny Plaintiffs'
Motion for Sanctions.  In the event the Court determines that Rule 37(e) sanctions are
appropriate, CB911 requests additional briefing on the appropriate sanction to address
why lesser sanctions would be appropriate.


Dated: February 25, 2025                    Respectfully submitted,

                                            */s/ Corey W. Roush*
                                            Corey W. Roush, Esq. (*pro hac vice*)
                                            Taylor Randleman (*pro hac vice*)
                                            **SIDLEY AUSTIN LLP**
                                            1501 K St, NW
                                            Washington, DC 20005

---

[13] This analysis of prejudice is also relevant to Plaintiffs' arguments that sanctions under Rule 37(e)(1)
should be imposed.  *See* Dkt. 221 at 25.

Telephone: 202-736-8624
corey.roush@sidley.com
taylor.randleman@sidley.com

***Attorneys for CB911 and Gary Cardone***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2025, the foregoing was electronically filed with
the Clerk of the Court by using the CM/ECF system, which will send a notice of
electronic filing to all counsel of record.

<u>*/s/ Corey W. Roush*</u>
Corey W. Roush, Esq. (*pro hac vice*)

21