## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANET SIHLER and CHARLENE
BAVENCOFF, Individually and On
Behalf of All Others Similarly Situated,

          Plaintiffs,

v.

GLOBAL E-TRADING, LLC DBA
CHARGEBACKS911, GARY
CARDONE, MONICA EATON,

          Defendants.

Case No. 8:23-cv-01450-VMC-LSG

## DECLARATION OF COREY ROUSH IN SUPPORT OF GLOBAL E-TRADING LLC DBA CHARGEBACKS911'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

I, Corey Roush, hereby declare under penalty of perjury under the laws of the United States, and to the best of my knowledge and belief, that the following is true and correct:

1.     I have personal knowledge of the facts stated herein.   I am counsel for Global E-Trading LLC d/b/a Chargebacks911 ("Defendant") in the above-captioned case, and I provide this declaration in support of Global E-Trading LLC d/b/a Chargebacks911's Opposition to Plaintiffs' Motion for Sanctions.

2.     I am a Partner at Sidley Austin, LLP.  I am a member in good standing of the bar of the District of Columbia.  I am admitted to practice before the U.S.

1

Supreme Court as well as the U.S. Courts of Appeals in the 2nd, 3rd, 6th, 7th, 9th, 11th, and Federal Circuits.

3.      I received my juris doctor from the Georgetown University Law Center in 1997 and my bachelor's degree from Vanderbilt University in 1994.

4.      I have been in good standing in one or more courts for the entirety of my almost twenty-eight year career.  I have never been disciplined by a court, bar, or any other entity.

5.      I take my ethical obligations as a member of the bar very seriously.  I have never lied or attempted to deceive verbally, in writing or otherwise any court, including this Court.

6.      In this Court's February 18, 2025 Endorsed Order, the Court noted that it was "not convinced that Defendant has somehow been taken by surprise by the allegations of the motion for sanctions" in part because ". . . . **Defendant's counsel advised that employee during his deposition to refuse to answer.**"  Dkt. 247. (emphasis added).

7.      The Court also ruled that **"[t]o the extent Defendant claims** it has not been provided the JSON data on which the motion for sanctions is at least partially based, the Court directs Plaintiffs to promptly provide a copy of that data to Defendant. . . ."  *Id.* (emphasis added).

8.      I am the counsel who defended the aforementioned deposition and the counsel who stated in the Motion to Conduct Additional Limited Discovery that Plaintiffs had not provided the JSON data on which their sanctions motion was based

to Defendant.  I address each below starting with the latter.

**PRODUCTION OF JSON DATA**

9.      My statement on behalf of Defendant in the Motion to Conduct
Additional Limited Discovery that Plaintiffs had not produced to Defendant or
Defendant's counsel the JSON data on which the sanctions motion was based was
accurate and truthful.

10.     On January 14, 2025 at the deposition of Ben Scrancher, Plaintiffs first
made Defendant and its counsel aware of the JSON data that was produced to
Plaintiffs on December 23, 2025.  At the deposition, I asked Plaintiffs' counsel, "Have
you produced to us the metadata that you are [basing your allegations on]?" Counsel
replied: "We cannot do that because, pursuant to our agreement with Mr. Flynn, no
one is allowed to see his JSON data, not you, not me, not anybody, except this third
party . . ." – a third party vendor retained by Plaintiffs' counsel.  Scrancher Dep.
261:18-263:20.

11.     On February 8, 2025, Plaintiffs offered to send the JSON file to a
vendor retained by Defendant but said that if Defendant's counsel wanted to review
the JSON file themselves, a consent motion to compel would be required.  *See* Exhibit
A, attached hereto, which is the email that counsel for Plaintiffs sent on February 8,
2025.

12.     On February 12, 2025, Defendant retained an external vendor to
review and process the JSON file.

13.     On February 14, 2025, Plaintiffs provided the JSON file to a vendor

retained by Defendant.

14.     On February 14, 2025, Defendant brought this issue to the Court's attention.  Dkt. 242 at 4-6.  Defendant was clear that Plaintiffs' vendor had provided the JSON file to Defendant's external vendor on February 14, 2025.  *Id.* at 6.

15.     On February 18, 2025, the Court ordered the JSON data to be provided to Defendant by Plaintiffs.  Dkt. 247 (". . . . the Court directs Plaintiffs to promptly provide a copy of that data to Defendant . . . ."

16.     Attached hereto as Exhibit B is the email chain which includes the email that counsel for Plaintiffs sent on February 18, 2025 indicating that they deemed what they had already done (having their vendor transfer the data to Defendant's vendor) to be consistent with the Court's Order and satisfy Plaintiffs' obligations.  Plaintiffs' counsel also indicated that "Defendants can instruct their expert regarding the disclosure of the JSON file as they see fit." *Id.*

17.     Despite the Court's Order clearly requiring that Plaintiffs provide Defendant with the data so that Defendants can review the evidence on which Plaintiffs base their Motion for Sanctions, Plaintiffs have refused to provide a copy of the data to Defendant.

## LACK OF KNOWLEDGE OF DELETIONS

18.     As to the implication that Defendant's counsel knew that Ben Scrancher had deleted Skype messages and that was the basis for my instructions not to answer, Plaintiffs' counsel mischaracterizes what happened at the Ben Scrancher deposition.

4

19.      First, I did not know – nor do I believe any defense counsel knew – that Ben Scrancher had deleted the Skype messages.  I participated in an interview to collect Mr. Scrancher's responsive Skypes as well as his deposition preparation.  At no time did he mention that he had deleted the messages.  During the interview, Mr. Scrancher confirmed that he did not recall ever individually deleting any messages with Brightree individuals.  I had no reason to question Mr. Scrancher's statement.

20.      Second, I did not instruct Mr. Scrancher not to answer questions about whether he deleted Skype messages that involved Mr. Flynn.  In other words, he answered those questions:  "Q. Did you ever delete any messages in this chat between you and Mr. Flynn? A. I don't know. Q. Did you ever go to a specific message on December 31, 2019 and delete it? A. I don't know.  It's a long time ago." Scrancher Dep. 252:23-253:3.  I did not object to those questions or instruct Mr. Scrancher not to answer because the questions related to one of the thirteen topics to which  the Magistrate Judge limited the deposition: "Mr. Scrancher's communications with the Keto diet pill merchants including without limitation David Flynn."

21.      None of the thirteen topics related to the production of Mr. Scrancher's Skype messages – an issue that had previously been litigated before the Court with Magistrate Judge Porcelli in April 2024 giving Plaintiffs thirty days to hire an external vendor to review Mr. Scrancher's Skype files.  That review never happened, and Plaintiffs never sought additional leave from the Court to continue to pursue that vein of discovery. In other words, the issue seemed over.

22.      My understanding that the issue was resolved was confirmed when Mr.

Scrancher's preservation of and search for his Skype documents was not one of the
requested thirteen topics.

23.     Thus, I was surprised in the deposition when Plaintiffs' counsel sought
to depose Mr. Scrancher on his production of Skype chats.  Plaintiffs' counsel cleverly
avoided explaining that he believed that Mr. Scrancher may have purposely deleted
files when he explained why he should be able to ask if Mr Scrancher searched his
Skype messages.  Counsel explained: "I think [these questions are] highly relevant to
a coming motion for sanctions, and so the court ordered Mr. Scrancher to produce
his Skype chats.  Mr. Scrancher refused. We have emails directly from [Mr.
Scrancher's personal] lawyer telling us we cannot have an independent examiner
review his Skype chats, and so we're planning to move for sanctions on that."  247:16-
23.

24.     In response, I made clear at the deposition my understanding of Judge
Griffin's Order: "Where I objected and instructed him not to answer was about the
discovery process that occurred after you brought this lawsuit, because that's not
within the scope of what you asked in your 13 topics. . . . The Judge made very clear
that you were limited to these 13 topics and I was supposed to object, as I have been,
and instruct him not to answer and I've been doing that."  253:13-254:3.

25.     This view was based on Judge Griffin's Order, which said that the
scope of the deposition was to be "narrower than that permitted under Rule 26(b)(1)"
and that "the plaintiffs must adhere to this list of topics during Scrancher's deposition.
Both Scrancher and Chargebacks911's counsel may object during the deposition as

provided under Rule 30(c)(2), including to the form and foundation of a question."
Dkt. 204 at 14. Rule 30(c)(2) makes clear that a "person may instruct a deponent not
to answer . . . to enforce a limitation ordered by the court."

26.    On this basis, during the deposition I objected and instructed the
witness not to answer approximately twelve times on topics unrelated to Mr.
Scrancher's preservation of his Skype messages. Plaintiffs' counsel did not seek to
contact the Court on any of the objected-to questions despite Judge Griffin explicit
statement that the "the parties may contact me about any issue that they are unable
to resolve themselves during Scrancher's deposition." Dkt. 204 at 13.

27.    As Plaintiffs' counsel asked questions, I did not instruct Mr. Scrancher
not to answer questions related to deletions of communications with Mr. Flynn or
whether there were once messages that were no longer available. *See, e.g.,* Scrancher
Dep. 250-22-253:3, 257:12-24; *but see* Scrancher Dep. 256:25-257-4 (mistakenly
objecting and instructing Mr. Scrancher not to answer a question that was within the
scope).

28.    If I erred in my interpretation of Judge Griffin's order or exercised poor
judgment in feeling bound by that Order, I apologize.

29.    I had hoped that any issues caused by my objections and instructions
not to answer would be rectified by this Court ordering an additional deposition of
Mr. Scrancher that was not limited by Judge Griffin's Order—a deposition
Defendants affirmatively requested in their motion to this Court on February 14,
2025. *See* Dkt. 242.

30.    In any event, I can assure the Court that my objections and instructions were because of Judge Griffin's Order and not because I was aware of the deletions – far from it.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  February 25, 2025            By:  */s/ Corey W. Roush*
                                                          Corey W. Roush

# Exhibit A

| From: | Cyclone Covey |
| To: | Roush, Corey W. |
| Cc: | Kevin Kneupper; Schifino, William; Randleman, Taylor; Pierson, Gregory; Purdy, Lauren; Bennett, Justin |
| Subject: | Re: Sihler v Global E Trading - Plaintiff's Unredacted Motion for Sanctions |
| Date: | Saturday, February 8, 2025 11:28:22 AM |
| Attachments: | attachment-1.png |

**EXTERNAL EMAIL - Use caution with links and attachments.**

All:

I wanted to reiterate what we said yesterday afternoon. If you have a vendor that you want us to send the JSON file to let us know. We can arrange to have the file transferred promptly. If you want to review the JSON file yourselves we're happy to review a consent motion to compel that outlines how we obtained the JSON. We're also available for a call next week on this if you would like.

Thanks,



Cyclone Covey
Partner
_____
Licensed in Georgia and California
GA Bar 190747 CA Bar 335957

*Office* 657-845-3100 *Mobile* 678-928-6806 *Email* cyclone@kneuppercovey.com
*Mailing Address* 11720 Amber Park Dr, Ste 160, PMB 1271, Alpharetta, GA 30009

On Thu, Feb 6, 2025 at 10:38 AM Roush, Corey W.

<corey.roush@sidley.com> wrote:

> Cyclone and Kevin,
>
>
> As you may know, we have been unable to reach David Flynn. We would like to ask the
> court to compel you to give us the data so we can have our own forensic analysis done. We
> may also want to seek a deposition of Cole Popkin. I am happy to meet and confer on these
> issues, but wanted to ask whether you would oppose either of those motions. I know an
> unopposed motion to compel is unusual, but I have understood your reluctance in providing
> it to be because you feel you cannot do so because of Flynn. If the court ordered you to
> provide it, that would solve that problem. If you are potentially amenable to not opposing
> the motion, we would plan to share it with you in advance so you knew what you were not
> opposing.
>
>
> Please let me know your thoughts or if we need a meet and confer.

Thanks.


Corey

**COREY W. ROUSH**


**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com

**SIDLEY**


*********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*********************************************************************************************

> **From:** Cyclone Covey <cyclone@kneuppercovey.com>
> **Sent:** Wednesday, February 5, 2025 9:14 PM
> **To:** Roush, Corey W. <corey.roush@sidley.com>; Pierson, Gregory
> <gpierson@gunster.com>; Cristina Warder <cwarder@gunster.com>; Jordan
> Wagner <jwagner@kibbeylaw.com>; Rubin, Joshua <rubinj@akingump.com>;
> cdoubroff@akingump.com; echun@akingump.com; svasquez@akingump.com;
> westdocketing@akingump.com; corey-roush-8794@ecf.pacerpro.com; Bennett,
> Justin <jbennett@gunster.com>; lpurdy@gunster.com; awinsor@gunster.com;
> Marder, Neal <nmarder@akingump.com>; Randleman, Taylor
> <taylor.randleman@sidley.com>; Schifino, William <wschifino@gunster.com>
> **Cc:** Lorraine Weekes <lorraine@kneuppercovey.com>; Anthony Sampson
> <anthony@kneuppercovey.com>; Kevin Kneupper <kevin@kneuppercovey.com>
> **Subject:** Re: Sihler v Global E Trading - Platintiff's Unredacted Motion for
> Sanctions


Counsel:


The following link contains an unredacted copy of Plaintiffs' Motion for Sanctions
and the unredacted Exhibits 1, 2, 4, 9, 15-20.

https://we.tl/t-6hYFJsdw5p

Regards,

## Cyclone Covey
Partner

Licensed in Georgia and California
GA Bar 190747 CA Bar 335957

*Office* 657-845-3100 *Mobile* 678-928-6806 *Email* cyclone@kneuppercovey.com
*Mailing Address* 11720 Amber Park Dr, Ste 160, PMB 1271, Alpharetta, GA 30009

# Exhibit B

| | |
|---|---|
| **From:** | Roush, Corey W. |
| **To:** | Cyclone Covey |
| **Cc:** | Schifino, William; Anthony Sampson; Bennett, Justin; Pierson, Gregory; Jordan Wagner; Kevin Kneupper; Purdy, Lauren; Randleman, Taylor; Lorraine Weekes |
| **Subject:** | RE: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010 |
| **Date:** | Friday, February 21, 2025 6:35:43 PM |
| **Attachments:** | image003.png |
| | image001.png |

I do not understand how can you say it is in Defendant's custody and control even though it was produced to a vendor with explicit instruction that Defendant and Defendant's counsel couldn't look at it but also argue that it isn't in your custody and control when your vendor has it with the same instructions? The difference between the two of us is that you have a federal judge ordering you to produce it. I don't have a federal judge saying I can look at the data that has already been provided to the vendor.

I do not understand why you are refusing to provide or have Epiq provide it. You know what the judge ordered, and you know what we told her in the motion. The only way to make sense of what she ordered given what she was told is that you are supposed to provide it to Defendant not Defendant's vendor.

We don't need to belabor this. I brought it up earlier today because I didn't think it was appropriate to tell the judge that we still couldn't see it because you didn't produce it without giving you a chance to produce it.

**COREY W. ROUSH**

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com

**SIDLEY**

---

**From:** Cyclone Covey <cyclone@kneuppercovey.com>
**Sent:** Friday, February 21, 2025 5:45 PM
**To:** Roush, Corey W. <corey.roush@sidley.com>
**Cc:** Schifino, William <wschifino@gunster.com>; Anthony Sampson <anthony@kneuppercovey.com>; Bennett, Justin <jbennett@gunster.com>; Pierson, Gregory <gpierson@gunster.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Purdy, Lauren <lpurdy@gunster.com>; Randleman, Taylor <taylor.randleman@sidley.com>; Lorraine Weekes <lorraine@kneuppercovey.com>
**Subject:** RE: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

**EXTERNAL EMAIL - Use caution with links and attachments.**

Corey

It seems to me like you are intentionally splitting hairs. The order says to provides the JSON file to Defendants. You are Defendants' counsel and their agent and clearly you would agree that if I provided you, as Defendants' agent, the file then I would have complied. So by virtue of having provided the same file to Defendants' expert, who is also Defendants' agent, we have already complied with the order. We have no objection to you using your vendor (who is an agent of the Defendants) to give you the JSON file in full.

On February 21, 2025 at 5:38:08 PM, Roush, Corey W. (corey.roush@sidley.com) wrote:

My last email was intended to explain that. The Court did not say that I could get it from my vendor. It said I was to get it from you.

**COREY W. ROUSH**

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com

**SIDLEY**

---

**From:** Cyclone Covey <cyclone@kneuppercovey.com>
**Sent:** Friday, February 21, 2025 5:31 PM
**To:** Roush, Corey W. <corey.roush@sidley.com>
**Cc:** Schifino, William <wschifino@gunster.com>; Anthony Sampson <anthony@kneuppercovey.com>; Bennett, Justin <jbennett@gunster.com>; Lorraine Weekes <lorraine@kneuppercovey.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Purdy, Lauren <lpurdy@gunster.com>; Randleman, Taylor <taylor.randleman@sidley.com>; Pierson, Gregory <gpierson@gunster.com>
**Subject:** RE: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Corey

Can you please explain why you cannot get the file from your vendor?

On February 21, 2025 at 5:25:35 PM, Roush, Corey W. (corey.roush@sidley.com) wrote:

Cyclone,

Given what I perceive the judge's view of me to be, there is no way I am doing anything she didn't order.  As a result, I feel my only way to actually look at the data is to come to you guys because producing the data to Defendant is the thing she ordered you to do.  If she had said, "Defendant already has the data and is welcome to look at it," I'd be very comfortable doing so.  That's not what she said.

I don't know how you should affect the Judge's ruling.  I will state in writing that I will not criticize you or try to do anything to undermine you or your case if you instruct Epiq to produce it to me.

Corey

**COREY W. ROUSH**

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com

**SIDLEY**

---

**From:** Cyclone Covey <cyclone@kneuppercovey.com>
**Sent:** Friday, February 21, 2025 5:19 PM
**To:** Roush, Corey W. <corey.roush@sidley.com>
**Cc:** Schifino, William <wschifino@gunster.com>; Anthony Sampson <anthony@kneuppercovey.com>; Pierson, Gregory <gpierson@gunster.com>; Bennett, Justin <jbennett@gunster.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Purdy, Lauren <lpurdy@gunster.com>; Randleman, Taylor <taylor.randleman@sidley.com>; Lorraine Weekes <lorraine@kneuppercovey.com>
**Subject:** RE: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Corey

We still fail to understand why your vendor cannot provide the file to you if you need to analyze it yourself. I literally do not have the file so it is impossible for me to send it to you.  Are you asking me to direct Epiq to send it to you? If so how is that different than you telling your vendor to send it to you?

-Cyclone

On February 21, 2025 at 5:11:13 PM, Roush, Corey W. (corey.roush@sidley.com) wrote:

Cyclone,

There is no attempt at baiting you. I can't imagine what objection Mr. Flynn would have to your producing material to us after a federal judge ordered you to do so.

I am just trying to get you to do what the Court ordered, so CB911 and I have a chance to look at the file – especially because we understand it is inconsistent with the Microsoft data.  A defendant has the right to see the evidence used against it.

In any event, we told the Court that your vendor had the data (Motion at 4), that your position was that you did not possess the data because it was only in the hands of your vendor (Motion at 5), and that your vendor had given the data to our vendor (Motion at 6).  The Judge then ordered you to produce it to Defendant – "the Court directs
Plaintiffs to promptly provide a copy of that data to Defendant."  She would not have made that Order if she deemed production to our vendor sufficient.

As to the delay, I did not realize that Anthony's email wasn't the production until today as I have been in out-of-town all-day meetings and not able to focus on the emails in this case.  I am sorry for the delay – I don't think it prejudices you in any way.

Thanks.

Corey

**COREY W. ROUSH**

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.

Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com

## SIDLEY

---

**From:** Cyclone Covey <cyclone@kneuppercovey.com>
**Sent:** Friday, February 21, 2025 4:14 PM
**To:** Roush, Corey W. <corey.roush@sidley.com>
**Cc:** Anthony Sampson <anthony@kneuppercovey.com>; Randleman, Taylor <taylor.randleman@sidley.com>; Kevin Kneupper <kevin@kneuppercovey.com>; Lorraine Weekes <lorraine@kneuppercovey.com>; Pierson, Gregory <gpierson@gunster.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Schifino, William <WSchifino@gunster.com>; Bennett, Justin <JBennett@gunster.com>; Purdy, Lauren <LPurdy@gunster.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Corey,

Your motion for extra time did not properly inform the Court the status of the JSON file. Your motion falsely states, repeatedly, that "Plaintiffs obtained from Flynn a JSON file that is purportedly the metadata of those Skype chats." You well know that Plaintiffs never have had possession of this file. We have repeatedly explained to you and your team that we do not have the JSON file and the reasons for that. We view the representations that the Plaintiffs have possession of the file as a violation of your duty of candor to the Court. You further heavily suggested to the Court in your prior motion that you did not have access to the file because of something on our end, when in fact we had to ping you repeatedly to find out where to instruct our vendor to send it. You were spared the embarrassment of Plaintiffs explaining this in detail only because the Court quickly denied your motion. The Court's order clearly was intended to ensure that Defendant was responding to the motion for sanctions on an equal playing field, referencing "the JSON data on which the motion for sanctions is at least partially based." CB911 has "the JSON data on which the motion for sanctions is at least partially based"-- it has the JSON data in the precise way that Plaintiffs do.

We caution you not to compound your mistake by suggesting that Plaintiffs have possession of the file when they do not. Of course, if you deem it wise to present a half-truth to the Court we will disabuse the Court of that notion in a request to file a reply. To the degree that you intend to argue to the Court that we have possession of the file by virtue of our vendor having it, that argument also applies to you and your vendor. The only possible reason you can be asking us to send the JSON file directly (when we do not have it) is gamesmanship to attempt to have Plaintiffs violate their agreement with Mr. Flynn.

Also Anthony sent his email on February 18, just hours after the Court denied Defendants' motion for additional discovery. That you have waited until after 3 pm on Friday afternoon to demand that we send to you today a file that we do not have reeks of gamesmanship. Anthony suggested that you can simply instruct your vendor to send it to you directly if you believe the Court's order requires or permits that. We are unclear on why you haven't done so.

More to the point, there is no sense in which Defendants have been prejudiced. What CB911 asked for in its motion for additional discovery is "the opportunity to analyze the JSON data independently." It has that opportunity (there's no logical reason why CB911's lawyers or the company itself, as opposed to its experts, require access to the JSON file). Plaintiffs provided Defendants' expert with the exact information that they had in preparing the motion for sanctions. That expert can perform an independent analysis that Defendant requested.

If CB911 wants to direct its vendor to provide the file, that is your decision. But asking Plaintiffs to disclose data that they (i) do not have, (ii) do not have permission to access, and (iii) have provided to CB911 in a way that gives the company every opportunity to respond to the motion is unreasonable.

We will not take your bait to violate our agreement with Mr. Flynn given that your vendor has had possession of the JSON file at least since February 14. Your vendor (and you) do not have such an agreement with him. This is just yet another attempt to shift the blame for what CB911 has done to someone else.

## Cyclone Covey
Partner

Licensed in Georgia and California
GA Bar 190747 CA Bar 335957

**Office** 657-845-3100 **Mobile** 678-928-6806 **Email** cyclone@kneuppercovey.com
**Mailing Address** 11720 Amber Park Dr, Ste 160, PMB 1271, Alpharetta, GA 30009

On Fri, Feb 21, 2025 at 3:20 PM Roush, Corey W. <corey.roush@sidley.com> wrote:

Anthony,

As we prepare our response to the Motion for Sanctions, we wanted to let you know that we plan to make clear to the Court

that you have not complied with her Order unless you do so today.  Our Motion for
Additional Discovery noted that you had not produced the JSON file to us, but only to our
vendor, and thus we and CB911 were not able to review it.  The Judge in turn ordered you
to provide a copy to Defendant.  If she had deemed that our vendor was sufficient, she
would not have needed to order you to provide a copy.  Please produce a copy
immediately per the Court's instruction.

All the best,

Corey

**COREY W. ROUSH**

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8624
corey.roush@sidley.com
www.sidley.com
**SIDLEY**

---

**From:** Anthony Sampson <anthony@kneuppercovey.com>
**Sent:** Tuesday, February 18, 2025 4:22 PM
**To:** Randleman, Taylor <taylor.randleman@sidley.com>; Roush, Corey W.
<corey.roush@sidley.com>
**Cc:** Kevin Kneupper <kevin@kneuppercovey.com>; Lorraine Weekes
<lorraine@kneuppercovey.com>; Pierson, Gregory <gpierson@gunster.com>;
Cyclone Covey <cyclone@kneuppercovey.com>; Jordan Wagner
<jwagner@kibbeylaw.com>; Schifino, William <WSchifino@gunster.com>;
Bennett, Justin <JBennett@gunster.com>; Purdy, Lauren <LPurdy@gunster.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Counsel.

Today, the Court directed Plaintiffs to provide to the Defendants the JSON data
discussed in Plaintiffs' motion for sanctions. As you know, only Plaintiffs' vendors
have possession of the full JSON file, consistent with the limitation on Mr. Flynn's
consent. We understand that Plaintiffs' vendor transferred the JSON file to
Defendants' expert, Lighthouse, on February 14, 2025. This, we believe, satisfies
the Plaintiffs' obligation under the Court's Order. Nonetheless, we wanted to
bring our understanding of the Court's Order to your attention out of an
abundance of caution so that Defendants can instruct their expert regarding the
disclosure of the JSON file as they see fit.

Take care,

Anthony

On Mon, Jan 20, 2025 at 2:25 PM Kevin Kneupper <kevin@kneuppercovey.com>
wrote:

Taylor,

As you're aware, we do not have the JSON file. This was obtained as part of the
subpoena process to Microsoft, which was subject to restrictions based on
statutory requirements that we would not have access to the JSON file directly
but would send it to a third party vendor, and that our only access would be to
data about a specific list of custodians. We have produced all of the materials
we currently have from the file, which took time for them to extract. As you
note, Mr. Flynn received the file from Microsoft and sent it to the vendor just
before Christmas. We are not able to access it directly because it contains
conversations outside what we are permitted to see.

I would also note that Chargebacks911 has had access to the same metadata
throughout the suit through its own employees. Mr. Scrancher, for example,
could have voluntarily requested his own .JSON file from Microsoft (and should
have done so given the Court's order commanding him to allow an inspection).
Other Chargebacks911 employees were parties to these conversations as well.
And Chargebacks911 voluntarily chose not to serve its own subpoena on
Microsoft or participate in that process in any way, despite having the ability to
do so.

We do not believe the conversations with Mr. Flynn are relevant to any claim or
defense but produced them out of caution given the serious spoliation issues
here. As you can see these conversations related only to our firm working with

Mr. Flynn to obtain his Skype messages. To the extent there is any relevance, it only became apparent once we discovered that Mr. Scrancher had deleted messages.

With respect to the meet and confer, we are available at 4:00 pm Eastern time on January 21st (I'm assuming Eastern but we can likely make ourselves available at other times as well).

With respect to WorldPay, we do not believe we received the second file, but we are contacting WorldPay to confirm.

Thanks,

Kevin

On Mon, Jan 20, 2025 at 10:47 AM Randleman, Taylor <taylor.randleman@sidley.com> wrote:

Counsel,

We can discuss Defendants' supplemental production more during the upcoming meet and confer.

Defendants' counsel would also like to discuss the JSON file of Mr. Flynn's Skype data, which appears to have been produced after the close of discovery without the Court's permission. Moreover, despite Plaintiffs' attempted use of the JSON file, it has not been produced to Defendants despite being in Plaintiffs' control since at least December 23, 2024. We would also like to discuss Plaintiffs' extremely late production of responsive communications with Flynn (including voicemails) that date back to April 2024 and were produced on January 15, 2025.

Defendants' counsel are available for a meet and confer any time after 3:30pm on Tuesday, January 21. We can provide additional availability for Wednesday if this time does not work for Plaintiffs' counsel.

Also, in Plaintiffs' January 15, 2024 email producing Plaintiffs' email communications with WorldPay regarding its response to Plaintiffs' subpoena (email communications that were also late produced), there appears to be a document missing from the attachment. Specifically, page 10 of the PDF indicates that two files, entitled Brightree and BMOR Global.pdf and Brightree Response.pdf, were produced to Plaintiffs. However, it appears only one (page 15 of the PDF) was produced to Defendants. Can you please provide us with the missing document?

Best,
Taylor

**TAYLOR RANDLEMAN**
Managing Associate

**SIDLEY AUSTIN LLP**
+1 202 736 8316
taylor.randleman@sidley.com

**From:** Kevin Kneupper <kevin@kneuppercovey.com>
**Sent:** Thursday, January 16, 2025 7:41 PM
**To:** Randleman, Taylor <taylor.randleman@sidley.com>
**Cc:** Lorraine Weekes <lorraine@kneuppercovey.com>; Anthony Sampson <anthony@kneuppercovey.com>; Cyclone Covey <cyclone@kneuppercovey.com>; Jordan Wagner <jwagner@kibbeylaw.com>; Roush, Corey W. <corey.roush@sidley.com>; Schifino, William <WSchifino@gunster.com>; Bennett, Justin <JBennett@gunster.com>; Purdy, Lauren <LPurdy@gunster.com>; Pierson, Gregory <GPierson@gunster.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Taylor,

This explanation does not make any sense and only heightens our concerns that there has been improper conduct. The e-mails which feature Mr. Cardone's e-mail in the bcc: field were also sent to his work e-mail address. An example is CB911_SIHLER_0043291 – as you can see, Mr. Cardone's work e-mail address is listed as the recipient. Another example is CB911_SIHLER_0043218, which not only features Mr. Cardone's work e-mail but also Mr. Scrancher's work e-mail, and includes ultrafastketoboost.com in

the body.

Why were these not produced originally if they were also sent to Mr. Cardone's work e-mail address, and for many of the e-mails, to Mr. Scrancher's work e-mail address as well?

An additional concern with your explanation is that some of these do not even include Mr. Cardone's personal e-mail address at all. For example, CB911_SIHLER_0043216 was sent to Mr. Cardone's work e-mail, but nowhere in the e-mail is his personal e-mail account. Again, this features ultrafastketoboost.com. You could not have recently found this in Mr. Cardone's personal account as your e-mail claims because it was not sent to his personal account.

CB911_SIHLER_0043285 again includes Mr. Scrancher, Mr. Carroll, and Mr. Cardone's work e-mail addresses only, and includes the word Brightree, and does not include Mr. Cardone's personal e-mail address.

These e-mails are in the time period that you claim to have searched, and should have hit very basic search terms.

We would urge you to impart upon your clients the seriousness of this matter and the need to provide us with a full and accurate explanation for why these e-mails were not produced earlier. We believe your current response only raises the need for some sort of sanction given that it is obviously incorrect from even a cursory review of the new production.

We request that you provide a time to meet and confer on both this issue as well as the deletion of Mr. Scrancher's messages.

Thanks,

Kevin

On Thu, Jan 16, 2025 at 2:48 PM Randleman, Taylor <taylor.randleman@sidley.com> wrote:

Counsel,

We write in response to your January 5, 2025 email regarding our production of CB911_SIHLER_VOL010 made on December 31, 2024. This production was a supplemental production made pursuant to Rule 26(a).

Defendants undertook a reasonable collection effort in this litigation. After Plaintiffs issued their first Requests for Production of Documents on November 3, 2023, Defendants identified documents for production by running search terms across documents collected from twenty-five Company custodians, including Ben Scrancher and Gary Cardone, for the time period of January 1, 2016 through August 17, 2023.  The production encompassed approximately 14,000 documents totaling 42,774 pages of material.

During our initial collection discussions, Mr. Cardone indicated that he did not typically use his personal email account to conduct work for Chargebacks911 and that any relevant documents would be in his Chargebacks911 email account. Accordingly, communications from that account were searched and produced.  Mr. Cardone's Skype account was also searched.  During Mr. Cardone's deposition on July 30, 2024, Plaintiffs' counsel asked Mr. Cardone about his efforts to collect emails in connection with this litigation.  She did not ask any follow-up questions about whether Mr. Cardone's counsel or CB911 might have collected his materials or ask about whether Mr. Cardone used his personal email account for work purposes. The next day (July 31, 2024), Plaintiffs' counsel requested a meet and confer regarding Mr. Cardone's document collection efforts because she did not believe Mr. Cardone had fulfilled his discovery obligations. The parties met and conferred on August 2, 2024 regarding this issue.

Almost two months later, on September 30, 2024, Plaintiffs served their Requests for Production of Documents (Set Three) to Mr. Cardone requesting fourteen categories of documents or communications "sent to or from the email address

garycardone@gmail.com". On October 30, 2024, Defendants timely
served Cardone's Responses to Plaintiffs' RFPs Set 3, in which
Defendants indicated that they would run the requested searches
against Mr. Cardone's personal email account and would "produce all
responsive non-privileged documents related to" the fourteen
document requests. Discovery closed on November 1, 2024.
However, as Defendants indicated in their October 30 response, they
conducted a review of the documents in Mr. Cardone's personal gmail
account and produced the documents that were responsive to
Plaintiffs' document requests. The production of these documents did
not occur before the discovery cut-off date because Plaintiffs served
the request just 32 days before the end of fact discovery and the
gathering and processing of the documents to be searched and
reviewed was delayed by hurricanes in Tampa where Mr. Cardone
resides.

Your email suggests that you were prejudiced by the production of
these documents after the close of fact discovery.  Putting aside the
fact that these documents were timely produced in response to your
September 30, 2024 document request, Plaintiffs did not suffer any
prejudice.  You reference two forms of alleged prejudice: (1)
references to third parties who cannot now be deposed and (2)
communications involving Mr. Carroll and Mr. Cardone that you did
not have the opportunity to ask them about.

First, these documents do not reference any *new* third parties who
Plaintiffs did not know about before this production—Plaintiffs did
not pursue the depositions of individuals at Arc Payments, Humbolt or
Paysafe. Furthermore, in the document you reference in your email
where Mr. Carroll references Flynn using a "partner that is shady as all
hell (his words, not mine)", Mr. Carroll explicitly states that Flynn did
not tell him the name of the bank. While not named, the email was
sent on December 3, 2019, and we know from Mr. Flynn's deposition
that Brightree started with VyaPay in mid-November 2019 and was
done with them by mid-December. Flynn Deposition Transcript 53:6-
53:25. As you know, Plaintiffs subpoenaed VyaPay and received a
production from VyaPay.  Plaintiffs' counsel also asked Flynn about
VyaPay as a processor.

Second, at Plaintiffs' counsel's insistence, the deposition of Nick
Carroll took place on December 21, 2023, before any documents were
produced in this matter. Accordingly, even if these documents had
been produced during fact discovery, Plaintiffs would not have been
able to ask Mr. Carroll about them.  Your email suggests that the
documents "provide further detail regarding Mr. Carroll's knowledge
of Brightree's use of fraudulent straw owners." To be clear, there is
only one document that involved Mr. Carroll.  Moreover, Plaintiffs'
counsel did explore Mr. Carroll's knowledge of straw owners during
his deposition. *See* Carroll Deposition Transcript at 85:10-85:25.

While Plaintiffs did not ask Mr. Cardone any questions about straw
owners or whether Brightree was doing something improper at Mr.
Cardone's deposition, those topics are certainly not new to the
produced documents.
While we view this matter as closed, we would be happy to meet and
confer further on this if you would like.
Regarding your January 15, 2025 email,  we are working on
coordinating our availability for the meet and confer and will get back
to you with those dates and times as soon as possible.
Best,
Taylor

**TAYLOR RANDLEMAN**
Associate

**SIDLEY AUSTIN LLP**
+1 202 736 8316
taylor.randleman@sidley.com

**From:** Kevin Kneupper <kevin@kneuppercovey.com>
**Sent:** Wednesday, January 15, 2025 12:04 PM
**To:** Randleman, Taylor <taylor.randleman@sidley.com>
**Cc:** Lorraine Weekes <lorraine@kneuppercovey.com>; Anthony Sampson
<anthony@kneuppercovey.com>; Cyclone Covey
<cyclone@kneuppercovey.com>; Jordan Wagner
<jwagner@kibbeylaw.com>; Roush, Corey W. <corey.roush@sidley.com>;
Schifino, William <WSchifino@gunster.com>; Bennett, Justin
<JBennett@gunster.com>; Purdy, Lauren <LPurdy@gunster.com>;
Pierson, Gregory <GPierson@gunster.com>
**Subject:** Re: Sihler v. Global E-Trading, LLC, et al. - CB911_SIHLER_VOL010

Corey,

I write to follow up on my prior e-mail and to request that Chargebacks911
meet and confer on a motion for terminating sanctions that the Plaintiffs
intend to file as to the company (but not the individual defendants).
Plaintiffs will ask the judge to enter a default judgment and schedule a
hearing to determine damages under the default judgment standards.

We have not received any explanation for how or why Chargebacks911 did
not produce the documents I referenced in my prior e-mail during fact
discovery, or what efforts have been made to ensure a complete
production.

But more concerning is that Plaintiff learned Monday night that Mr.
Scrancher deleted various Skype messages in conversations with Mr.
Flynn, and that he did so on May 16, 2023 and May 17, 2023. This was
shortly after I first e-mailed a demand letter to you on May 9, 2023. I had
attached three Skype conversations with Mr. Campbell as a party to that e-
mail, as well as a transcript of Mr. Campbell's deposition.

One week later, Mr. Scrancher began selectively deleting messages from
Skype conversations with Mr. Flynn. As part of our efforts to subpoena
original copies of these Skype conversations from Microsoft, Mr. Flynn was
provided with a .JSON file by Microsoft which he then sent to a third-party
vendor to review messages from a court-approved list of custodians.

The vendor has identified metadata in the .JSON file which shows
placeholders for deleted messages in chats between Mr. Flynn and Mr.
Scrancher, which we have produced to you today. That metadata shows
that Mr. Scrancher deleted one conversation with Mr. Flynn and two other
individuals in its entirety. He also selectively deleted messages from the
group chat in which he introduced Mr. Flynn to Mr. DeLuca. And Mr.
Scrancher selectively deleted messages from another chat with Mr. Flynn.
The metadata stored the exact dates and times of those deletions, as well
as the initiator of those deletions, Mr. Scrancher. However, it did not store
the original content which has been spoliated.

There is no way to recover these messages given Mr. Scrancher's
deletions. Their timing (and their selective nature) makes clear that this
was an intentional effort to destroy evidence by someone who was not
only a Chargebacks911 employee, but its managing agent who acted as its
representative during a later court-ordered mediation.

There is also no lesser sanction that could remedy this prejudice.
Depositions were taken under the assumption that the messages
produced by Mr. Flynn were complete, and a core point of your cross-
examination of Mr. Flynn was suggesting to the jury that Mr. Scrancher
had never substantively participated in the group chat with Mr. DeLuca.
We now know this was false – he did participate, and whatever he said
was so damning he chose to destroy the evidence.

A jury instruction would not be sufficient to cure this prejudice because
these deletions have corrupted the truth-seeking process. The jury will
never know what Mr. Scrancher was hiding. In addition, the entirety of
discovery has been conducted without knowledge of this – with the
exception of Mr. Scrancher's deposition, at which you improperly
instructed Mr. Scrancher not to answer questions about his deletion of
these conversations involving Mr. Flynn and Mr. DeLuca. Plaintiff was not
able to address these deletions in expert reports or with third-party
witnesses. Chargebacks911 repeatedly made false representations to the
Court about the state of Mr. Scrancher's Skype messages in opposing their
production. And even though the Court ordered an independent review of
Mr. Scrancher's Skype account, he refused repeated requests to comply
with the court order. There is no way to walk all this back – and a default

judgment is the only proper remedy in this scenario. *See People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-cv-2899-T-36AAS, 2019 U.S. Dist. LEXIS 227862 (M.D. Fla. July 30, 2019).

Please let me know a time when you are available to meet and confer between now and January 22, 2025.

Thanks,

Kevin

On Sun, Jan 5, 2025 at 2:37 PM Kevin Kneupper <kevin@kneuppercovey.com> wrote:

Counsel,

I write regarding Chargebacks911's recent production of documents on December 31, 2024, which occurred after the close of fact discovery. None of these documents were included within the categories for which the Court granted an extension.

Given the nature of these documents, we believe some form of discovery sanction, agreed or otherwise, is necessary to counteract the prejudice of receiving them after the close of fact discovery. Many of them reference conversations with third parties who cannot now be deposed, for example, Mr. Flynn's comments to Mr. Carroll that he was using a processor that was "shady as all hell." They also provide further detail regarding Mr. Carroll's knowledge of Brightree's use of fraudulent straw owners, and Mr. Cardone makes comments indicating that he is aware of those straw owners and aware that Brightree was doing something improper. There are several other conversations with Mr. Flynn described in other e-mails as well.

Plaintiffs were unable to examine various witnesses about these documents, and were unable to select witnesses based on a full understanding of the documents available during discovery. Plaintiffs were likewise unable to utilize these documents in their expert reports, particularly with respect to Mr. Musante's report.

But just as concerning is that all of these documents should have hit on search terms and been produced if a reasonable collection effort had been made. The documents contain references to Mr. Flynn, to Brightree, and to ultrafastketoboost.com, and it is unclear how or why they were not produced earlier. Each of the documents features custodians such as Mr. Cardone or Mr. Scrancher whose documents should have been searched. This raises serious concerns about the adequacy and completeness of Defendants' document production.

Prior to crafting a list of proposed discovery sanctions to address the prejudice of their late production, we request an explanation of what the document collection process was and the reason why these documents were not identified and produced during fact discovery. Please provide this information by Wednesday, January 15th, so that we can determine how to proceed.

Thanks,

Kevin

On Tue, Dec 31, 2024 at 11:44 AM Randleman, Taylor <taylor.randleman@sidley.com> wrote:

Counsel,
Please see below for a FTP link to CB911_SIHLER_VOL010. A password will follow via separate email.
FTP: https://sidley.box.com/s/b6hn8vxlz0ox4rntrqflq8hhfpgx68qp
Bates: CB911_SIHLER_0043193-CB911_SIHLER_0043623

Best,
Taylor

**TAYLOR RANDLEMAN**
Associate

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8316
taylor.randleman@sidley.com

www.sidley.com

**SIDLEY**

*************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.
*************************************************************************************

--

Anthony Sampson

Associate

Licensed in New York and Texas Only
NY Bar 5676689 TX Bar 24130251

**Office** 657-845-3100 **Mobile** 281-783-6335 **Email** anthony@kneuppercovey.com
**Address** 8911 North Capital of Texas Highway, Suite 4200, No. 1173, Austin, Texas
78759