IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JANET SIHLER and CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, MONICA EATON,<br><br>  Defendants. | Case No. 8:23-cv-01450-VMC-LSG |

## DECLARATION OF TAYLOR RANDLEMAN

I, Taylor Randleman, make this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am an attorney at the law firm Sidley Austin LLP, and licensed to practice law in the states of Georgia and New York as well as the District of Columbia. I am admitted to practice in the Middle District of Florida *pro hac vice*. I represent Defendants Global E-Trading, LLC d/b/a Chargebacks911 ("CB911") and Gary Cardone in the above-captioned litigation. Therefore, I have knowledge of the facts set forth in this Declaration.

2. I provide this declaration in support of CB911's Opposition to Plaintiffs' Motion for Sanctions.

3. CB911's counsel corresponded with Mr. Scrancher on April 15, 17, and

1

18, 2024 in attempts to facilitate Mr. Scrancher's deposition. On April 18, 2024, Mr. Scrancher informed CB911's counsel that he would be seeking independent legal advice. On April 19, 2024, Mr. Scrancher's counsel informed CB911's counsel that he would not agree to a deposition unless compelled to do so by a UK court.

4. On April 25, 2024, Plaintiffs filed a motion to compel CB911 to provide Ben Scrancher for deposition. Dkt 106.

5. On May 16, 2024 Judge Porecelli denied the motion to compel Ben Scrancher's deposition without prejudice to Plaintiffs re-bringing the motion after conducting further discovery. Dkt. 117.

6. On July 31, 2024, Plaintiffs filed a Motion for Issuance of Letter of Request. Dkt 149. Defendants did not oppose the issuance of the Letter of Request but did seek to narrow the proposed scope of the Letter of Request. Dkt. 153.

7. On August 15, 2024, Judge Porcelli granted the Motion for Issuance of Letter of Request. Dkt. 157.

8. On September 16, 2024, CB911's counsel reiterated its position that CB911 wanted Mr. Scrancher to complete the deposition and requested again that Mr. Scrancher consent to the deposition. In response, Mr. Scrancher's counsel indicated that Mr. Scrancher had not been served with anything via the UK courts and that they had never received a response from Plaintiffs' counsel to their email in July 2024.

9. On or around October 23, 2024, Mr. Scrancher's counsel informed CB911's counsel about the draft order he provided to Plaintiffs, which outlined the

terms Mr. Scrancher would be willing to agree to in the event the US Court decided to extend the discovery deadline.  When CB911's counsel learned this, they requested that Mr. Scrancher's attorney try to work things out so that Mr. Scrancher could be deposed in November in advance of the summary judgment deadline of December 2, 2024.

10. On November 13, 2024, CB911's counsel told Mr. Scrancher's counsel that the court had granted an extension to complete Mr. Scrancher's deposition until January 15, 2025 and that they hoped Mr. Scrancher's attorney could come to an agreement on the deposition before then.

11. On Plaintiffs filed a Motion to Renew Their Motion to Compel the Deposition of Ben Scrancher. Dkt 177.

12. On December 11, 2024, Judge Griffin granted in part Plaintiffs' Motion to Renew Their Motion to Compel the Deposition of Ben Scrancher.  Dkt. 204.

13. Ben Scrancher's deposition occurred in Dorset, England on January 13, 2025.

14. Attached is a true and correct copy of Exhibit A, Excerpt of Scrancher Deposition Transcript, which is cited in CB911's Opposition to Plaintiffs' Motion for Sanctions, filed with the Court on February 25, 2025.

* * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  February 25, 2025                    By:  */s/ Taylor N. Randleman*
                                                  Taylor N. Randleman

# Exhibit A

```
 1                   UNITED STATES DISTRICT COURT
 2                     MIDDLE DISTRICT OF FLORIDA
 3
 4     JANET SIHLER, Individually and ) Case No.:
 5     On Behalf All Others Similarly ) 8:23-cv-1450-VMC-JSS
 6     Situated; CHARLENE BAVENCOFF,  )
 7     Individually and On Behalf of  )
 8     All Others Similarly Situated, )
 9                         Plaintiffs,)
10          v.                        )
11     GLOBAL E-TRADING, LLC DBA      )
12     CHARGEBACKS911, GARY CARDONE,  )
13     MONICA EATON,                  )
14                         Defendants.)
15     _____
16
17
18                       VIDEO DEPOSITION OF
19                          BEN SCRANCHER
20
21                      London, United Kingdom
22                     Tuesday, January 14, 2025
23
24     Reported by:
25     Georgina Ford, RMR, CRR, FBIVR

                     Briault Reporting International
```

|   |                                    |
|---|------------------------------------|
| 1 | APPEARANCES:                       |
| 2 |                                    |
| 3 | KNEUPPER & COVEY                   |
| 4 | Attorneys for Plaintiff            |
| 5 | 17011 Beach Blvd Suite 900         |
| 6 | Huntington Beach, CA 92647         |
| 7 |                                    |
| 8 | BY:                                |
| 9 | CYCLONE COVEY                      |
| 10|                                    |
| 11| Also present via Zoom:             |
| 12| LORRAINE WEEKES                    |
| 13| ANTHONY SAMPSON                    |
| 14|                                    |
| 15| On behalf of the witness:          |
| 16| BUCKINGHAM & BUCKINGHAM            |
| 17| Ground Floor                       |
| 18| 13 Charles II Street               |
| 19| London                             |
| 20| SW1Y 4QU                           |

2

|   |                                          |
|---|------------------------------------------|
| 1 | SIDLEY AUSTIN LLP                        |
| 2 | Attorneys for Defendants                 |
| 3 | 1501 K Street, N.W.                      |
| 4 | Washington, DC 20005                     |
| 5 |                                          |
| 6 | BY:                                      |
| 7 | COREY ROUSH                              |
| 8 |                                          |
| 9 | Also present via Zoom:                   |
| 10| Taylor Randleman                         |
| 11|                                          |
| 12| GUNSTER, YOAKLEY & STEWART, P.A          |
| 13| Attorneys for Defendant Monica Eaton     |
| 14| 401 E Jackson Street Suite 1500          |
| 15| Tampa, FL 33602                          |
| 16| 813-228-9080                             |
| 17|                                          |
| 18| BY:                                      |
| 19| GREGORY LATHROP PIERSON                  |
| 20|                                          |
| 21|                                          |
| 22|                                          |
| 23| VIDEOGRAPHER: Wendy Viner                |

3

I N D E X

| DEPONENT | PAGE |
|---|---|
| BEN SCRANCHER | 10 |
| Examination by MR. COVEY | 10 |
| Examination by MR. ROUSH | 264 |
| Further examination by MR. COVEY | 277 |

4

**PREVIOUSLY PRODUCED EXHIBITS**

| No. | Description | Page |
|---|---|---|
| Exhibit 166 | Email chain, most recent dated 11/3/2016 | 14 |
| Exhibit 15 | Master Word Index | 29 |
| Exhibit 12 | Client Relations Manual | 37 |
| Exhibit 4 | Document entitled "Excessive Chargeback Programs" | 58 |
| Exhibit 108 | Email chain, most recent dated 11/11/2016 | 62 |
| Exhibit 107 | Email chain, most recent dated 4/29/2017 | 69 |
| Exhibit 149 | Email chain, most recent dated 3/29/2016 | 76 |
| Exhibit 151 | Email chain, most recent dated 11/23/2016 | 89 |
| Exhibit 134 | Email chain, most recent dated 4/16/2017 | 93 |
| Exhibit 148 | Email dated 4/18/2016 | 98 |
| Exhibit 60 | Email chain, most recent dated 4/14/2017 | 102 |
| Exhibit 71 | Email chain, most recent dated 2/9/2017 | 108 |
| Exhibit 61 | Document Visa Business News, dated 31 March 2010 | 115 |
| Exhibit 116 | Email chain, most recent dated 3/1/2016 | 125 |
| Exhibit 157 | Email chain, | 127 |

5

| | | | |
|---|---|---|---|
| Exhibit 36 | Email dated 7/26/2016 | 134 | |
| Exhibit 112 | Email chain, most recent dated 9/13/2016 | 135 | |
| Exhibit 113 | Email chain, most recent dated 6/20/2016 | 137 | |
| Exhibit 104 | Email dated 3/14/2016 | 141 | |
| Exhibit 62 | Email chain, most recent dated 4/29/2017 | 146 | |
| Exhibit 69 | Email chain, most recent dated 4/30/2017 | 150 | |
| Exhibit 68 | Email chain, most recent dated 9/8/2016 | 156 | |
| Exhibit 171 | Email chain, most recent dated 12/11/2018 | 171 | |
| Exhibit 66 | Email chain, most recent dated 7/18/2016 | 175 | |
| Exhibit 166 | Email dated November 3, 2016 | 178 | |
| Exhibit 106 | Email chain, most recent dated 2/11/2019 | 181 | |
| Exhibit 167 | Email chain, most recent dated 8/22/2018 | 183 | |
| Exhibit 13 | Skype chat | 187 | |
| Exhibit 85 | Skype chat | 195 | |
| Exhibit 14 | Email chain, most recent dated 11/8/2019 | 197 | |
| Exhibit 88 | Skype chat, first dated Wednesday, October 16, 2019 | 200 | |
| Exhibit 89 | Email chain, most recent dated 10/24/2016 | 206 | |
| Exhibit 92 | Email chain, most recent dated 11/18/2019 / 12/17/2019 | 220 | |
| Exhibit 93 | Email dated 1/6/2020 | 224 | |
| Exhibit 19 | Email chain, most recent dated 1/17/2020 | 228 | |
| Exhibit 29 | Email chain, most recent dated 4/8/2020 | 238 | |
| Exhibit 84 | Skype chat | 240 | |

EXHIBITS

| | | |
|---|---|---|
| Exhibit 195 | Notice of deposition | 21 |
| Exhibit 196 | Email chain, most recent dated 9/16/2016 | 41 |
| Exhibit 197 | Email chain, most recent dated 9/29/2016 | 49 |
| Exhibit 198 | Email dated 8/25/2016 | 54 |
| Exhibit 199 | Email chain, most recent dated 2/14/2017 | 148 |
| Exhibit 200 | Email chain, most recent dated 11/22/2018 | 152 |
| Exhibit 201 | Email dated 10/17/2016 | 163 |
| Exhibit 202 | Email dated 11/23/2016 | 166 |
| Exhibit 203 | Email chain, most recent dated 3 December 2019 | 212 |
| Exhibit 204 | Email chain, most recent dated /11/2016 | 260 |
| Exhibit 205 | Email chain, most recent dated 5 Dec 2019 | 276 |

PROCEEDINGS

THE VIDEOGRAPHER: Good morning. Here begins media number 1 in the deposition of Ben Scrancher in the matter of Janet Sihler, et al, versus Global E-Trading LLC, et al, in the United States District Court, Middle District of Florida, case number 8:23-cv-1450-VMC-JSS.

Today's date is January 14, 2025 and the time is 8:59 a.m. The videographer today is Wendy Viner. This video deposition is taking place at the Hilton Hotel, Bournemouth, U.K.

Could I ask counsel to please identify themselves and state whom they represent for the record.

MR. COVEY: My name is Cyclone Covey. I am counsel for the Plaintiffs and the class, and on Zoom I'm joined by my co-counsel Kevin Kneupper.

MR. ROUSH: Corey Roush from the law firm Sidley Austin on behalf of Defendants.

MR. BUCKINGHAM: Tim Buckingham from Buckingham & Buckingham LLP on behalf of Mr. Scrancher.

THE VIDEOGRAPHER: Thank you.

MR. COVEY: And also it looks like --

MR. PIERSON: Greg Pierson from Gunster,

**Page 250**

    MR. COVEY: And, yes, just so -- I'll stipulate that all Defendants are joining in the objection that Mr. Roush is making, so that we don't need to interfere because it's a little bit hard to hear on the speaker. If you still want to, you can.

BY MR. COVEY:

Q. Mr. Scrancher, did you do any searches of your email as part of the document production for this lawsuit?

    MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.
    MR. PIERSON: Joining as to the objection beyond the scope.

BY MR. COVEY:

Q. Mr. Scrancher, did you refuse to allow an independent examiner to review your Skype chats that we requested as part of this lawsuit?

    MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.

BY MR. COVEY:

Q. Mr Scrancher --

    MR. PIERSON: Join.

BY MR. COVEY:

Q. Mr. Scrancher, did you leave any Skype

**Page 251**

conversations with Brightree or Mr. Flynn at any time?

    MR. ROUSH: Can you restate the question -- or not you restate it but can she re-read the question?
    I may not have an objection, that's why I'm asking.
    (Record read.)
    MR. ROUSH: No objection.

BY MR. COVEY:

Q. Right. Well, that wasn't the question I intended to ask, so let's try again.
Mr. Scrancher, did you leave any Skype conversations with Brightree or Mr. Flynn at any time?

    MR. ROUSH: I'll object to the scope but you can answer. I'm sorry, object to the form. You can answer.

A. I don't know.

BY MR. COVEY:

Q. Are you saying you don't know because you don't know what leaving a conversation means or are you saying you don't know because you don't remember?

A. I don't remember.

Q. Mr. Scrancher, did you leave any Skype conversations that involved Mr. Flynn in May of 2023?

    MR. ROUSH: Object to the form.

**Page 252**

A. I don't know.

BY MR. COVEY:

Q. Mr. Scrancher, I am showing you Exhibit 88 and we are on page 12 of that exhibit. Do you see that?

A. Yes.

Q. And I think we discussed before Exhibit 88 is a series of screenshots of Skype chats between you and Mr. Flynn; do you agree with that?

A. Yes.

Q. And what I have pulled up here, in particular, is a series of chats. The one I'm interested in has "Monday, December 2, 2019". It says:
    "Hey David."
    Do you see that?

A. Yes.

Q. And then underneath that it says "Tuesday, December 3, 2019". Do you see that?

A. Yes.

Q. Were there any messages originally in between this message on December 2, 2019 from you and Mr. Flynn and his response on December 3, 2019?

A. It's from 2019. I don't know.

Q. Did you ever delete any messages in this chat between you and Mr. Flynn?

A. I don't know.

**Page 253**

Q. Did you ever go to a specific message on December 3, 2019 and delete it?

A. I don't know. It's a long time ago.

Q. Did you ever delete any messages, after you found out that this lawsuit was going to be filed, between you and Mr. Flynn in this Skype chat?

    MR. ROUSH: Objection. Now, that's outside the scope and I'll instruct him not to answer.
    MR. COVEY: So you think deleting messages between himself and Mr. Flynn of Brightree is outside the scope?
    MR. ROUSH: No, I allowed those questions as being inside the scope. Where I objected and instructed him not to answer was about the discovery process that occurred after you brought this lawsuit, because that's not within the scope of what you asked in your 13 topics.
    MR. COVEY: Okay. So even though it involves spoliation of evidence, you're going to take the position that Mr. Scrancher cannot testify on this?
    MR. ROUSH: You were aware when you drafted the 13 topics that you had an issue with the potential or spoliation and you didn't include it as a topic. That's on you. It's not a topic. The Judge made very clear you were limited to these 13

| | |
|---|---|
| 1  topics and I was supposed to object, as I have | 1  BY MR. COVEY: |
| 2  been, and instruct him not to answer and I've been | 2      Q.    Mr. Scrancher, did you ever delete any |
| 3  doing that. | 3  messages between you and Mr. Flynn after you found out |
| 4      MR. COVEY:   Okay.  Well, Corey, I'll represent | 4  that this lawsuit was going to be filed? |
| 5  to you that we were not aware of spoliation of | 5      MR. ROUSH:   Objection.  Outside the scope. |
| 6  evidence when we drafted the topics and we are | 6      Instruct him not to answer. |
| 7  aware of potential spoliation issues now.  So | 7      MR. PIERSON:   Join as being outside the scope. |
| 8  I'm -- | 8  BY MR. COVEY: |
| 9      MR. ROUSH:   Well, you haven't brought that to | 9      Q.    Would you agree with me that deleting messages |
| 10  our attention. | 10  out of this Skype chat would be dishonest? |
| 11     MR. COVEY:   Okay.  Well, I'm bringing it to | 11     MR. ROUSH:   Objection.  Outside the scope. |
| 12  your attention right now.  So I'm just going to let | 12     Instruct him not to answer. |
| 13  you know that I would like to ask these questions | 13  BY MR. COVEY: |
| 14  and if you choose to make the decision to not let | 14     Q.    Would you agree with me that if you deleted |
| 15  him answer, then that's up to you. | 15  evidence, that the jury should not trust you? |
| 16     MR. ROUSH:   And is your representation that in | 16     MR. ROUSH:   Objection.  Outside the scope. |
| 17  early December, when we argued the motion before | 17     Instruct him not to answer. |
| 18  the Magistrate Judge, you weren't aware of | 18  BY MR. COVEY: |
| 19  something that you are now aware of? | 19     Q.    Would you agree with me that intentionally |
| 20     MR. COVEY:   Yes. | 20  destroying evidence is illegal? |
| 21     MR. ROUSH:   Okay.  Well, you should have | 21     MR. ROUSH:   Objection.  Outside the scope, |
| 22  brought that to the Court's attention in advance of | 22     calls for a legal conclusion, and instruct him not |
| 23  today.  I will continue to do what the Court | 23     to answer. |
| 24  instructed me to do, which is to instruct him not | 24  BY MR. COVEY: |
| 25  to answer if it's outside the 13 topics. | 25     Q.    Would you agree with me that if, in fact, you |
| 254 | 255 |
| 1  deleted a message from December 3, 2019 from this chat | 1  this conversation that we're looking at on Exhibit 88 on |
| 2  with Mr. Flynn that the jury should not trust you? | 2  Tuesday, May 16, 2023 at 8:48 p.m. GMT? |
| 3      MR. ROUSH:   Objection.  Outside the scope. | 3      MR. ROUSH:   Objection.  Outside the scope. |
| 4      Instruct him not to answer. | 4      Instruct him not to answer. |
| 5  BY MR. COVEY: | 5  BY MR. COVEY: |
| 6      Q.    Mr. Scrancher, when did you first learn that | 6      Q.    Mr. Scrancher, did you know that this lawsuit |
| 7  this lawsuit was going to be filed against | 7  was going to be filed as of Tuesday, May 16, 2023 at |
| 8  Chargebacks911? | 8  8:48 p.m. GMT? |
| 9      MR. ROUSH:   I'll object as being outside the | 9      MR. ROUSH:   Objection.  Outside the scope. |
| 10     scope and instruct him not to answer. | 10     Instruct him not to answer. |
| 11  BY MR. COVEY: | 11  BY MR. COVEY: |
| 12     Q.    Mr. Scrancher, did you ever learn about | 12     Q.    Mr. Scrancher, was there originally a message |
| 13  a letter that was sent regarding this lawsuit before the | 13  in this conversation sent by you on December 12, 2019 at |
| 14  lawsuit was actually filed? | 14  7:58:31 p.m.? |
| 15     MR. ROUSH:   Can you give me just a minute to | 15     MR. ROUSH:   Objection.  Can you scroll down to |
| 16     look at the topics, please. | 16     December 12 so we can look to see if there is a |
| 17     I'll object as outside the scope and instruct | 17     message there?  And can we have the question read |
| 18     him not to answer. | 18     back, please? |
| 19  BY MR. COVEY: | 19     MR. COVEY:   I'll ask it again. |
| 20     Q.    Mr. Scrancher, did you know, as of May 16, | 20  BY MR. COVEY: |
| 21  2023, that this lawsuit was going to be filed? | 21     Q.    Mr. Scrancher, was there originally a message |
| 22     MR. ROUSH:   Objection.  Outside the scope. | 22  in this conversation sent by you on December 12, 2019 at |
| 23     Instruct him not to answer. | 23  7:58:31 p.m.? |
| 24  BY MR. COVEY: | 24     A.    I don't know. |
| 25     Q.    Mr. Scrancher, did you delete a message from | 25     Q.    If the jury thinks that you deleted a message |
| 256 | 257 |

**Page 258**

1  from this conversation, should they believe anything
2  that you're saying today?
3          MR. ROUSH:   Objection.  Outside the scope.
4  Instruct him not to answer.
5  BY MR. COVEY:
6      Q.   Were you ever instructed by anyone at
7  Chargebacks911 to delete messages in this conversation?
8          MR. ROUSH:   Objection.  Outside the scope.
9  Instruct him not to answer.
10 BY MR. COVEY:
11     Q.   Mr. Scrancher, did you ever destroy any
12 evidence or delete any chats between you and Mr. Flynn?
13         MR. ROUSH:   Objection.  Outside the scope.
14 Instruct him not to answer.
15 BY MR. COVEY:
16     Q.   Mr. Scrancher, I think that I understood you
17 to say that the value of added promotions program that
18 Chargebacks911 had was a project or a program to sell to
19 what you call partials; is that right?
20     A.   So people that have completed a partial order
21 within a merchant's website.
22     Q.   And that was the stated purpose for the VAP
23 program?
24     A.   The stated purpose of the VAP program was to
25 come up with a promotion to retarget customers that

**Page 259**

1  hadn't fully completed a check-out process or had come
2  off the program.
3      Q.   Did you ever instruct Chargebacks911 clients
4  not to use VAP for doing chargeback ratios?
5      A.   To not do it for that purpose?  Not that I can
6  remember.
7      Q.   Was there any policy at Chargebacks911 that
8  VAP could not be used to dilute chargeback ratios?
9          MR. PIERSON:   Object to the form.
10     A.   Not that I'm aware of now.
11 BY MR. COVEY:
12     Q.   Were customers aware that they -- that one of
13 the side effects of using VAP would be that they could
14 dilute their chargeback ratios on a particular merchant
15 ID?
16     A.   I think it's very logical that a promotion to
17 increase transaction count will reduce the chargeback
18 ratio.  So I think that is an acknowledged second order
19 consequence of the program.
20     Q.   Did you ever have an instance where a client
21 of Chargebacks911 ordered VAP without specifying what
22 merchant ID they wanted to run those VAP transactions
23 on?
24     A.   I don't know if every single client instructed
25 it that way.  I can't remember exactly.  I don't know.

**Page 260**

1  It's a long time ago but I can't remember if they were
2  explicit about "We want this many transactions on this
3  MID, this many transactions on this MID".  I can't
4  remember that level of detail.
5      Q.   You do remember there were some instances
6  where clients would specify what particular merchant ID
7  they did want to run VAP for?
8      A.   Yes.
9          MR. COVEY:   Okay, let's look at Exhibit 204.
10     (Exhibit 204 marked for identification.)
11 BY MR. COVEY:
12     Q.   When you're done going through it, let me know
13 and I'll ask you some questions about it.
14     A.   Okay.
15     Q.   So there's an email in the middle of page 1 of
16 Exhibit 204 that says -- from Sarah Paul:
17         "Ben & Noah,
18         "Yes, the CB911 prefixed gateways are our copy
19         gateways of their original gateways.  I would
20         imagine the client already knows these are VAP
21         gateways, as the only orders which is pass
22         through them are our VAP campaign
23         transactions."
24         Do you see that?
25     A.   Yes.

**Page 261**

1      Q.   So did Chargebacks911 have specific gateways
2  set up for clients to run VAP transactions?
3      A.   I don't know because I'm not the person that
4  was in the background doing it.  I think Sarah is saying
5  that there are specific VAP gateways but I don't know.
6      Q.   Well, in the email above that, an email from
7  you, you say:
8          "Noah, don't tell them it's VAP, just direct
9          Chad to me and say I may know what it is."
10     A.   Well, I think that's just me saying to Noah
11 for him not to talk to the client about a service that
12 Noah I don't think was familiar with.
13     Q.   Okay.  So you're telling Noah, "Don't talk to
14 the client about VAP, leave that to me"?
15     A.   That's how I read it, yes.
16         MR. COVEY:   Okay.  I think I've finished.
17     Corey, do you have any questions?
18         MR. ROUSH:   I will have a couple of questions.
19     Before I begin, I guess, counsel, if you're aware
20     of additional documents that were produced in this
21     matter to you, they have not been provided to us
22     and they could have been produced to us and
23     potentially could have been put on the list that
24     would have shown to him today, as of a week ago.
25     So I think to the extent you're sort of

| | |
|---|---|
| 1 A. During the check-out process or an upsell that | |
| 2 could be marketed to existing customers. | |
| 3 Q. Okay. So for it to be an upsell, an actual | |
| 4 end client would have to be the one paying for that | |
| 5 purchase, right? | |
| 6 A. Yeah. | |
| 7 Q. A merchant wouldn't pay themselves and then | |
| 8 accomplish any kind of upsell, would they? | |
| 9 A. No. | |
| 10 Q. Okay. That's all I have. | |
| 11 THE VIDEOGRAPHER: This concludes the | |
| 12 deposition -- | |
| 13 MR. PIERSON: I don't have any questions. | |
| 14 MR. COVEY: I don't know if that was intended | |
| 15 a joke or not but we took it as one. | |
| 16 THE VIDEOGRAPHER: This concludes the | |
| 17 deposition. We are going off the record. The time | |
| 18 is 5:12. | |
| 19 (Whereupon, the deposition concluded at 5:12 p.m.) | |

278

CERTIFICATE OF DEPONENT

I, BEN SCRANCHER, hereby certify that I have read the foregoing pages, numbered 1 through 278, of my deposition of testimony taken in these proceedings on Tuesday, 14 January 2025, and, with the exception of the changes listed on the next page and/or corrections, if any, find them to be a true and accurate transcription thereof.

Signed: ........................
Name:   BEN SCRANCHER
Date:   ........................

279

**E R R A T A**
**Deposition of BEN SCRANCHER**

Page/Line No.     Description     Reason for change

Signed: ....................
Name:   BEN SCRANCHER
Date:        ....................

CERTIFICATE OF REPORTER

I, GEORGINA FORD, RMR, CRR, FBIVR, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition was duly sworn or affirmed by me to testify the truth, the whole truth, and nothing but the truth;

That the foregoing deposition was taken before me at the time and place herein set forth, at which time the aforesaid proceedings were stenographically recorded by me and thereafter transcribed by me;

That the foregoing transcript, as typed, is a true record of the said proceedings;

And I further certify that I am not interested in the action.

Dated this

_Georgina Ford_
_____
GEORGINA FORD, RMR, CRR, FBIVR