IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JANET SIHLER and CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, MONICA EATON, <br><br> Defendants. | Case No. 8:23-cv-01450-VMC-LSG |

### DECLARATION OF MONICA EATON

I, Monica Eaton, hereby declare under penalty of perjury under the laws of the United States, and to the best of my knowledge and belief, that the following is true and correct:

1. I have personal knowledge of the facts stated herein. I am the CEO of Global E-Trading, LLC ("CB911"). At the times relevant to this matter, I was the COO.

2. Ben Scrancher is not and never has been an officer or "high-level" employee of CB911 or Online Venture Partners. Mr. Scrancher reports to Shelley Palmer, Global Head of Merchant Sales at Online Venture Partners, who in turn reports to Mike Eliff, Chief Revenue Officer at Online Venture Partners, who in turn

1

reports to Ben Bridwell, President, at CB911, who in turn reports to me.

3.  As such, he is not involved in the management of the firm, does not manage other members or staff and has no power to employ people or dismiss people.

4.  Within his role and position in Business Development, Mr. Scrancher does not have the authority to bind CB911 to sign any contract and does not operate with any access to databases, operations processes, or company data.

5.  While Mr. Scrancher has the title of Senior Vice President of Business Development, as outlined above, he is a mid-level sales employee who has multiple people in the reporting chain above him. For clarity, individuals in a sales role often carry a weighted title, such as "Vice President," to give them more credibility as they develop business and solicit prospects. The "Senior" in his title is because of how long he has worked for CB911.

6.  Shortly after Mr. Scrancher joined the company, he moved into sales, which in our industry typically involves the employees using their own devices and laptops due to the job requirements and the scope of travel. Mr. Scrancher has operated in our sales department, which we also call "Business Development," for nearly a decade. He has never had a company-controlled Skype account.

7.  As a member of the sales team, Mr. Scrancher uses a company email address, has restricted access to the company's management software, and has no access to the company's accounting or operations software systems or databases.

8.  CB911 began using Google Drive Workplace in 2013.

9.  CB911 began using Microsoft/M365's suite of services in 2019, but

continued to use Google Drive Workplace for email communications.

10. Consistent with our corporate policies and governance, company-controlled records and data are preserved through protocols and processes using both in-house and outside third-party storage, and in accordance with legal retention policies designed to comply with CB911's preservation and production obligations.

11. These include securely managed access controls, role-based user permissions, fail-over redundancy servers, hosted email providers, and continuity and disaster recovery policies and protocols. To ensure the company is in compliance with retention holds, we additionally implemented secure vault archiving to restrict and prevent the ability for our employees to delete company data. On a regular cadence, the company undergoes data compliance and security audits, administering any policy updates on an as needed basis.

12. Specifically, IT utilizes the native tools within Purview (for Microsoft data) and Vault (for Google data) to preserve data "in place."

13. Employees go through an onboarding process that includes several training modules, relevant to their role, which is administered through our third-party online learning management system. There is no permitted authorization to take any copies of company documents or data. Company documents are stored on the company's network drives, and email traffic is monitored through rules with shared inboxes. If an employee attempts to delete this content, it will not be deleted due to retention controls. Employees outside of our sales organization are required to be on the company's VPN. Job aids and compliance updates are provided as necessary to

ensure staff are up to date. There is also a company Intranet, and we provide news bulletins to advise employees of relevant updates.

14. The litigation hold for the FTC matter was the first litigation hold CB911 had ever had to implement.

15. CB911 issued a document retention notice related to the Federal Trade Commission's ("FTC") Civil Investigative Demand ("CID") on June 26, 2020. Employees received this notice via our online learning system (Skyprep). This notice asked employees, including Mr. Scrancher, to preserve all information, data, communications and documents, including, in particular, electronically stored information.

16. The document hold related to the FTC CID was in effect in May 2023.

17. CB911 issued a Document Preservation Notice, including to Mr. Scrancher, on July 19, 2023 for the instant litigation.

18. In or around early April 2024, I asked Mr. Scrancher if he would agree to voluntarily appear for deposition (without a subpoena or compliance with the laws applicable to taking discovery from foreign citizens under the Hague Convention). He told me that he was going through a lot, having a difficult time trying to recover after losing his wife and was extremely overwhelmed. It was clear he was emotionally distraught. He was very adamant that he couldn't leave his kids and he was not attending company events or trade shows.

19. CB911 repeatedly asked and demanded that Mr. Scrancher sit for a deposition.

4

20. I did not know at the time that he was refusing to give a deposition because he deleted Skype messages, but today I believe that could have been or was, at least in part, the reason for his refusal at the time.

21. I did not tell Mr. Scrancher to delete the Skype messages.

22. I did not know that Mr. Scrancher made the deletions until after his deposition on January 14, 2025.

23. After learning that Mr. Scrancher did delete the messages, CB911 has been assessing the necessary and appropriate disciplinary actions to take against him, including potential termination.

24. CB911's decision regarding how to discipline Mr. Scrancher is complicated by the fact that Mr. Scrancher is a UK citizen living in the UK. CB911 is worried that if it terminates Mr. Scrancher now, this Court would neither be able to order CB911 to provide Mr. Scrancher for a subsequent deposition nor have jurisdiction to order Mr. Scrancher personally to sit for any such deposition. Accordingly, CB911 intends to retain him until the conclusion of this matter at which time CB911 is prepared to terminate Mr. Scrancher.

25. In the interim, Mr. Scrancher is under disciplinary review and CB911 has sought legal advice with regard to the matter. I believe Mr. Scrancher is aware of the severity of his actions, which are not and will not be taken lightly.

26. In response to Plaintiffs' motion, CB911 reached out to third parties who were part of the Skype chats at issue to see if the Skype chats could be recovered.

27. Attached as Exhibit A is a true and correct copy of the "Data Retention

Policy Reminder" sent on June 26, 2020 to all CB911 employees.

28.     Attached as Exhibit B is a true and correct copy of the "Preservation Requirements for Pending Litigation, Sihler, et al. v. Global E-Trading, LLC d/b/a Chargebacks911, et al., Case No. 8:23-cv-01450 (M.D. Fla.)" sent on July 11, 2023 to CB911.

29.     Attached as Exhibit C is a true and correct copy of an email from Mr. Bridwell to Mr. Scrancher on July 19, 2023 in which Mr. Scrancher is provided a copy of Exhibit B and reminded of the importance of complying with the preservation requirements.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February _25_____, 2025        By: _____
                                          Monica Eaton

# Exhibit A

**TO:** All Employees (US and UK)

**FROM:** IT Security and Compliance

**DATE:** June 26, 2020

**RE:** Data Retention Policy Reminder

**PURPOSE:** To reinforce compliance with regard to Chargebacks911's data retention policies.

It is Chargebacks911's policy to uphold best practice standards for all data retention compliance, and to ensure that measures for managing these activities are current and communicated to all applicable persons.

We want to reiterate the importance of maintaining compliance with data and document retention policies. Specifically, it is absolutely imperative that no one deletes, or attempts to delete, any documents or information, which is considered to be property of Chargebacks911. This includes both electronic and paper records. It is expected that all employees take reasonable steps to preserve all information, data, communications and documents, including, in particular, electronically stored information ("ESI"), to aid in compliance as required by our clients, whether a financial institution or merchant; industry regulated associations, or authorities. While we understand that the likelihood of deletion is very low, as Chargebacks911 manages all emails, servers and related application data, we must remind you that attempting to delete any documents or information is a violation of company policy and is not permitted.

ESI broadly includes, but is not limited to, all initial interim, draft and final versions of the following: email messages and other electronic communications; databases; digitized images; spreadsheets; word processing documents; and all similar data that is stored on, utilized on or transmitted via a computer or computer network or wireless network, including the Internet. ESI may be found or stored on devices such as a mobile device, tablet, laptop and desktop computer, both on and off-site, including on your home or personal computers or devices; network servers or drives; and third party applications such as Gmail, LinkedIn and other social or business networking sites, etc.; third party storage facilities in the "cloud" such as Dropbox; hard drives and USB "thumb" drives; and backup "tapes", CDs, VCR Tapes and similar storage media.

Chargebacks911's data retention policy applies to documents and ESI already in existence as well as documents and ESI created in the future. You may be aware of recent federal trade commission

investigations concerning certain Chargebacks911's clients. Accordingly, as a required protocol Chargebacks911 and other vendors will and have been asked to provide particular information with respect to these clients and it is Chargebacks911's policy to strictly comply with any such request.

We would also like to remind everyone that Chargebacks911 has a seven-year retention policy with respect to some of our Fi911 financial institution clients. Please be mindful of this, as it is critical that we maintain compliance on every level.

Your acknowledgement is appreciated. Please inform your teams where applicable, and let us know of any questions or concerns.

Thank you,

IT Security and Compliance

# Exhibit B

# M E M O R A N D U M

**ATTORNEY-CLIENT PRIVILEGED**
**ATTORNEY WORK PRODUCT**
**CONFIDENTIAL**

July 11, 2023

| | |
|---|---|
| **To:** | Global E-Trading, LLC d/b/a Chargebacks911<br>Monica Eaton<br>Gary Cardone |
| **From:** | Akin |
| **Cc:** | Neal R. Marder, Joshua A. Rubin, Sina S. Safvati |
| **Re:** | Preservation Requirements for Pending Litigation, *Sihler, et al. v. Global E-Trading, LLC d/b/a Chargebacks911, et al.*, Case No. 8:23-cv-01450 (M.D. Fla.) |

**Attorney-Client Privilege** [redacted]

**Attorney-Client Privilege** [redacted]

**Attorney-Client Privilege** [redacted]

1 of 3

Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege

Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege

Attorney-Client Privilege

Attorney-Client PrivilegeAttorney-Client Privilege
Attorney-Client Privilege. Electronic information includes e-mail, voicemail, text messages, chat

messages (including Skype chats and any other online chatting system), [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Exhibit C

---------- Forwarded message ---------
From: **Benjamin Bridwell** <b.bridwell@chargebacks911.com>
Date: Wed, Jul 19, 2023 at 11:09 AM
Subject: Preservation Memo
To: Ben Scrancher <b.scrancher@chargebacks911.com>
Cc: Monica Eaton <monica@chargebacks911.com>, Tanya Solomon <tanya.solomon@chargebacks911.com>

Ben,

Please see the attached preservation memo drafted by our outside counsel. As you know, we are subject to a potential class action claim as the chargeback management company for the client addressed in the memo. Our attorneys are all over this but it's important that we comply with the preservation requirements. Our system should automatically preserve information, but we are required to send this document none the less. Only a few members of the team touched the client and they will receive the same.

Thank you!



**Ben Bridwell**
Chief of Staff
Meet Us at an Upcoming Event

US: 877 634 9808
Fax: 727 683 9491
**Chargebacks911.com**

UK: +44 (0) 2037 505550
International: +1 727 461 1089
**Fi911.com**



IMPORTANT NOTICE: The contents of this communication including any attachment(s) are confidential and may be privileged. Any unauthorized review, distribution, use of or reliance upon this information is prohibited. If you are not the intended recipient (or are not receiving this communication on behalf of the intended recipient), please notify the sender immediately and delete or destroy this communication without reading it and without making, forwarding or retaining any copy or record of it or its contents.