UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br>                                       *Plaintiffs*,<br>v.<br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY EATON, MONICA CARDONE,<br>                                       *Defendants*. | Case No.: 8:23-CV-01450-VMC-LSG |

**PLAINTIFFS' TERMINATING SANCTIONS REPLY BRIEF**

**I.    SCRANCHER'S POSITION IN MAY 2023**

The Court requested that Plaintiffs specifically address "exactly what position Mr. Scrancher held with Defendant at the time of the deletions of Skype messages," so Plaintiffs address this question first. Mr. Scrancher's LinkedIn states that in May 2023 he was "Senior Vice President Business Development." Ex. 1 at 1, 3. Employees who worked for Mr. Scrancher described him as a manager. One former employee of CB911, Nicholas Carroll, testified that while Mr. Scrancher was on the sales team, he had also taken on a "senior manager role":

> Q. Do you know who this person is?
>
> A. I believe that's Ben Scrancher. He was a member of the sales team, I believe, was based out of the UK office.
>
> Q. So he was a member of the Chargebacks911 sales team?
>
> A. Yeah, I -- I -- I -- **I would be hesitant to call him explicitly a salesman. He had been with the company for a long time. So he also took on sort of a senior manager role with the company**, but part of

1

    his responsibility was almost the sales. So I -- I know he would bring
    in clients and be a salesman.

Ex. 2 (Dep. of N. Carroll) at 181:2 – 181:13 (emphasis added). On Mr. Scrancher's LinkedIn, a review from 2017 from an individual named Christopher J. Reynolds states: "**Ben is a hard working honest manager** who went above and beyond to help us sales guys grow." Ex. 1 at 2 (emphasis added). Mr. Reynolds was the Director of National Sales at CB911 until mid-2018. Ex. 3 at 1.

Ms. Eaton's description of CB911's **current** structure is not a description of CB911's structure on May 16th and 17th of 2023, when Mr. Scrancher deleted the Skype messages. Ms. Eaton's declaration states: "Ben Scrancher is not and never has been an officer or 'high-level' employee of CB911 or Online Venture Partners. Mr. Scrancher reports to Shelley Palmer, Global Head of Merchant Sales at Online Venture Partners, who in turn reports to Mike Eliff, Chief Revenue Officer at Online Venture Partners, who in turn reports to Ben Bridwell, President, at CB911, who in turn reports to me." Dkt. 266-3 at ¶ 2. But Ms. Palmer's LinkedIn profile reveals she began working at CB911 in June 2023—shortly after the deletions. Ex. 4 at 1. While Mr. Bridwell was employed at CB911 prior to that date, according to his LinkedIn, he was not promoted to President until July 2023. Ex. 5 at 1. And Mr. Elliff's LinkedIn shows he did not join CB911 until September 2024. Ex. 6 at 1.

Notably, Ms. Eaton's description to the Court of Mr. Scrancher's role differs substantially from her 30(b)(6) deposition testimony. She testified as follows:

    Q   Has Mr. Scrancher's role at Chargebacks911 changed since he first joined the company?
    A   Yes.
    Q   How did Mr. Scrancher's role at Chargebacks911 change since he

2

> first joined the company?
> A   So Ben has had a few roles in the company. He worked in -- he was an account manager. He worked in our client relations department. **He also was a manager at one time of that department**, and now he works in our sales or business development team.
> Q   When did Ben Scrancher transition from client relations to sales or business development at Chargebacks911?
> A   I'm not sure exactly. Maybe 2015.
> Q   Between 2015 and 2023 who was principally responsible for supervising Mr. Scrancher?
> A   Between 2015 and 2023, different --different people. So today Ben reports to our director of sales, and her name is Shelly Pa --Shelly -- Shelly Palmer, I think is the last name, out of the UK. Prior to that, he had reported to Brandon. Prior to that or around the same time, he was reporting to Ben. He's been -- he's reported to me. He was reporting to Gary. I think it really just depends on, I guess, what exact time frame, and I probably have to go through -- I'd have to go through a bit more detail to find out -- okay -- what -- what was the actual structure, what was his role, what was he doing.
> Q   Uh-huh.
> A   He's also worn a few hats just like within the organization. Yeah, so probably various.

Ex. 7 at 104:4 – 106:2 (emphasis added). The 30(b)(6) notice specifically covered Mr. Scrancher's role in the company. Ex. 8 at 6 ¶ 13. Additionally, Mr. Scrancher testified he had the title of "Director of Client Relations" title as of November 2016, and during that time he had other account managers reporting to him. Ex. 9 at 14:5-21, 16:7-11. He later became a Vice President and worked directly with Mr. Cardone. Ex. 9 at 15:13-16, 16:24-17:11. He is now the company's Senior Vice President of Business Development, and he is the only person in the entire company with that title. Ex. 9 at 12-23-13:12. Mr. Scrancher claimed not to recall when his title changed. *Id*.

Putting aside formal titles, that Mr. Cardone specifically chose to confide in Mr. Scrancher about this suit shortly after learning about it indicates Mr. Scrancher

held a special "direct line of communication" to the company's owners. It would be highly unusual for an owner to pick Mr. Scrancher out of hundreds of employees if he truly was a middling employee with no real authority.

Ms. Eaton now tells the Court that Mr. Scrancher is a "mid-level sales employee" who was given "a weighted title, such as 'Vice President,' to give them more credibility as they develop business and solicit prospects." Dkt. 266-3 at ¶ 5. Even if Ms. Eaton's current declaration is true, it does not matter because of apparent authority. It has long been the rule that "the acts of an agent performed within the scope of his real or apparent authority are binding upon his principal, regardless of whether the principal had knowledge of the agent's act." *Fid. & Cas. Co. v. Britt*, 393 So. 2d 41, 42 (Fla. Dist. Ct. App. 1981). Apparent authority exists "where the principal has held out the agent as having such authority or has permitted the agent to represent that he has such authority." *Bishop v. Allied Van Lines, Inc.*, No. 8:08-cv-2170-T-24 MAP, 2009 U.S. Dist. LEXIS 118310 at *14-15 (M.D. Fla. Dec. 18, 2009). CB911 admitted that it gave Mr. Scrancher this title specifically so he would have the apparent authority of a senior management position, and it cannot now selectively disclaim that authority when convenient.

Finally, regardless of Mr. Scrancher's title, any principal can delegate a specific task to an agent, which then gives the agent actual authority as to that task. *Ward Photonics LLC v. Setzer*, No. 6:18-cv-961-Orl-37GJK, 2019 U.S. Dist. LEXIS 167600 at *15-16 (M.D. Fla. July 31, 2019). CB911 now presents an e-mail relating to its FTC litigation, from three years before the deletions here, which it touts as its litigation hold. Dkt. 266-3 at Ex. B. That e-mail instructs employees not to delete

4

any "information, which is considered to be the property of Chargebacks911," and instructs them to "take reasonable steps to preserve all information…." But having delegated this task to Mr. Scrancher, CB911 took no further steps to actually preserve the Skype messages until either November 2023 or early 2024.

It is of no import if Mr. Scrancher violated his instructions, or even if he did something illegal, as was explained in the original motion. *See McKenzie-Wharton v. United Airlines, Inc.*, No. 8:15-cv-114-17MAP, 2016 U.S. Dist. LEXIS 130604 at *13 (M.D. Fla. Sep. 22, 2016). Even commission of a battery has been held to be within the scope of employment where it was "to further a purpose or interest, however excessive or misguided, of the employer…." *Valeo v. E. Coast Furniture Co.*, 95 So. 3d 921, 925 (Fla. Dist. Ct. App. 2012); *Williams v. United States*, No. 3:22cv21211-TKW-HTC, 2022 U.S. Dist. LEXIS 235036 at *4 (N.D. Fla. Dec. 23, 2022) ("For example, when a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies."). CB911 abdicated unsupervised responsibility for document preservation to Mr. Scrancher—and under agency law and Rule 37(e), it is now responsible for what he did.

## II.   CB911'S DECLARATIONS LACK CREDIBILITY

CB911 submits three declarations, crucial to its defense—but none of these witnesses have credibility. The first is Mr. Scrancher, who swore under penalty of perjury that he did not remember deleting any Skype messages. Dkt. 221 Ex. 14. Mr. Scrancher now swears to the Court that he remembers deleting messages and remembers they were innocuous. Dkt. 282-1 at ¶ 21, 35. But the suggestion that

5

Mr. Scrancher had forgotten destroying evidence in a racketeering lawsuit lacks credibility. His deposition took place on January 14, 2025—but Plaintiff began seeking his Skype chats less than six months after their deletion. Ever since, Plaintiffs have been aggressively seeking those messages and Mr. Scrancher's testimony about them, to the point that he hired a lawyer to try to thwart these efforts. Dkt. 74, dkt. 106, dkt. 198. This is not a scenario where Mr. Scrancher deleted the messages and never thought about it again for 20 months – that period was filled with repeated motions, hearings, contacts with CB911 attorneys and his own attorney, and constant reminders of the issue. If Mr. Scrancher perjured himself, nothing he says is credible. It is astonishing that CB911 voluntarily chose to present this declaration to the Court as if it were exculpatory.

As for Ms. Eaton, when she testified as CB911's corporate representative, it was before she understood that Mr. Scrancher being a high-level employee could jeopardize CB911's defense. Her testimony at that time was significantly more uncertain, and she should not be allowed to clean up that testimony now. Ms. Eaton also has a history of self-serving statements to courts. Mr. Cardone was CB911's CEO, he appears on numerous e-mails relating to Brightree and other "hot documents," and was flying Mr. Flynn around in a private jet. Despite all of this, Ms. Eaton separately told a family court judge that "he [Cardone] has never had a meaningful role in the Company." Ex. 10 at 6 ¶ 21. She told the same family court judge that Mr. Cardone was racist, homophobic, hated women, thinks poor people are "dumb," and was stockpiling guns for the apocalypse. Ex. 11 at 25. After interacting with them for several years, the family court judge did not find either

Cardone or Eaton credible. Ex. 11 at 54-55.

### III. CB911'S REMAINING ARGUMENTS

CB911 does not dispute that it had legal control of the Skype messages—and it could not, because it has now revealed for the first time that it specifically told employees it owned information on their personal devices in response to the FTC action. Having conceded it had control, it has conceded it had a duty to preserve. But its prior explanation for delaying any effort to collect Skype chats until November 2023 or later was that it believed it lacked control. Dkt. 74 at 3-4. It could not have believed that in good faith given the memo it has now submitted.

Issuing a company-wide litigation hold for a different matter three years prior to anticipating this lawsuit is no defense for CB911. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012) ("However, the fact that Apple may have been in compliance with its document preservation duties related to other litigations, which may have involved different parties, different claims, different products, and different witnesses, does not in any way absolve Apple of its preservation duties in relation to *this* lawsuit that Apple filed against Samsung.") (emphasis in original). Furthermore, "[a] party's discovery obligations do not end with the implementation of a 'litigation hold' - to the contrary, that's only the beginning." *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650 (M.D. Fla. 2007) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D. N.Y. 2004)). "[I]t is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information…." *Id.* at 663. But as in *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023), that is

7

what CB911 did. It abdicated its preservation responsibilities to Mr. Scrancher, and then did not bother to follow up and actually try to preserve the Skype messages until at least six months into this litigation. Moreover, CB911 now advances a version of facts that is diametrically opposed to what it told the Court previously:

| CB911's Current Explanation (dkt. 266 at 3-4, emphasis added) | CB911's Prior Explanation (dkt. 74 at 3-4, emphasis added) |
|---|---|
| "While the CID was limited to a subset of CB911's clients (of which Brightree was not one), Dkt. 258-13, **CB911's Document Preservation Notice instructed the recipients, including Mr. Scrancher, to preserve 'all information, data, communications and documents**, including, in particular, electronically stored information.'" | "While negotiating the scope of the CID, Defendants and the FTC explicitly addressed the topic of Skype chats. Roush Decl. ¶ 7. CB911 represented to the FTC that there were no responsive chat transcripts within CB911's possession, custody or control because employees used their own personal Skype accounts. Roush Decl. ¶ 8. The FTC did not challenge this position, did not demand that CB911 order its employees to go through their Skype accounts, and did not request that CB911 make any efforts to try to preserve employees' personal Skype accounts. **As such, CB911 did not ask employees to voluntarily preserve their files.**" |

CB911's explanations are irreconcilable.

CB911 disputes whether the remaining deleted messages, whose contents are unknown, would be prejudicial to Plaintiffs. But there is a presumption of such prejudice. Dkt. 221 at 20-21. CB911's only basis for claiming these unknown messages were innocuous is its decision to submit a fantastical declaration from Mr. Scrancher claiming to have suddenly remembered their contents, despite having sworn at his deposition that he did not remember deleting any messages. Furthermore, the messages CB911 recovered from Mr. Conway are hardly

8

innocuous. Mr. Scrancher deleted a message showing him ordering up "20 corps asap" for Mr. Flynn. Dkt. 266-7. Placing an order for a large volume of shell companies as if it were an order for pizzas is hardly innocuous. This directly supports Plaintiffs' argument that it was illegally helping Mr. Flynn "re-engineer" its business by obtaining large numbers of shell corporations with straw owners to get merchant accounts. *See, e.g.*, Dkt. 276 at 15-16. The federal government initiated a spate of prosecutions against exactly such schemes. Exs. 12-15. The Court can presume the other messages were likewise damaging. It further shows Scrancher's purpose was at least partly to benefit CB911: he deleted evidence showing CB911's "re-engineering" of Brightree involved a shell company scheme.

CB911 accused Plaintiffs of abandoning efforts to inspect Mr. Scrancher's Skype account. Mr. Scrancher's counsel stalled until nearly the close of fact discovery, and this Court has made clear that it would not delay trial. Plaintiffs believed Mr. Scrancher would attempt to run out the clock via a UK proceeding. Plaintiffs opted (logically, and in retrospect, entirely correctly) to pursue full copies of the chats from Mr. Flynn and Microsoft.

With respect to its instructions to Mr. Scrancher not to answer questions at his deposition, the questions were about Mr. Scrancher's communications with Brightree—squarely within the topics. Even if the instructions were made in error, that does not make them acceptable. *Ollison v. Wexford Health Sources, Inc.*, 337 F.R.D. 165, 171 (C.D. Ill. 2020); *Promier Prods. v. Orion Capital LLC*, No. 21 CV 1094, 2023 U.S. Dist. LEXIS 228402 at *17-18 (N.D. Ill. Dec. 22, 2023).

Finally, CB911 accuses Plaintiffs of fabricating a quote from a court order,

9

which held that CB911's "inquiry was insufficient" into the Skype chats. Dkt. 266 at 5 n.5. Apparently CB911 did not actually check the citation before making this accusation. *See* dkt. 93 at 2 ("this Court finds that the inquiry was insufficient").

## IV.   CB911 HAS NOT ACCEPTED RESPONSIBILITY

The 11th Circuit has made clear that in determining what sanctions to impose, a party's level of contrition or acceptance of responsibility is one of the most important factors. But Defendant's initial response was not contrition, but to attempt to blame David Flynn for the deletion of the Skype messages. A large portion of the Opposition is dedicated to accusations against Plaintiffs' counsel in a tone that is jarring given the context, accusing Plaintiff's counsel of "countless inaccurate statements' and "outright lies." Dkt. 266 at 3. This is not the tone of a party accepting responsibility. It is especially jarring when compared to Plaintiff's own motion, which blamed CB911 only and even specifically quoted authority that the company cannot blame its counsel for its own decisions. Dkt. 221 at 23.

In *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1386 (11th Cir. 2024), the 11th Circuit found that where a defendant "displays a remarkable lack of contrition" and had engaged in "unceasing attempts to blame others," it justified imposition of a default judgment. *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021) held likewise. A party who exhibits a lack of contrition or who blames others is unlikely to be deterred by lesser sanctions.

CB911's initial response was to seek expansive additional discovery for itself after blaming Plaintiffs for not discovering the deletions earlier. Dkt. 242 at 3-4. While accusing Plaintiffs of "outright lies," CB911 told the Court on February 14,

10

2025 that Plaintiffs had engaged in a "refusal to provide the data that underpins their Motion for Sanctions" and that Plaintiffs were "claiming that they did not need to produce it because they did not 'possess' it." None of this is true; in fact, after a meet and confer on February 7, 2025, Plaintiffs' counsel e-mailed CB911:

> I wanted to reiterate what we said yesterday afternoon. If you have a vendor that you want us to send the JSON file to let us know. We can arrange to have the file transferred promptly. If you want to review the JSON file yourselves we're happy to review a consent motion to compel that outlines how we obtained the JSON.

Ex. 16 at 3. After receiving no response for a full week, Plaintiffs' counsel again proactively e-mailed on February 14, 2025: "I just wanted to see if you have located a vendor that you want us to have Epiq send the JSON files to. If so please send me their information." *Id.* CB911 finally sent information on where to send the JSON file, and Plaintiffs' vendor promptly transferred it that same day. *Id.* All of this occurred **before** CB911 filed its motion. Dkt. 242 at 6 ("On February 14, 2024, Plaintiffs' vendor provided the JSON file to CB911's external vendor."). CB911's Opposition complains that Plaintiffs had their vendor send the file to CB911's vendor instead of making a transfer to the attorneys. This is because Plaintiffs' counsel does not have direct access to the JSON file themselves. Mr. Flynn conditioned his consent to the subpoena to Microsoft on Plaintiffs' counsel agreeing not to possess or review the JSON file directly. CB911's vendor had the JSON file, and Plaintiffs have repeatedly told CB911 they have no objection to the vendor transferring the file to CB911's counsel. Dkt. 266-1 Ex. B.

In addition to Plaintiffs, CB911 blamed David Flynn, asking to depose him again "to confirm whether he deleted these messages" and referred to them as "the

11

allegedly deleted messages." Dkt. 242 at 10-11. This is despite (i) Mr. Scrancher's account being listed as the one initiating the deletions, Dkt. 260-6, and (ii) CB911 knew when it made this this representation to the Court that Mr. Cardone had met with Mr. Scrancher to discuss the case on the exact same day the deletions began. This is extremely important. The same attorneys represent CB911 and Mr. Cardone. He knew (and has always known) that he had met with Scrancher on May 16, 2023 and had discussed the demand letter with Scrancher just hours before the deletions. Dkt. 266-4. **If Mr. Cardone knew that he had talked to Mr. Scrancher about the demand letter the exact same day the deletions began, how could CB911 credibly assert to this Court that Mr. Flynn deleted the messages?**

Equally concerning wasa CB911's motion seeking to depose Mr. Scrancher a second time, this time without the limitations Plaintiffs were forced into. Dkt. 242 at 10. Plaintiffs went to great lengths to depose Mr. Scrancher, and CB911 went to great lengths to stop it from happening. CB911 argued that it was unable to convince Mr. Scrancher to be deposed and it had "no leverage" to force him to be deposed. Dkt. 110 at 10-11, dkt. 189 at 18-19. Yet now that it benefits CB911, Mr. Scrancher is suddenly willing to be deposed without restriction.

CB911 has not taken responsibility. It tried (and continues to try) to blame others—and it only dropped the "Flynn Did It" theory when the Court denied its discovery motion. CB911 takes no responsibility at all for failing to implement a timely litigation hold. The truth-seeking process must be respected, and lesser sanctions will not restore that respect.

12

Date: March 12, 2025

Respectfully submitted,

/s/ Kevin Kneupper
Kevin M. Kneupper

| | |
|---|---|
| **KNEUPPER & COVEY, PC** | **KIBBEY WAGNER PLLC** |
| Kevin M. Kneupper, Esq.* | Jordan Wagner, Esq. (SBN 14852) |
| kevin@kneuppercovey.com | 73 SW Flagler Ave |
| A. Lorraine Weekes* | Stuart, FL 34994-2140 |
| lorraine@kneuppercovey.com | Office: 772-444-7000 |
| 17011 Beach Blvd Suite 900, | jwagner@kibbeylaw.com |
| Huntington Beach, CA 92647 | |
| Office: 657-845-3100 | |

A. Cyclone Covey, Esq.*
cyclone@kneuppercovey.com
11720 Amber Park Dr.
Ste 160 PMB 1271
Alpharetta, GA 30009

Anthony C. Sampson, Esq.*
Anthony@kneuppercovey.com
8911 North Capital of Texas Hwy,
Suite 4200, No. 1173
Austin, TX 78759
Office: 657-845-3100

* admitted pro hac vice

*Attorneys for Plaintiffs Janet Sihler and Charlene Bavencoff and the Class*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by the Court's CM/ECF electronic mail system, on this 12th day of March, 2025, to all counsel of record.

/s/ Kevin M. Kneupper

Kevin M. Kneupper

13