UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET SIHLER and
CHARLENE BAVENCOFF,
Individually and
on Behalf of All Others
Similarly Situated,

        Plaintiffs,

v.                       Case No. 8:23-cv-1450-VMC-LSG

GLOBAL E-TRADING, LLC,
d/b/a Chargebacks911,
GARY CARDONE, and
MONICA EATON,

        Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Global E-Trading, LLC's <u>Daubert</u> Motion to Exclude the Testimony of Kenneth J. Musante, <u>Daubert</u> Motion to Exclude the Testimony of Kerrie Merrifield, and Motions for Oral Argument on its <u>Daubert</u> Motions (Doc. ## 212, 217, 214, 218), and Defendants Gary Cardone, and Monica Eaton's Joint Motion to Exclude Expert Testimony of Kenneth Musante and Joint Motion to Exclude Expert Testimony of Kerrie Merrifield (Doc. ## 213, 219), all filed on February 5, 2025. Plaintiffs Janet Sihler and Charlene Bavencoff responded on February 25, 2025. (Doc. ## 261, 262, 264, 265). Defendants replied on March 20,

1

2025, in support of the Motions about Mr. Musante. (Doc. ## 284, 285). For the reasons that follow, the Motions about Mr. Musante are granted in part and denied in part and the Motions about Ms. Merrifield are denied.

## I.    **Background**

Plaintiffs initiated this putative class action against Defendants on June 28, 2023. (Doc. # 1). The operative complaint is the third amended complaint, in which Plaintiffs assert two RICO claims: (1) for violation of 18 U.S.C. § 1962(c) (Count 1) — a substantive RICO claim; and (2) for violation of 18 U.S.C. § 1962(d) (Count 2) — a RICO conspiracy claim. (Doc. # 102). On August 13, 2024, the Court certified a nationwide class in this RICO case. (Doc. # 156). The case proceeded through discovery and each side hired experts. Now, Defendants move to exclude the testimony of two of Plaintiffs' experts, Kenneth Musante and Kerrie Merrifield. (Doc. ## 212, 213, 217, 219).

Mr. Musante is Plaintiffs' expert on the banking and credit card processing industries. (Doc. # 241-3 at 3-4). He has a Bachelor of Science in Managerial Economics, an MBA, and "graduated from the Pacific Coast Bankers School in Seattle, WA." (Id.). Mr. Musante has more than thirty years' experience with the banking industry and with the major credit

card companies, such as Visa, Mastercard, Discover, American Express. (Id.). In his report, Mr. Musante opines that Global e-Trading, which does business as Chargebacks911, "provided critical and necessary support which allowed the fraudulent merchants to continue processing consumer payments. But for [Global e-Trading's] assistance, the fraud would have either been muted or ended much sooner than it otherwise did." (Id. at 8). "Plaintiffs offer Mr. Musante to testify as an expert about (i) how Card Brand networks work and their respective rules, (ii) the intricacies of chargebacks on card transactions, (iii) whether [Global e-Trading's] practices complied with the Card Brands' rules, and (iv) whether [Global e-Trading's] work with the Keto Entities prolonged the Keto Entities' ability to continue collecting payments on their keto pill websites." (Doc. # 265 at 3).

Ms. Merrifield is Plaintiffs' damages expert. She is a Certified Public Accountant (CPA) and has over 35 years of experience accounting with an emphasis on forensic accounting and damages calculations. (Doc. # 217-2 at 2, 22-28). Ms. Merrifield has been the Director of Litigation Support for Axiom Forensics since 2008. (Id. at 22). She was "retained to review the documents and the 'shipping,' 'refunds,' and 'charge backs' Excel spreadsheets produced in the [case] in

3

order to determine the differences between amounts that were charged United States customers that purchased either the, 'buy 2, get 1 free' (referred to as 3 bottles) or 'buy 3, get 2 free' (referred to as 5 bottles) promotion of either Instant Keto, Ultra Fast Keto Boost, or Keto Boost products, and the amounts these customers expected to be charged and is offset by any refunds and charge backs." (Id. at 3). She opines that the total damages for the Keto Entities' diet pill scheme is $18,779,274. (Id. at 4). According to Plaintiffs, they offer "Ms. Merrifield as an expert for only one thing: to filter and calculate numbers from hundreds of thousands of rows in a spreadsheet. Her assignment was to find select rows in a spreadsheet with values that fit into criteria that Plaintiffs' counsel provided and to perform math on those values." (Doc. # 261 at 1).

Plaintiffs have responded to all Daubert Motions (Doc. ## 261, 262, 264, 265), and Defendants replied in support of their Motions relating to Mr. Musante. (Doc. ## 284, 285). The Motions are now ripe for review.

## II.  **Legal Standard**

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

4

> otherwise if: (a) the expert's scientific,
> technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to
> determine a fact in issue; (b) the testimony is
> based on sufficient facts or data; (c) the
> testimony is the product of reliable principles and
> methods; and (d) the expert has reliably applied
> the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently
> regarding the matters he intends to address; (2)
> the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined

5

> by the sort of inquiry mandated in <u>Daubert</u>; and (3)
> the testimony assists the trier of fact, through
> the application of scientific, technical, or
> specialized expertise, to understand the evidence
> or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. <u>Id.</u>

### A.   **Qualifications**

The first question under <u>Daubert</u> is whether an expert is qualified to testify competently regarding the matters he or she intends to address. <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting <u>Jack v. Glaxo Wellcome, Inc.</u>, 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." <u>Id.</u> (citations and internal quotation marks

omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

## B.    Reliability

The second question is whether an expert's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other

relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

C. **Assistance to Trier of Fact**

Finally, expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison, 184 F.3d at 1312 (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . . if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted).

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted). Also, "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017). However, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

### D.    **Federal Rule of Evidence 403**

Federal Rule of Civil Procedure 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402.

9

All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 402, 403; United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

III. **Analysis**

The Court will address each challenged expert separately.

A.   **Mr. Musante**

Defendants seek to limit Mr. Musante's testimony in numerous ways. Global e-Trading maintains that Mr. Musante's report includes numerous impermissible legal conclusions, lacks a reliable methodology, and would not be helpful to the jury and is irrelevant. (Doc. # 212). Ms. Eaton and Mr. Cardone repeat many of Global e-Trading's arguments, as well as raising the additional argument that "Plaintiffs should

not be permitted to offer Mr. Musante's opinions regarding [Global e-Trading's] compliance with industry standards and norms against either Mr. Cardone or Ms. Eaton, nor should Plaintiffs be permitted at trial to offer any opinion regarding Mr. Cardone or Ms. Eaton's compliance with industry standards or norms." (Doc. # 213 at 3, 5-11). Mr. Cardone and Ms. Eaton insist that "the opinions and testimony Mr. Musante does provide as to Mr. Cardone and Ms. Eaton should also be excluded because they lack support and are speculative." (Id. at 3).

The Court disagrees with Defendants regarding Mr. Musante's methodology. Mr. Musante's methodology is sufficiently reliable to be presented to the jury. Throughout his report, Mr. Musante points to the documents he reviewed in reaching his opinions based on his experience in the banking and card processing industries. See, e.g., (Doc. # 241-3 at 13) ("[Global e-Trading's] internal documents reflect it had extensive information about the card networks' rules available to it. [Global e-Trading] summarizes the Card Networks' Chargeback programs on their website in a June 8, 2022, article titled Excessive Chargeback Programs."). And, in his deposition, Mr. Musante explained that he reviewed the complaint and other materials in the case, created an outline

11

based on that review and his experience, validate if the
materials reviewed support his outline, and then draft his
report. (Doc. # 252-3 at 20:18-21:8).

This is a sufficiently reliable methodology. See Dudash,
2017 WL 1969671, at *3 (denying a Daubert motion to exclude
an insurance expert and stating that, as "[h]er opinions were
formulated based on her review of the record," the "argument
that her review is unreliable is unpersuasive"); Lincare
Holdings Inc. v. Doxo, Inc., No. 8:22-cv-2349-VMC-AEP, 2024
WL 243646, at *3 (M.D. Fla. Jan. 23, 2024)(finding expert's
methodology reliable where the expert "applied his experience
to his review of relevant materials" and "sufficiently
explain[ed] how his experience, combined with his review of
materials relevant to the case, led to his conclusions").
While Defendants may have legitimate questions about Mr.
Musante's conclusions based on his document review or take
issue with the documents he relied upon, these issues can be
explored on cross-examination. See Maiz, 253 F.3d at 666
("Vigorous cross-examination, presentation of contrary
evidence, and careful instruction on the burden of proof are
the traditional and appropriate means of attacking
[debatable] but admissible evidence." (citations and internal
quotation marks omitted)).

Next, the Court agrees in part with Defendants regarding
Mr. Musante's legal conclusions. While the Court understands
Plaintiffs' position that Mr. Musante uses the words "fraud"
and "fraudulent" in the vernacular sense (Doc. # 265 at 8-
13), the Court is concerned with the potential to confuse the
jury by use of these words with legal significance. It is
likely a jury would believe Mr. Musante was offering a legal
conclusion that certain transactions legally constituted
fraud. Thus, Mr. Musante is prohibited from using the words
"fraud" and "fraudulent" in offering his expert opinions. See
Special Needs Grp., Inc. v. Garnett, No. 0:20-cv-60393-AMC-
PMH, 2021 WL 4990478, at *1 (S.D. Fla. July 30, 2021) ("Mr.
Leon may not offer legal conclusions or testify about the
legal implications of conduct such as what constitutes fraud
or indicates deceptive intent."). However, the Court declines
to exclude Mr. Musante's use of the phrase "sham transactions"
in relation to the microtransactions scheme or the term "bad
actors." Neither "sham" nor "bad actor" is a legal term of
art, and the Court is not concerned about jury confusion over
the use of these words.

The Court also will not exclude Mr. Musante's
conclusions about causation. "An opinion is not objectionable
just because it embraces an ultimate issue." Fed. R. Evid.

704(a). Thus, it is permissible for Mr. Musante to testify —
among other things — that, in his opinion, Global e-Trading
"was instrumental" in helping the Keto Entities continue
accessing card processing and selling its keto diet pills to
consumers. (Doc. # 241-3 at 1). While Mr. Musante's opinions
touch on an ultimate issue, Mr. Musante does not merely
instruct the jury on what result to reach. See Montgomery v.
Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990)
("An expert may testify as to his opinion on an ultimate issue
of fact. An expert may not, however, merely tell the jury
what result to reach." (citations omitted)). Thus, his
opinions are admissible. Nor does the Court consider Mr.
Musante's opinions about "sham transactions," "bad actors,"
or causation to be unduly prejudicial. The Court will not
exclude these opinions under Rule 403.

The Court considers all of Mr. Musante's opinions, with
the exception of his use of the legal terms "fraud" and
"fraudulent," helpful to the jury. The card processing
industry and its procedures are unfamiliar to the average
juror. For that reason, Mr. Musante's opinions regarding that
industry and whether Defendants' practices violated the rules
of that industry or assisted the Keto Entities will be helpful
to the jury. Even though the Court has dismissed the RICO

14

claims to the extent they are predicated on financial
institution fraud (Doc. # 128), that dismissal does not render
all opinions concerning Global e-Trading's conduct regarding
or interactions with financial institutions irrelevant to the
jury's determination of the remaining RICO claims. Indeed,
the Court agrees with Plaintiffs that Global e-Trading's
"prior behavior is very relevant as it is evidence that
[Global e-Trading] knew what it was doing and had the
requisite intent to conspire with the Keto Entities to violate
RICO." (Doc. # 265 at 18).

Finally, the Court is unconvinced by Mr. Cardone and Ms.
Eaton's additional arguments. Mr. Musante's opinions are
admissible to the extent they apply to Mr. Cardone and Ms.
Eaton. While Mr. Musante may have commented on his opinions
on Mr. Cardone's truthfulness during his deposition, this is
not one of his opinions in his report. And Plaintiffs agree
that no expert, including Mr. Musante, "should be permitted
to testify to another person's state of mind or characterize
another witness's testimony." (Doc. # 264 at 3).

Rather, Mr. Musante's opinions as listed in his report
are permissible and certainly relevant to the claims against
Mr. Cardone and Ms. Eaton. Mr. Cardone and Ms. Eaton were
both high-level executives with Global e-Trading at relevant

times such that they are implicated in Global e-Trading's
policies and conduct. Furthermore, Mr. Musante considered
evidence directly involving both individual Defendants,
including emails they sent, in forming his opinions. See,
e.g., (Doc. # 241-3 at 20, 22) (discussing emails sent by Mr.
Cardone and Ms. Eaton). Nor does the Court believe that Mr.
Musante has improperly characterized Mr. Cardone's testimony.
(Doc. # 213 at 7-8). At most, Mr. Musante permissibly
disagrees with statements made by Mr. Cardone. Thus, the Court
will not exclude Mr. Musante's opinions to the extent they
involve Mr. Cardone or Ms. Eaton under either Daubert or Rule
403.

The Motions relating to Mr. Musante are granted in part
and denied in part as explained above.

B.    **Ms. Merrifield**

Defendants also seek to limit the testimony of Kerrie
Merrifield. Global e-Trading insists that Ms. Merrifield is
unqualified to offer certain opinions, her methodology is
unreliable, and her opinions unhelpful to the jury such that
her opinions should be excluded under Rules 702 and 403. (Doc.
# 217). Similar to Global e-Trading's arguments, Mr. Cardone
and Ms. Eaton argue Ms. Merrifield's opinions should be
excluded because her "calculations are based on three Excel

16

spreadsheets . . . that contain data that either cannot be verified or is unquestionably incomplete." (Doc. # 219 at 2). Additionally, Mr. Cardone and Ms. Eaton contend that "Ms. Merrifield's damages opinions improperly assume that all purported damages to Class members are attributable to, and recoverable from, any defendant, including Ms. Eaton and Mr. Cardone." (Id. at 3).

First, Ms. Merrifield is qualified to offer all of her opinions. Global e-Trading insists that Ms. Merrifield is not qualified "to testify competently regarding the matters she intends to address," specifically regarding "the price U.S. consumers expected to pay for their purchase." (Doc. 217 at 17-19). But, indeed, Plaintiffs insist that they are not offering Ms. Merrifield as an expert on consumer expectations. See (Doc. # 261 at 4) ("Ms. Merrifield is not being offered to establish what consumers expected to pay for their purchase of the Keto Products."). Although Ms. Merrifield's calculations required an assumption about what consumers expected to pay, the Court does not interpret Ms. Merrifield as offering an expert opinion regarding consumer expectations.

Next, Ms. Merrifield's methodology is sufficiently reliable. As explained in her report, she "reviewed various

documents that were produced" in discovery and performed
"various technical steps" "along with applying forensic
accounting procedures in order to properly extract the data
needed and to perform an accurate analysis." (Doc. # 217-2 at
3). She filtered through data and used data within large
spreadsheets of payment and shipping information to calculate
the class-wide damages in this case. <u>See</u> (Doc. # 261 at 8)
("Ms. Merrifield's methodology was to use Excel's advanced
features to arrive at her calculations. Thus, the methodology
in question is the use of Excel's functions on the TFL
Spreadsheet."). This is a legitimate methodology that is
testable and, indeed, was reviewed by Defendants' rebuttal
damages expert.

The fact that the documents and spreadsheets Ms.
Merrifield consulted were provided by Plaintiffs and that Ms.
Merrifield consulted Plaintiffs' counsel regarding certain
assumptions does not render Ms. Merrifield an unreliable
"mouthpiece" for Plaintiffs' counsel. (Doc. # 217 at 6-14;
Doc. # 219 at 12-13); <u>see</u> <u>Coquina Invs. v. Rothstein</u>, No. 10-
60786-CIV, 2011 WL 4949191, at *8 (S.D. Fla. Oct. 18, 2011)
("As a general rule, the factual basis of an expert opinion
goes to the credibility of the testimony, not the
admissibility, and it is up to the opposing party to examine

18

the factual basis for the opinion in cross-examination." (citation omitted)); Proccor Pharmaceuticals, Inc. v. World Health Prods., No. 8:22-cv-2227-SDM-TGW, 2024 WL 4604207, at *1 (M.D. Fla. Sept. 30, 2024) ("[A]n expert may assume facts stated by the examiner and offer an opinion based on the assumed facts; if the assumed facts are disproven and rejected by the jury, the expert's opinion likely suffers rejection. In other words, the issue is the weight of the opinion and the likely success of the opinion but not the admissibility of the opinion."). Ms. Merrifield did not merely repeat opinions Plaintiffs' counsel gave her. See Rodgers v. Beechcraft Corp., No. 15-CV-129-CVE-PJC, 2016 WL 7888002, at *8 (N.D. Okla. Oct. 27, 2016) ("Haider did no testing regarding the Premier's electrical system, its landing gear system, problems with electrical components, or the ultimate cause of the plane crash. Instead, Haider largely adopted as his own a list of opinions provided by counsel and other experts. This is not proper.").

While Defendants may have legitimate questions about Ms. Merrifield's reliance on the data within the spreadsheet or any assumptions underlying her analysis, these supposed problems can be explored on cross-examination. See Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of

19

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Likewise, questions about flaws in Ms. Merrifield's calculations or her decisions to consider certain data and not others should be addressed on cross-examination.

The Court also determines that Ms. Merrifield's opinions and calculations will be helpful to the jury. Defendants are incorrect that Ms. Merrifield's analysis involved "a simple math calculation that most kids in junior high could perform." (Doc. # 217 at 2). Rather, as Plaintiffs point out, the data Ms. Merrifield sifted through to make her calculations "is on a spreadsheet containing over 414,000 rows" such that she "had to use advanced Excel techniques to arrive at her numbers." (Doc. # 261 at 2, 17). It is certainly helpful to the jury to have an analysis of the voluminous data from the spreadsheets provided to them rather than reviewing all the data in the spreadsheets themselves to reach a damages calculation. Ms. Merrifield's damages calculation, made after sorting through the voluminous data, will help the jury decide what damages to award, if it finds Defendants liable. See Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.,

No. 0:18-cv-63130-RAR, 2020 WL 1666763, at *8 (S.D. Fla. Apr. 3, 2020) ("Although at least some lay people are likely capable of performing the same analysis and calculations, the work undertaken by Sharp is undoubtedly beyond the understanding of the *average* lay person."); Arnold v. Ambulance Serv. of Bristol, Inc., No. 2:06-cv-105, 2007 WL 5117409, at *1 (E.D. Tenn. Aug. 21, 2007) ("Defendants go on to argue that Mr. Greer merely performs 'simple math calculations . . . which the average sixth-grader would be able to perform when equipped with a calculator, pencil and paper.' Firstly, what is a simple mathematical computation to one person may be mind-numbingly complicated to another. Secondly, if these calculations are as simple as defendants suggest they are (which is doubtful), then those jurors who are mathematically knowledgeable will immediately so recognize and wonder why the plaintiffs utilized a CPA to prove the obvious.").

The Court next addresses Mr. Cardone and Ms. Eaton's contention that "Ms. Merrifield's damages opinions improperly assume that all purported damages to Class members are attributable to, and recoverable from, any defendant, including Ms. Eaton and Mr. Cardone." (Doc. # 219 at 3). This is not a proper ground to exclude an expert under Daubert.

21

Mr. Cardone and Ms. Eaton take issue with Ms. Merrifield's
calculation to the extent it does not attempt to apportion a
percentage of the damages to them alone based on the
enterprise in which they are accused of participating. (Doc.
# 219 at 19-21). But this argument does not render Ms.
Merrifield's calculation of damages based on the spreadsheets
unreliable or unhelpful to the jury. Mr. Cardone and Ms. Eaton
can raise the issue of different enterprises and causation on
cross-examination.

The Court also rejects Mr. Cardone and Ms. Eaton's
apparent attempt to seek reconsideration of this Court's
ruling on the availability of joint and several liability.
(Id. at 21-23). In its order granting class certification,
the Court explained that joint and several liability applies
to the civil RICO claims. (Doc. # 156 at 27); see also United
States v. Philip Morris USA, 316 F. Supp. 2d 19, 27 (D.D.C.
2004) ("Every circuit in the country that has addressed the
issue has concluded that the nature of both civil and criminal
RICO offenses requires imposition of joint and several
liability because all defendants participate in the
enterprise responsible for the RICO violations."). Mr.
Cardone and Ms. Eaton argue — in what is essentially a summary
judgment argument — that joint and several liability is no

longer available for civil RICO claims because of the Supreme Court's ruling in Honeycutt v. United States, 581 U.S. 443 (2017). (Doc. # 219 at 21-22).

This is unpersuasive. Honeycutt ruled narrowly on the availability of joint and several liability under a criminal forfeiture statute, the Comprehensive Forfeiture Act of 1984. See Honeycutt, 581 U.S. at 445 ("A federal statute — 21 U.S.C. § 853 — mandates forfeiture of 'any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of' certain drug crimes. This case concerns how § 853 operates when two or more defendants act as part of a conspiracy. Specifically, the issue is whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire. The Court holds that such liability is inconsistent with the statute's text and structure."). Plaintiffs are correct that "Defendants were unable to cite any cases that extended Honeycutt to hold that RICO co-conspirators are not jointly and severally liable for civil damages." (Doc. # 262 at 15). The Court agrees with Plaintiffs that "[g]iven the clear [difference] between civil tort liability and forfeiture to the government there is no reason to extrapolate Honeycutt to

prohibit joint and several recovery in a civil RICO conspiracy
case." (Id. at 17). The Court stands by its previous
determination that joint and several liability is available
in this civil RICO case. See Gov't Emps. Ins. Co. v. KJ
Chiropractic Ctr. LLC, No. 6:12-cv-1138-PGB-DCI, 2017 WL
9939048, at *3 (M.D. Fla. Aug. 22, 2017) ("While the Eleventh
Circuit has not specifically addressed the issue of joint and
several liability in civil RICO cases, it has allowed joint
and several liability in a criminal RICO case. Moreover,
several other circuit courts of appeal have found defendants
jointly and severally liable in relation to civil RICO
claims." (citations omitted)). Because joint and several
liability is available, the Court rejects Mr. Cardone and Ms.
Eaton's Daubert arguments premised on the assumption that
joint and several liability is unavailable.

Finally, the Court will not exclude Ms. Merrifield's
opinions under either Rule 403 or Rule 703. Ms. Merrifield's
opinions and damages calculation is not unduly prejudicial to
Defendants for the same reasons that the opinions are
admissible under Daubert. The Court will not apply the
extraordinary remedy of exclusion under Rule 403 to Ms.
Merrifield's expert opinions. And Rule 703 explicitly allows
experts to rely on inadmissible facts or data, such as hearsay

statements. See Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."). Thus, Ms. Merrifield's consideration of Plaintiffs' counsel's hearsay statements, which a reasonable damages expert would consider in conducting her analysis, was permissible.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Global E-Trading, LLC's Daubert Motion to Exclude the Testimony of Kenneth J. Musante (Doc. # 212) is **GRANTED** in part and **DENIED** in part as set forth herein.

(2) Defendant Global E-Trading, LLC's Daubert Motion to Exclude the Testimony of Kerrie Merrifield (Doc. # 217) is **DENIED.**

(3)   Defendant  Global  E-Trading,  LLC's  Motions  for  Oral
Argument  on  its  Daubert  Motions  (Doc. ## 214, 218)  are
**DENIED**.

(4)   Defendants Gary Cardone, and Monica Eaton's Joint Motion
to Exclude Expert Testimony of Kenneth Musante (Doc. #
213) is **GRANTED** in part and **DENIED** in part as set forth
herein.

(5)   Defendants Gary Cardone, and Monica Eaton's Joint Motion
to Exclude Expert Testimony of Kerrie Merrifield (Doc.
# 219) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
16th day of May, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE