UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET SIHLER and
CHARLENE BAVENCOFF,
Individually and
on Behalf of All Others
Similarly Situated,

    Plaintiffs,

v.                    Case No. 8:23-cv-1450-VMC-LSG

GLOBAL E-TRADING, LLC,
d/b/a Chargebacks911,
GARY CARDONE, and
MONICA EATON,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of Plaintiffs Janet Sihler and Charlene Bavencoff's Motion to Limit the Expert Testimony of Defendants' Experts Troy Carrothers and Lisl Unterholzner (Doc. ## 215, 259), filed on February 5, 2025. Defendants Global E-Trading, LLC, Gary Cardone, and Monica Eaton responded on February 26, 2025. (Doc. # 273). For the reasons that follow, the Motion is granted in part and denied in part.

**I.    Background**

Plaintiffs initiated this putative class action against Defendants on June 28, 2023. (Doc. # 1). The operative

1

complaint is the third amended complaint, in which Plaintiffs assert two RICO claims: (1) for violation of 18 U.S.C. § 1962(c) (Count 1) — a substantive RICO claim; and (2) for violation of 18 U.S.C. § 1962(d) (Count 2) — a RICO conspiracy claim. (Doc. # 102). On August 13, 2024, the Court certified a nationwide class in this RICO case. (Doc. # 156). The case proceeded through discovery and each side hired experts. Now, Plaintiffs move to exclude the testimony of two of Defendants' experts, Troy Carrothers and Lisl Unterholzner.

Mr. Carrothers is Defendants' rebuttal expert to Plaintiffs' payment processing industry expert. (Doc. # 259 at 5; Doc. # 251-4). Plaintiffs take issue with certain opinions given by Mr. Carrothers, including that "'Value Added Promotions used by [Global e-Trading] before 2019 are commonly used marketing programs," as well as statements that Plaintiffs maintain are impermissible legal conclusions. (Doc. # 259 at 3).

Ms. Unterholzner, an accountant and certified fraud examiner, is Defendants' rebuttal damages expert. (Doc. # 259 at 1, 5; Doc. # 253-6). Plaintiffs take issue with certain opinions given by and analysis performed by Ms. Unterholzner, including her discussion of a The Fulfillment Lab ("TFL") spreadsheet with shipping addresses and her MID-by-MID and

time-limited calculation of damages attributable to Global e-Trading. (Doc. # 259 at 1-2). After filing this Motion, Plaintiffs filed a notice "withdraw[ing] the portion of their argument that seeks to limit Ms. Unterholtzer's testimony based on the assertion that the data [underlying the spreadsheet] was not produced." (Doc. # 281).

Defendants have responded (Doc. # 273), and the Motion is now ripe for review.

## II. Legal Standard

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts

3

must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

### A. Qualifications

The first question under Daubert is whether an expert is qualified to testify competently regarding the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or

education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

### B. Reliability

The second question is whether an expert's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)

5

(citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

### C. Assistance to Trier of Fact

Finally, expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." Allison, 184 F.3d at 1312 (citation and internal quotation marks omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . . if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted).

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted). Also, "[n]o witness may offer legal conclusions or testify to the legal implications

of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017).

### III. Analysis

The Court will address each challenged expert separately.

#### A. Mr. Carrothers

Plaintiffs first seek to preclude Mr. Carrothers from "offering testimony on his general understanding of the term Value Added Promotions, or VAP, including how other companies in the industry may use the term." (Doc. # 259 at 25). They next seek to exclude Mr. Carrothers from opining that "Johnny Deluca's 'VAP program may have served a legitimate purpose.'" (Id. at 21). They also seek to prevent him from "offering color commentary on the evidence or speculating on activities of which he has no information." (Id.).

As to Mr. Carrothers' opinions on VAP generally and as offered by Mr. Deluca, the Court disagrees with Plaintiffs. True, Mr. Carrothers' testimony about his understanding of VAP used by other companies does not match the descriptions of Global e-Trading's VAP program within Global e-Trading's own internal documents or as Mr. Deluca ran his VAP program. And Mr. Carrothers admitted during his deposition that he did not "know the details of [Defendants'] VAP program from when

they ran it." (Doc. # 259-1 at Ex. E at 127:18-25). But Plaintiffs can raise these issues during cross-examination. See Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). While the issues Plaintiffs point out give them ample ammunition for cross-examination, they do not warrant disqualifying Mr. Carrothers from testifying as an expert.

The Court also disagrees with Plaintiffs as to Mr. Carrothers' statement that Global e-Trading "paused service several times" for Brightree. (Doc. # 259 at 22-24). Plaintiffs are correct that the Court has already held these pauses in service to be legally irrelevant for purposes of liability. See (Doc. # 156 at 28) ("[T]he fact that certain MIDs were not serviced by Chargebacks911 at various times or at all, or that different MIDs had different cut-off percentages for chargebacks does not diminish Defendants' liability. Defendants would still be liable as to all the MIDs used by the Keto Racket."). But Mr. Carrothers is not offering an opinion contrary to the Court's earlier legal ruling. Rather, he is merely pointing out that Global e-

9

Trading may have had pauses in its provision of services to Brightree, which is true and potentially relevant to Defendants' defense regarding intent. The Court does not find this statement so irrelevant as to be kept from the jury.

However, to the extent Mr. Carrothers intends to offer the legal conclusion that he has seen no evidence in the record to support that Defendants' VAP program was fraudulent, the Court agrees with Plaintiffs. Again, "[n]o witness may offer legal conclusions or testify to the legal implications of conduct." Dudash, 2017 WL 1969671, at *2; see also Salvani v. Corizon Health, Inc., No. 1:17-cv-24567-RNS-EGT, 2019 WL 4101794, at *3 (S.D. Fla. Aug. 29, 2019) (excluding as a legal conclusion an expert's statement that "there was 'no evidence of deliberate indifference or a deviation from any medical standards of care'"). Such opinion from Mr. Carrothers will not be helpful to a jury and is excluded.

The Motion is granted in part and denied in part as to Mr. Carrothers.

### B. Ms. Unterholzner

Plaintiffs seek to preclude Ms. Unterholzner from testifying about two subjects. First, they argue Ms. Unterholzner should not testify "about whether any of the

customer, email, or shipping data in the TFL Spreadsheet is valid" or offer "any opinions or conclusions about the deliverability of any shipment made by The Fulfillment Lab or the Keto Entities." (Doc. # 259 at 24-25). Second, they seek to prevent Ms. Unterholzner from "parsing or calculating damages in a way that is based on a piecemeal analysis of Defendants' activities with respect to the overall Keto enterprise." (Id. at 25).

Regarding the TFL spreadsheet, Plaintiffs insist that Ms. Unterholzner "has no specialized training or experience in USPS deliverability or its address correction process" so she is "no more qualified than any other witness (or juror) to look at an address to determine if that address is a 'valid' address." (Id. at 15). Plaintiffs also take issue with Ms. Unterholzner's lack of methodology for her opinions related to the TFL spreadsheet. Because she admitted that she has no knowledge on how melissa.com generates its reports on the validity of addresses or recipients, Ms. Unterholzner "would just be a mouthpiece reading whatever melissa.com spits out." (Id. at 15-16).[1]

---

[1] Plaintiffs have "withdraw[n] the portion of their argument that seeks to limit Ms. Unterholtzer's testimony based on the assertion that the data was not produced" regarding the

11

The Court disagrees with Plaintiffs. Because Ms. Unterholzner is a rebuttal expert, it is perfectly appropriate for her to question the documents upon which Plaintiffs' damages expert relied, such as the TFL spreadsheet. See (Doc. # 253-6 at 16) (Ms. Unterholzner's report stating, based on the number of apparent errors in the spreadsheet data, that "[i]t does not appear that Ms. Merrifield performed any testing on the reliability of the Brightree Shipment Spreadsheet"); see also Platypus Wear, Inc. v. Clarke Modet & Co., No. 1:06-cv-20976-FAM-EGT, 2008 WL 8961521, at *4 (S.D. Fla. Oct. 10, 2008) ("As an expert witness, Mr. Freeman may express his opinion as to the reliability of the documents, upon which [the other side's expert] relies. If, in his opinion, the documents are questionable, Mr. Freeman may express that opinion to the jury. His testimony does not invade jury's exclusive function of evaluating the credibility of evidence."). While Plaintiffs may have legitimate questions about Ms. Unterholzner's reliance on melissa.com to verify addresses, these supposed problems with Ms. Unterholzner's methodology can be explored on cross-examination. See Maiz, 253 F.3d at

---

analysis of the spreadsheet. (Doc. # 281). The Court will not consider this aspect of Plaintiffs' argument.

666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)). Thus, the Court declines to exclude Mr. Unterholzner's opinions or analysis regarding the spreadsheet or issues with the data contained therein.

Next, the Court agrees in part with Plaintiffs that Ms. Unterholzner's opinion regarding the damages calculation for certain time periods or certain MIDs should be excluded. (Doc. # 259 at 18-19). To the extent Ms. Unterholzner intends to opine that Defendants can only be liable for damages incurred for certain times during which Global e-Trading was providing services to Brightree or for certain MIDs that Global e-Trading serviced (Doc. # 253-6 at 19-21), that opinion is excluded as irrelevant and in violation of this Court's ruling. In its order granting class certification, the Court explained that joint and several liability applies to the civil RICO claims. (Doc. # 156 at 27); see also United States v. Philip Morris USA, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability

13

because all defendants participate in the enterprise responsible for the RICO violations."). The Court explained that "the fact that certain MIDs were not serviced by [Global e-Trading] at various times or at all, or that different MIDs had different cut-off percentages for chargebacks does not diminish Defendants' liability. Defendants would still be liable as to all the MIDs used by the Keto Racket." (Id. at 28). For this reason, Ms. Unterholzner's calculation of damages based solely on times Global e-Trading "was providing services" to Brightree (Doc. # 253-6 at 21) runs afoul of this Court's ruling, is therefore irrelevant, and would not be helpful to the jury. See Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (citation omitted)); Parker v. Exterior Restorations, Inc., No. 1:21-cv-00425-WHS-SFB, 2023 WL 113725, at *1 (S.D. Ala. Jan. 5, 2023) ("Evidence from a thousand experts could not possibly overcome that irredeemable legal deficiency in Sto's position."). It is excluded.

However, to the extent Ms. Unterholzner's report and opinions address flaws in Plaintiffs' expert's damages calculation because of incomplete data, this opinion is permissible. Notably, Ms. Unterholzner notes in her report

14

that Plaintiffs' expert only reduced her damages calculation by chargebacks incurred while Global e-Trading was providing services to Brightree and for MIDs that Global e-Trading serviced. (Doc. # 253-6 at 18). Because Global e-Trading "was not consistently providing services to the Keto Entities from November 2019 through July 2021 and may not have provided services to all of the Keto Entities' MIDs," Ms. Unterholzner opines that "it is not clear whether there were additional chargebacks that were (a) not captured by [Global e-Trading], and (b) therefore not considered as offsets to damages by [Plaintiffs' expert] Ms. Merrifield." (Id.). Here, Ms. Unterholzner is legitimately raising the breaks in service and the numerous MIDs to question whether all refunds and chargebacks were deducted from Plaintiffs' damages calculation. This analysis is proper for a rebuttal expert. The Court will not exclude it.

In short, the Motion is granted in part and denied in part as to Ms. Unterholzner.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs Janet Sihler and Charlene Bavencoff's Motion to Limit the Expert Testimony of Defendants' Experts Troy

Carrothers and Lisl Unterholzner (Doc. ## 215, 259) is **GRANTED** in part and **DENIED** in part as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 16th day of May, 2025.

_____<br>
VIRGINIA M. HERNANDEZ COVINGTON<br>
UNITED STATES DISTRICT JUDGE