## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated; CHARLENE BAVENCOFF, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911,<br><br>*Defendant.* | Case No.:  8:23-CV-01450-VMC-LSG |

### Motion for Sanctions Against Defendant Chargebacks911

Plaintiffs bring this motion for sanctions under Federal Rule of Civil Procedure 37(b) and (c) and the Court's inherent powers "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R.*, 370 U.S. 626, 630-631 (1962). This motion is necessitated by Defendant Chargebacks911's ("CB911") deletion, in 2023, of critical Skype messages from 2019 that were sent by Ben Scrancher to David Flynn, Marc Conway, and Andy Curle. *See* ECF Nos. 266-7; 301.  These acts of subterfuge and the ensuing coverup have cost Plaintiffs dearly: Plaintiffs' ability to develop their theory of the case, seek leave to amend their complaint as appropriate, conduct fact discovery, secure a sponsoring witness for the deleted Skype messages, and obtain expert opinions relevant to this case have all be thwarted by Defendant's misconduct. Not to mention the tens of thousands of dollars Plaintiffs have spent litigating motions to

compel against an opponent who told this Court—falsely—that "Defendants . . . have not destroyed responsive materials during the pendency of this litigation (or at any time when Defendants should have been preserving those materials)," while also repeatedly thwarting any sort of reasonable inquiry into whether that claim was true or not. *See* ECF No. 74 at p. 8. Critically, the deletion of the Skype messages is just the tip of the CB911-discovery-misconduct iceberg. If CB911 had participated in discovery in good faith, complied with Rule 26(e)'s duty to supplement, obeyed the Court's discovery orders, and generally done anything other than frustrate Plaintiffs' quest for the truth about Scrancher's Skypes, Plaintiffs would have discovered the deletions more than a year ago, long before discovery ended. The prejudice Plaintiffs have suffered from these deletions is exponentially greater than if CB911 had played by the rules.

The deleted messages—provided to Plaintiffs for the first time more than a year after Plaintiffs requested them and approximately four and six months after the close of discovery—reveal that CB911's involvement in the Keto Enterprise extends far beyond orchestrating sham microtransactions for Brightree. They are potent evidence that Plaintiffs *should have* but *were not* able to build on in developing their theory of the case, amending their complaint, and pursuing discovery. Short of terminating sanctions, the following sanctions are the best and most appropriate way to remedy the harm CB911 has caused Plaintiffs:

(1) Notwithstanding the lack of a sponsoring witness, Plaintiffs must be allowed to present the deleted messages, together with evidence of their deletion, to the jury along with a jury instruction concerning CB911's

misconduct in frustrating the discovery process;

(2)  Plaintiffs must be allowed to play for the jury video from Mr. Scrancher's deposition so the jury can evaluate his facial expressions while counsel are asking, and objecting to, questions about the Skype deletions;

(3)  Plaintiffs must be given free leave to amend their complaint to account for the recovered messages by, in particular, alleging new predicate acts related to the deleted messages and the deletions themselves; and

(4)  CB911 must pay Plaintiffs $79,982.25 ($2,415.25 in costs and $77,567.00. in fees) to compensate them for the instant motion and the February 2025 Motion for Terminating Sanctions that was overcome only when CB911 suddenly recovered the Skype messages it previously told the Court did not exist. *See* Exhibit G to Declaration of Lorraine Weekes ("Weekes Decl.") (report summarizing attorney time sought in connection with Motion for Terminating Sanctions and instant Motion for Sanctions); Weekes Decl., Exhibit F (summarizing costs incurred in connection with Motion for Terminating Sanctions).

## 1.  Legal Standard

Plaintiffs seek sanctions against CB911 based on Rule 37(b) and (c) as well as the Court's inherent powers.[1]

---

[1]    Federal Rules of Civil Procedure Rule 37(e) contemplates the failure to preserve electronically stored information ("ESI") but applies only if ESI is "lost" and "cannot be restored or replaced through additional discovery." Because the messages deleted by Mr. Scrancher were eventually recovered, *see* ECF Nos. 266-7 and 301, Plaintiffs are not seeking relief under Rule 37(e).

### a. Sanctions Under Rule 37(b)

"Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (per curiam).  Rule 37(b)(2) authorizes "the court where the action is pending" to "issue further just orders" if "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. Pro. R. 37(b)(2)(A). Sanctions under the Rule are appropriate even without a showing of bad faith. *See DeVaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993) ("[S]ubsection 37(b)(2) . . .  demands no demonstration of bad faith.").

Among the "just orders" that may be issued under Rule 37(b)(2) are those:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed R. Civ. Pro. R. 37(b)(2)(A)(i)–(vii).

Instead of, or in addition to, the above orders, the "court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Fed R. Civ. Pro. R. 37(b)(2)(C).

"[T]he imposition of sanctions for failure to provide discovery rests with the sound discretion of the district court and will not be overturned absent abuse of that discretion." *Props. Int'l, Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir. 1983).

### b. Sanctions Under Rule 37(c)

Rule 37(c) spells out the consequences that may be imposed on a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed R. Civ. Pro. R. 37(c)(1). Federal Rule of Civil Procedure 26(e)(1), in turn, imposes a duty to supplement on litigants:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed R. Civ. Pro. R.26(e)(1)(A).

If a party does not honor its duty to supplement, then pursuant to Rule 37(c), "the court, on motion and after giving an opportunity to be heard:"

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed R. Civ. P. 37(c)(1)(A)-(C).

### c. The Court's Inherent Powers

A district court has "broad discretion" to impose sanctions and the

"inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of case." *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023). The "dual purpose" of the federal courts' inherent powers "to fashion sanctions for conduct that abuses the judicial process" is "to vindicate judicial authority" and "to make the prevailing party whole." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024) (cleaned up). In the Eleventh Circuit, inherent power sanctions are linked "with subjective bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017). And "[t]here is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith." *Id.* (cleaned up). In the context of Eleventh Circuit precedent on spoliation, "bad faith generally means destruction of evidence for the purpose of hiding adverse evidence." *Skanska*, 75 F.4th at 1312.

## 2. The Conduct Warranting Sanctions

### a. CB911's Defiance of Judge Porcelli's Order Directing a Forensic Inspection of Mr. Scrancher's Skypes

More than eighteen months ago, in November 2023, Plaintiffs requested that CB911 produce Skype communications relating to Brightree. *See* ECF 67-1 at p. 8. Though Skype was one of the primary means CB911 used to communicate with its Keto Associates, Defendant did not produce a single Skype message. When pressed on this glaring omission, *see* ECF No. 67-6, CB911 claimed that "Chargebacks911 has no responsive Skype chat transcripts within its possession, custody, or control." *See* ECF No. 67-7. At the Parties' February 19, 2024 meet and

confer, Defendant refused to disclose anything at all about the steps it had taken

to investigate the Skype issue. *See* ECF No. 67-3 ¶ 9.[2]

Faced with a litigant that was refusing to produce documents Plaintiffs

knew it possessed (or had deleted), *see* ECF No. 81 at p. 5, Plaintiffs moved to

compel the production of all Skype messages in CB911's care, custody, or control

that were responsive to Plaintiff's first set of RFPs. *See* ECF No. 81.

At the hearing on Plaintiff's Motion, Judge Porcelli sided with Plaintiffs as

to Mr. Scrancher's Skypes. Defendant had opposed the Motion to Compel with a

protracted discussion about its efforts to search for responsive Skype messages.

*See* ECF No. 74 at pp. 8-12. At oral argument on April 10, 2024, Judge Porcelli was

explicit that the investigation into Mr. Scrancher's Skypes as of that date were not

adequate: "I'm making this finding based upon what's been presented to me that

**I am not satisfied that a reasonable search was done.**" ECF No. 123 at p. 22:20-21

(emphasis added). Judge Porcelli highlighted that searching ESI is "highly

technical" and that if that task is entrusted "just simply to the individuals

themselves . . . relevant documents could be missed." *Id.* at 22:23-23:2. His order

on the issue was similarly blunt:

> Having reviewed the filings and heard argument from the parties
> regarding the methods used to locate the requested communications,
> **this Court finds that the inquiry was insufficient**, and the chat

---

2    "Plaintiffs' counsel specifically asked whether Defendants' counsel had performed
its own reasonable inquiry into the existence of the Skype accounts as required by Rule
26(g). Defendants' counsel refused to directly answer the question, claiming work
product and stating only that the Defendants know their obligations and 'have complied
with their obligations under the rules.' Defendants' counsel failed to provide any details
of how or why it believed it complied with its Rule 26(g) obligation, claiming 'work
product' protection." ECF No. 67-3¶ 9.

transcripts are relevant to the pending litigation. Notably, **electronic searches are highly technical inquiries, and forensic review can recover documents that would otherwise not be retrievable.**

ECF No. 93 at p. 2 (emphases added). Judge Porcelli ordered that "Plaintiffs are entitled to hire an independent examiner to search Mr. Scrancher's Skype chats for the communications notated within their first request to produce." *Id.*

At the April 10, 2024 hearing, CB911 had contended that it did not think it could force Mr. Scrancher to submit his phone for inspection. Judge Porcelli was not swayed. He told defense counsel that CB911 could either (1) comply with his order or (2) bring "before [Judge Porcelli]" additional filings explaining why CB911 was powerless to obtain its own business communications:

> MR. ROUSH: Yes, Your Honor. So, it is a personal account and I don't know what his response is going to be. My client can't -- you can order it. Obviously, it is your prerogative. My client can't force him to do it and I am concerned that if he decides to object to this that my client will be held accountable for that because it's not able to force its employee to do something –
>
> THE COURT: Well, this goes back full circle to where we were before when you said I don't have to make that determination as to whether it's in your client's possession or custody or control. These are work communications. And then **what you are going to have to bring before me as to why your client does not have the legal right or practical ability to obtain communications that are made on behalf of your client even though they are on a personal account.**

ECF No. 123 at p. 24:23-25:12 (emphasis added).

CB911 did not go back to Judge Porcelli and seek relief on the grounds that it was unable to comply with the order due to Mr. Scrancher's noncooperation. But when it came time to actually comply with the order, CB911 refused to do so. Rather than take any steps to facilitate the ordered inspection, CB911 tag teamed

Plaintiffs with Scrancher's lawyers, who ignored Plaintiffs' emails for weeks on end and refused to engage with Plaintiff's independent inspector.

Specifically, after the ten-day period the Court provided for privacy objections expired, Plaintiffs promptly contacted CB911 seeking to arrange an inspection of Mr. Scrancher's Skype's. *See* Exhibit A. CB9111 did not respond. *See id.* Plaintiffs emailed CB911 again on April 25, 2025, to follow up on their request. *See id.* The next day, April 26, 2024, CB911 responded by directing Plaintiffs to contact Mr. Scrancher's counsel. *See id.* That same day, April 26, 2024, Plaintiffs emailed Mr. Scrancher's counsel seeking to arrange the Skype inspection. *See* Exhibit B at p. 5. Plaintiffs were ignored. On April 30, 2024, Plaintiffs' counsel reached out to CB911's attorney, advised of the total lack of response from Mr. Scrancher's counsel, and requested dates when the inspection could proceed. *See* Exhibit B at p. 3. A week later, CB911's lawyer wrote back to say the company had "no control over Mr. Scrancher" and that Plaintiffs should direct their requests not to CB911—the company Judge Porcelli had <u>ordered</u> to allow an inspection of Mr. Scrancher's Skypes—but to Mr. Scrancher's counsel. *See* Exhibit B at p. 2. Never mind that Plaintiffs had gotten radio silence from Mr. Scrancher's lawyers.

When Mr. Scrancher's counsel finally did write back, on May 9, 2024, they insisted that Mr. Scrancher had no obligation to obey the Court's order. They requested information about the scope of Plaintiffs' inspection and the identity of Plaintiffs' inspector, which Plaintiffs promptly provided to them on May 11 and May 13, 2024. *See* Exhibit C at p. 2-3 (May 11 email from L. Weekes explaining Plaintiffs' position as to scope of Skype inspection); Exhibit D (May 13, 2024 email

from L. Weekes identifying Plaintiffs' proposed Skype inspector). But when Plaintiffs' inspector reached out to Mr. Scrancher's lawyers to arrange a time to discuss the scope of the inspection, he was rebuffed on the grounds that there was "no legal basis" in the United Kingdom for the inspection ordered by Judge Porcelli. *See* Exhibit D at p. 1 (May 15, 2023 email from J. Naghdi); Exhibit D at pp. 2-3 (May 16, 2024 email from J. Collins to J. Naghdi). A follow up letter from Mr. Scrancher's counsel sent on May 24, 2024, parroted CB911 talking points about the company's powerlessness over its own company data and made clear that Mr. Scrancher's counsel could not be relied on to facilitate the inspection Judge Porcelli had ordered.  *See* Exhibit E. CB911's counsel was CC'ed on this correspondence and thus knew full well that referring Plaintiffs to Mr. Scrancher's counsel— literally the *only* action CB911 had taken to comply with Judge Porcelli's order— was inadequate: Plaintiffs had been stonewalled. Rather than take any other actions to comply with the Court's order or—as the Judge had instructed—go back to the Court to seek relief from his order on the grounds that it lacked the ability to comply, CB911 simply threw up its hands.

Importantly, CB911's protestations to both Plaintiffs and the Court about its powerlessness to arrange for a forensic inspection of CB911's business data (the Skype messages) on Mr. Scrancher's phone were false. This is so for two reasons. First, as soon as CB911 thought it stood to gain from a forensic inspection of Mr. Scrancher's phone, neither the company nor Mr. Scrancher had any qualms about permitting a forensic inspection akin to the one that Judge Porcelli had ordered. *See* ECF No. 301 (notice reflecting forensic inspection of Mr. Scrancher's phone).

Mr. Scrancher's "position" on the Skype inspection was thus little more than a thin
proxy for CB911's interests in this litigation. Second, the contention that CB911 is
not entitled to search company data on employees' personal devices is manifestly
false. The company's employee handbook is explicit about CB911's authority to
review workplace communications, no matter where they are stored. *See* Exhibit
19 to Plaintiffs' Motion for Terminating Sanctions, ECF No. 260-3 at pp. 50-52.
CB911's policies also specifically address Skype messages and require employees
to document Skype messages with CB911 customers. *See* Exhibits 15-18 to
Plaintiffs' Motion for Terminating Sanctions, ECF No. 260-3.  CB911's contract with
Mr. Scrancher and own internal policies gave it everything it needed to comply
with Judge Porcelli's order. The company simply chose not to.

### b. CB911 Improperly Failed to Supplement Its Insufficient Production

Under Federal Rules of Civil Procedure Rule 26(e)(1)(A), a party who has
responded to a request for production "must supplement or correct its disclosure
or response . . . in a timely manner if the party learns that in some material respect
the disclosure or response is incomplete or incorrect, and if the additional or
corrective information has not otherwise been made known to the other parties
during the discovery process or in writing." Fed R. Civ. Pro. R.26(e)(1)(A).

After Judge Porcelli declared the investigation into Mr. Scrancher's Skypes
"insufficient" and explained that forensic review could locate responsive
messages that would be otherwise unavailable, Defendant was on notice that their
response to Plaintiffs' requests for Skype messages was "in some material respect
. . . incomplete or incorrect" because it did not include messages that could only

be located through forensic review. *See* ECF Nos. 93 at p. 2; 123 at p. 22:20-21. At that point, Defendant had an obligation to supplement its responses "in a timely manner" with whatever additional messages could be located via a forensic search of all devices potentially containing responsive Skype messages. Defendant's failure to do so is a standalone violation of its obligations under Rule 26(e). Had Defendant acted once it learned that its investigation into Mr. Scrancher's Skypes was legally insufficient, the deleted messages could have been recovered and produced to Plaintiffs well in advance of the November 1, 2024 discovery cutoff.

### c.  CB911 Deleted Critical Evidence

On May 16, 2023, CB911 executive Ben Scrancher met with the company's former CEO, Gary Cardone, discussed Plaintiffs' demand letter, and then later that same day deleted critical evidence of CB911's conspiracy with Brightree. *See* ECF Nos. 260-5; 260-6; 282-1 (Declaration of Ben Thomas Scrancher) ¶ ¶ 32-35; 40; 301 at p. 1. The next day, May 17, 2023, Scrancher deleted even more messages.

Plaintiffs previously moved for terminating sanctions against CB911 based on spoliation of these messages. *See* ECF No. 260. At the time that motion was filed, the messages deleted by Mr. Scrancher on May 16, 2023, and May 17, 2023, had not been recovered. But CB911 eventually produced the Skype messages deleted in 2023. The messages came to light just in time to foil Plaintiffs' Motion for Terminating Sanctions but long after the discovery deadline. For Plaintiffs, the delay was extremely prejudicial: the messages were not simply cumulative evidence of CB911's involvement in the Keto Enterprise's sham microtransactions. They showed Defendant's involvement in getting the Keto Merchants corporate

accounts and strawman owners ("signers") as well as inviting David Flynn to CB911 headquarters for a "white boarding" session. *See* ECF No. 301.

Plaintiffs' theory of the case is that CB911 participated in conducting the affairs of the Keto Enterprise by masterminding the scheme's financial backend and ensuring its continued access to payment processing. Each one of deleted Skype messages is potent evidence in support of this contention that Plaintiffs were denied until well after the close of discovery. The fact that these messages were eventually recovered is largely immaterial given that the upshot of Defendant's conduct is that Plaintiffs had no opportunity to consider the deleted messages in amending their complaint, formulating their litigation strategy or pursuing discovery in this case. The timing of the deletions, which occurred shortly after Mr. Scrancher learned of Plaintiffs' dispute with CB911 reflects an intention to deprive Plaintiffs of the evidence.

### d. CB911 Improperly Interfered with Plaintiffs' Ability to Ask Mr. Scrancher About the Deletions and Then Falsely Denied Doing So

In December 2024, the Court granted in part Plaintiffs' renewed motion to take the deposition of Ben Scrancher. *See* ECF No. 204. The Court approved the same deposition topics as those approved by the Court in connection with the order granting Plaintiffs' request for the issuance of letters rogatory. *See* ECF No. 157. This list included "Mr. Scrancher's communications with the Keto diet pill merchants including without limitation David Flynn." *See id*. at p. 14.

At Mr. Scrancher's January 14, 2025 deposition, Plaintiffs sought to ask Mr. Scrancher questions about his communications with David Flynn. In particular,

Plaintiffs tried to conduct discovery into Mr. Scrancher's *deletion* of Skype messages between himself and David Flynn. CB911 repeatedly instructed Mr. Scrancher not to answer these questions *even though* they concerned Mr. Scrancher's communications with Brightree:

> Q. Did you ever delete any messages, after you found out that this lawsuit was going to be filed, **between you and Mr. Flynn in this Skype chat**?
>
> MR. ROUSH: Objection. Now, that's outside the scope and I'll instruct him not to answer.

ECF No. 260-2 at p. 20, 253:4-8 (emphasis added).

> Q. Mr. Scrancher, did you ever delete any **messages between you and Mr. Flynn** after you found out that this lawsuit was going to be filed?
>
> MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.

ECF No. 260-2 at p. 21, 255:2-6 (emphasis added).

> Q. Mr. Scrancher, did you delete a message from this conversation [referring to Skype chat between Mr. Scrancher and Mr. Flynn] that we're looking at on Exhibit 88 on Tuesday, May 16, 2023 at 8:48 p.m. GMT?
>
> MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.

ECF No. 260-2 at p. 21, 256:25-257:4.[3]

> Q. Were you ever instructed by anyone at Chargebacks911 to delete messages in this conversation [with David Flynn]?
>
> MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.

---

3    In a sworn declaration, CB911's lawyer acknowledged this instruction as a mistaken instruction "not to answer a question that was within the scope" *See* ECF No. 266-1 ¶ 27.

ECF No. 260-2 at p. 22, 258: 6-9.

> Q. Mr. Scrancher, did you ever destroy any evidence or delete any chats between you and Mr. Flynn?

> MR. ROUSH: Objection. Outside the scope. Instruct him not to answer.

ECF No. 260-2 at p. 22, 258:11-14.

The upshot of Defendant's repeated interference with Plaintiffs' proper questioning was that Plaintiffs from were unable to obtain information from Mr. Scrancher about when, how, and why he deleted Skype messages with Mr. Flynn.

Rather than admit it had improperly interfered with Mr. Scrancher's deposition to prevent Plaintiffs from probing Mr. Scrancher's Skype deletions, CB911 presented the Court with the demonstrably false claim that it did not object Plaintiffs' questions "when those questions pertained to Mr. Scrancher's communications with Brightree as that was one of the Court-approved topics." ECF Nos. 266 at p. 7. *See also* Declaration of Corey Roush, ECF No. 266-1 at ¶ 27 ("As Plaintiffs' counsel asked questions, I did not instruct Mr. Scrancher not to answer questions related to deletions of communications with Mr. Flynn . . . ."). CB911's counsel acknowledged a solitary mistaken instruction to Mr. Scrancher that he not answer a question about the deletion of messages with Mr. Flynn. *See id.* But otherwise, he claimed that CB911's instructions to Mr. Scrancher not to answer questions concerned "topics unrelated to Mr. Scrancher's preservation of his Skype messages." *See* ECF No. 266-1 ¶ 26.

CB911's representation to this Court that it did not object to Plaintiffs questions when they "pertained to Mr. Scrancher's communications with

Brightree as that was one of the Court-approved topics," ECF Nos. 266 at p. 7, is as untrue as its instructions were improper. *See* ECF No. 260-2 at p. 20, 253:4-8; p. 21, 255:2-6; 256:25-257:4; p. 22, 258: 6-9; p. 22, 258:11-14. These instructions and CB911's counter-factual denial that they ever occurred are part of a troubling pattern, going back to the earliest days of this case, in which Defendant frustrates legitimate discovery into Mr. Scrancher's Skype messages and then tries to gaslight Plaintiffs and the Court when Plaintiffs call out its misconduct.

### e. CB911's (Mis)representations to the Court

Beyond disobeying an order, failing to supplement its production, and scuttling Plaintiffs' inquiry into the Skypes, CB911 has also engaged in a pattern of misrepresentations about the deleted messages and its insufficient search for them.

First, in combating Plaintiff's Motion to Compel in connection with Mr. Scrancher's Skypes, CB911 told the Court that "CB911 did not ask employees to voluntarily preserve their files" in response to the FTC's Civil Investigative Demand. *See* Dkt. 74 at p. 4. This claim helped bolster CB911's argument that it was normal and innocuous that a company that relied extensively on Skype for interacting with clients had not produced a single Skype message. But it was false. And as soon as that fiction no longer served Defendant, the truth came out: "CB911 issued a document retention notice related to the Federal Trade Commission's ("FTC") Civil Investigative Demand ("CID") on June 26, 2020." *See* Declaration of Monica Eaton at ECF No. 266-3 at ¶ 15. This notice was addressed to "All Employees (US and UK)" and directed "it is absolutely imperative that no one

deletes, or attempts to delete, any documents or information, which is considered to be property of Chargebacks911." ECF No. 266-3 at p. 8. The company's earlier representation to the Court that "CB911 did not ask employees to voluntarily preserve their files" *see* Dkt. 74 at p. 4, was untrue.

Second, as part of their February 5, 2025 Motion for Sanctions, Plaintiffs referenced—with a pinpoint citation—Judge Porcelli's determination that CB911's "inquiry was insufficient." *See* ECF No. 221 at p. 17 (quoting from ECF No. 93 at p. 2). The transcript was consistent with the ruling's determination that the inquiry was not adequate. *See* ECF No. 123 at p. 22:20-21. In its opposition, Defendant claimed that Plaintiffs' pinpoint cite to the record was "false:" "Plaintiffs state that "[t]he Court has already concluded that CB911's 'inquiry was insufficient' into Mr. Scrancher's chats." Dkt. 221 at 17. This is false and entirely inconsistent with Judge Porcelli's ruling. Dkt. 123 at 30:1-6." *See* ECF No. 266 at p. 5 n. 5. Defendant referred the Court to a portion of the hearing transcript where Judge Porcelli reassures Defendant's counsel after he complained that Plaintiffs' motion was "salacious" and "accused counsel of lying." But a reassurance from the Judge that he didn't think *counsel was lying* or had "ill intent," *see* ECF 123 at p. 30:4, does not change the fact that both the ruling and the transcript are clear that Judge Porcelli found CB911's investigation insufficient and unreasonable. *See* No. 123 at p. 22:20-21; ECF No. 93 at 2. By claiming Plaintiffs' record cite was "false," referring the Court to Judge Porcelli's reassurances to counsel, and then framing those comments as somehow negating the Court's clearcut finding that CB911's investigation was "insufficient," Defendant yet again used obfuscation to gain a tactical advantage.

Third, and perhaps most significantly, Defendant's representations to the Court regarding its control (or lack thereof) over Mr. Scrancher have varied wildly over the course of this litigation, indexing CB911's bald self-interest.

In opposing Plaintiff's Motion to Compel the Deposition of Ben Scrancher and Plaintiffs' Renewed Motion to Compel the Deposition of Ben Scrancher, Defendant told this Court that Mr. Scrancher would not testify at its request. CB911 claimed it had "no leverage" to force Mr. Scrancher to sit for a deposition and indicated that it had "not threatened to terminate Mr. Scrancher and [did] not plan to do so." ECF No. 189 at p. 19, p. 19 n.6. In fact, any time Plaintiffs wanted any sort of discovery involving Mr. Scrancher, CB911 was adamant that he was a rogue they could not control. But as soon as it served CB911's interests, Mr. Scrancher snapped into line, agreeing to, for example, sit for a *second* deposition or submit his phone for a forensic examination. *See* ECF Nos. 242 at p. 1 (requesting authorization on February 14, 2025, to depose Ben Scrancher even though he had already been deposed by Plaintiffs a month earlier); 301. And in Mr. Scrancher's deposition, when Plaintiffs' counsel tried to ask about the deleted Skype messages, CB911's counsel repeatedly directed Mr. Scrancher not to answer these questions. Mr. Scrancher did exactly as he was told. *See* Exhibit 14 to Plaintiffs' Motion for Sanctions, ECF No. 260-2. Recall that CB911's counsel claimed it was not Mr. Scrancher's attorney and could not control him. ECF No. 123, 22:3; Weekes Decl. Exhibit B at p. 2. Yet it was CB911's attorney who objected and directed Mr. Scrancher not to answer during the deposition. William Buckingham, who Scrancher and CB911 claimed was Scrancher's personal attorney, only spoke to

put him name on the record. He made no statements or objections during Scrancher's examination. *See* ECF No. 274-4.

Defendant has repeatedly sought to avoid its discovery obligations by blaming Mr. Scrancher for its noncompliance, but the record shows that when CB911 actually *wants* Mr. Scrancher to sit for a deposition, submit a declaration, or allow an inspection of his phone, he does.  Even Mr. Scrancher's no-show at the May 1, 2025 hearing appears to have been orchestrated at least in part by CB911 itself. The April 18, 2025 letter from Mr. Scrancher's counsel states "We have been informed that the Company has advised of a potential non-trivial risk that Mr. Scrancher may be detained in Florida." *See* ECF No. 300-1 at p. 4. Why would CB911 advise Mr. Scrancher of a "non-trivial" risk that he would be detained if it actually wanted him to attend the May 1, 2025 hearing?

Fourth, there are Mr. Scrancher's ever-changing representations about whether or not he deleted any Skype messages.

In March 2024, less than a year after the May 2023 deletions, CB911's lawyer told the Court, under oath, that Mr. Scrancher had confirmed he "did not recall ever individually deleting any messages with Brightree individuals." ECF No. 74-6 at ¶ 13.[4] CB911 submitted this declaration in support of its Opposition to Plaintiffs' motion to compel CB911's production of Skype messages.

---

[4]    Plaintiffs are not seeking sanctions against any of CB911's counsel. This motion for sanctions exclusively concerns the misconduct and misrepresentations of Chargebacks911. Plaintiffs cite to Mr. Roush's declaration merely because that was the vehicle CB911 used to inform the court of Mr. Scrancher's representations; Plaintiffs do not intend to suggest by this any misconduct on Mr. Roush's part.

By the time of his deposition on January 14, 2025, Mr. Scrancher's position had morphed. He no longer claimed he "did not recall" ever deleting messages with Brightree individuals. Instead, he answered "I don't know" when asked "Did you ever delete any messages in this chat between you and Mr. Flynn?" ECF No. 260-2 at p. 20, 252:23-25.

Once Plaintiffs filed their Motion for Terminating Sanctions, however, Mr. Scrancher's memory miraculously improved, and he was able to "generally remember why [he] deleted" the nine messages in May 2023. *See* ECF No. 282-1 ¶ 21. Mr. Scrancher testified that "logically" the direct messages between himself and David Flynn "would have been messages that referred to the introduction that" Scrancher was making for Flynn. *Id.* at ¶ 24. This declaration was dated February 25, 2025, less than six weeks after Mr. Scrancher's January 14, 2025 deposition when he "d[id]n't know" whether he'd deleted messages with Flynn.

In his February 25, 2025 declaration, Mr. Scrancher further testified that at his deposition, he "answered the deposition questions as [he] understood them to the best of [his] ability sitting there in the deposition room based upon [his] recollection at the time." *Id.* at ¶ 12. But this testimony makes no sense given the timeline in this case. The May 2023 deletions happened less than two years before Mr. Scrancher testified "I don't know" when asked about them in his January 2025 deposition. And Mr. Scrancher had confirmed his retention of Skype messages for defense counsel in March 2024. *See* Declaration of Corey Roush, ECF No. 74-6. ¶ 13 The intervening months had been filled with repeated battles, both at home and abroad, over Plaintiffs' right to access Mr. Scrancher's Skypes and depose Mr.

Scrancher. It strains credulity that "I don't know" was the "best" answer Mr.
Scrancher was able to give on January 14, 2025, when asked if he deleted messages
with David Flynn.

Collectively, these misrepresentations have created an uneven playing field
where Plaintiffs' ability to argue and seek relief from the Court is tightly
circumscribed by the truth, and the record, while Defendant advances contentions
it finds expedient, whether or not they are accurate. This conduct supports
Plaintiffs' requests for sanctions. *See Hornady v. Outokumpu Stainless USA*, LLC, 118
F.4th 1367, 1377 (11th Cir. 2024) (affirming sanction of default judgment against
litigant who made "substantial misrepresentations to the plaintiffs and the Court
in an attempt to foist the blame for its discovery failures on anyone but itself").

### 3. The Prejudice Plaintiffs Have Suffered and the Sanctions Necessary to Mitigate It

CB911's discovery misconduct harmed Plaintiffs in four major ways. For
each category of prejudice, Plaintiffs propose sanctions tailored towards
remediating that specific injury.

First, because Plaintiffs did not receive the deleted messages until months
after the close of discovery, they had no opportunity to conduct discovery related
to those Skype messages. *See Kotchman v. State Farm Mut. Auto. Ins. Co.*, No. 8:15-
cv-2482-T-30JSS, 2017 U.S. Dist. LEXIS 5832, at *9 (M.D. Fla. Jan. 17, 2017)
(recognizing prejudice where disclosures were made three days before discovery
cutoff because "Defendant was effectively precluded from propounding discovery
related to the Disclosures and deposing the newly-disclosed treatment

providers"). Plaintiffs had no chance to ask Ben Scrancher about what exactly he meant when he invited David Flynn to CB911's headquarters for "white boarding." Nor were they able to inquire about whether such a white boarding session occurred. Plaintiffs had no opportunity to depose Marc Conway about his interactions with the Keto Enterprise or his efforts to assist Mr. Flynn in obtaining signers for shell corporations. Nor could Plaintiffs ask David Flynn about when and how he worked with Mr. Conway or how he communicated his need for "signers" to CB911. *Cf. Kona Spring Water Distrib. v. World Triathlon Corp.*, No. 8:05-cv-119-T-23TBM, 2007 U.S. Dist. LEXIS 16176, at *10 (M.D. Fla. Mar. 7, 2007) (recognizing prejudice to party in case where recordings of material witnesses were belatedly disclosed and the party "was forced to conduct almost all of its discovery without the knowledge or benefit of" the recordings).

One significant consequence of this inability to conduct discovery is that Plaintiffs do not have a sponsoring witness for some of the most damning evidence in this case. There is, as things currently stand, no way for Plaintiffs to get the deleted messages in front of the jury. Plaintiffs' first proposed sanction is directed at mitigating this issue. Plaintiffs request that the Court admit the deleted messages into evidence without a sponsoring witness and then instruct the jury (1) about the fact that the messages were deleted by Mr. Scrancher shortly after he learned of Plaintiffs' claims; and (2) that they should consider the messages and their deletion alongside all of the other evidence in the case. [5] *See* Weekes Decl.

---

[5] Alternatively, the Court could order that CB911 produce Mr. Scrancher to be re-deposed at CB911's expense so that Plaintiffs can ask him about the deleted messages. *See*

Exhibit H (Plaintiffs' proposed jury instruction concerning the deleted messages).

Second, Plaintiffs were prevented from conducting full discovery into Mr. Scrancher's deletion of key evidence in May 2023. To remedy this prejudice, Plaintiffs request that the Court allow them to play for the jury video from Mr. Scrancher's deposition showing Mr. Scrancher and his responses and facial expressions while Plaintiffs' counsel asked questions about the deletions and defense counsel objected to those questions. Plaintiffs' request a jury instruction before Mr. Scrancher's deposition video is played. *See* Weekes Decl. Exhibit I (Plaintiffs' proposed jury instruction on the video of Mr. Scrancher's deposition).

Third, Plaintiffs were denied the opportunity to review and consider the deleted messages in formulating their theory of the case, strategy, and proposed amendments to the complaint. *Cf. Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484, 488 (S.D. Fla. 2001) ("Plaintiffs have been denied the access to discoverable documents in a timely manner . . . . As a result, they have been severely limited in their ability to prepare and to try their case."). In understanding the scale of this prejudice, it is critical that the deleted messages are not duplicative of evidence Plaintiffs had in another form. The messages are not, for example, incremental evidence of CB911's involvement in the Keto Enterprise's sham microtransactions. The deleted messages relate to signers for shell corporations to allow Flynn and Brightree to obtain additional merchant accounts. This is a different aspect of

---

*Bahr v. NCL (Bah.) Ltd.*, No. 19-cv-22973, 2021 U.S. Dist. LEXIS 115920, at *17 (S.D. Fla. June 22, 2021). However given Plaintiffs' strong desire to proceed to trial during the July trial term, this option is not logistically feasible.

CB911's direct involvement in the Keto Enterprise that Plaintiffs did not previously know was under CB911's sway.

Plaintiffs ask that the Court give them the opportunity they would have had *but for* the deletions and the related misconduct: Plaintiffs should be given leave to allege that each of the deleted messages is a predicate act of wire fraud. Because the use of the wires to *delete* evidence of a scheme to defraud may constitute wire fraud, Plaintiffs should also be given leave to plead that Mr. Scrancher's May 2023 deletions were standalone predicate acts. *Cf. United States v. Baker*, No. 2:20-cr-00301-DBB, 2024 U.S. Dist. LEXIS 204345, at *10 (D. Utah Nov. 8, 2024) (describing defendant who "committed wire fraud by taking steps to delete evidence").

Fourth, Defendant's misconduct forced Plaintiffs to expend significant resources at pivotal moments in the case on drafting and filing motions for sanctions. Plaintiffs would have liked to spend the earliest days of February 2025 focusing on their Motion for Partial Summary Judgment and Motions in Limine. Instead, they spent significant time briefing their motion for terminating sanctions and preparing for and attending the evidentiary hearing on that motion.  Now, with trial less than six weeks away, Plaintiffs are once again investing resources seeking redress because of CB911's discovery misconduct. Plaintiffs thus request that the Court impose monetary sanctions of $79,982.25 ($2,415.25 in costs and $77,567.00. in fees) on Defendant CB911. *See* Weekes Decl. Exhibits F and G. This figure includes attorney fees and costs expended in litigating two motions: (1) Plaintiffs' February 2025 Motion for Terminating Sanctions; and (2) The instant Motion for Sanctions. Monetary sanctions are appropriate here pursuant to the

Court's inherent powers as well as Rule 37(b)(2)(C) and Rule 37(c)(1)(A). *Cf.* *Stimson v. Stryker Sales Corp.*, No. 1:17-CV-00872-JPB, 2019 U.S. Dist. LEXIS 234773, at *29 (N.D. Ga. Nov. 12, 2019) (awarding costs and fees to litigant for sanctions motion where opposing party had wiped his cellphone and only produced a backup in opposing a motion for sanctions under FRCP 37(e)). If CB911 had conducted or facilitated a reasonable forensic investigation into Mr. Scrancher's Skype messages prior the filing of Plaintiffs' Motion for Terminating Sanctions, Plaintiffs would not have expended resources filing these sanctions motions.

### 4. Conclusion

The Court should sanction Defendant CB911 for its deletion of critical evidence, defiance of the Court's order, failure to supplement its production, and pattern of making misrepresentations to the Court. Given the scale and scope of the misconduct and its sweeping consequences for Plaintiffs, the Court should order that: (1) Plaintiffs may, without a sponsoring witness, present the deleted messages to the jury along with the jury instruction Plaintiffs propose, *see* Weekes Decl. Exhibit H; (2) Plaintiffs may play for the jury video from Mr. Scrancher's deposition showing Mr. Scrancher's face while counsel are asking, and objecting to, questions about the Skype message deletions and have the jury instructed prior to viewing that video with the instruction proposed in Exhibit I to the Weekes Declaration; (3) Plaintiffs may amend their complaint to add allegations that deleted messages were predicate acts of wire fraud and that the acts of deletions themselves were also acts of wire fraud; and (3) Defendant must pay Plaintiffs $79,982.25 for costs and fees.

Dated: May 31, 2025

Lorraine Weekes

**KNEUPPER & COVEY**
Lorraine Weekes*
Kevin Kneupper*
17011 Beach Blvd Ste 900
Huntington Beach, CA 92647

**KNEUPPER & COVEY**
Anthony Sampson*
8911 N Capital of Texas Hwy
Suite 4200 #1173
Austin, TX 78759

**KNEUPPER & COVEY**
Cyclone Covey*
11720 Amber Park Dr.
Ste 160 PMB 1271
Alpharetta, GA 30009

*admitted pro hac vice*
*Attorneys for Plaintiffs and the Class*

### Local Rule 3.01(g) Certification

On May 7, 2025, I met and conferred with Chargebacks911's counsel and discussed this motion. The meeting occurred via the videoconference platform Zoom. My understanding is that Chargebacks911 opposes this motion.


Dated: May 31, 2025                           /s/ A. Lorraine Weekes

                                              A. Lorraine Weekes


### Certificate of Service

I hereby certify that the foregoing was electronically filed via the CM/ECF system, which will send notice to all counsel of record.


Dated:  May 31, 2025

                                              /s/ A. Lorraine Weekes

                                              A. Lorraine Weekes