## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated<br><div align="right">*Plaintiffs*,</div><br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, and MONICA EATON, GARY CARDONE, MONICA EATON,<br><div align="right">*Defendants.*</div> | Case No.:   8:23-CV-01450-VMC-UAM |

### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff and Defendant Global e-Trading, LLC, d/b/a Chargebacks911 ("CB911") have agreed to a Class Settlement to resolve the putative Class's claims against those Defendants in exchange for $12.5 million. This agreement came after a lengthy litigation period of more than two years and four separate mediations. The settlement is, at a minimum, in "the range of possible approval," and thus the Court should grant preliminary approval.

### I.    RELEVANT FACTS

This lawsuit was filed on June 8, 2023. Dkt. 1. The original three Defendants filed a motion to dismiss. Dkt. 36. The Court granted this motion in part and denied it in part. Dkt. 61. Plaintiffs filed an amended complaint, dkt. 62, and the Defendants filed another motion to dismiss. Dkt. 65. Plaintiffs filed a Third Amended Complaint after discovery, and Defendants

filed a third motion to dismiss. Dkts. 102, 108. The Court granted this third motion to dismiss in part and denied it in part. Dkt. 128.

Plaintiffs moved to certify the Class, dkt. 112, which was opposed, dkt. 134. The Court granted Plaintiffs' motion to certify the Class. Dkt. 158. Defendants moved to stay class certification pending an appeal under Rule 23(f). Dkt. 159. The Court denied this stay. Dkt. 163. While this case was pending, the Rule 23(f) appeal was filed with the 11th Circuit, was opposed by Plaintiffs, and was denied. Dkt. 203.

The Defendants filed four *Daubert* motions against Plaintiffs' expert witnesses. Dkt. 212, 213, 217, 219. These motions were granted in part and denied in part. Dkt. 308. Defendants filed various motions *in limine* and a motion to bifurcate the trial. Dkt. 305, 306. All three Defendants filed motions for summary judgment. Dkt. 220, 226, 227. These motions were granted in part and denied in part, resulting in two of the Defendants, Gary Cardone, and Monica Eaton, being dismissed from the case, leaving only settling Defendant Chargebacks911. Dkt. 318.

The case has involved formal or informal discovery motions and conferences on a large volume of issues. *See, e.g.,* dkts. 67, 93, 95, 106, 117, 177, 198. Discovery involved filing actions to enforce subpoenas against third parties in two separate jurisdictions, the Western District of Washington (against third party Microsoft) and the District of Arizona (against a third-party former employee). It further involved seeking

discovery in the United Kingdom and traveling there for a deposition.

Throughout the lawsuit, there have been both formal and informal efforts to settle the case. These included an initial early mediation before mediator Craig Breitman, Esq., two separate full-day mediations before Judge Gregory P. Holder (Ret.), dkt. 53, 66, 182, and a final full-day mediation before Jill R. Sperber, Esq.

After two years of litigation, multiple mediations, and on the eve of trial, Plaintiffs and Chargebacks911 have arrived at a settlement which will resolve the claims against the defendant in a way which is beneficial to the Class—and which Plaintiffs request be preliminarily approved by the Court, pending a final hearing after input from members of the Settlement Class. The parties have agreed to a Proposed Order which is attached.

The settlement provides a substantial monetary benefit to the Class: $12.5 million paid out in four payments over a period of 36 months. The settlement is straightforward and does not contain any of the hallmarks of self-dealing (negotiated attorney's fees which are disproportionate to the settlement, clear sailing provisions, or a reverter to the Defendant). It does not artificially inflate the value of the settlement, as with coupon settlements. Any money that is not distributed to the Class directly will go to a highly reputable non-profit, the National Consumer Law Center ("NCLC"). Class members will be eligible to receive up to three times the amount they paid, depending on claims rates. Ex. 1 at section II ¶ 5(b). And the settlement

occurred only after mediations with three different highly regarded neutral mediators—something that courts have held is a strong signal of a fair settlement that is not a product of any kind of self-dealing.

## II.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Approval of a class action settlement proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:1 (6th ed.). At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court has already certified the Class and considered the factors for certification. Dkt. 156. Because the proposed settlement does not change the class definition or call for other changes to that certification, those factors do not need to be revisited. *See* Fed. R. Civ. P. 23(e)(1), advisory committee notes to 2018 amendments ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which

certification was granted."). The question at this stage is thus whether the proposed settlement meets the standards for preliminary approval.

## III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

At the preliminary approval stage, to determine whether a proposed settlement is fair, reasonable, and adequate, the Court must assess: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Youngman v. A&B Ins. & Fin., Inc.*, No. 6:16-cv-1478-Orl-41GJK, 2018 U.S. Dist. LEXIS 65271 at *20 (M.D. Fla. Mar. 22, 2018) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Federal Rule of Civil Procedure 23(e)(2) as amended in 2018 added additional factors that must be considered: whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate" taking into account certain factors, "any agreement required to be identified under Rule 23(e)(3)," and whether "the proposal treats class members equitably relative to each other."

"If the proposed settlement falls within the 'range of possible approval,' then the settlement should be preliminarily approved." *Kaminowitz v.*

*AssistRX, Inc.*, No. 6:23-cv-1446-WWB-EJK, 2024 U.S. Dist. LEXIS 227938 at *5 (M.D. Fla. Dec. 17, 2024) (quoting *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV-MARTINEZ, 2007 U.S. Dist. LEXIS 37863, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Desouza v. Aerocare Holdings LLC*, No. 6:22-cv-1047-RBD-LHP, 2023 U.S. Dist. LEXIS 136942 at *7 (M.D. Fla. Aug. 7, 2023) (quoting *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011)).

"There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Wave Lengths Hair Salons of Fla., Inc. v. CBL*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239522 at *17 (M.D. Fla. Apr. 24, 2019). On these facts the proposed settlement with Charbebacks911 for $12.5 million is not only a reasonable settlement, but an excellent result for the Class that guarantees them a substantial recovery.

### A.     The Strength of the Plaintiff's Case

"One of the most important factors for a court to consider in evaluating a proposed settlement under Rule 23(e) is the strength of the plaintiffs' case -- the probability that the plaintiffs would succeed if the case were litigated to a conclusion." *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1557 (S.D. Ga. 1994). Courts have recognized the inherent risks in litigation, even where a party believes its case to be strong. *Express Freight Int'l v. Hino Motors Ltd.*, No. 1:22-cv-22483-GAYLES/TORRES, 2024 U.S. Dist. LEXIS 59519 at *11 (S.D. Fla. Apr. 1, 2024) (recognizing "inherent costs, risks, and delay of trial and appeal"). And even if Plaintiffs were victorious on the issue of liability, there is always a risk that damages would be less than expected, or even almost nothing at all. *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) ("The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief.").

While Plaintiffs believe their substantive case to be strong, there is always an inherent risk of losing. Defendant has retained nationally respected law firms to represent them and has put up a vigorous defense. Plaintiffs' claims have been narrowed as the case proceeded because of partially successful motions to dismiss as well as summary judgment eliminating the two individual defendants. At trial, Plaintiffs expect that Defendant would have contested both damages and liability, and would have cross-examined Plaintiffs' damages expert with suggestions that the

data underlying damages was unreliable. This poses a significant risk that even if Plaintiffs won, they would not have won as much money as was sought. And Defendant has preserved various issues for appeal, which it likely would have pursued vigorously as well. Then, after all that, Plaintiffs would have had to attempt to collect the judgment with the inherent difficulties associated with that process.

### B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-cv-00032 (MTT), 2019 U.S. Dist. LEXIS 6137 at *10 (M.D. Ga. Jan. 14, 2019) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Complex litigation -- like the instant case -- can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). "With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007). It is "proper to take the bird in hand instead of a prospective flock in the bush." *McWhorter v. Ocwen Loan Servicing*, No. 2:15-CV-01831-MHH, 2019 U.S. Dist. LEXIS 232149 at *31 (N.D. Ala. Aug. 1, 2019)

(quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

There are significant risks, even if Plaintiffs believe the case on the merits to be strong. Other courts have recognized that "RICO claims are complex claims that are expensive and time-consuming to litigate." *Chan v. Brady*, No. 20-CV-06569-LHK, 2021 U.S. Dist. LEXIS 153096 at *11 (N.D. Cal. Aug. 13, 2021); *see also United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989) (describing RICO claims as complex and expensive). There are 337 docket entries in this lawsuit, and Defendant has vigorously disputed the claims and can be expected to continue to do so absent settlement. It could take an additional two years (or more) to reach finality after an appeal. There will be significant expense associated with pursuing the claims to a jury trial.

## C.    The Amount Offered in Settlement and the Range of Possible Recovery

"A court first determines the possible range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "[A] proposed settlement that amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate, because a settlement must be evaluated in light of the attendant risks with litigation." *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 U.S. Dist. LEXIS 131129 at *6 (M.D. Fla. July 10, 2025). RICO allows recovery of not just

compensatory damages, but treble damages. However, in the Eleventh Circuit, "treble damages are not to be considered in determining the upper range of possible recovery for settlement purposes." *Horton v. Metro. Life Ins. Co.*, CIV. NO. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395 at *18 (M.D. Fla. Oct. 25, 1994).

Plaintiffs' expert estimate of the actual damages for a nationwide class was slightly over $18.7 million. *See* dkt. 217-2 at 4 (expert report of K. Merrifield). While the Defendants disputed that number, and there was a risk of that challenge succeeding and reducing the Class's recovery, the maximum range for compensatory damages for the Class would have been $18,779,274. The minimum range, in the event of a finding that there was no liability, would have been $0. The settlement of $12,500,000 thus amounts to 66.56% of the maximum amount of compensatory damages in this lawsuit.

"[S]ince 1995, class action settlements have typically 'recovered between 5.5% and 6.2% of the class members' estimated losses.'" *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (quoting *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001)). The recovery in this case will thus be more than ten times the typical recovery in a class action settlement. In *Torres*, the settlement was structured such that the recovery would range "between 45 percent and 9 percent of their anticipated total recovery," *id.* at 1350, a percentage the court there described as an "exemplary result," *id.* at 1346.

Other courts in this Circuit have routinely approved settlements recovering significantly less than is being recovered here. *Kukorinis v. Walmart, Inc.*, No. 8:22-cv-2402-VMC-TGW, 2024 U.S. Dist. LEXIS 114072 at *22 (M.D. Fla. June 28, 2024) ("Additionally, the settlement recovers 11% to 14% of the total potential recovery nationwide. This percent recovery is within the acceptable range.") (internal citations omitted); *In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051 at *24 (M.D. Fla. Mar. 23, 2021) (recommending approval of a settlement "at approximately 10% of the expert's estimated value"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (approving a settlement where "the proposed settlement amount represents approximately 53% of what might have been received had plaintiffs won at trial"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

While the settlement here is structured to occur in multiple payments over a period of three years, the first payment alone—$2.5 million—amounts to 13.31% of the actual damages. Class Counsel's decision to agree to a settlement with multiple payments was made after multiple mediations and a review of financial records, and based on a belief that structuring the payments this way would maximize the ultimate recovery for the Class. Multi-year settlements are common in complex litigation, one of the most

famous examples being the tobacco settlements which the state of Florida was at the forefront of. *See, e.g., Cardenas v. Anzai*, 311 F.3d 929, 932 (9th Cir. 2002) ("The tobacco companies also agreed to pay various sums to the settling states over 25 years….").

### D.    The Relief Provided to the Class Is Adequate

FRCP 23(e)(2)(C) requires that the relief provided in a class settlement be adequate, taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The adequacy of the amount negotiated, costs, risks, and delay of trial and appeal have all been addressed above.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the key questions are whether these methods are unduly burdensome and whether they deter or defeat illegitimate claims. *Loomis v. Slendertone Distribution*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047 at *17-18 (S.D. Cal. Mar. 8, 2021). The settlement proposes pre-populated forms to be sent to Class members. Ex. 1 at section III. The forms may be submitted via mail or via a website portal. *Id.* In *Loomis*, the Court held that "any subjective burden by a Class Member would be sufficiently mitigated by the

toll-free helpline and settlement website to provide assistance." *Loomis*, 2021 U.S. Dist. LEXIS 44047 at *17. This settlement provides for both. Ex. 1 at section IV ¶ 1(d); (g). As for illegitimate claims, because the shipping company has provided a spreadsheet with detailed information about class members and their identities, and because of e-mail notices which were sent by Brightree Holdings as well as credit card or bank records of the purchases, it is unlikely that illegitimate claims would be successful.

As to the terms of any proposed award of attorney's fees, including timing of payment, the amount of any attorney's fees have not been negotiated, and will be subject to approval by motion. As to "any agreement required to be identified under Rule 23(e)(3)," there is no such agreement, and the terms of the executed settlement were the only agreement made by the parties in connection with this settlement. Decl. of K. Kneupper at ¶ 35.

### E.    The Class Representatives and Class Counsel Have Adequately Represented the Class

FRCP 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." This factor is satisfied where "Plaintiffs here retained counsel with extensive experience in large class-action lawsuits who have vigorously represented the class during this matter." *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592 at *22 (M.D. Fla. Aug. 25, 2021). Many of the other factors may also be relevant here, including whether counsel were adequately informed before agreeing to the settlement

and "[t]he conduct of the negotiations." *Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-01376-J-34-PDB, 2019 U.S. Dist. LEXIS 14673 at *15 (M.D. Fla. Jan. 29, 2019). Where Class Counsel has reached a settlement after good faith, arms-length negotiations before a mediator, this weighs in favor of approval. *Lucinda Council v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 3:24-CV-534-WWB-LLL, 2025 U.S. Dist. LEXIS 22717 at *21-22 (M.D. Fla. Feb. 7, 2025).

As discussed further herein, Class Counsel and the Class Representatives have vigorously represented the Class in litigation that settled just before trial. This involved representing the Class in multiple other jurisdictions to pursue subpoenas in discovery. The Class Representatives have represented the Class not just in this matter, but in a related lawsuit in the Southern District of California. Each of them has been deposed, and each has participated in multiple mediations. Decl. of K. Kneupper at ¶ 38. The settlement amount is further evidence that both Class Counsel and the Class Representatives adequately represented the Class.

### F.  The Substance and Amount of Opposition

At the final approval stage, the Court will need to consider any objections or opposition to the settlement. However, because the Class has not yet received notice of the proposed settlement, they have not had the opportunity to comment or object, and this factor bears little weight at this time. *See Stewart v. Fla. Cmty. Law Grp.*, No. 6:18-cv-2111-Orl-CEM-DCI, 2019 U.S. Dist. LEXIS 153147 at *24-25 (M.D. Fla. Aug. 26, 2019) ("While the parties

have agreed to the settlement, it is too soon to determine whether there is any opposition since notice has not been sent to the class members. There is no evidence regarding opposition at this stage of the case. Therefore, the undersigned finds that this factor does not carry any significant weight at this point in the proceedings.").

## G.    Stage of Proceedings

"The stage of the proceedings at which a settlement is achieved is evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). To obtain this information, "vast formal discovery need not be taken." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175 at *13 (M.D. Fla. Apr. 23, 2020). Where a settlement is reached after an arms-length negotiation and the Plaintiffs' attorneys "have experience in handling consumer protection litigation and class actions," this factor favors finding the settlement to be fair, adequate, and reasonable. *Stewart*, 2019 U.S. Dist. LEXIS 153147 at *25.

As explained below, this settlement was a result of a series of mediations and was conducted at arms-length. Plaintiffs' counsel has significant experience in consumer protection litigation, both in individual lawsuits and in class actions. *See* Decl. of K. Kneupper. While this factor is intended to

ensure that Class Counsel do not make hasty, uninformed settlements early in the case, this lawsuit had proceeded to the eve of trial. Counsel thus had sufficient information about the risks and the merits of the case because of numerous rulings by the Court and because both fact and expert discovery was complete. *See Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ, 2002 U.S. Dist. LEXIS 29095 at *11-12 (S.D. Fla. Sep. 16, 2002) ("This action was settled less than two weeks before trial, after more than three and a half years of extensive motion practice and discovery. The Agreement was preceded by considerable arms-length negotiations between Class counsel and attorneys for the Defendants. The facts demonstrate that the Plaintiff was sufficiently informed to negotiate, execute and recommend approval of this Settlement.").

The *Stewart* case also considered that Class Counsel had information about "Defendant's net worth and, therefore, were prepared to make a well-informed decision concerning settlement." *Stewart*, 2019 U.S. Dist. LEXIS 153147 at *25. As part of the mediation, Class Counsel was permitted to review financial documents regarding CB911's current assets and income to satisfy themselves of the reasonableness of the settlement. Decl. of K. Kneupper at ¶ 36. Class Counsel also reviewed (1) older financial documents produced in discovery, and (2) publicly available documents from divorce proceedings disclosing various financial details about CB911 in connection with those proceedings. *Id.* Plaintiffs' counsel thus had more than adequate

16

information available to assess the strength of their case.

### H. The Proposal Was Negotiated At Arms' Length

Rule 23(e)(2)(B), as amended in 2018, now requires that the Court consider whether the proposed class settlement "was negotiated at arm's length." Courts in this Circuit have referenced a line of Ninth Circuit cases on this issue. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998 at *32-33 (S.D. Fla. Sep. 14, 2015) (citing *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)). In *Bluetooth*, the Ninth Circuit urged District Courts to look for certain "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)).

Those signs of self-dealing identified by the Ninth Circuit include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.* Each of these same signs have been identified as problematic by the Eleventh Circuit as well, which cited to a Ninth Circuit case from this same line of authority and instructed district courts to look for these signs of improper collusion. *Williams v. Reckitt Benckiser LLC*, 65 F.4th

1243, 1261 (11th Cir. 2023).

None of these signs exist here. Courts in this Circuit have held that "[t]here was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself." *Fladell v. Wells Fargo Bank, N.A.*, No. 0:13-cv-60721, 2014 U.S. Dist. LEXIS 156307 at *14 (S.D. Fla. Oct. 29, 2014). This is because in many other class actions, counsel seek to negotiate their own fee with the defendant, and present that negotiated fee to the Court as a *fait accompli* which can be approved or rejected, but cannot be altered. That scenario creates pressure on the Court to approve the negotiated fee because to do otherwise would upend the settlement and its benefits to the Class. Even though this might be permitted, Class Counsel here adopted a "best practice" and did not seek to negotiate any agreement with the Defendant as to their own fees **at all** in this settlement. There is nothing in the proposed agreement as to the amount that counsel will receive. Instead, that issue has been left for the Court itself to resolve via motion separately, and counsel negotiated only on behalf of the clients and not on behalf of themselves. The Ninth Circuit has held that a decision by class counsel to leave the issue of their fees to the Court via motion is a strong sign that there has been no collusion or self-dealing: "Providing further assurance that the agreement was not the product of collusion, class counsel McCune Wright did not reach an agreement with the automakers regarding the amount of attorney's fees

to which they were entitled." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 569-70 (9th Cir. 2019).

The second sign of self-dealing, a clear sailing arrangement, does not exist here.

As to the third sign of self-dealing, an agreement to revert unclaimed fees to the defendants, again, there is none. Instead, class counsel negotiated a clean settlement in which unclaimed fees would be distributed to a well-respected *cy pres* recipient, the NCLC. *See* Ex. 1 at I(18). The NCLC is a non-profit which has a history of addressing internet fraud and payment processing fraud. The NCLC has been approved as an appropriate *cy pres* recipient in various other cases. *See Smith v. One Nev. Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2020 U.S. Dist. LEXIS 244534 at *3-6 (D. Nev. Dec. 30, 2020); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) ("Indeed, courts have repeatedly found the NCLC to have the requisite nexus with consumer classes for qualification as a *cy pres* recipient."); *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 U.S. Dist. LEXIS 197186 at *17-18 (S.D. Cal. Nov. 16, 2018). Counsel for Plaintiffs have no personal or professional connection to the NCLC and their only relationship has been (1) purchasing and utilizing highly valuable practice guides the NCLC has created on consumer law, including in this lawsuit, and (2) several attorneys at the firm have attended NCLC educational conferences on consumer law. Decl. of K. Kneupper at ¶ 39.

Not only are there no signs of self-dealing, but there are many signs to the contrary. The settlement was negotiated only after an initial early mediation before mediator Craig Breitman, Esq., two separate full-day mediations before Judge Gregory P. Holder (Ret.), and a final full-day mediation before Jill R. Sperber, Esq. "[T]he involvement of an experienced and respected mediator who has successfully resolved numerous class action cases particularly undercuts the possibility of fraud or collusion behind the settlement." *Colon v. Johnson*, No. 8:22-cv-888-TPB-TGW, 2024 U.S. Dist. LEXIS 98431 at \*18 (M.D. Fla. May 31, 2024); *Seliem v. Islamic Soc'y of Tampa Bay Area, Inc.*, No. 8:18-cv-1590-T-33AEP, 2018 U.S. Dist. LEXIS 251108 at \*5 (M.D. Fla. Nov. 20, 2018). Judge Holder is a highly respected mediator and former judge, and Ms. Sperber has significant experience specifically in settling class action lawsuits.

Other aspects of the settlement discussed herein further suggest a lack of collusion. The case was not one in which class counsel sought a quick settlement: it was instead a hard-fought one with extensive discovery, as well as not only an extensive investigation pre-suit, but Plaintiffs' pursuit of an entirely separate lawsuit on behalf of the Class in the Southern District of California. There was an interlocutory appeal on the issue of class certification. *See* dkt. 162. The case settled on the eve of trial, which also heavily suggests a lack of collusion by class counsel. On similar facts, courts have found there was no collusion. *Wave Lengths Hair Salons of Fla., Inc. v.*

*CBL*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239523 at *17-18 (M.D. Fla. Aug. 22, 2019) ("Throughout the litigation, the Parties were in diametric opposition on the feasibility of each cause of action, the relevance of specific documents and testimony, the admissibility of expert testimony, and the appropriate measure of damages. And the case only settled on the eve of trial after the 11th Circuit denied CBL's Rule 23(f) Petition and the Court issued key rulings concerning the trial. This record of salient adversity confirms that the Parties negotiated the Settlement at arms-length and negates any finding of fraud or collusion."). Plaintiffs ultimately settled for an amount that reflects Class Counsel's willingness to pursue the case zealously as far as needed to secure a favorable recovery for the Class.

## I.    The Experience and Views of Counsel

"The district courts are afforded broad discretion in determining whether to approve a proposed class action settlement, and in doing so give considerable weight to the views of experienced counsel as to the merits of the settlement." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992). "[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Ponzio v. Pinon*, 87 F.4th 487, 507 (11th Cir. 2023) (citing this quotation from *Cotton* with approval).

Counsel for Plaintiffs are highly experienced in complex litigation. *See* Decl. of K. Kneupper at ¶¶ 1-33. Counsel are further highly experienced in

consumer law cases, and the law firm of Kneupper & Covey currently maintains a docket of over 300 active individual consumer law cases in either arbitration or litigation. Decl. of K. Kneupper at ¶ 33. The law firm has settled or recovered judgments in over 500 individual consumer law cases, and counsel are regularly involved in numerous mediations or settlement discussions. *Id.* at ¶ 34. In 2024, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million. *Id.* Within the last several months, Class Counsel has obtained court approval for two separate class action settlements of $5.5 million each, one in *McKinney v. Corsair Gaming Inc.*, and another in *Tan v. Quick Box, LLC et al. Id.* at ¶ 19-21. Class Counsel further obtained court approval for a third settlement in *Tan v. Quick Box, LLC et al* from another set of Defendants which will be for either $2 million or $5 million after a truncated bench trial. *Id.*

Based on their experience, Class Counsel believe this is a highly favorable settlement for the Class. Weighed against the risks of a finding of no liability, the time and expense needed to try for a higher damages award before a jury, as well as the risks of collectability, Counsel believes they have obtained an extremely favorable outcome for the Class.

A settlement that "offers an immediate and certain award for a large number of potential class members" creates "much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007). Even if

Plaintiffs obtained a larger judgment following trial, there would be significant uncertainty as to whether that larger judgment would be collectable immediately. Such a "win" then, might simply have resulted a similar settlement phased out over time. Such a process would likely have significant risk in the form of appeals and other barriers to enforcing a judgment.

### J.      Whether the Proposal Treats Class Members Equitably Relative to One Another

Federal Rule of Civil Procedure 23(e)(2)(D) added a requirement in 2018 that requires the Court to consider whether "the proposal treats class members equitably relative to each other." The settlement treats class members equitably because it bases their recovery on the amount they paid, subject to pro rata increases or decreases based on the number of claims. Ex. 1 at section II(5). Depending on how many class members make claims, that amount can also be increased pro rata up to three times the class member's actual damages (to reflect trebling). *Id.* at section II(5)(b).

While Plaintiffs intend to seek an incentive award, as discussed at the pretrial hearing, they are aware of the binding authority in this Circuit previously referenced by the Court on this issue. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020); *but see Preston v. Porch.Com, Inc.*, No. 21-CV-168 JLS (BLM), 2022 U.S. Dist. LEXIS 75256 at *19 (S.D. Cal. Apr. 25, 2022).

## IV.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE

**METHOD**

After the Court has determined that a settlement should be preliminarily approved, it must order that the parties provide notice to the settlement class. *See* Fed. R. Civ. P. 23(e)(1). "In an action certified under Rule 23(b)(3), 'class members should receive 'the best notice that is practicable under the circumstances.'" *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175 at *7 (M.D. Fla. Apr. 23, 2020) (quoting *Saccoccio v. JP Morgan Chase Bank*, N.A., 297 F.R.D. 683, 691 (S.D. Fla. 2014)). "[D]ue process does not require that class members actually receive notice." *Kreger v. Medicredit, Inc.*, No. 8:16-cv-1481-T-33JSS, 2016 U.S. Dist. LEXIS 93889 at *5 (M.D. Fla. July 19, 2016) (quoting *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)).

While this standard does not demand individual notice to every class member, it does require "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see Roll v. Enhanced Recovery Co., LLC,* No. 6:20-cv-212-RBD-EJK, 2021 U.S. Dist. LEXIS 217955 at *16-17 (M.D. Fla. Nov. 10, 2021). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed to a notice plan designed to make sure that as much of the Class receives notice as possible. The proposed notice forms are attached as Exhibits 1-3 to the executed settlement. Ex. 1. They have been

drafted in plain English in an attempt to make them easily readable to Class members. The methods of notice include e-mail notice, postcard notice, and website notice. *Id.* at section IV(2). The parties have agreed to consult with the Class Administrator regarding additional targeted notice via internet advertising and other procedures. The Settlement Administrator will cause advertisements to be served on Facebook and Instagram. The advertisements will be targeted to a custom audience of known potential Settlement Class Members. This custom audience will be created by uploading Settlement Class Member records from the Class list to the Meta platform. The data will be automatically hashed and encrypted during the upload process and matched to users with a valid Facebook and/or Instagram account. Class Counsel recently achieved a 15.8% claims rate with similar methods at very little cost, which is extraordinarily high compared to other class actions. Decl. of K. Kneupper at ¶ 40. The parties have selected Kroll Settlement Administration to administer the settlement after Plaintiff solicited requests for proposal from multiple different potential settlement administrators, and selected Kroll after interviews with the company and with others who submitted responses to the requests for proposal. *Id.*

## V.    CONCLUSION

Plaintiffs respectfully request that the Court should grant preliminary approval and schedule the necessary proceedings for a final approval hearing after notice to the Class.

DATED: August 7, 2025                    **KNEUPPER & COVEY, PC**

                                          /s/ Kevin M. Kneupper

                                          Kevin M. Kneupper, Esq.

                                          *Attorneys for Plaintiffs Janet Sihler,*
                                          *Charlene Bavencoff, and the Class*