# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JANET SIHLER, Individually and On Behalf of All Others Similarly Situated<br><br>                    *Plaintiffs*,<br>v.<br><br>GLOBAL E-TRADING, LLC DBA CHARGEBACKS911, GARY CARDONE, and MONICA EATON, GARY CARDONE, MONICA EATON,<br><br>                    *Defendants.* | Case No.:   8:23-CV-01450-VMC-UAM |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiff and Defendant Global e-Trading, LLC, d/b/a Chargebacks911 ("CB911") have agreed to a Class Settlement to resolve the putative Class's claims against those Defendants in exchange for $12.5 million. This agreement came after a lengthy litigation period of more than two years and four separate mediations. The Court should grant final approval based on the factors discussed below.

## I.    THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL

The Court has previously given preliminary approval to the proposed

Settlement. Dkt. 341. At the final approval stage, the Court must assess: "(1)
the likelihood of success at trial; (2) the range of possible recovery; (3) the
point on or below the range of possible recovery at which a settlement is fair,
adequate and reasonable; (4) the complexity, expense and duration of
litigation; (5) the substance and amount of opposition to the settlement; and
(6) the stage of proceedings at which the settlement was achieved." *Desue v.
20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS
117355 at *15-17 (S.D. Fla. July 8, 2023) (quoting *Bennett v. Behring Corp.*,
737 F.2d 982, 986 (11th Cir. 1984)).

Federal Rule of Civil Procedure 23(e)(2) as amended in 2018 added
additional factors that must be considered: whether "the class
representatives and class counsel have adequately represented the class,"
"the proposal was negotiated at arm's length," "the relief provided for the
class is adequate" taking into account certain factors, "any agreement
required to be identified under Rule 23(e)(3)," and whether "the proposal
treats class members equitably relative to each other."

"There is an overriding public interest in favor of settlement, particularly
in class actions that have the well-deserved reputation as being most

complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466
(S.D. Fla. 2002). "The policy favoring settlement is especially relevant in class
actions and other complex matters, where the inherent costs, delays and risks
of continued litigation might otherwise overwhelm any potential benefit the
class could hope to obtain." *Wave Lengths Hair Salons of Fla., Inc. v. CBL*, No.
2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239522 at *17 (M.D. Fla.
Apr. 24, 2019). On these facts the proposed settlement with Chargebacks911
for $12.5 million is not only a reasonable settlement, but an excellent result
for the Class that guarantees them a substantial recovery.

## A.    Settlement Administration and Notice Efforts to Date

The Settlement Administrator established a website, a post-office box,
and a toll-free phone number to promote the settlement. Decl. of A.
Dudinsky at ¶ 5-9. They have conducted a robust notice campaign involving
300,001 initial e-mail notices (to 99.2% of the Class), along with supplemental
e-mails retargeting e-mail addresses returned as undeliverable. *Id.* at 7. In
addition, 30,183 postcard notices were mailed to individuals with no e-mails
or undeliverable e-mails. *Id.* The Settlement Administrator estimates these
efforts reached 96.4% of the Class. *Id.* at ¶ 19. In the Settlement

Administrator's experience, this significantly exceeds the norm of 70% reach.

*Id.* A targeted social media campaign run by the Settlement Administrator

has separately had 737,727 impressions. *Id.* at ¶ 13.

The final claims rate is not presently known because the claims deadline

runs until January 2nd, 2026. "As a result, before it finally approves the

Settlement, the Court will not know the final claims rate or exactly how much

Defendants will distribute to Class Members. These are insufficient reasons,

however, to withhold approval." *Braynen v. Nationstar Mortg., LLC*, 2015 U.S.

Dist. LEXIS 151744 at *48 (S.D. Fla. Nov. 9, 2015); *see also Lee v. Ocwen Loan*

*Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998 at *71-72 (S.D. Fla. Sep. 14, 2015)

(collecting cases and noting that "setting the Claim Deadline after the Final

Approval Hearing has the salutary effect of maximizing the claim period's

duration").

As of November 26, 2025, if no further claims were made, the claims rate

would be 0.52%, or 1,578 claims. Decl. of A. Dudinsky at ¶ 21. However, Class

Counsel has been working diligently to supplement the notice process with

more than a month left. These efforts include: (1) a supplemental e-mail

notice testing with a different e-mail subject sent by the Settlement

Administrator sent to 222,302 e-mail addresses, *id.* at ¶ 12; (2) an advertisement which will be placed on Top Class Actions, a high-traffic website which usually results in a significant amount of claims, and will also be sent to their newsletter and posted on social media, *id.* at ¶ 14; (3) an additional social media advertising campaign directed at known class members on Facebook and Instagram, *id.* at ¶ 13, 15, and (4) a further additional reminder e-mail notice sent directly from Class Counsel using a slower "dripped" pace of e-mails, decl. of C. Covey at ¶ 12. The "dripped" reminder e-mails sent from Class Counsel are ongoing at a much slower pace, designed to avoid spam filters, but are expected to be completed well before the claims deadline. Decl. of C. Covey at ¶ 12-14.

Courts around the country have approved settlements with a claims rate of less than one percent. *Desue*, 2023 U.S. Dist. LEXIS at *27-28. In *Desue*, the court described a claims rate of 0.66% as "within an acceptable range." *See also Poertner v. Gillette Co.,* No. 6:12-cv-803-Orl-31DAB, 2014 U.S. Dist. LEXIS 116616 at *14, n.9 (M.D. Fla. Aug. 21, 2014) (approving settlement where claims rate "was only .076%" because "the expected claims rate in a consumer class action such as this is less than 1%"); *Montoya v. PNC Bank, N.A.*, No. 14-

20474-CIV, 2016 U.S. Dist. LEXIS 50315 at *73 (S.D. Fla. Apr. 13, 2016) ("Basing

approval of the Settlement on the claims rate would be neither reasonable

nor equitable. A low claims rate would not necessarily compel the conclusion

that the settlement as a whole is not fair, reasonable, or adequate."); *Hall v.*

*Bank of Am.*, N.A., No. 1:12-cv-22700-FAM, 2014 U.S. Dist. LEXIS 177155 at

*26-27 (S.D. Fla. Dec. 17, 2014)  (collecting cases and holding that "many

factors affect response rates and this ratio should not be given great

significance"); *Giancola v. Lincare Holdings, Inc.*, No. 8:17-cv-2427-T-33AEP,

2018 U.S. Dist. LEXIS 206631 at *8-9 (M.D. Fla. Dec. 7, 2018) (same).

### B.    No Objections or Requests for Exclusion Have Been Filed

There have been no objections to the proposed Settlement or requests

for exclusion. Decl. of A. Dudinsky at ¶ 23-24. "The reaction of the class is also

an important factor for the Court to consider." *Desue*, 2023 U.S. Dist. LEXIS

at *28. 'A low number of objections suggests the settlement is reasonable."

*Id.* "This 'strongly favors' final approval." *Id.*

### C.    The Strength of the Plaintiff's Case

"One of the most important factors for a court to consider in evaluating

a proposed settlement under Rule 23(e) is the strength of the plaintiffs' case

-- the probability that the plaintiffs would succeed if the case were litigated to a conclusion." *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1557 (S.D. Ga. 1994). Courts have recognized the inherent risks in litigation, even where a party believes its case to be strong. *Express Freight Int'l v. Hino Motors Ltd.*, No. 1:22-cv-22483-GAYLES/TORRES, 2024 U.S. Dist. LEXIS 59519 at *11 (S.D. Fla. Apr. 1, 2024) (recognizing "inherent costs, risks, and delay of trial and appeal"). And even if Plaintiffs were victorious on the issue of liability, there is always a risk that damages would be less than expected, or even almost nothing at all. *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) ("The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief.").

While Plaintiffs believe their substantive case to be strong, there is always an inherent risk of losing. Defendant has retained nationally respected law firms to represent them and has put up a vigorous defense. Plaintiffs' claims have been narrowed as the case proceeded because of partially successful motions to dismiss as well as summary judgment eliminating the two individual defendants. At trial, Plaintiffs expect that Defendant would have contested both damages and liability, and would have cross-examined

Plaintiffs' damages expert with suggestions that the data underlying damages was unreliable. This poses a significant risk that even if Plaintiffs won, they would not have won as much money as was sought.

### D.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-cv-00032 (MTT), 2019 U.S. Dist. LEXIS 6137 at *10 (M.D. Ga. Jan. 14, 2019) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Complex litigation -- like the instant case -- can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). "With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007). It is "proper to take the bird in hand instead of a prospective flock in the bush." *McWhorter v. Ocwen Loan Servicing*, No. 2:15-

CV-01831-MHH, 2019 U.S. Dist. LEXIS 232149 at *31 (N.D. Ala. Aug. 1, 2019)

(quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526

(C.D. Cal. 2004)).

There are significant risks, even if Plaintiffs believe the case on the

merits to be strong. Other courts have recognized that "RICO claims are

complex claims that are expensive and time-consuming to litigate." *Chan v.*

*Brady*, No. 20-CV-06569-LHK, 2021 U.S. Dist. LEXIS 153096 at *11 (N.D. Cal.

Aug. 13, 2021); *see also United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir.

1989) (describing RICO claims as complex and expensive). There are 337

docket entries in this lawsuit, and Defendant has vigorously disputed the

claims. There will be significant expense associated with pursuing the claims

to a jury trial.

### E.    The Amount Offered in Settlement and the Range of Possible Recovery

"A court first determines the possible range of recovery by resolving

various damages issues. The court then determines where in this range of

possible recovery do fair, adequate, and reasonable settlements lie." *Behrens*

*v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "[A] proposed

settlement that amounts to only a fraction of the potential recovery does not

mean the settlement is unfair or inadequate, because a settlement must be evaluated in light of the attendant risks with litigation." *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 U.S. Dist. LEXIS 131129 at *6 (M.D. Fla. July 10, 2025). RICO allows recovery of not just compensatory damages, but treble damages. However, in the Eleventh Circuit, "treble damages are not to be considered in determining the upper range of possible recovery for settlement purposes." *Horton v. Metro. Life Ins. Co.*, CIV. NO. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395 at *18 (M.D. Fla. Oct. 25, 1994).

Plaintiffs' expert estimate of the actual damages for a nationwide class was slightly over $18.7 million. *See* dkt. 217-2 at 4 (expert report of K. Merrifield). While the Defendants disputed that number, and there was a risk of that challenge succeeding and reducing the Class's recovery, the maximum range for compensatory damages for the Class would have been $18,779,274. The minimum range, in the event of a finding that there was no liability, would have been $0. The settlement of $12,500,000 thus amounts to 66.56% of the maximum amount of compensatory damages in this lawsuit.

"[S]ince 1995, class action settlements have typically 'recovered between

5.5% and 6.2% of the class members' estimated losses.'" *Torres v. Bank of
Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011)
(quoting *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa.
2001)). The recovery in this case will thus be more than ten times the typical
recovery in a class action settlement.

Other courts in this Circuit have routinely approved settlements
recovering significantly less than is being recovered here. *Kukorinis v.
Walmart, Inc.*, No. 8:22-cv-2402-VMC-TGW, 2024 U.S. Dist. LEXIS 114072 at
*22 (M.D. Fla. June 28, 2024) ("Additionally, the settlement recovers 11% to
14% of the total potential recovery nationwide. This percent recovery is
within the acceptable range.") (internal citations omitted); *In re Health Ins.
Innovations Sec. Litig.*, No. 8:17-cv-2186-TPB-SPF, 2021 U.S. Dist. LEXIS 61051
at *24 (M.D. Fla. Mar. 23, 2021) (recommending approval of a settlement "at
approximately 10% of the expert's estimated value"); *In re Sunbeam Sec.
Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001); *Behrens v. Wometco Enters.,
Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988).

While the settlement here is structured to occur in multiple payments
over a period of three years, the first payment alone—$2.5 million—amounts

to 13.31% of the actual damages. Class Counsel's decision to agree to a settlement with multiple payments was made after multiple mediations and a review of financial records, and based on a belief that structuring the payments this way would maximize the ultimate recovery for the Class. Multi-year settlements are common in complex litigation, one of the most famous examples being the tobacco settlements which the state of Florida was at the forefront of. *See, e.g., Cardenas v. Anzai*, 311 F.3d 929, 932 (9th Cir. 2002) ("The tobacco companies also agreed to pay various sums to the settling states over 25 years…").

### F.    The Relief Provided to the Class Is Adequate

FRCP 23(e)(2)(C) requires that the relief provided in a class settlement be adequate, taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The adequacy of the amount negotiated, costs, risks, and delay of trial and appeal have all been addressed above.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the key questions are whether these methods are unduly burdensome and whether they deter or defeat illegitimate claims. *Loomis v. Slendertone Distribution*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047 at *17-18 (S.D. Cal. Mar. 8, 2021). The settlement proposes pre-populated forms to be sent to Class members. Ex. 1 at section III. The forms may be submitted via mail or via a website portal. *Id.* In *Loomis*, the Court held that "any subjective burden by a Class Member would be sufficiently mitigated by the toll-free helpline and settlement website to provide assistance." *Loomis*, 2021 U.S. Dist. LEXIS 44047 at *17. This settlement provides for both. Ex. 1 at section IV ¶ 1(d); (g). As for illegitimate claims, because the shipping company has provided a spreadsheet with detailed information about class members and their identities, it is unlikely that illegitimate claims would be successful.

As to the terms of any proposed award of attorney's fees, including timing of payment, the amount of any attorney's fees have not been negotiated, and will be subject to approval by motion. As to "any agreement required to be identified under Rule 23(e)(3)," there is no such agreement.

### G.    The Class Representatives and Class Counsel Have Adequately Represented the Class

FRCP 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." This factor is satisfied where "Plaintiffs here retained counsel with extensive experience in large class-action lawsuits who have vigorously represented the class during this matter." *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592 at \*22 (M.D. Fla. Aug. 25, 2021). Many of the other factors may also be relevant here, including whether counsel were adequately informed before agreeing to the settlement and "[t]he conduct of the negotiations." *Grant v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-01376-J-34-PDB, 2019 U.S. Dist. LEXIS 14673 at \*15 (M.D. Fla. Jan. 29, 2019). Where Class Counsel has reached a settlement after good faith, arms-length negotiations before a mediator, this weighs in favor of approval. *Lucinda Council v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 3:24-CV-534-WWB-LLL, 2025 U.S. Dist. LEXIS 22717 at \*21-22 (M.D. Fla. Feb. 7, 2025).

Class Counsel and the Class Representatives have vigorously represented the Class in litigation that settled just before trial. The Class Representatives have represented the Class not just in this matter, but in a

14

related lawsuit in the Southern District of California. Each of them has been
deposed, and each has participated in multiple mediations. The settlement
amount is further evidence that both Class Counsel and the Class
Representatives adequately represented the Class.

### H.    Stage of Proceedings

"The stage of the proceedings at which a settlement is achieved is
evaluated to ensure that Plaintiffs had access to sufficient information to
adequately evaluate the merits of the case and weigh the benefits of
settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp.
2d 1298, 1324 (S.D. Fla. 2005). To obtain this information, "vast formal
discovery need not be taken." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab.
Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175 at *13 (M.D.
Fla. Apr. 23, 2020). Where a settlement is reached after an arms-length
negotiation and the Plaintiffs' attorneys "have experience in handling
consumer protection litigation and class actions," this factor favors finding
the settlement to be fair, adequate, and reasonable. *Stewart*, 2019 U.S. Dist.
LEXIS 153147 at *25.

As explained below, this settlement was a result of a series of mediations

and was conducted at arms-length. Plaintiffs' counsel has significant experience in consumer protection litigation, both in individual lawsuits and in class actions. *See* Decl. of K. Kneupper. While this factor is intended to ensure that Class Counsel do not make hasty, uninformed settlements early in the case, this lawsuit had proceeded to the eve of trial. Counsel thus had sufficient information about the risks and the merits of the case because of numerous rulings by the Court and because both fact and expert discovery was complete. *See Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ, 2002 U.S. Dist. LEXIS 29095 at *11-12 (S.D. Fla. Sep. 16, 2002) ("This action was settled less than two weeks before trial, after more than three and a half years of extensive motion practice and discovery. The Agreement was preceded by considerable arms-length negotiations between Class counsel and attorneys for the Defendants. The facts demonstrate that the Plaintiff was sufficiently informed to negotiate, execute and recommend approval of this Settlement.").

The *Stewart* case also considered that Class Counsel had information about "Defendant's net worth and, therefore, were prepared to make a well-informed decision concerning settlement." *Stewart*, 2019 U.S. Dist. LEXIS

153147 at *25. As part of the mediation, Class Counsel was permitted to review financial documents regarding CB911's current assets and income to satisfy themselves of the reasonableness of the settlement. Decl. of K. Kneupper at ¶ 36. Class Counsel also reviewed (1) older financial documents produced in discovery, and (2) publicly available documents from divorce proceedings disclosing various financial details about CB911 in connection with those proceedings. *Id.* Plaintiffs' counsel thus had more than adequate information available to assess the strength of their case.

## I.    The Proposal Was Negotiated At Arms' Length

Rule 23(e)(2)(B), as amended in 2018, now requires that the Court consider whether the proposed class settlement "was negotiated at arm's length." Courts in this Circuit have referenced a line of Ninth Circuit cases on this issue. *See Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998 at *32-33 (S.D. Fla. Sep. 14, 2015) (citing *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)). In *Bluetooth*, the Ninth Circuit urged District Courts to look for certain "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)

(quoting *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)).

Those signs of self-dealing identified by the Ninth Circuit include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.* Each of these same signs have been identified as problematic by the Eleventh Circuit as well, which cited to a Ninth Circuit case from this same line of authority and instructed district courts to look for these signs of improper collusion. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1261 (11th Cir. 2023).

None of these signs exist here. Courts in this Circuit have held that "[t]here was no collusion in the settlement negotiations and the Parties began negotiations regarding attorneys' fees only after finishing negotiating the Settlement itself." *Fladell v. Wells Fargo Bank, N.A.*, No. 0:13-cv-60721, 2014 U.S. Dist. LEXIS 156307 at *14 (S.D. Fla. Oct. 29, 2014). This is because in many other class actions, counsel seek to negotiate their own fee with the

defendant, and present that negotiated fee to the Court as a *fait accompli*
which can be approved or rejected, but cannot be altered. That scenario
creates pressure on the Court to approve the negotiated fee because to do
otherwise would upend the settlement and its benefits to the Class. Even
though this might be permitted, Class Counsel here adopted a "best practice"
and did not seek to negotiate any agreement with the Defendant as to their
own fees **at all** in this settlement. There is nothing in the proposed agreement
as to the amount that counsel will receive. Instead, that issue has been left
for the Court itself to resolve via motion separately, and counsel negotiated
only on behalf of the clients and not on behalf of themselves. The Ninth
Circuit has held that a decision by class counsel to leave the issue of their
fees to the Court via motion is a strong sign that there has been no collusion
or self-dealing: "Providing further assurance that the agreement was not the
product of collusion, class counsel McCune Wright did not reach an
agreement with the automakers regarding the amount of attorney's fees to
which they were entitled." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ.
Litig.)*, 926 F.3d 539, 569-70 (9th Cir. 2019).

The second sign of self-dealing, a clear sailing arrangement, does not

exist here.

As to the third sign of self-dealing, an agreement to revert unclaimed fees to the defendants, again, there is none. Instead, class counsel negotiated a clean settlement in which unclaimed fees would be distributed to a well-respected *cy pres* recipient, the NCLC. *See* Ex. 1 at I(18). The NCLC is a non-profit which has a history of addressing internet fraud and payment processing fraud. The NCLC has been approved as an appropriate *cy pres* recipient in various other cases. *See Smith v. One Nev. Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2020 U.S. Dist. LEXIS 244534 at *3-6 (D. Nev. Dec. 30, 2020); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) ("Indeed, courts have repeatedly found the NCLC to have the requisite nexus with consumer classes for qualification as a *cy pres* recipient."); *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 U.S. Dist. LEXIS 197186 at *17-18 (S.D. Cal. Nov. 16, 2018). Counsel for Plaintiffs have no personal or professional connection to the NCLC and their only relationship has been (1) purchasing and utilizing highly valuable practice guides the NCLC has created on consumer law, including in this lawsuit, and (2) several attorneys at the firm have attended NCLC educational conferences on

consumer law. Decl. of K. Kneupper at ¶ 39.

Not only are there no signs of self-dealing, but there are many signs to the contrary. The settlement was negotiated only after an initial early mediation before mediator Craig Breitman, Esq., two separate full-day mediations before Judge Gregory P. Holder (Ret.), and a final full-day mediation before Jill R. Sperber, Esq. "[T]he involvement of an experienced and respected mediator who has successfully resolved numerous class action cases particularly undercuts the possibility of fraud or collusion behind the settlement." *Colon v. Johnson*, No. 8:22-cv-888-TPB-TGW, 2024 U.S. Dist. LEXIS 98431 at *18 (M.D. Fla. May 31, 2024); *Seliem v. Islamic Soc'y of Tampa Bay Area, Inc.*, No. 8:18-cv-1590-T-33AEP, 2018 U.S. Dist. LEXIS 251108 at *5 (M.D. Fla. Nov. 20, 2018). Judge Holder is a highly respected mediator and former judge, and Ms. Sperber has significant experience specifically in settling class action lawsuits.

Other aspects of the settlement discussed herein further suggest a lack of collusion. The case was not one in which class counsel sought a quick settlement: it was instead a hard-fought one with extensive discovery, as well as not only an extensive investigation pre-suit, but Plaintiffs' pursuit of an

entirely separate lawsuit on behalf of the Class in the Southern District of
California. There was an interlocutory appeal on the issue of class
certification. *See* dkt. 162. The case settled on the eve of trial, which also
heavily suggests a lack of collusion by class counsel. On similar facts, courts
have found there was no collusion. *Wave Lengths Hair Salons of Fla., Inc. v.
CBL*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 U.S. Dist. LEXIS 239523 at *17-
18 (M.D. Fla. Aug. 22, 2019) ("Throughout the litigation, the Parties were in
diametric opposition on the feasibility of each cause of action, the relevance
of specific documents and testimony, the admissibility of expert testimony,
and the appropriate measure of damages. And the case only settled on the
eve of trial after the 11th Circuit denied CBL's Rule 23(f) Petition and the
Court issued key rulings concerning the trial. This record of salient adversity
confirms that the Parties negotiated the Settlement at arms-length and
negates any finding of fraud or collusion."). Plaintiffs ultimately settled for an
amount that reflects Class Counsel's willingness to pursue the case zealously
as far as needed to secure a favorable recovery for the Class.

### J.    The Experience and Views of Counsel

"The district courts are afforded broad discretion in determining whether to approve a proposed class action settlement, and in doing so give considerable weight to the views of experienced counsel as to the merits of the settlement." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992). "[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Ponzio v. Pinon*, 87 F.4th 487, 507 (11th Cir. 2023) (citing this quotation from *Cotton* with approval).

Counsel for Plaintiffs are highly experienced in complex litigation. *See* Decl. of K. Kneupper at ¶¶ 1-33. Counsel are further highly experienced in consumer law cases, and the law firm of Kneupper & Covey currently maintains a docket of over 300 active individual consumer law cases in either arbitration or litigation. Decl. of K. Kneupper at ¶ 33. The law firm has settled or recovered judgments in over 500 individual consumer law cases, and counsel are regularly involved in numerous mediations or settlement discussions. *Id.* at ¶ 34. In 2024, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million.  *Id.* Within the

last several months, Class Counsel has obtained court approval for two

separate class action settlements of $5.5 million each, one in *McKinney v.*

*Corsair Gaming Inc.*, and another in *Tan v. Quick Box, LLC et al. Id.* at ¶ 19-21.

Class Counsel further obtained court approval for a third settlement in *Tan v.*

*Quick Box, LLC et al* from another set of Defendants which will be for either

$2 million or $5 million after a truncated bench trial. *Id.*

Based on their experience, Class Counsel believe this is a highly favorable

settlement for the Class. Weighed against the risks of a finding of no liability,

the time and expense needed to try for a higher damages award before a

jury, as well as the risks of collectability, Counsel believes they have obtained

an extremely favorable outcome for the Class.

A settlement that "offers an immediate and certain award for a large

number of potential class members" creates "much less risk of anyone who

may have actually been injured going away empty-handed." *In re Omnivision*

*Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007). Even if Plaintiffs obtained

a larger judgment following trial, there would be significant uncertainty as to

whether that larger judgment would be collectable immediately. Such a "win"

then, might simply have resulted a similar settlement phased out over time.

Such a process would likely have significant risk in the form of appeals and other barriers to enforcing a judgment.

### K. Whether the Proposal Treats Class Members Equitably Relative to One Another

Federal Rule of Civil Procedure 23(e)(2)(D) added a requirement in 2018 that requires the Court to consider whether "the proposal treats class members equitably relative to each other." The settlement treats class members equitably because it bases their recovery on the amount they paid, subject to pro rata increases or decreases based on the number of claims. Ex. 1 at section II(5). Depending on how many class members make claims, that amount can also be increased pro rata up to three times the class member's actual damages (to reflect trebling). *Id.* at section II(5)(b).

## II. CONCLUSION

Plaintiffs respectfully request that the Court should grant final approval to the proposed Settlement.


DATED: November 28, 2025                    **KNEUPPER & COVEY, PC**

                                           /s/Kevin M. Kneupper
                                           Kevin M. Kneupper, Esq.

_Attorneys for Plaintiffs Janet_
_Sihler, Charlene Bavencoff, and_
_the Class_